# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

EOLAS TECHNOLOGIES
INCORPORATED,

        Plaintiff,

vs.

AMAZON.COM, INC.,

        Defendant.

**No. 6:15-cv-1038-RWS**

**LEAD CASE**

Jury Trial Demanded

**Amazon's Opposition to Eolas's Motion for
Partial Summary Judgment and Request
Under Federal Rule of Civil Procedure 56(d)
to Take Discovery.**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTS ................................................................................................................................. 3

1.   A Tyler jury, Chief Judge Davis, and the Federal Circuit all agreed that
     Eolas's original parent patents were invalid. ........................................................ 3

2.   While the parties litigated Eolas's original parent patents, Eolas was
     delaying the prosecution of a secret continuation application. ............................ 3

3.   Without a patent-term extension, which is entered automatically, the '507
     patent could not have issued. ............................................................................... 6

4.   Defendants attempted to meet and confer but were rebuffed. ............................. 7

ISSUE TO BE DECIDED ................................................................................................... 8

ARGUMENT ...................................................................................................................... 8

5.   Eolas's Premature Motion for Summary Judgment Should Be Denied. ............. 8

     5.1   Federal Rule of Civil Procedure 56(d) requests are liberally
           granted. ...................................................................................................... 8

     5.2   Standards for challenging a patent-term extension. .................................. 9

           5.2.1   Patent-term extensions must be reduced based on the
                   unreasonableness of the applicant's conduct. ............................. 9

           5.2.2   Eolas applies the wrong standard: The invalidity of all or
                   part of a patent-term extension is a defense under 35
                   U.S.C. § 282. ............................................................................. 11

           5.2.3   The PTO's failure to account for Eolas's delay constitutes a
                   material failure to comply with section 154(b). ....................... 13

     5.3   Discovery into the reasonableness of Eolas's conduct is
           appropriate. ............................................................................................. 13

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

*Cases:*                                                                *Page(s):*

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
   707 F.3d 1318 (Fed. Cir. 2013)....................................................................9

*Am. Fam. Life Assur. Co. of Columbus v. Biles*,
   714 F.3d 887 (5th Cir. 2013) ........................................................................9

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
   725 F.3d 1350 (Fed. Cir. 1984)..................................................................12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)....................................................................................13

*Culwell v. City of Fort Worth*,
   468 F.3d 868 (5th Cir. 2006) ........................................................................9

*Eolas Techs. Inc. v. Amazon.com, Inc.*,
   No. 12-1362, Dkt. No. 71 (Fed. Cir. July 22, 2013) ....................................3

*Eolas v. Adobe*,
   No. 6:09-cv-00446-LED (E.D. Tex. July 19, 2012) ................................3, 6

*Khan v. Am. Int'l Grp., Inc.*,
   654 F. Supp. 2d 617 (S.D. Tex. 2009) ........................................................9

*Metro. Life Ins. v. Bancorp Servs., L.L.C.*,
   527 F.3d 1330 (Fed. Cir. 2008)....................................................................9

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011)......................................................................................12

*Pfizer Inc. v. Lee*,
   811 F.3d 466 (Fed. Cir. 2016)....................................................................11

*Raby v. Livingston*,
   600 F.3d 552 (5th Cir. 2010) ........................................................................9

*Radio Corp. v. Radio Labs.*,
   293 U.S. 1 (1934)........................................................................................12

*Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*,
   611 F.3d 1381 (Fed. Cir. 2010)....................................................................5

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
   200 F.3d 795 (Fed. Cir. 1999)....................................................................13

*Xerox Corp. v. Genmoora Corp.*,
   888 F.2d 345 (5th Cir.1989) ...................................................................................9

*Statutes:*

5 U.S.C. § 706...............................................................................................11, 12, 13

35 U.S.C. § 122.............................................................................................................3

35 U.S.C. § 154(a)(2).................................................................................................10

35 U.S.C. § 154(b) ..........................................................................................7, 10, 12, 13

35 U.S.C. § 154(b)(1).................................................................................................10

35 U.S.C. § 154(b)(1)(A)(i)........................................................................................10

 35 U.S.C. §154(b)(1)(B) ..........................................................................................10

35 U.S.C. § 154(b)(2)(C).............................................................................................10

35 U.S.C. § 154(b)(2)(C)(i) ..............................................................................2, 13, 14

35 U.S.C. § 154(b)(2)(C)(iii) ....................................................................................10

35 U.S.C. § 154(b)(4)(A)......................................................................................11, 12

35 U.S.C. § 154(c)(1)...........................................................................................6, 10

35 U.S.C. § 156............................................................................................................13

35 U.S.C. § 282.....................................................................................................11, 12

35 U.S.C. § 282(c)......................................................................................8, 11, 12, 13

1999 Patent Term Guarantee Act..............................................................................12

Consolidated Appropriations Act, 2000, P.L. (1999) ...........................................10

Uruguay Rounds Agreement Act, P.L. § 532 (1994) ...............................................9

*Other Authorities:*

37 CFR 1.704(c)....................................................................................................10, 11

145 Cong. Rec. S14696-14739 (daily ed. Nov. 17, 1999).....................................10, 14

1984 U.S.C.C.A.N. 2647 ............................................................................................13

Fed. R. Civ. P. 36......................................................................................................2, 6

Fed. R. Civ. P. 56(c) ...................................................................................................13

Fed. R. Civ. P. 56(d) .........................................................................................2, 8, 9, 15

Fed. R. Civ. P. 56(f) .....................................................................................................9

H.R. Rep. No. 98-857 (1984).........................................................................................13

Manual of Patent Examination Procedure § 2734 (9th ed. 2015)...............................7, 11

S.B. 1948, 103rd Cong. ("Patent Term Guarantee Act of 1999") ................................10

United States Patent and Trademark Office, *Explanation of Patent Term Adjustment Calculation*...........................................................................................7

# INTRODUCTION

Eolas's Motion for Partial Summary Judgment seeks to force a rushed judgment, prior to any factual development, about a question of profound public import—namely, whether Eolas obtained an improper extension of its patent term beyond the permissible limits of our patent laws. That question deserves the fullest and fairest attention by the parties and the Court, especially in this case, where Eolas attempts to claim private ownership of incomprehensibly vast swaths of American commerce—a claim that has already been rejected by one Tyler jury. Our patent laws hold few policies so dear as (1) encouraging challenges to invalid patents, and (2) protecting the public from improper extensions of even valid patent monopolies. Where, as here, a patent issues that is substantively identical to patents already invalidated by a jury, and where that patent has a term extension that was improperly obtained, the public interest could not possibly be implicated more. Nothing about this extraordinary and closely watched case, especially not the question at issue here, should be decided without the highest degree of care based on the most complete record available. The public deserves nothing less.

The patent-in-suit—U.S. Patent No. 9,191,507 (the "'507 patent")—issued with a 1,042 day patent-term extension. Without that extension, the '507 patent would have expired in October 2014, more than one year before it issued. Eolas admits that this issue is potentially case-dispositive, and on April 27 filed a motion seeking summary judgment that the '507 patent's term extension had been properly obtained. Defendants responded that discovery had just opened and that there had been no opportunity to develop the record. At the hearing on May 12, the Court agreed, stating that "if there is discovery that the Defendants need in order to adequately respond to this motion, [the Court is] going to allow that."[1] Amazon met and conferred with Eolas about the scope and timing of discovery. But Eolas would have none of it, insisting instead that Amazon's response to the motion must be limited to the four corners of the '507 patent's file history.

Eolas's position—that Amazon needs no discovery whatsoever to respond to its motion—is

---

[1] Tr. of 5/12/2016 Hearing at 113:1–4.

baseless. As explained in detail below, the question is whether Eolas "failed to engage in reasonable efforts to conclude prosecution of the application." [2] Thus, the propriety of the '507 patent's term extension turns on whether Eolas acted "reasonably," under all of the circumstances, when prosecuting its patent application. This is a classic fact question on which discovery is appropriate. And given the facts already known, it is very likely that formal discovery will prove that Eolas purposefully delayed prosecution of its application.

Even now, before meaningful discovery, the record shows that Eolas assiduously avoided—for nearly three years—all efforts to conclude prosecution of its application. In November 2011 — three months before the jury trial that invalidated Eolas's predecessor patents—Eolas filed an application with claims that on their face, and as discovery will likely show, were not intended to be prosecuted as filed, but rather were mere placeholders. Then, in May 2012—six months after Eolas filed its original application—Eolas preempted Patent Office action on the original claims by making minor, cosmetic changes to them. Eolas did not intend to prosecute even these amended claims, which—both before and after these changes—were substantive duplicates of claims in Eolas's other patents. Rather, Eolas made these changes to restart the prosecution clock and buy Eolas the time it needed until the prosecution bar set by Chief Judge Davis in the prior case expired.

That bar ended one year after the Federal Circuit's Rule 36 affirmance in July 2014. Less than one month later, Eolas—again without any prompting from the examiner—withdrew all of its original, duplicative claims and substituted an entirely new set of claims. That new set of claims—first presented to the Patent Office *two years and nine months after* Eolas filed its placeholder patent application—were the claims Eolas prosecuted in earnest, and which on November 24, 2015 issued as the '507 patent.

Surely, these facts and others are appropriate subjects for discovery. Consequently, and for the reasons discussed more fully below, Amazon respectfully requests that the Court deny Eolas's Motion for Summary Judgment and grant Amazon's Federal Rule of Civil Procedure 56(d) request

---

[2] 35 U.S.C. § 154(b)(2)(C)(i) (emphasis added).

for an opportunity to develop full and fair discovery into questions that are as case dispositive as they are imbued with public interest.

## FACTS

### 1.  A Tyler jury, Chief Judge Davis, and the Federal Circuit all agreed that Eolas's original parent patents were invalid.

The '507 patent is part of a family of patents dating back to an original 1994 application.[3] All share an identical specification. The named inventors, Michael Doyle, David Martin, and Cheong Ang have consistently contended that their patents claim ownership of the entire interactive World Wide Web. In 2009, Doyle and his company, Eolas, sued Amazon, Google, Yahoo!, and others in this Court. The trial in that case involved a who's-who of early Internet pioneers, including witnesses universally credited—except by Eolas—as the actual inventors of the interactive World Wide Web. The Tyler jury returned a verdict invalidating *every-single-claim* Eolas proffered.[4] Judge Davis confirmed the verdict,[5] and the Federal Circuit affirmed.[6]

### 2.  While the parties litigated Eolas's original parent patents, Eolas was delaying the prosecution of a secret continuation application.

But Eolas hedged against the Tyler jury. On November 9, 2011, while the parties were preparing for trial, Eolas's prosecution counsel filed a continuation patent application.[7] The continuation application shared the same specification as, and claimed priority to, the Eolas patents that the Tyler jury would soon invalidate.[8] The 2011 application issued as the patent-in-suit here.[9]

Eolas cloaked its 2011 application in secrecy. Under 35 U.S.C. § 122, subject to some exceptions, all patent applications become public record within eighteen months of their filing date. But when Eolas filed its 2011 application, Eolas specially requested that the Patent Office not publish

---

[3] Decl. of Grant Kinsel in Support of Amazon's Opp. to Eolas's Mot. for Summ. Judg. [hereinafter, Kinsel Decl.], Ex. 1 ('507 patent) at [63] ("Related U.S. Application Data").

[4] *Eolas Techs. Inc. v. Adobe Sys. Inc.*, No. 6:09-cv-446-LED, Dkt. No. 1353 (Feb. 9, 2012).

[5] *Eolas v. Adobe*, No. 6:09-cv-00446-LED, Dkt. No. 1414 (E.D. Tex. July 19, 2012).

[6] *Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 12-1632, Dkt. No. 71 (Fed. Cir. July 22, 2013).

[7] Kinsel Decl., Ex. 2 (Nov. 19, 2011 Application Data Sheet for App. No. 13/292,434 at 2).

[8] Kinsel Decl, Ex. 3 (Nov. 9, 2011 Specification for App. No. 13/292,434 at 1).

[9] '507 patent at [21].

it.[10] And yet neither the specification nor the claims could possibly have been confidential—the specification was identical to the specification in already-issued patents, and Eolas copied the claims from other patents and applications. The only conceivably confidential aspect of this application, therefore, was the simple *fact* of it—its mere *existence*—which, by requesting no publication, Eolas kept secret from the Defendants and the public.

Eolas plainly never intended to prosecute the claims in its original application. Those claims were essentially copied from, and thus were insubstantially different from, claims in Eolas's parent patents. For example, below is a redline showing the insubstantial differences between original Claim 1 of Eolas's 2011 continuation application and Claim 9 of U.S. Patent No. 8,082,293, a patent to which the 2011 application claims priority:

> A method ~~of serving digital information~~for data communication in a computer network environment ~~having a network server coupled to the network environment, and~~ where the network environment is a distributed hypermedia environment, the method comprising:
>
> transferring, ~~using the network server,~~ at least one file containing information ~~on to~~across the network environment, where the information enables at least one ~~browser~~ application, configured to execute on at least one client workstation, to:
>
> display at least a portion of a distributed hypermedia document within a browser-controlled window;
>
> respond to text formats to initiate processing specified by the text formats;
>
> identify an embed text format which corresponds to a first location in the distributed hypermedia document;
>
> automatically invoke program code, in response to the identifying of the embed text format, in order to enable an end-user to directly interact with an object when the object is displayed within a display area created at the first location within the portion of the distributed hypermedia document being displayed in the browser-controlled window, wherein the program code is part of a distributed application, wherein said direct interaction involves information sent to and received from at least a portion of the distributed application located on two or more ~~remote~~ computers coupled to the distributed hypermedia network environment.[11]

---

[10] Kinsel Decl., Ex. 2 at 2 ("Request Not to Publish" box checked).

[11] *Compare* Kinsel Decl., Ex. 4 at 1 (Nov. 9, 2011 Claims), *with* Kinsel Decl., Ex. 5 ('293 patent at 18:20-47)

–4–

Given that the claims in Eolas's 2011 application were nearly identical to claims in other parent patents or patent applications, Eolas knew that it could not prosecute these claims because the Patent Office could not issue them.[12] Instead, these original claims were mere placeholders for the real, later-substituted claims in the event that the Tyler jury and the Federal Circuit invalided Eolas's already issued-patents.

In May 2012, about six months after Eolas filed its original, duplicative claims, and without PTO prompting, Eolas filed a first preliminary amendment.[13] In this amendment, Eolas made only insubstantial changes to the pending claims. As Table 1 to the Kinsel Declaration shows, these insubstantial changes do not appear to have been made for patentability-related reasons, but, rather, for other reasons such as to re-start the prosecution clock.[14]

Eolas also filed a curious petition requesting that the PTO examine the 2011 continuation application out-of-order.[15] According to the petition, because the 2011 continuation application claimed priority back to an application that had been pending for more than five years, the PTO should consider the 2011 application before other applications that had been filed earlier. The petition is curious because, at the time Eolas filed it, the pending claims remained essentially identical to claims in Eolas's other issued patents, precluding the possibility that the PTO could issue them. Discovery will be necessary to understand the reasons for, and timing of, this curious petition. But common sense suggests that this petition was simply a self-serving document to be used later against the public if Eolas's diligence were ever challenged.

In August 2014, almost three years after the original application was filed—again without PTO prompting—Eolas filed a second amendment containing the claims it ultimately prosecuted.[16] This amendment canceled the original, duplicative claims, and introduced a different set of claims. About five months later, in January 2015, the PTO examiner called Eolas's prosecution counsel to

---

[12] *See, e.g., Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1384-85 (Fed. Cir. 2010).
[13] Kinsel Decl., Ex. 6.
[14] Kinsel Decl. at ¶ 8.
[15] Kinsel Decl., Ex. 7.
[16] Kinsel Decl., Ex. 8.

discuss the application.[17] After Eolas filed a set of amendments in June 2015, the examiner entered a notice of allowability, and the patent issued in November 2015.[18]

The timing of the August 2014 amendment will be a central discovery issue. The file history provides no definitive reasons for why Eolas waited almost three years to prosecute its real claims—for instance, the PTO did not ask for them. But other facts, from outside the file history, offer clues. In the litigation before Judge Davis, the parties agreed on, and the Court entered, a prosecution bar.[19] That bar expired approximately one year after the Federal Circuit's Rule 36 affirmance, in about July 2014. After doing almost nothing for almost three years, Eolas filed its amendment approximately one month after the prosecution bar expired. Discovery will be necessary to determine why Eolas waited almost three years to pursue its real claims, including whether Eolas delayed prosecution so that its trial counsel, the lawyers with the best understanding of the prior art and accused systems, could help craft the claims that Eolas actually sought and obtained.

### 3. Without a patent-term extension, which is entered automatically, the '507 patent could not have issued.

The '507 patent issued in November 2015, but claimed priority to the original 1994 application. Under normal rules, a patent issuing from an application filed after June 1995 expires twenty years from its earliest priority date.[20] As such, the '507 patent would have expired on October 17, 2014, more than one year before it actually issued. But the PTO granted Eolas a nearly three-year patent-term extension,[21] which, if properly obtained, would extend the '507 patent's life to August 2017, beyond the term of Eolas's original, invalidated patents.

The PTO uses an automated system—with no examiner input—to grant patent-term exten-

---

[17] Kinsel Decl., Ex. 9 at 1 (Response to Rule 105 Communication).

[18] Kinsel Decl., Ex. 10 (July 22, 2015 Notice of Allowance and Fee(s) Due and Interview Summary).

[19] *Eolas Techs., Inc. v. Adobe Sys., Inc.*, Case No. 6:09-cv-00446-LED, Dkt. 423 (E.D. Tex. Sept. 28, 2010) (Protective Order).

[20] *See* 35 U.S.C. §§ 154(a)(2), 154(c)(1).

[21] Kinsel Decl., Ex. 11 (Patent Term Adjustment (PTA) for App. No. 13/292,434).

sions. At the close of a prosecution, the PTO's automated Patent Application Location and Monitoring system—PALM—automatically calculates a patent-term extension.[22] The PTO categorizes patent-term extensions as "A Delay," "B Delay," and "C Delay." PALM is programmed to give an A-Delay extension, for example, when the PTO does not issue a first action (or other identified notices) within fourteen months after the filing of an application.[23] PALM is programmed to give a B-Delay extension when, subject to certain exceptions, an application is pending for more than three years.[24] And PALM is programmed to give a C-Delay extension based on delay from interferences, secrecy orders, and successful appeals.[25]

Here, the PTO's automated PALM system calculated 807 days of A Delay and 380 days of B Delay for the '507 patent. Accounting for overlapping days, PALM calculated a total patent-term extension of 1,042 days.[26] But as described in detail below, a patent-term extension under 35 U.S.C. § 154(b) must be reduced by the period of time during which the applicant failed to use reasonable efforts to "conclude prosecution." In this case, PALM did not reduce the '507 patent's term extension, even though Eolas waited almost three years to even submit the claims that it ultimately intended to prosecute.

**4.     Defendants attempted to meet and confer but were rebuffed.**

At the hearing following Eolas's filing of its Motion for Summary Judgment, the Court indicated that Defendants would be entitled to discovery if required to adequately respond to the Motion, but that the parties should meet and confer to determine what, if any, discovery they could

---

[22]  Manual of Patent Examination Procedure § 2734 (9th ed. 2015), *available at* http://www.uspto.gov/web/offices/pac/mpep/s2734.html (last visited June 1, 2016).

[23]  *See* United States Patent and Trademark Office, *Explanation of Patent Term Adjustment Calculation*, http://www.uspto.gov/patents-application-process/checking-application-status/pair-announcements/explanation-patent-term (last visited June 1, 2016).

[24]  *See id.*

[25]  *See id.*

[26]  Kinsel Decl., Ex. 11 at 1.

agree to.[27] To that end, Defendants provided Eolas with a list of the discovery that would be required before Defendants could adequately respond to the Motion. But after receiving Defendants' list, Eolas claimed not to understand what information Defendants sought, and on June 2, the parties held a telephonic meet and confer to discuss Defendants' requested discovery. At the meet and confer, Defendants explained what specific information they sought with respect to each category of discovery in Defendants' list. Eolas responded that no discovery at all was necessary, and, therefore, Eolas would not provide the requested discovery in advance of Defendants' response date. In fact, Eolas would not confirm that the requested discovery—which included such garden-variety requests as inventor and prosecuting lawyer depositions—would ever be provided, much less be provided before Defendants' response date.[28] As a result, Amazon filed this Federal Rule of Civil Procedure 56(d) request.

## ISSUE TO BE DECIDED

Section 282(c) of Title 35 of the United States Code provides a defense for an improperly obtained patent-term extension. A patent-term extension has been improperly obtained if it includes time periods during which the patentee did not engage in reasonable efforts to "conclude prosecution" of the application. This is a classic fact question on which discovery is appropriate. Consequently, the issue to be decided is: Should the Court deny Eolas's Motion for Summary Judgment and grant Amazon's Federal Rule of Civil Procedure 56(d) request for a reasonable opportunity to take discovery?

## ARGUMENT

**5.      Eolas's Premature Motion for Summary Judgment Should Be Denied.**

**5.1      Federal Rule of Civil Procedure 56(d) requests are liberally granted.**

As the Fifth Circuit has consistently held, "Rule 56(d) motions for additional discovery are '"broadly favored and should be liberally granted" because the rule is designed to "safeguard non-

---

[27] Tr. of 5/12/2016 Hearing at 113:1–4.
[28] Kinsel Decl. at ¶ 14.

moving parties from summary judgment motions that they cannot adequately oppose.""""[29] Ordinarily, if a motion for summary judgment is filed at the outset of litigation, before the non-moving party has had a realistic opportunity to pursue discovery, granting the summary-judgment motion in the face of a Rule 56(d) request is an abuse of discretion.[30] For instance, in *Khan v. Am. Int'l Grp., Inc.*, the Southern District of Texas noted that "[t]he Fifth Circuit has held it to be an abuse of discretion not to grant a Rule 56(f) [now Rule 56(d)] motion if the discovery opportunity has clearly been inadequate."[31] Discovery in this case has only recently opened, and Eolas has refused to allow discovery into whether it properly obtained its patent-term extension. Under Rule 56(d), the Court should deny Eolas's motion, and allow the factual record to be developed regarding whether Eolas properly obtained its patent-term extension.

## 5.2    Standards for challenging a patent-term extension.

### 5.2.1    Patent-term extensions must be reduced based on the unreasonableness of the applicant's conduct.

The current patent-term-extension regime was created in response to changes in how patent terms are calculated. Before 1995, and subject to some exceptions, patent terms were generally 17 years from the date a patent issued. But patent terms based on the date of issuance fostered a system where applicants could delay issuance of their patents until new technologies were invented by the public, and then surface those patents to ensnare the hard work of future inventors. These "submarine" patents, in part, led to a change in the statutory term of a patent.[32] And so, for applications filed after June 1995, the patent term generally ends 20 years from the patent's earliest priority date.[33]

---

[29] *E.g., Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006)); *e.g., also Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1328 (Fed. Cir. 2013) (quoting *Culwell*, 468 F.3d at 871 (5th Cir. 2006)).

[30] *See, e.g., Metro. Life Ins. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330, 1336-37 (Fed. Cir. 2008).

[31] 654 F. Supp. 2d 617, 625 (S.D. Tex. 2009) (citing *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 355 (5th Cir.1989)).

[32] *See* Uruguay Rounds Agreement Act, P.L. 103-465, § 532 (1994).

[33] *See* 35 U.S.C. §§ 154(a)(2), 154(c)(1).

But under this system, where patent terms are calculated from priority dates instead of issuance dates, delays in examination can decrease the effective length of a patent term. To address this concern, in 1999 Congress made substantial amendments to 35 U.S.C. § 154(b), under which an applicant is entitled to a patent-term extension in certain limited circumstances where the PTO delays examination or issuance of a patent.[34] So, for instance, if the PTO delays more than 14 months in issuing a first office action or if an application is pending for more than three years, an applicant may be entitled to some patent-term extension.[35]

But while 35 U.S.C. § 154(b)(1) allows for extensions based on PTO delays, section 154(b)(2)(C) reduces the extensions for periods of delay associated with the applicant's own conduct. This balancing is a necessary part of the system. Otherwise, an applicant could intentionally delay issuance of its patent and then demand a patent-term extension, thereby improperly extending the life of the patent—a result that is anathema to the public interest, and, thus, jealously guarded against by the patent laws. As a result, section 154(b)(2)(C) provides that any patent-term extension must be reduced to account for delays attributable to the applicant:

> (C) Reduction of period of adjustment—
>
> (i) The period of adjustment of the term of a patent under paragraph (1) *shall be reduced* by a period equal to the period of time during which the applicant *failed to engage in reasonable efforts to conclude prosecution of the application*.

Section 154(b)(2)(C)(iii) requires the Director to prescribe regulations "establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application." For example, 37 CFR § 1.704(c) lists actions or inactions that the PTO considers to be failures to engage in reasonable efforts to conclude prosecution. But as the Manual of Patent Examining Procedure ("MPEP") warns those circumstances are non-exhaustive, and the PTO may "reduce a period of adjustment ... on the basis of [applicant]

---

[34] Kinsel Decl, Ex. 13 (Statements on Introduced Bills and Joint Resolutions, 145 Cong. Rec. S14696-14739, S14718 (daily ed. Nov. 17, 1999) (statement of Sen. Lott) (commenting on S.B. 1948, 103rd Cong. ("Patent Term Guarantee Act of 1999"), ultimately enacted as part of the Consolidated Appropriations Act, 2000, P.L. 106-113 (1999)).).

[35] 35 U.S.C. §§ 154(b)(1)(A)(i), 154(b)(1)(B).

conduct … even if such conduct is not specifically addressed in 37 CFR 1.704(c)."[36]

### 5.2.2    Eolas applies the wrong standard: The invalidity of all or part of a patent-term extension is a defense under 35 U.S.C. § 282.

Citing the Federal Circuit's decision in *Pfizer Inc. v. Lee*[37] and the Administrative Procedures Act (the "APA"),[38] Eolas claims that it properly obtained its patent-term extension unless the PTO's actions were "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" According to Eolas, this means Amazon may rely on only the file history and is not entitled to discovery. But Eolas is wrong because Eolas confuses the standard applicable in a claim by a patentee seeking a longer patent-term extension with the different standard applicable to a defense in a patent-infringement case under 35 U.S.C. § 282.

A patentee who is disappointed by the length of a patent-term extension has an expressly defined cause of action under 35 U.S.C. § 154(b)(4)(A). That section sets the ground rules for the action, including that (1) the patentee file his challenge in the United States District Court for the Eastern District of Virginia, and (2) the APA controls the action.[39] The Federal Circuit's decision in *Pfizer*—on which Eolas's motion hinges—was an appeal of such an action. Thus, in *Pfizer*, the Federal Circuit applied the APA's standard because the statute under which the claim arose expressly required it.

By contrast, the procedure is decidedly different here. A third party—like Amazon—has its chance to challenge a patent-term extension—not in an action under section 154(b)(4)(A) like in *Pfizer*—but rather, as a defense to an infringement claim. 35 U.S.C. § 282 defines defenses available in a patent-infringement case, and section 282(c) expressly provides the defense of an improperly granted patent-term extension:

> Invalidity of the extension of a patent term or any portion thereof under section

---

[36] MPEP § 2732 (9th ed. 2015), *available at* http://www.uspto.gov/web/offices/pac/mpep/s2732.html (last visited June 3, 2016).

[37] 811 F.3d 466, 470–71 (Fed. Cir. 2016).

[38] 5 U.S.C. § 706.

[39] 35 U.S.C. § 154(b)(4)(A).

154(b) or 156 because of the material failure—

>   (1) by the applicant for the extension, or

>   (2) by the Director,

to comply with the requirements of such section shall be a defense in any action involving the infringement of a patent during the period of the extension of its term and shall be pleaded.[40]

The APA has no application to a defense under section 282. For example, for the better part of thirty years, the Federal Circuit and the Supreme Court have applied the clear-and-convincing standard to invalidity defenses, not the APA's standard.[41] Thus, it is beyond dispute that the APA does not apply to an invalidity defense, which, like a defense of an improperly obtained patent-term extension, is also defined by section 282.

That the APA expressly controls an action under 35 U.S.C. § 154(b)(4)(A), but not a defense under 35 U.S.C. § 282(c), also demonstrates that Congress did not intend for the APA to apply to the patent-term extension invalidity defense under section 282(c). In fact, as part of the 1999 Patent Term Guarantee Act, Congress added section 154(b)(4)(A) to create a claim for review of a patent term adjustment by a disappointed patentee, and in so doing, included a reference to the APA. At the same time, Congress amended section 282(c) to add a defense for an improper section 154(b) extension, but did not include a reference to the APA. Including a reference to the APA in section 154(b), but not in 282(c), makes sense: In a case under section 154(b), the PTO is a named party, but in a case where an accused infringer raises a section 282(c) defense, the PTO is not a named party. Congress knew how—and when—to reference the APA when it wanted to, and the fact that Congress intentionally omitted any reference to the APA in section 282(c) is fatal to Eolas's argument.

But, it is also—and equally—fatal to Eolas's Motion for Summary Judgment. Eolas's Motion for Summary Judgment, exclusively premised on the APA, depends entirely on the wrong standard.

---

[40] 35 U.S.C. § 282(c).

[41] *See, e.g., Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984) citing to *Radio Corp. v. Radio Labs.*, 293 U.S. 1 (1934)); *see also Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011).

Eolas relies exclusively on the APA, failing to offer any evidence whatsoever under the correct standard—the standard recited in section 282(c). As a consequence, and as a matter of law, Eolas's Motion for Summary Judgment must be denied because Eolas has not—and cannot—carry its initial burden of proof.[42]

### 5.2.3    The PTO's failure to account for Eolas's delay constitutes a material failure to comply with section 154(b).

Applying the correct standard—section 282(c)—to demonstrate that Eolas improperly obtained its patent-term extension, Amazon must show what section 282(c) requires—a "material failure" by either Eolas or the Director "to comply with the requirements" of section 154(b).[43]

35 U.S.C. § 154(b)(2)(C)(i) requires the PTO to exclude from any patent-term extension any periods of time during which the applicant does not act reasonably to conclude prosecution. This write-off is mandatory—"the period of adjustment of the term … *shall* be reduced …. " Further, any failure by the PTO to make this reduction is "material" within the meaning of section 282(c). As the legislative history notes in discussing section 282(c)'s patent-term-extension defense (as originally implemented with respect to 35 U.S.C. § 156): "*Any* failure by the Commissioner to comply with the requirements of section 156 would be considered material unless the Commissioner failed to meet a time deadline."[44] As such, if Eolas failed, at any time during the pendency of the 2011 continuation application, to engage in reasonable efforts to conclude prosecution, and if the PTO did not reduce the patent-term extension by the period of time during which Eolas acted unreasonably, then the Director materially failed to comply with the requirements of section 154(b), and the '507 patent term extension, or a portion thereof, was not properly obtained.

### 5.3    Discovery into the reasonableness of Eolas's conduct is appropriate.

Contrary to Eolas's claim that discovery is unnecessary because Eolas's subjective intent is

---

[42] Fed. R. Civ. P. 56(c); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-23, 325 (1986)).

[43] 35 U.S.C. § 282(c).

[44] *See* Kinsel Decl., Ex. 14 (H.R. Rep. No. 98-857, pt. 1, at 47 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 2647, 2680 (emphasis added)).

irrelevant, Eolas's subjective intent can, in fact, be important to whether Eolas's conduct, under all of the circumstances, was reasonable, and whether, in turn, the patent-term extension should have been reduced. Indeed, the legislative history to section 154(b)(2)(C)(i) shows that a patentee's subjective intent can disqualify an applicant from the benefits of the statute: " … [T]hose who *purposely manipulate* the system to delay the issuance of their patents will be penalized … a result that the Conferees believe entirely appropriate."[45] Discovery into Eolas's *objective* reasonableness is appropriate. That discovery will include at least the following:

- Depositions of, and related document production from, Doyle, Martin, and Ang.

This discovery goes to the core issue of whether Eolas ever intended to prosecute the originally-filed claims or whether those claims were mere placeholders for the real, later-substituted claims. For example, Doyle, Martin, and Ang should be able to testify about what invention they were attempting to claim in the 2011 continuation application (both originally and in the later amended claims) and how that invention was different from the claims in their other issued patents and pending applications. Similarly, production of Doyle, Martin, and Ang's documents reflecting their supposed invention—lab notebooks, work records, timesheets, etc.—will shed further light on whether the original 2011 claims were mere placeholders.

- Depositions and documents from prosecuting lawyer Charles E. Krueger.

Krueger prosecuted the 2011 continuation application and his discovery will undoubtedly be relevant to whether Eolas failed to engage in reasonable efforts to conclude the 2011 application's prosecution. For example, Krueger's testimony regarding the purpose and timing of the first amendment, along with his testimony about the reasons for, and timing of, the curious examination-out-of-order petition are relevant. Krueger's testimony regarding the purpose and timing of the second amendment is also relevant. Production of non-privileged records showing when Krueger began working on the second amendment are relevant, as are Krueger's communication logs reflecting discussions with or involving Doyle, Martin, Ang, and Eolas's litigation counsel. These

---

[45] Kinsel Decl., Ex. 13 (145 Cong. Rec. at S14718).

later logs will offer insight into whether the timing of the second amendment was driven by considerations like the lifting of the prosecution bar in the Tyler case.

- Document production from, and potential deposition of, The Regents of the University of California (the "UC").

The UC owned the 2011 continuation application. Thus, any participation by the UC relating to the subjects above is relevant and discoverable.

- Privilege logs from Eolas's litigation counsel.

As with Krueger's records, logs showing communications between trial counsel and Krueger are relevant to understanding the purpose and timing of the second amendment, and specifically, if Eolas delayed the amendment while awaiting expiration of the prosecution bar.

## CONCLUSION

Eolas applies the wrong standard in its Motion for Summary Judgment, and therefore, Eolas's Motion for Summary Judgment must be denied. In the alternative, Amazon is entitled to develop the record and take discovery into the reasonableness of Eolas's conduct. Amazon, therefore, respectfully requests that the Court grant Amazon's Federal Rule of Civil Procedure 56(d) request to allow Amazon the opportunity to take discovery into whether Eolas engaged in reasonable efforts to conclude the prosecution of its application.

Respectfully submitted,

*/s/  Jennifer H. Doan*
Jennifer Haltom Doan
Texas Bar No. 08809050
Joshua R. Thane
Texas Bar No. 24060713
J. Randy Roeser
Texas Bar No. 24089377
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone:  903.255.1000
Facsimile:  903.255.0800
Email: jdoan@haltomdoan.com
Email: jthane@haltomdoan.com
Email: rroeser@haltomdoan.com

Douglas E. Lumish
California State Bar No. 183863
Richard G. Frenkel
California State Bar No. 204133
Jeffrey G. Homrig
California State Bar No. 215890
Amit Makker
California State Bar No. 280747
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: 650.328.4600
Facsimile: 650.463.2600
Email: doug.lumish@lw.com
Email:  rick.frenkel@lw.com
Email: jeff.homrig@lw.com
Email:  amit.makker@lw.com

Joseph H. Lee
California State Bar No. 248046
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone:  714.540.1235
Facsimile:  714.755.8290
Email:  joseph.lee@lw.com

Grant E. Kinsel
Washington Bar No. 49576
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206-359-3516
Facsimile:  206-359-9000
Email:  Gkinsel@perkinscoie.com

**ATTORNEYS FOR DEFENDANT
AMAZON.COM, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 6th day of June, 2016.

*/s/ Jennifer H. Doan*
Jennifer H. Doan