IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| EOLAS TECHNOLOGIES INCORPORATED, | |
| Plaintiff, | Civil Action No.  6:15-CV-01038-RWS |
| v. | LEAD CASE |
| AMAZON.COM, INC., | JURY TRIAL DEMANDED |
| Defendant. | |
| EOLAS TECHNOLOGIES INCORPORATED, | |
| Plaintiff, | Civil Action No.  6:15-CV-01039-RWS |
| v. | LEAD CASE |
| GOOGLE INC., | JURY TRIAL DEMANDED |
| Defendant. | |
| EOLAS TECHNOLOGIES INCORPORATED, | |
| Plaintiff, | Civil Action No.  6:15-CV-01040-RWS |
| v. | LEAD CASE |
| WAL-MART STORES, INC., AND WAL-MART STORES, TEXAS, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

**EOLAS TECHNOLOGIES INCORPORATED'S RESPONSE TO DEFENDANTS'
MOTION FOR LEAVE TO SUPPLEMENT THEIR PATENT RULE 3-3 INVALIDITY
CONTENTIONS AND RULE 3-4(b) DOCUMENT PRODUCTION**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................................1

II.     FACTUAL BACKGROUND..................................................................................................2

III.    LEGAL BACKGROUND .......................................................................................................4

        A.      Supplementing Invalidity Contentions. ......................................................................4

        B.      Electing Prior Art Under General Order 13-20. .........................................................6

IV.     ARGUMENT...........................................................................................................................6

        A.      Defendants Were Not Diligent In Discovering The
                Admittedly Late Prior Art. ..........................................................................................6

        B.      Defendants Have Not Demonstrated the Importance of The
                Prior Art. .....................................................................................................................7

        C.      Eolas Would Be Unfairly Prejudiced By Defendants'
                Admittedly Late Disclosures.......................................................................................8

        D.      A Continuance Cannot Cure the Prejudice Imposed by
                Defendants' Lack of Diligence. ................................................................................11

V.      CONCLUSION......................................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Arbitron, Inc. v. Int'l Demographics Inc.*,
   No. 2:06-cv-434-TJW, 2008 WL 4755761 (E.D. Tex. Oct. 29, 2008) ...................................10

*Blue Calypso, Inc. v. Groupon, Inc.*,
   No. 6:12-cv-486, slip op. 2 (E.D. Tex. Aug. 6, 2015) ........................................................5, 7, 9

*CardSoft, Inc. v. Verifone Sys., Inc.*,
   No. 2:08-cv-98-RSP, slip op. 3 (E.D. Tex. May 28, 2012) .........................................5, 6, 9, 11

*Computer Acceleration Corp. v. Microsoft Corp.*,
   481 F. Supp. 2d 620 (E.D. Tex. 2007) ................................................................................10

*GeoTag, Inc. v. Frontier Commc'ns. Corp.*,
   No. 2:10-cv-265-JRG, 2013 WL 2637141 (E.D. Tex. June 11, 2013) .................................5, 7

*Innovative Display Techs. LLC v. Acer Inc.*,
   No. 2:13-cv-522-JRG, 2014 WL 2796555 (E.D. Tex. June 19, 2014) ..............................4, 5, 8

*Invensys Sys., Inc. v. Emerson Elec. Co.*,
   No. 6:12-cv-799-LED, slip op. 5 (E.D. Tex. Dec. 3, 2014) ...............................................5, 6, 7

*Motio, Inc. v. Avnet, Inc.*,
   No. 4:12-cv647-ALM, 2015 WL 5952530 (E.D. Tex. Oct. 13, 2015) ................................7, 8

*Pozen Inc. v. Par Pharm., Inc.*,
   No. 6:08-cv-437-LED-JDL, 2010 WL 11431483 (E.D. Tex. June 8, 2010) .........................1, 9

**I.     INTRODUCTION**

Rather than working to streamline these cases and their invalidity defenses, Defendants have consistently sought to undermine this District's Patent Rules and General Order 13-20. In their initial invalidity contentions, Defendants sought to rely on hundreds of alleged prior art references cited in more than 100 claim charts. Along with those voluminous charts and references, came an even more voluminous document production containing tens of thousands of pages of alleged prior art and an additional 14 compressed gigabytes of native documents. This initial invalidity contention production disregards the purpose of this District's Patent Rules, namely, "to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *Pozen Inc. v. Par Pharm., Inc.*, No. 6:08-cv-437-LED-JDL, 2010 WL 11431483, at *2 (E.D. Tex. June 8, 2010) (internal quotations omitted).

When confronted with the deadline to drop many of those hundreds of references, Defendants instead disclosed significant additional materials. These admittedly late-disclosed materials—two charts totaling more than 300 pages and more than 7,000 pages of documents—were not tough to find. Some documents (NPSNET) were in Google's possession for an unstated amount of time, and the others (LBNL) were discoverable using a simple Google search. This significant, late disclosure came after the opening claim construction brief was filed. If these references are as important as Defendants say (but never show), a reasonably diligent litigant would have uncovered them in the more than six months between the time this case was filed and invalidity contentions were served. Defendants were not diligent, and Defendants ignored General Rule 13-20's goal of "streamlin[ing] the issues in this case to promote a 'just, speedy, and inexpensive determination' of this action, as provided by Federal Rule of Civil Procedure 1."

The Court and Eolas should not be made to suffer because of Defendants' refusal to abide by the Court's rules and orders. By the time Defendants decided to disclose their "new" materials, Eolas had already invested significant time analyzing Defendants' initial (unwieldy) invalidity contentions and briefed its claim construction positions.

Blessing Defendants' actions here would send the wrong message to future litigants; a message that the Court's rules and orders are mere suggestions to be followed when convenient.

## II.   FACTUAL BACKGROUND

On November 24, 2015, Eolas filed these cases based on Defendants' infringement of the '507 patent. Dkt. 1; Dkt. 1, *Eolas Techs. Inc. v. Google Inc.*, No. 6:15-cv-1039 (E.D. Tex. Nov. 24, 2015); Dkt. 1, *Eolas Techs. Inc. v. Wal-Mart Stores, Inc. et al.*, No. 6:15-cv-1040 (E.D. Tex. Nov. 24, 2015). The Court consolidated the cases for pre-trial purposes, Dkt. 22, and entered a docket control order (DCO), Dkt. 99.

The DCO required Eolas to serve its infringement contentions on March 31, 2016 (as Eolas already had) and for Defendants to serve invalidity contentions on June 2, 2016. Dkt. 99 at 7-8. The timeline provided Defendants more than six months to prepare and serve their invalidity contentions after Eolas filed the cases and 63 days after receiving Eolas's infringement contentions.

The DCO included deadlines to limit asserted claims and alleged prior art. Dkt. 99 at 4-6. The DCO mandated that Defendants reduce the number of asserted references to 18 by September 21, 2016. Dkt. 99 at 5 (DCO deadline); General Order 13-20 ¶ 2 (noting preliminary limit of 12 references), ¶ 4 (noting limits increased by 50% where only one patent-in-suit). The Court determined that the provision requiring the reduction of asserted claims and alleged prior art was appropriate despite Defendants' repeated protests against its inclusion. Dkt. 70 at 4

2

("While Defendants agree that the parties can work to streamline this case, it is unnecessary to include deadlines for preliminary elections of claims and prior art"); Dkt. 80 at 4 (same).

Defendants' June 2016 invalidity contentions included:

- Hundreds of references (Ex. 1 (Cover Pleading) at 1-4 (listing 90 references in table of contents), 12-145 (listing hundreds of additional references under headings of the 90 references in table of contents);

- More than 100 claim charts, some of which cited many separate references (A1 – A46 and B1 – B62) (*id.* at 146-150; *e.g.*, Ex. 2 ( A30 – Mosaic));

- More than 2,400 documents totaling tens of thousands of pages  (Quigley Decl. ¶ 2); and

- Approximately 14 gigabytes of compressed natively produced documents (*id.* ¶ 3).

Defendants' September 2016 election of alleged prior art included new NPSNET and LBNL charts that cited to numerous different references—12 and four (including one reference with an unspecified number of sub-references), respectively. Ex. 3 (Cover Pleading); Ex. 4 (NPSNET); Ex. 5 (LBNL). Along with these charts, Defendants served more than 1,600 documents (including papers, source code, videos, and more) totaling over 7,000 pages related to these new prior art references. Ex. 6; Quigley Decl. ¶ 4.. Defendants suggest that their untimely production of new references may continue—stating "we do anticipate additional materials may ultimately be received via subpoena." *Id.* Months later, Eolas is aware of no such subpoena, but the prospect of additional late disclosure looms.

Defendants' professed diligence as to this new prior art is belied by the facts. For instance, Defendants' June 2, 2016 invalidity contentions included a Johnston reference (Ex. 7) and claim chart (Ex. 8). The Johnston reference lists various authors under the "Lawrence Berkeley Laboratory" heading, including W.E. Johnston. Ex. 7. A Google search for "W.E. Johnston Lawrence Berkeley Laboratory" returns a website for William E. Johnston (Ex. 9 (http://dst.lbl.gov/~johnston/)) as one of the first search results. Mr. Johnston's webpage includes

various information, including a link to what is called "Resume (July, 2003)" (Ex. 10 (http://dst.lbl.gov/~johnston/Resume.html)) and a link to what is called "Other papers" (Ex. 11 (http://dst.lbl.gov/~johnston/papers.html)). These "Resume (July, 2003)" and "Other papers" links include references to each of Defendants' "new" LBNL references.

Defendants' professed diligence is even more dubious as to the alleged NPSNET-related references. For instance, Defendants' June 2016 invalidity contentions included the Brutzman (Ex. 12), Macedonia (Ex. 13), and Zeswitz (Ex. 14) references and separate claim charts for each (Exs. 15-17). By September 2016—when Defendants were to limit their alleged prior art references—Defendants decided that what was three separate references for their June contentions were, in combination with nine new references, actually one reference. Ex. 4 (citing 12 alleged references for NPSNET). As for the nine new references, Defendants admit that Google previously possessed these references, but do not articulate when they came into Google's possession. Ex. 18 (October 12, 2016 Letter).

## III.   LEGAL BACKGROUND

### A.   Supplementing Invalidity Contentions.

Invalidity contentions are deemed final except in specific circumstances. P.R. 3-6(a). To supplement invalidity contentions outside of claim construction-specific circumstances, good cause must be shown. P.R. 3-6(a)-(b). Courts consider four factors in evaluating good cause: "(1) the explanation for the party's failure to meet the deadline; (2) the importance of the amendment; (3) potential prejudice from allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Innovative Display Techs. LLC v. Acer Inc.*, No. 2:13-cv-522-JRG, 2014 WL 2796555, at *1 (E.D. Tex. June 19, 2014) (citing *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir.2003)); *GeoTag, Inc. v. Frontier*

*Commc'ns. Corp.*, No. 2:10-cv-265-JRG, 2013 WL 2637141, at *1 (E.D. Tex. June 11, 2013) (citing same).

Courts in this District have elaborated on the pertinent inquiry as to each factor.

As to the first factor (diligence), "the critical issue is not what the party did after they discovered the prior art; rather, the critical issue is whether or not the party seeking to amend exercised diligence in discovering the prior art." Dkt. 248, *Invensys Sys., Inc. v. Emerson Elec. Co.*, No. 6:12-cv-799-LED, slip op. 5 (E.D. Tex. Dec. 3, 2014) (internal quotations omitted) (Ex. 19). Nor is alleged art new "merely because it is new to [d]efendants' counsel." *Id.* (noting that defendants "had possession of the information at all relevant times"). Several courts have held that a lack of diligence is dispositive in determining whether good cause exists. *GeoTag*, 2013 WL 2637141, at *1-2; *Invesys*, No. 6:12-cv-799-LED, slip op. 3-6.

As to the second factor (importance of supplementation), more than "zealous argument" is required, but an explanation of how the references add to other invalidity assertions. *Innovative Display*, 2014 WL 2796555, at *2; *Blue Calypso, Inc. v. Groupon, Inc.*, No. 6:12-cv-486, slip op. 2 (E.D. Tex. Aug. 6, 2015) ("Defendants, in fact, have five other references that allegedly anticipate the patent in suit, yet, go to no length to explain why the patent in question is better than those references.") (Ex. 20).

As to the third factor (prejudice), supplemental disclosures after claim construction disclosures have been exchanged (but before briefing) have been held to be prejudicial. *Id.* at *2. And the "importance [of supplemental references] only adds to the prejudice suffered" where the patentee is "deprived of a meaningful opportunity to consider these references during the claim construction process." Dkt. 353, *CardSoft, Inc. v. Verifone Sys., Inc.*, No. 2:08-cv-98-RSP, slip op. 3 (E.D. Tex. May 28, 2012) (Ex. 21).

As to the fourth factor (availability of continuance), "a continuance is not available to cure [a patentee's] prejudice" where claim construction is nearly over by the time disclosure occurs (and where claim construction is complete by the time the Court issues its opinion). *Id.*

### B.   Electing Prior Art Under General Order 13-20.

General Order 13-20—which was incorporated into the original DCO (Dkt. 99 at 4-6)—"streamlines the issues in this case to promote a 'just, speedy, and inexpensive determination' of this action, as provided by Federal Rule of Civil Procedure 1." It does so by requiring parties to limit asserted claims and alleged prior art references in two stages: once around the time of claim construction discovery ending, and again around the time of expert reports. General Order 13-20 ¶¶ 2-3. In single patent cases, asserted claims must initially be limited to 15 and then to 8 and alleged prior art references much initially be limited to 18 and then 9. *Id.* ¶¶ 2-4.

## IV.   ARGUMENT

### A.   Defendants Were Not Diligent In Discovering The Admittedly Late Prior Art.

Whether Defendants were diligent in searching for additional prior art after the June 2016 deadline to serve invalidity contentions is not the issue. Thus, Defendants' professed diligence that after serving their invalidity contentions they "continued to investigate and evaluate the substantial prior art that had been produced and charted" (Dkt. 203 at 2)—is inapposite. Rather, the issue is whether Defendants were diligent in looking for the alleged prior art from the filing of these cases. *Invensys*, No. 6:12-cv-799-LED, slip op. 5. The evidence demonstrates they were not.

A reasonably diligent litigant would have discovered and served these new references by the invalidity contention deadline. As to the alleged NPSNET references, Google possessed them before the filing of these lawsuits. Section II, *supra* (discussing Google's possession of the

6

alleged NPSNET references). Whether Google's—or Amazon's or Walmart's—counsel in this case also had the references is irrelevant. *Invesys*, No. 6:12-cv-799-LED, slip op. 5. Moreover, the alleged LBNL references were easily discoverable with a simple Google search, a few clicks of the mouse, and a few minutes perusing the lead author of the Johnston reference's website. Section II, *supra* (discussing the few steps necessary to locate these late-disclosed alleged LBNL references). Google (as an Internet search company) is uniquely qualified to do such basic research. Yet, it appears that they did not. A claim of diligence where such simple tasks were not performance strains credulity. As in *GeoTag* and *Invesys*, Defendants' clear lack of diligence is sufficient to deny their motion. *GeoTag*, 2013 WL 2637141, at *1-2; *Invesys*, No. 6:12-cv-799-LED, slip op. 3-6.[1]

### B. Defendants Have Not Demonstrated the Importance of The Prior Art.

Defendants not only failed to act diligently, but they fail to articulate the importance of their late-disclosed materials. In particular, Defendants have failed to explain why these new materials (including two new charts and thousands of pages of documents) are necessary in light of the vast alleged prior art Defendants initially disclosed and were able to choose from at the election deadline. *Blue Calypso*, No. 6:12-cv-486, slip op. 2. Defendants' motion fails to even try to articulate why these admittedly late-disclosed materials are different, better, or more important than the hundreds of references and more than 100 claim charts previously disclosed. Dkt. 203 at 9-10; Section II, *supra* (discussing the voluminous nature of Defendants' invalidity contentions).

---

[1] Defendants' citation to *Motio, Inc. v. Avnet, Inc.*, No. 4:12-cv647-ALM, 2015 WL 5952530 (E.D. Tex. Oct. 13, 2015) is unhelpful. The reference in that case was not in the party's possession (as the alleged NPSNET references were) and was not easily discoverable with a simple Google search, a few clicks of the mouse, and a few minutes perusing a website (as the alleged LBNL references were). *Id.* at *2-3.

Instead of proving that their late-disclosed materials are different, better, or more important than their original references, Defendants rely on attorney argument. Dkt. 203 at 9-10. But such bare attorney argument, without detailed explanation (even by attorneys) of the references, is insufficient. *Innovative Display*, 2014 WL 2796555, at *2. Defendants have made no evidentiary showing (even through attorney discussion of the references in detail) that these references are different or add something important to references previously disclosed that Defendants might have elected under General Order 13-20. And doing so would be difficult for Defendants given their haphazard initial disclosure of hundreds of references and more than 100 claim charts. Section II, *supra* (discussing the voluminous nature of Defendants' invalidity contentions).[2]

### C. Eolas Would Be Unfairly Prejudiced By Defendants' Admittedly Late Disclosures.

Defendants suggest that Eolas is not prejudiced by Defendants' lack of diligence. Dkt. 203 at 10-11. But Defendants cannot simply wish away and ignore the harm caused to others by their own actions (or inactions). Defendants' actions have caused Eolas repeated harm.

Defendants' initial disclosure of hundreds of references and more than 100 claim charts with their June 2016 invalidity contentions forced Eolas to sift through a significant amount of material. Section II, *supra* (discussing the voluminous nature of Defendants' invalidity contentions); Ex. 22 (October 19, 2016 Email). Defendants knew they would need to limit the number of asserted references to 18 by September 21, 2016 (Dkt. 99 at 6); yet, pursued their initial approach to chart and disclose anything and everything imaginable. Rather than "provide all parties with adequate notice and information with which to litigate their cases," Defendants

---

[2] Defendants' citation to *Motio* is still unhelpful. For instance, Defendants have not argued that these late-disclosed NPSNET and LBNL references "anticipate[] or render[] obvious all the asserted claims of the patent at issue." 2015 WL 5952530, at *3.

8

decided to "practice litigation by ambush." *Pozen*, 2010 WL 11431483, at *2 (internal quotations omitted).

And ambush Eolas is exactly what Defendants did in this case. When the time came to limit asserted prior art references, Defendants expanded their list of references using these late-disclosed materials. Eolas had already briefed its claim construction positions by this time. *E.g.*, Dkt. 154 (P.R. 4-3 Joint Claim Construction Statement); Dkt. 168 (Eolas's Opening Claim Construction Brief). By the time Defendants got around to filing this motion (on the day before Thanksgiving, November 23, 2016), three weeks had passed since the *Markman* hearing (November 2, 2016). Courts in this District have routinely found prejudice where materials were late-disclosed during the claim construction process. *Blue Calypso*, No. 6:12-cv-486, slip op. 2; *CardSoft*, No. 2:08-cv-98-RSP, slip op. 3.

The General Order calls for Defendants to limit to 18 references, though "associated" references may be counted as one. *Id.* Defendants' election of references ignores the word "associated" in General Order 13-20. General Order 13-20 ¶ 2 n.2. For instance, Defendants' alleged Mosaic prior art (one of Defendants' elected references) includes 25 different references coming from a variety of different, unrelated individuals. Ex. 2 (A30 – Mosaic). Defendants' alleged NPSNET reference is actually a combination of three references previously separately charted along with nine new references. Ex. 4 (NPSNET); Section II, *supra* (discussing references combined under NPSNET heading). These references come from a variety of alleged authors and include alleged publication dates spanning at least four years (1991-1994). Ex. 4 (NPSNET). It is not clear how the alleged NPSNET work was "common work done by master's and doctoral students" (Dkt. 203 at 3) when there has been no showing that any of these individuals had ever worked together. Further, Defendants admit that their alleged LBNL

9

references, which include three papers and thousands of pages of produced documents (Ex. 5 (LBNL)), are actually related to different projects. Dkt. 203 at 4 (noting that the original reference related to "brain image scans" while the late-disclosed references relate to "frog dissection"). Like the alleged NPSNET references, the LBNL references come from a period of at least four years (1992-1995), including after the patent-in-suit was filed in 1994. Ex. 5 (LBNL).

Eolas is also unfairly prejudiced by Defendants' refusal to provide basic discovery as to their interactions with third parties like Mr. Johnston and Mr. Robertson. Defendants' assertion that "Eolas has likewise served no discovery on Defendants related to prior art" is blatantly false. Dkt. 203 at 6. Eolas has included topics regarding Defendants' contacts and interactions with alleged third party prior artists in corporate deposition notices. Ex. 23 (Google) Topics 52 & 56; Ex. 24 (Amazon) Topics 50 & 54. Yet, Amazon and Google have refused to present witnesses on those topics. Ex. 25 (Google) at 75-76, 79-80; Ex. 26 (Amazon) at 51-52, 54. Walmart has not even responded to Eolas's notices.

Defendants' cited cases are again unhelpful. Unlike the plaintiff in *Arbitron, Inc. v. Int'l Demographics Inc.*, No. 2:06-cv-434-TJW, 2008 WL 4755761, at *1-2 (E.D. Tex. Oct. 29, 2008), which identified no prejudice, Eolas has identified significant prejudice above. Defendants' cite to *Computer Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620 (E.D. Tex. 2007) (Clark, J.) is also inapposite. There, claim construction had not yet occurred and only a single patent was at issue. *Id.* at 625-26. Here, claim construction briefing was underway by the time of Defendants' late disclosure and Defendants seek to introduce numerous new references and thousands of pages of new material. Section II, *supra* (discussing contents of Defendants' admittedly late disclosure)

### D. A Continuance Cannot Cure the Prejudice Imposed by Defendants' Lack of Diligence.

A continuance cannot cure the harm imposed by Defendants' actions here. Claim construction was nearly complete by the time of Defendants' late disclosure. Claim construction briefing and the *Markman* hearing were complete three weeks before Defendants' motion was filed. At least for those reasons, "a continuance is not available to cure [Eolas's] prejudice." *CardSoft*, No. 2:08-cv-98-RSP, slip op. 2.

### V. CONCLUSION

For the reasons discussed above, Eolas respectfully requests that the Court deny Defendants' motion.

| | |
|---|---|
| Dated: December 6, 2016. | **MCKOOL SMITH, P.C.**<br><br>*/s/ Kevin L. Burgess*<br>Kevin L. Burgess<br>Texas State Bar No. 24006927<br>kburgess@McKoolSmith.com<br>John B. Campbell<br>Texas State Bar No. 24036314<br>jcampbell@McKoolSmith.com<br>James E. Quigley<br>Texas State Bar No. 24075810<br>jquigley@McKoolSmith.com<br>Jennifer Van Dusen<br>Texas State Bar No. 24087087<br>jvandusen@McKoolSmith.com<br>**MCKOOL SMITH, P.C.**<br>300 W. 6th Street Suite 1700<br>Austin, TX 78701<br>Telephone: (512) 692-8700<br>Telecopier: (512) 692-8744<br><br>Mike McKool<br>Texas State Bar No. 13732100<br>mmckool@McKoolSmith.com<br>**MCKOOL SMITH, P.C.**<br>300 Crescent Court, Suite 1500<br>Dallas, TX 75201<br>Telephone: (214) 978-4000<br>Telecopier: (214) 978-4044<br><br>Jennifer L. Truelove<br>Texas State Bar No. 24012906<br>jtruelove@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>104 East Houston Street<br>Suite 300<br>Marshall, TX 75670<br>Telephone: (903) 923-9002<br>Telecopier: (903) 923-9099<br><br>**ATTORNEYS FOR PLAINTIFF EOLAS TECHNOLOGIES INCORPORATED** |

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on December 6, 2016.

*/s/ James E. Quigley*
James E. Quigley

1272629