# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **EOLAS TECHNOLOGIES INCORPORATED,** | |
|     **Plaintiff,** | Civil Action No. 6:15-cv-01038-RWS |
|     v. | LEAD CASE |
| **AMAZON.COM, INC.,** | JURY TRIAL DEMANDED |
|     **Defendant.** | |
| **EOLAS TECHNOLOGIES INCORPORATED,** | |
|     **Plaintiff**, | Civil Action No. 6:15-cv-01039-RWS |
|     v. | CONSOLIDATED CASE |
| **GOOGLE INC.,** | JURY TRIAL DEMANDED |
|     **Defendant**. | |
| **EOLAS TECHNOLOGIES INCORPORATED,** | |
|     **Plaintiff**, | Civil Action No. 6:15-cv-01040-RWS |
|     v. | CONSOLIDATED CASE |
| **WAL-MART STORES, INC., AND WAL-MART STORES TEXAS, LLC,** | JURY TRIAL DEMANDED |
|     **Defendants**. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO SUPPLEMENT THEIR PATENT RULE 3-3 INVALIDITY CONTENTIONS AND RULE 3-4(b) DOCUMENT PRODUCTION**

Eolas opposes Defendants' Motion for Leave because it simply does not want the art that is the subject of Defendants' motion to be in the case. Nowhere does Eolas point to any actual prejudice suffered as a result of Defendants' supplementation. Opp., 8-10. Eolas points to no discovery it did not or could not still take. It raises no claim construction issue it was unable to raise. The reality is that the only "prejudice" to Eolas in having this art in the case is an increased likelihood that one of its patents will, again, be held invalid. This lack of prejudice, in conjunction with Defendants' substantively unrebutted showing of diligence and importance of the supplementation, demonstrates Defendants' motion should be granted.

## I.     DEFENDANTS WERE DILIGENT IN DISCOVERING LBNL AND NPSNET

The threshold required to meet the diligence factor to support a showing of good cause for amending or supplementing invalidity contentions is behavior "suggestive of diligence." *Motio, Inc. v. Avnet, Inc.*, No. 4:12-CV-647, 2015 WL 5952530, at *3 (E.D. Tex. Oct. 13, 2015). Defendants demonstrated their diligence in their Motion. Mot., 6-7. Eolas does not rebut the facts set forth in Defendants' Motion, but instead raises a series of meritless arguments.

For example, Eolas constructs a hypothetical search that supposedly could have led to the LBNL Whole Frog Project references. Opp., 3-4. Though the search Eolas proposes might have led to William Johnston's resume (Opp. Ex. 10) and listing of other papers (Opp. Ex. 11), neither of these would have provided Defendants with information sufficient to conclude that the Whole Frog Project was related to the earlier brain scan work that Defendants had previously included in their invalidity contentions—information that was necessary before Defendants could present the LBNL Whole Frog Project as an additional exemplary application of the LBNL distributed computing systems of the early 1990s previously disclosed in their invalidity contentions. First, Mr. Johnston's resume's entry on the virtual frog dissection web site consists of a short paragraph that provides little detail about the project other than a link to the LBNL Whole Frog Project's website (Opp. Ex. 10, 2), which in turn shows it was last modified in 2010 and includes links to papers dated 1994 and 1995, post-dating the priority date of the '507 patent. Second, the

link to the 1994 reference in Mr. Johnston's listing of other papers is broken. *See* Corredor Decl. ¶ 2; Ex. 1. Nowhere does either of these suggest that the web-based application disclosed in the source references was related to Johnston's work in distributed systems for imaging biological structures—precisely what the named inventors of the '507 patent claim to have invented. *E.g.*, Dkt. 1 ¶¶ 3-4. It was only when—as part of Defendants' continuing and diligent investigation—defense counsel met with Mr. Johnston and Mr. Robertson on September 12, 2016 that Defendants for the first time learned that: (1) Mr. Johnston and Mr. Robertson's work into the LBNL Whole Frog Project was related to the same authors' earlier work at LBNL (starting in 1991) into an application of distributed computing to brain scan images (disclosed in the Johnston publication originally charted in Defendants' invalidity contentions); and (2) the LBNL Whole Frog Project and the earlier work had been funded under a single grant from the Department of Energy. Mot., 7.

These facts could not be further from the facts involved in *GeoTag, Inc. v. Frontier Communications Corp.*, No. 2:10-CV-265, 2013 WL 2637141 (E.D. Tex. June 12, 2013), cited by Eolas. Opp., 7. There, the defendants sought to add five prior art systems related to America On Line ("AOL"), which they had discovered after one of the defendants' counsel found an AOL User Guide in his possession. *Id.* at *1. At least two of the systems were disclosed in the patent-in-suit itself, and the systems were "not obscure internet references but include[d] what might well be described as the largest and most popular internet systems of the 1980s and 1990s." *Id.* Here, by contrast, LBNL and its Whole Frog Project (though popular with some junior high biology teachers) were certainly not the "largest and most popular internet systems" of their time. So, given the difficulty of identifying the true connection between the LBNL Whole Frog Project and the earlier work by Johnston and others, the conduct of Defendants here, unlike the conduct of defendants in *GeoTag*, actually exemplifies just the sort of the diligence required to justify granting them leave to supplement their invalidity contentions.

And while Eolas seeks to analogize the discovery of additional NPSNET-related materials to the facts of *Invensys Sys., Inc. v. Emerson Elec. Co.*, No. 6:12-cv-799 (E.D. Tex.

Dec. 3, 2014) as justifying denial of Defendants' motion, the actual facts again show otherwise. Here, unlike in *Invensys*, it was Google's outside counsel in a different case that had the materials (as opposed to Google itself). *Id.* Also, in *Invensys*, the defendant's employee who discovered the prior art materials in his file cabinet "admitted that his initial search . . . was not thorough." *Id.* at 5. There is no similar admission here, and the undisputed facts by Defendants show just the opposite. Mot., 6-7.

## II. DEFENDANTS DEMONSTRATED THE IMPORTANCE OF THE SUPPLEMENTAL DISCLOSURE RELATED TO LBNL AND NPSNET

Contrary to Eolas' assertion (Opp., 7-8), Defendants detailed the importance of both the LBNL and NPSNET prior art systems in Defendants' Motion. Mot., 3-4, 9-10 (citing Powell Decl. ¶¶ 5-6).[1] Defendants not only outlined the substantive importance of this prior art, but also the fact that much of the supplemental production was source code (Mot., 3 n.2.), which Eolas knows full well can be critical to prove up prior art systems, as it was in invalidating the '507 parent patents in the prior trial. *See, e.g.*, *Eolas Techs. Inc. v. Adobe Sys. Inc.*, No. 6:09-CV-446, Dkt. 1414 at 5 (E.D. Tex. July 19, 2012). And the importance of LBNL and NPSNET is heightened by Defendants' electing to include these two systems in their narrowed selection of 18 prior art references pursuant to General Order 13-20. Dkt. 206-4.[2]

Nevertheless, Eolas seems to contend that Defendants fail to meet their burden because they failed to show how the new references and documents are "more important" than each of

---

[1] Though Eolas asserts that Defendants did not show "that any of these individuals had ever worked together" (Opp., 9), the author list or opening pages of all NPSNET references reflect a common link: principal investigator Michael Zyda, who led all NPSNET-related work at NPS. Mot., 3. Eolas' argument that the supplemental NPSNET and LBNL references are not "associated" references (Opp., 9-10) ignores this fact, as well as the fact that the LBNL Whole Frog Project arose from Johnston's prior LBNL work related to distributed computing.

[2] Defendants' substantive discussion in their Motion of what the NPSNET and LBNL prior art systems consist of and what the supplemental disclosures add to each also distinguishes this case from *Innovative Display Technologies LLC v. Acer Inc.*, No. 2:13-cv-522, 2014 WL 2796555 (E.D. Tex. June 19, 2014), cited by Eolas. In that case, unlike here, defendants did not even explain the subject matter of the new prior art, just concluding that such prior art was "critically important" because it provided a "unique ground" for anticipation and obviousness. *Id.* at *2.

3

the previously cited references and documents. Opp., 8. Eolas cites no case that requires such a showing, nor would such a standard make sense or even be practicable. *Blue Calypso, Inc. v. Groupon, Inc.*, No. 6:12-cv-486 (E.D. Tex. Aug. 6, 2015), cited by Eolas, certainly does not say that. And *Blue Calypso* is clearly distinguishable on the facts. Unlike here, the defendants in *Blue Calypso* had not even included the reference that they sought to supplement in their narrowed election of art. *Id.*, 2-3. Nor did the defendants even try to show any difference between the patent they sought to add and related art that was in the original contentions. *Id.* Here, Defendants' showed precisely that in their Motion. Mot., 6-7.

## III.   EOLAS STILL FAILS TO POINT TO ANY ACTUAL PREJUDICE

Instead of demonstrating any prejudice, Eolas attempts to cast Defendants in a bad light by casting their invalidity contentions as "litigation by ambush" because of the number of references disclosed in this case. But the volume of relevant references simply speaks to the broad nature of the technology that Eolas claims to own in this case. Indeed, the face of the '507 patent itself lists thousands of prior art references. The time spent by Eolas analyzing those references (most of which Eolas was familiar with from its prior case against Amazon, Google, and others) is not prejudice resulting from Defendants' proposed supplement; were it so, a defendant's supplementation of prior art after the invalidity contentions deadline would always amount to prejudice.

The supposed prejudice resulting from Defendants' alleged "refusal" to provide discovery on their interactions with prior artists[3] (Opp., 10) is also unsupported. Indeed, what discovery did Eolas want or need that it cannot still take now? What requested facts or information did Defendants supposedly hide that Eolas does not have or cannot get? Eolas does not say. Moreover, this Court found in denying Defendants' motion to strike that "the trial is not scheduled to start until September 25, 2017, and that contentions should become more detailed

---

[3]  In particular, Eolas' reliance on 30(b)(6) deposition topics to Defendants fails, as the subject of Defendants' interactions with prior artists encroaches on work product and is not a proper subject area for corporate witnesses.

with the conclusion of fact discovery and claim construction.  Given these circumstances, Defendants have not demonstrated prejudice sufficient to warrant striking Plaintiff's [infringement contentions]."  Dkt. 205, 4-5 (citation omitted).  At a minimum, Defendants' provision of additional detail and documents in its supplemental contentions—related to references already disclosed—does not demonstrate sufficient prejudice.[4]

Eolas' assertion that the progress of the claim construction process shows prejudice also fails.  There was well over a month left between Defendants' service of the supplemental materials and the November 2 *Markman* hearing.  This is not nearly as progressed as in Eolas' cited cases.  *See Blue Calypso*, No. 6:12-cv-486, at 3 (leave to supplement sought on eve of expert reports); *CardSoft, Inc. v. VeriFone Sys., Inc.*, No. 2:08-CV-98, at 2-3 (E.D. Tex. May 28, 2012) (supplement made three days before *Markman* hearing).  More importantly, nowhere does Eolas explain how its claim construction positions would have changed based on the supplemental disclosure.  Such protestations of prejudice ring particularly hollow given Eolas' uniform position that terms either did not need to be construed or could be construed as they were in the prior case, demonstrating that it suffered no prejudice.  *Alt v. Medtronic, Inc.*, No. 2:04-cv-370, 2006 WL 278868, at *5 (E.D. Tex. Feb. 1, 2006) (noting that "the addition of prior art references post *Markman*" is not very impactful and rejecting "*per se* rule that invalidity contentions cannot be amended after *Markman*").

## IV.   CONCLUSION

Given Eolas' complete failure to show any prejudice, and in light of Defendants' unrebutted showing of diligence and importance of the supplemental prior art, Defendants respectfully request that the Court grant their Motion.

---

[4] Defendants' supplementation to provide further disclosures of art related to its original invalidity contentions stands in stark contrast to Eolas' refusal to provide detail of its infringement contentions.  Although Eolas initially committed to supplement its infringement contentions under P.L.R. 3-1(g) after production of source code, Eolas later refused to do so.  *See* Ex. 2.

Date:  December 13, 2016          Respectfully submitted,

By: */s/ Richard G. Frenkel (w/ permission)*
Jennifer H. Doan
Texas Bar No. 08809050
Joshua R. Thane
Texas Bar No. 24060713
J. Randy Roeser
Texas Bar No. 24089377
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Tel:  903.255.1000
Fax:  903.255.0800
Email: jdoan@haltomdoan.com
Email: jthane@haltomdoan.com
Email: rroeser@haltomdoan.com

Douglas E. Lumish
California State Bar No. 183863
Email: doug.lumish@lw.com
Richard G. Frenkel
California State Bar No. 204133
Email:  rick.frenkel@lw.com
Jeffrey G. Homrig
California State Bar No. 215890
Email: jeff.homrig@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Tel: 650.328.4600
Fax: 650.463.2600

Joseph H. Lee
California State Bar No. 248046
Email:  joseph.lee@lw.com
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel:  714.540.1235
Fax:  714.755.8290

Grant Kinsel
California State Bar No. 172407
Email: gkinsel@perkinscoie.com
PERKINS COIE, LLP

6

1201 3rd Street, 39th Floor
Seattle, WA 98112
Tel: 206.395.3615

ATTORNEYS FOR DEFENDANT
AMAZON.COM, INC.

By: */s/ Michael D. Powell*
Charles K. Verhoeven
CA Bar No. 170151
charlesverhoeven@quinnemanuel.com
David A. Perlson
CA Bar No. 209502
davidperlson@quinnemanuel.com
derektang@quinnemanuel.com
Michael D. Powell
CA Bar No. 202850
mikepowell@quinnemanuel.com
Lindsay M. Cooper
CA Bar No. 287125
lindsaycooper@quinnemanuel.com
Felipe Corredor
CA Bar No. 295692
felipecorredor@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: 415-875-6600
Facsimile: 415-875-6700

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
**POTTER MINTON**
110 N. College Avenue, Suite 500
Tyler, Texas 75702
Telephone: 903-597-8311
Facsimile: 903-593-0846

ATTORNEYS FOR DEFENDANT
Google Inc.

By: */s/ Bijal V. Vakil (w/ permission)*
Bijal V. Vakil
CA State Bar No.: 192878

(Admitted to practice in E.D. Texas)
Shamita D. Etienne-Cummings
CA State Bar No.:  202090
(Admitted to practice in E.D. Texas)
Eric E. Lancaster
CA State Bar No.:  244449
(Admitted to practice in E.D. Texas)
Thomas C. Flynn
CA State Bar No.:  257945
(Admitted to practice in E.D. Texas)
Allen W. Wang
CA State Bar No.:  278953
(Admitted to practice in E.D. Texas)
WHITE & CASE LLP
3000 El Camino Real
Five Palo Alto Square 9th Floor
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
Email: bvakil@whitecase.com
Email: setienne@whitecase.com
Email: allen.wang@whitecase.com
Email: tflynn@whitecase.com

J. Thad Heartfield
State Bar No. 09346800
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, TX  77706
Telephone:  (409) 866-3318
Facsimile:    (409) 866-5789
Email: thad@heartfieldlawfirm.com

Attorneys for Defendants
Wal-Mart Stores, Inc. and
Wal-Mart Stores Texas, LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Pursuant to Local Rule CV-5(c), all counsel of record were served with a true and correct copy of the foregoing document by electronic mail on December 13, 2016.

*/s/  Michael D. Powell*
Michael D. Powell