FILED: **2/23/17**
U.S. DISTRICT COURT
EASTERN DISTRICT COURT
DAVID A. O'TOOLE, CLERK

NOTE:  This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————

**In re:  GOOGLE INC.,**
*Petitioner*

———————————

2017-107

———————————

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in 6:15-cv-01039-RWS, Judge Robert Schroeder III.

———————————

**ON PETITION**

———————————

Before Prost, *Chief Judge,* LOURIE and LINN, *Circuit Judges.*

Order for the court filed by *Chief Judge* PROST.  Dissent filed by *Circuit Judge* LINN.

PROST, *Chief Judge.*

## O R D E R

Google Inc. seeks a writ of mandamus directing the United States District Court for the Eastern District of Texas to vacate its order denying Google's motion to transfer venue and order the district court to transfer the case to the United States District Court for the Northern District of California. We grant Google its requested relief.

2                                                    IN RE: GOOGLE INC.

I

This petition for writ of mandamus arises out of a pa-
tent infringement suit Eolas Technologies, Inc. brought
against Google and various other defendants in the East-
ern District of Texas involving U.S. Patent No. 9,195,507
("'507 patent"). These parties have litigated over similar
technology before. In particular, Eolas filed several suits
against Google in the Eastern District of Texas over
patents related to the '507 patent. Additionally, Google
initiated a declaratory judgment action in the Northern
District of California concerning other related Eolas
patents. The district judge who presided over the previous
Eastern District of Texas cases has since retired, and the
parties agreed to a stipulated dismissal of the declaratory
judgment action in the Northern District of California.

Regarding the present dispute, on the day it filed its
patent infringement suit against Google, Eolas filed two
related suits in the same district, accusing various
Walmart and Amazon entities of infringement. App'x 1–
21, 30–35. The Walmart and Amazon entities, like Google,
sought transfer to the Northern District of California
under 28 U.S.C. § 1404(a) for convenience. App'x 7, 35.
With these motions, all defendants involved in the related
Eolas suits sought to transfer to the Northern District of
California. App'x 1–35. Although the parties filed all three
motions within a week of one another, the district court
denied Walmart's motion more than one month before
deciding Google's, App'x 49, 1568, and Amazon's several
weeks after, App'x 1583. Notably, a principle basis for
denying Walmart's motion was the existence of co-
pending litigation, even though this co-pending litigation
was also subject to then-pending motions to transfer to
the Northern District of California. App'x 1564–65.

Action on Google's motion came next. Weighing the
relevant transfer factors, the district court concluded that
the Northern District of California was not clearly a more

convenient forum than the Eastern District of Texas. App'x 49.

## II

A writ of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power. *In re Calmar, Inc.*, 854 F.2d 461, 464 (Fed. Cir. 1988). Applying the relevant regional circuit law that governs this dispute, *see Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003), we may grant mandamus relief to correct a patently erroneous denial of transfer in appropriate circumstances, *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

Under Fifth Circuit law, the district court must balance four private-interest factors and four public-interest factors to determine whether to transfer the case. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private-interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* (citation omitted). The public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id.* (citation omitted).

By denying Google's motion, the district court committed clear error for several reasons. First, when balancing the relevant transfer considerations, the district court erred by resolving the other practical considerations factor in Eolas's favor. Second, the court did not properly consider the locus of Google's personnel, operations, and

evidence in the Northern District of California. We take each of these points of error in turn.

First, regarding the other practical considerations factor, the district court erred by resting on the two co-pending cases as the predominate reason for tipping the balance in Eolas's favor. App'x 45–47. Having previously denied Walmart's transfer motion principally on the basis of Google and Amazon's pending suits, the district court then proceeded to deny Google's transfer motion in large part because of Walmart and Amazon's pending litigation. *See* App'x 45–47, 49 (relying only on judicial economy to justify denial). Based on the district court's rationale, therefore, the mere co-pendency of related suits in a particular district would automatically tip the balance in non-movant's favor regardless of the existence of co-pending transfer motions and their underlying merits.[1] This cannot be correct. *See, e.g., In re Toyota Motor Corp.*, 747 F.3d 1338, 1340–41 (Fed. Cir. 2014) (ordering transfer despite the presence of co-pending litigation in the transferor district). If it were, at best, the outcome of the transfer analysis could simply depend on the order in which the district court rules on each of the respective pending motions.[2] At worst, it means that no matter what the order decided, all motions would be doomed to failure.

---

[1]   This is precisely what the district court did here. Although the dissent is correct that the district court considered all factors, the district court found one factor weighed slightly in favor of transfer and the remaining six neutral. Having no basis other than judicial economy for denying transfer, the district court still ruled in Eolas's favor.

[2]   For example, by ruling on a relatively strong motion first, judicial economy may favor transferring all co-pending suits. Conversely, by ruling on a weaker motion first, judicial economy may disfavor the transfer.

IN RE: GOOGLE INC.                                    5

That is not to say that judicial economy can never dominate the court's transfer analysis. As we have previously observed, it can play a significant role. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010). *Vistaprint* is distinguishable, however, because the remaining factors that were present there are not present here. *See, e.g.*, *id*. at 1346–47 (concluding that no defendant party was actually located in the transferee venue and the presence of the witnesses in that location was not "overwhelming"). Here, in contrast, Google has a strong presence in the transferee district. App'x 1368–69. The district court committed clear error by putting aside these considerations while allowing the co-pending litigation to dominate the analysis under these particular facts. *See Volkswagen II*, 545 F.3d at 314–15 (5th Cir. 2008) (cautioning that the plaintiff's choice of venue cannot be an inordinate factor in the court's analysis).

In addition to the co-pending cases, the district court concluded that it would benefit from the "institutional knowledge" gained through previous, related litigation in the Eastern District of Texas. App'x 45–47. But the presiding judge in those cases has since retired. The district court's basis for any purported gains to its institutional knowledge, therefore, is untenable. Notably, Eolas itself does not defend the district court's finding on this point. *See* Response Br. 31; *see also* Reply Br. 13–14. By relying on these cases, the district court committed clear error.

Second, the district court identified the "locations and sources of proof" factor as the only one weighing in Google's favor. *See* App'x 49 (finding the remaining six factors neutral). And it did so by only a "slight" margin. *Id*. Yet the evidence overwhelmingly supports a conclusion that this factor weighs strongly in Google's favor. For example, the vast majority of Google's employees—in particular those responsible for projects relating to the accused products—work and reside in the Northern District of California. *See, e.g.*, App'x 1368–69 (evidencing

the high concentration of relevant employees located in this district). In contrast, Eolas has a *single* employee currently residing in the Eastern District of Texas. App'x 817 ¶ 3. When fairly weighed against one another, this factor tips significantly in Google's favor. In addition to overemphasizing the extent to which Eolas has a presence in Texas, the district court did not properly accord this factor its appropriate weight under the law. *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) ("The convenience of the witnesses is probably the single most important factor in a transfer analysis." (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)). Had the district court properly weighed these considerations, it should have identified the Northern District of California as the clearly more convenient forum.[3]

---

[3]    Based on our conclusion here, we are circumspect of the district court's finding of neutrality for the "localized interests" factor as well. *See* App'x 49 (finding this factor neutral because "Google has some ties to the Northern District of California and Eolas has some ties to the Eastern District of Texas") (internal citations omitted). Given the relative strength of Google's ties to the Northern District of California juxtaposed with Eolas's ties to the Eastern District of Texas, it would appear that this factor weighs in Google's favor as well. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010), as amended (Jan. 13, 2011) ("While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, [the local interest] factor should be weighed in that venue's favor.") (citation omitted).

IN RE: GOOGLE INC.                                        7

Of course, we recognize that the mandamus standard does not give us license to substitute our own judgment for that of a district court. To the contrary, we must accord it substantial deference under this exacting standard. *See In re Barnes & Noble, Inc.*, 743 F.3d 1381, 1383 (Fed. Cir. 2014). Even providing the district court the substantial deference that it is due, we observe that it is improper for a district court to weigh the judicial economy factor in a plaintiff's favor solely based on the existence of multiple co-pending suits, while the remaining defendants have similar transfer motions pending seeking transfer to a common transferee district. This is particularly important here where the district court concluded that only one factor slightly favored transfer and that the remaining factors were neutral. To hold otherwise, we would be effectively inoculating a plaintiff against convenience transfer under § 1404(a) simply because it filed related suits against multiple defendants in the transferor district. This is not the law under the Fifth Circuit.

For the foregoing reasons, it was a clear abuse of discretion for the district court to conclude that the Northern District of California is not clearly the more convenient forum. We therefore grant Google's requested relief and instruct the district court to transfer the case to the Northern District of California.

Accordingly,

IT IS ORDERED THAT:

The petition is granted.

FOR THE COURT

/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court

# United States Court of Appeals for the Federal Circuit

---

**In re: GOOGLE INC.,**
*Petitioner*

---

2017-107

---

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in 6:15-cv-01039-RWS, Judge Robert Schroeder III.

---

LINN, *Circuit Judge*, dissenting.

Because the district court fully considered all of the relevant factors in assessing the merits of Google's motion and because it is not our place on mandamus to reweigh those factors anew, I respectfully dissent.

Eolas and Google are no strangers. Eolas previously sued Google in the Eastern District of Texas over patents related to U.S. Patent No. 9,195,507 ("the '507 patent"). Google's motion to transfer that case was denied, as was its petition for a writ of mandamus challenging that denial. *In re Google*, 412 F. App'x 295 (Fed. Cir. 2011). In 2013, Google also filed a declaratory judgment action in the Northern District of California concerning Eolas patents related to the '507 patent, which resulted in a stipulated dismissal after the court granted Eolas's motion to dismiss its infringement counterclaims.

On November 24, 2015, Eolas filed the instant case against Google in the Eastern District of Texas, alleging

infringement of the '507 patent.  On the same day, Eolas filed two separate actions in the Eastern District of Texas against Walmart Stores, Inc. *et al.*, and Amazon.com, Inc. also alleging infringement of the '507 patent.  All of the defendants moved to transfer their respective cases to the Northern District of California.  The defendants did not argue that their respective cases were filed in the "wrong" forum under 28 U.S.C. § 1406(a); they instead filed motion under 28 U.S.C. § 1404(a), which does not presuppose that the transferor forum is "wrong," but provides for transfer "[f]or the convenience of the parties and witnesses, in the interest of justice."  *See Atl. Marine Const. v. U.S. Dist. Ct. for the W. Dist. Of Texas*, 134 S. Ct. 568, 579 (2013) (explaining distinction).

In separate opinions decided on different days, the district court denied all three motions.  In doing so, the district court analyzed the facts and circumstances of each individual case under the relevant factors and concluded that none of the requests for transfer had merit. As to Google, the district court found that the relative ease of access to sources of proof "slightly" favored transfer.  However, the court found that the judicial economy that would result from keeping this case together with the co-pending cases against Walmart and Amazon weighed against transfer.  The district court found the other factors to be neutral.  On balance, the court found that Google had not met its burden of showing that the Northern District of California was clearly more convenient.

Applying Fifth Circuit law in cases from district courts in that circuit, this court has granted writs of mandamus to correct denials of transfer that were clear abuses of discretion under governing legal standards.  *See In re Microsoft Corp.,* 630 F.3d 1361 (Fed.Cir.2011)*; In re Nintendo, Ltd.,* 589 F.3d 1194 (Fed.Cir.2009); *In re Genentech Inc.,* 566 F.3d 1338 (Fed.Cir.2009); *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed.Cir.2008); *accord Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490

U.S. 296, 309 (1989). But "[t]hat standard is an exacting one, requiring the petitioner to establish that the district court's decision amounted to a failure to meaningfully consider the merits of the transfer motion." *In re Barnes & Noble, Inc.*, 743 F.3d 1381, 1383 (Fed. Cir. 2014).

The majority holds that the district court erred in resolving the "other practical considerations" factor in Eolas's favor. The majority suggests that the seriatim denial of the separately filed motions for transfer enabled the district court to deny the later decided motions based in part on the denial of the earlier decided motions. As stated by the majority, this rationale, if sustained, would mean that "the mere co-pendency of related suits in a particular district would automatically tip the balance in non-movant's favor regardless of the existence of co-pending transfer motions and their underlying merits." Majority opinion at 4. But the district court's decision was not based merely on the co-pendency of related suits or on the adoption of any automatic rule favoring the non-movant in such suits. Here, the district court fully evaluated the merits of each transfer motion and separately considered all of the relevant factors, not merely the other practical considerations factor, in concluding that transfer was not warranted for any of the defendants.

While the majority is quick to criticize the district court for adopting what the majority considers an automatic rule that would tip the balance in the non-movant's favor whenever multiple defendants move for transfer, the majority's holding suggests an equally problematic rule that would automatically discount the other practical considerations factor in these kinds of cases. The bottom line is that there is no place for any sort of automatic rule favoring or disfavoring transfer of cases involving multiple defendants. Instead, the merits of any motions filed must be evaluated individually and collectively, including the other practical considerations factor as it relates to the overall facts and circumstances presented. That is

precisely what the district court did in this case.  *See In re Canrig Drilling Tech., Ltd.*, 2015 WL 10936672, at *1 (Fed. Cir. Aug. 7, 2015) (finding no abuse of discretion in denial of transfer and denying mandamus when there were three complaints filed on the same day alleged infringement of the same patent).  It is also apparent that on this record, even if all three of the motions to transfer were decided simultaneously, the result would have been the same.

Google also argues and the majority holds that the evidence "overwhelmingly supports a conclusion that [the "location and sources of proof" factor] weighs strongly in Google's favor and that the district court committed clear error in weighing this factor only slightly in Google's favor.  Majority opinion at 5–6.  The majority supports its conclusion by noting that the vast majority of Google employees reside in the Northern District of California, while Eolas has only one employee in the Eastern District of Texas.  But the district court considered that evidence along with other evidence showing that certain non-party witnesses expressly stated that they were willing to attend trial in the Eastern District of Texas and that some potential evidence and witnesses were located in the Eastern District of Texas.

As even the majority has recognized, "the mandamus standard does not give us license to substitute our own judgment for that of a district court.  To the contrary, we must accord it substantial deference under this exacting standard."  Majority opinion at 7.  In this case, the majority would give the convenience factors more consideration and would discount potential judicial economy from co-pending litigations.  The majority does not dispute, however, that the district court considered all of the relevant factors.  At best, the majority believes the district court should have weighed these factors differently.  Such reweighing, however, is not the task before the court on mandamus review.

IN RE: GOOGLE INC.                                        5

    In my view, Google has not shown that the district court's ruling was a clear abuse of its considerable discretion or that the ruling produced the patently erroneous result necessary to warrant issuance of a writ of mandamus.  For these reasons, I respectfully dissent.