KELLY TIDWELL (pro hac vice)
kbt@texarkanalaw.com
GEOFFREY CULBERTSON (pro hac vice)
gpc@texarkanalaw.com
PATTON TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard
Texarkana, TX 75503
Telephone: (903) 792 7080
Facsimile: (903) 792 8233

Counsel for Plaintiff
EOLAS TECHNOLOGIES INCORPORATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EOLAS TECHNOLOGIES INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. 3:17-cv-03022-JST<br><br>**EOLAS'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISQUALIFY LATHAM & WATKINS**<br><br>Submitted Per Order of 8/8/17, DE #378<br><br>Hearing Not Yet Scheduled |

# TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION | 1 |
| I. California Law Controls the Motion to Disqualify Latham | 1 |
| II. California's Standards for Disqualification | 2 |
| III. California's Standard for Waiver | 4 |
| IV. Latham's Prior Eolas Relationships and Representation | 4 |
| V. The Present Action | 5 |
| VI. Latham is Disqualified Whether Fifth Circuit or California Law is Applied | 6 |
| VII. Eolas's Motion is Timely Under Fifth Circuit and California | 9 |
| CONCLUSION | 10 |

**INTRODUCTION**

Eolas Technologies, Incorporated ("Eolas") submits this supplemental brief on the application of California law to its pending Motion to Disqualify Latham & Watkins ("Latham") as Counsel for Amazon.com, Inc. ("Amazon"). DE# 253. Following transfer, California law should apply to the motion. While California's disqualification law is substantially similar to that briefed in the Texas court (under which Eolas prevails), there are differences that further strengthen Eolas's motion.

Disqualification in the Fifth Circuit is governed by federal law. *FDIC v. U.S. Fir Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995); (Mot., p.13-14).[1] Federal Courts in California apply the state's law to disqualification motions. *See infra*, §I. Like the Fifth Circuit, California courts strictly enforce the duty of confidentiality owed former clients, prohibiting adverse representations where: 1) the client disclosed material confidences; or 2) the former and current representations are "substantially related." California's test requires disqualification if the client "normally" would have disclosed material confidences during the prior representation. Compared to the Fifth Circuit, California's approach creates a relaxed standard for demonstrating substantiality. Eolas's evidence easily satisfies either standard.

Desperate to avoid the disqualification required by Latham's conflict, Amazon argues waiver. Waiver standards are demanding, especially in California. Amazon must demonstrate both an extreme and knowing delay <u>and</u> extreme prejudice before Eolas must justify the timing of its motion. Here there was no delay; Eolas acted promptly upon discovering Latham's role. And Amazon cannot show extreme prejudice when there has not even been a trial date set. Amazon's waiver claim fails under California and Fifth Circuit Law.

**I. California Law Controls the Motion to Disqualify Latham**

"[A] federal court in California must apply California law in a disqualification motion." *Advanced Messaging Techs., Inc. v. EasyLink Servs., Int'l Corp.*, 913 F.Supp.2d 900, 906 (C.D.

---

[1] Eolas's citation and references to the parties' prior briefing, *i.e.* DE# 253 ("Mot."), DE# 291 ("Resp."), DE# 314 ("Reply"). DE# 320 ("S-Reply"), includes and incorporates the record evidence identified in the cited portion of the relevant document.

Cal. 2012) (citing *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000)); *Loop AI Labs, Inc. v. Gatti*, 2016 WL 344874 *1 & n.1 (N.D. Cal. Jan. 28, 2016) (rejecting that New York law governed motion to disqualify because the "Northern District of California has adopted the California Rules of Professional Conduct at Civ. L.R. 11–4, and attorneys practicing in this court are required to adhere to those standards, as articulated in the rules and any court decisions interpreting them.").

## II.   California's Standards for Disqualification

Attorneys practicing in the Northern District must "comply with the standards of professional conduct required of members of the State Bar of California ... [and] with the Local Rules of this Court." Civ. L-R 11-4(a)(1)&(2).  In addition to the Rules of Professional Conduct of the State Bar of California ("California Rules"), California courts look to the ABA Model Code of Professional Responsibility ("Model Code") and the Restatement in resolving issues not fully addressed in the California Rules.  *Loop AI Labs Inc.*, 2016 WL 344874 at *1 (citing *Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435, 439-40 & n.6 (9th Cir. 1983); *Dieter v. Regents of Univ. of California*, 963 F. Supp. 908, 910 (E.D. Cal. 1997)).

Rule 3-310 (E) of the California Rules provides:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

The rule protects the confidentiality of the attorney-client relationship.  *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal.4th 1135, 1146 (Cal. 1999).  Lawyers have an "unquestionable duty to [their] former clients to ensure the permanent confidentiality of matters disclosed in the course of any prior representation." *Openwave Sys., Inc. v. 724 Solutions (US) Inc.*, 2010 WL 1687825 *1 (N.D. Cal. April 22, 2010).

Where a former client has disclosed confidential information material to the current representation "disqualification follows as a matter of course" … without "balancing … equities between former and current clients … [t]he rights and interests of the former client will prevail." *H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal.App.3d 1445, 1452 (Cal. Ct. App. 1991).

Case No. 3:17-cv-03022-JST                    Page 2        EOLAS'S SUPPLEMENTAL BRIEF IN SUPPORT OF
                                                                           MOTION TO DISQUALIFY LATHAM & WATKINS

But the movant need not prove actual possession of confidential information to disqualify the former attorney; it is enough to show a "substantial relationship" between the former and current representation. Ex, 1 *Cuevas v. Joint Benefit Trust*, No. 13-00045-JST, DE# 43 at p. 3, (N.D. Cal. Aug. 29, 2013) (quoting *H.F. Ahmanson & Co*, 229 Cal.App.3d at 1452.). "Successive representations are substantially related where the facts support a 'rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues.'" *Cuevas* at p. 3-4, (quoting *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal.App.4th 698, 713 (Cal. Ct. App. 2003)).[2]  More plainly, a substantial relationship exists when the subject matters of the prior and current representations are linked in some rational manner. *Knight v. Ferguson,* 149 Cal.App.4th 1207, 1213 (Cal. Ct. App. 2007); *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980) (Substantiality present if the factual contexts are "similar or related.").

California courts apply the test in a practical manner. *Openwave Sys., Inc.*, 2010 WL 1687825 *2.  Where it appears that "by virtue of the nature of the former representation or the relationship … confidential information material to the current dispute would <u>normally</u> have been imparted to the attorney," California courts <u>irrebuttably presume</u> access to confidential information and the attorney's disqualification is <u>mandatory</u>.  *Id*. (emphasis added); *Cuevas* at p. 4;  *H.F. Ahmanson & Co.*, 229 Cal.App.3d at 1454; *Advanced Messaging Techs., Inc. v. EasyLinkServs. Int'l. Corp.*, 913 F.Supp.2d 900, 911 (C.D. Cal. 2012) (presumption is not rebuttable). Disqualification extends vicariously to the entire firm. *Cuevas* at p. 4 (citing *Flatt v. Sup. Ct.*, 9 Cal.4th 275, 283 (Cal. 1994)); *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980); *I-Enter. Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, 2005 WL 757389, at *4 (N.D. Cal. Apr. 4, 2005) ("'presumption … extends… disqualification vicariously to the attorney's entire

---

[2] Courts inquire about "the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases." *Cuevas* at p. 4.  But the test is broad and not limited to the strict facts, claims or issues involved. *Knight*, at 1213.

firm …. recogniz[ing] the everyday reality that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information.'").

### III. California's Standard for Waiver

A party must show both extreme and knowing delay in making the motion and extreme resulting prejudice to establish implied waiver of a disqualifying conflict. *Fid. Trust Int'l of Cal. v. Sup. Ct.*, 218 Cal.App.4th 465, 490 (Cal. Ct. App. 2013); (citing *River West, Inc. v. Nickel*, 188 Cal.App.3d 1297, 1308-09 (Cal. Ct. App. 1987); *Western Continental Oper. Co. v. Nat. Gas Corp.*, 212 Cal.App.3d 752, 763-64 (Cal. Ct. App. 1989) ("Delay will not necessarily result in the denial of a disqualification motion; the delay and the ensuing prejudice must be extreme.")). If there's a "prima facie showing of extreme delay and prejudice, the burden then shifts to the moving party to justify the delay." *Fid. Trust Int'l of Cal.*, 218 Cal.App.4th at 490. The exception to automatic disqualification is "narrow." *Id*.

### IV. Latham's Prior Eolas Relationships and Representations

As detailed in its moving papers, Eolas shares considerable history with Latham, dating to 1998 when Latham competed to assert U.S. Patent No. 5,838,906 ("the '906") for Eolas.  During the "beauty contest," Eolas's Dr. Michael Doyle and his attorney, Mark Swords, shared confidential and proprietary technical and business information with, among others, Latham's David Crumbaugh."[3] Latham's lawyers analyzed Eolas, its patents and pending applications, taking particular interest in the '906. Latham and Eolas together developed strategies for asserting the '906 and defending challenges to its prosecution history and validity, identified potential targets, discussed damages and potential recoveries and negotiated a multi-tiered contingency fee agreement. Though Eolas selected different litigation counsel, its 1998 relationship with Latham resulted in the disclosure of confidential and proprietary information about the '906 and Eolas that Latham can now use adversely to its former client.  (Mot., p.4-6 &18); (Reply, p.7-8 n.10 & 11).

The litigation pitch also resulted in Eolas becoming Latham's general corporate client from 2001-2006, a role in which the firm acquired a thorough understanding of Eolas's business,

---

[3] Mr. Crumbaugh remained at Latham until June of 2017. (Resp., Ex. B, ¶3).

including its litigation involving, and settlement and licensing strategies for, the '906. During this time, Latham represented Eolas in two matters that featured the '906 and relate substantially to the current case: 1) a sensitive renegotiation of Eolas's license to the '906 that Latham coordinated with Eolas's litigation counsel in the successful enforcement action against Microsoft; and 2) a defense to challenges to the '906's ownership, validity, enforceability, prosecution history and value in an arbitration proceeding. Latham's lawyers coordinated their representations with and supported Eolas's litigation counsel in asserting the '906 against Microsoft. (Mot., p.6-10); (Reply, p.3-5, n.5). Recognizing the value of the '906, a number of Latham attorneys, and the firm itself, became Eolas shareholders. (Mot., p.4).

Latham's representation touched on everything the company did from 2001-2006. (Mot., p.7). And the '906 was the focus of all of Eolas's activities; it was the company's "past present and future." (Reply, p.4-5). So, it's not surprising that Eolas declined Latham's 2003 request to waive conflicts to represent "software clients" adverse to Eolas in future patent litigation. (Mot., p.7, 11, 19 & n.9); (Reply, p.11). Given Latham's extensive understanding of its technology, patents, litigation and licensing strategies, Eolas was unwilling to waive the conflict. (*Id*.). Latham abruptly terminated the relationship in 2006, with the now apparent intent to represent clients adverse to Eolas. (Mot., p.19).

**V.     The Present Action**

Eolas alleges that Amazon infringes U.S. Patent No. 9,195,507 ("the '507"). DE# 33. The '507 Patent claims priority to the '906. The '906 is the parent to the '507. The patents share the same specification. There is no dispute that Amazon's defenses and counterclaims focus on the '906. Indeed, Amazon devotes nearly 200 paragraphs of its Counter-Claim to allegations of inequitable conduct during prosecution and reexamination of the '906, concluding that "there is an immediate and necessary connection" between the alleged inequitable conduct in procuring the '906 and enforcing the '507. (DE# 215, ¶215). Amazon alleges that: 1) the '507 covers the same invention as the '906; 2) the claims of the '507 "are not patentably distinct" from the '906; and 3) the '507 is unenforceable due to inequitable conduct that occurred during prosecution of the '906.

1  (*Id*. at ¶¶26, 28, 210-211, 214).  In other words, Amazon's defense is predicated on attacking a
2  patent that Latham once competed to assert, later defended and negotiated licenses for, and about
3  which Latham possesses substantial confidential and strategic information.  This is prohibited by
4  both California and Fifth Circuit law.
5        Eolas discovered Latham's adverse representation on Friday January 6, 2017.  (Mot.,
6  p. 23-24).  Eolas's Litigation Counsel notified Latham the next business day, seeking Latham's
7  withdrawal. (*Id*.).  Eolas objected to Latham's further participation while Conflicts Counsel
8  investigated the conflict and sought Latham's voluntary withdrawal. (*Id*.). The parties' resolution
9  efforts ended in impasse on February 10.  (*Id*.).  Eolas timely filed its motion on February 28.
10     **VI.**    **Latham is Disqualified Whether Fifth Circuit or California Law is Applied**
11       Latham suffers an incurable conflict that requires disqualification whether the Court
12 chooses the Fifth Circuit standards briefed to the Texas Court, or the California standards that
13 should apply here. The firm remains infected by the same conflict it identified in 2003.  (Reply,
14 p.11).  But in 2014, Latham failed to seek Eolas's consent to represent Amazon against Eolas.
15 (Reply, p.11); (Resp., Ex. B, ¶¶3-5).  Instead, despite its duty of loyalty and in apparent
16 recognition of its conflict, Latham gave its Eolas stock to an anti-patent organization hostile to
17 Eolas in a failed effort to shed the conflict. (*Id*.)
18       Latham's disqualification is required for at least two other reasons.  First, Latham acquired
19 significant confidential information about Eolas and the '906 patent-family that Latham can use
20 against Eolas here.  California's rule requiring mandatory, firm-wide disqualification where a firm
21 has a former client's confidential information operates identically to the corresponding Fifth
22 Circuit rule.  *Compare H.F. Ahmanson & Co.*, 229 Cal.App.3d at 1452 to *In re Am. Airlines, Inc.*,
23 972 F.2d 605, 615 (5th Cir. 1992) (disqualification required where client points "to specific
24 instances where it revealed relevant confidential information regarding its practices and
25 procedures.").  Second, Latham's prior work involving the '906 substantially relates to its present
26 representation of Amazon.  Eolas's proof meets the substantiality standards of both the Fifth
27
28
    Case No. 3:17-cv-03022-JST               Page 6        EOLAS'S SUPPLEMENTAL BRIEF IN SUPPORT OF
                                                                                                                  MOTION TO DISQUALIFY LATHAM & WATKINS

1  Circuit and California.  Finally, Latham's claim of waiver fails whether Fifth Circuit law or the
2  demanding California standard is applied; Eolas acted timely.

3  Eolas supported its motion with declarations from Dr. Doyle and Mark Swords detailing
4  extensive disclosure to Mr. Crumbaugh and other Latham lawyers about all aspects of the '906
5  and Eolas's business and litigation strategies. (Mot., Ex. A & A-1 - A-13, Ex. B & B-1); (Reply,
6  Ex. A & A-1 - A-3, Ex. B & B-1). Likewise, Eolas provided contemporaneous billing records and
7  communications that prove the '906 was central to Latham's work for Eolas. (Mot., Ex. A-6).
8  Latham's opposition mischaracterizes the scope of its Eolas work with declarations designed to
9  reshape and "dumb down" the nature of Latham's role.  Its declarants equivocate about the
10 confidential disclosures to which Doyle and Swords attest. And they take great pains to narrow
11 their assignments and the information they allege was necessary to accomplish their work. (Reply,
12 p.3-5, 7 n.5, n.7, n.10 & n.11).  This Court rejected that same strategy in *Openware*, explaining
13 that "the relevant construct … is not what information [Latham] lawyers minimally would have
14 needed to carry out their assignment in *theory*, but what information normally would have been
15 imparted to them under the facts of the actual lawyer-client relationship…." *Openware Sys., Inc*.,
16 2010 WL 1687825 at *4.

17 Eolas's evidence proves it actually disclosed material confidential information to Latham
18 beginning in 1998 and ending in 2006. (Mot., Ex. A & A-1 - A-13, Ex. B & B-1); (Reply, Ex. A &
19 A-1 - A-3, Ex. B & B-1).  Here disqualification is mandatory. *Leapfrog Enters., Inc., v. Epik*
20 *Learning, LLC*, 2017 WL 2986604 *12 (N.D. Cal. Feb. 23, 2017) (disqualifying for actual and
21 presumed disclosure of confidences).  But, if the Court is not convinced, *Openwave* and *Leapfrog*
22 are instructive on California's practical application of the substantial relationship test. *Openware*
23 *Sys., Inc*., 2010 WL 1687825 at *4; *Leapfrog Enters., Inc.*, 2017 WL 2986604 *12.  The cases
24 demonstrate that California's inquiry – whether relevant confidences would "normally" be
25 disclosed – as compared to the "painstaking analysis of the facts" and "delineat[ion of] …
26 specific[ common] … subject matters, issues and causes of action" that some courts in the Fifth
27
28

Case No. 3:17-cv-03022-JST               Page 7        EOLAS'S SUPPLEMENTAL BRIEF IN SUPPORT OF
                                                       MOTION TO DISQUALIFY LATHAM & WATKINS

1  Circuit require,[4] creates a more relaxed and sensible standard for both making and deciding

2  disqualification motions.  In this regard, California goes further than the Fifth Circuit to ensure

3  that a client need not disclose confidences to make the necessary proof for disqualification. *Elan v.*

4  *Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809 F.Supp. 1383, 1388 (9th Cir. 1992) (explaining

5  it's not necessary to "disclose confidential information in order to prove what the law firm

6  knows.").

7  Here, the nature of Latham's extensive relationship with Eolas makes it reasonable to

8  assume Eolas disclosed confidences about the '906 and litigation, licensing and settlement

9  strategies that are material to the present action. *Openware Sys., Inc.*, 2010 WL 1687825 at *4;

10 *Leapfrog Enters., Inc.*, 2017 WL 2986604 at *12 (disqualifying Cooley because the "practical

11 consequences" of the former representation were the likelihood that confidences material to the

12 current trademark dispute "would normally have been imparted" where, among other things,

13 Cooley "had access to a substantial body of confidential information, from general information

14 about finances to specific information about its litigation strategy, trademark prosecution efforts

15 and business strategy…."). Latham's prior Eolas work was all encompassing, much of it

16 specifically related to Eolas's efforts to protect, enforce and commercialize the '906. (Mot., p.7-

17 10).  Latham's protests to the contrary are not credible on their face; they're also contradicted by

18 the contemporaneous records that document the truth. (Reply, p.3-7, n.5, n.7, n.10).

19 Credibility aside, Latham's claim that its lawyers have neither given nor received

20 confidential Eolas information is irrelevant. California and Fifth Circuit law are in accord; once

21 Eolas shows substantiality, the presumption of confidences is irrebuttable and disqualification is

22 mandatory. *W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F.Supp3d 1074, 1088 (C.D. Cal.

23 2015) (rejecting same self-serving declarations; where the movant met its burden of substantiality,

24 firm was "conclusively presumed to possess confidential information material to the present

25 action."). "The 'substantial relationship' test ensures clients are not forced to reveal the

---

[4] *See e.g., Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1029 (5th Cir. 1981).

confidences that the rule is intended to protect…. 'It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification.'" *Id*. at 1088-89. Eolas's evidence easily demonstrates that possibility.

Nor does the passage of time cleanse Latham of its incurable conflict. *See Brand v. 20th Century Ins.*, 124 Cal. App.4th 594, 607 (Cal App. 2004) (explaining twelve year passage of time did not cure conflict). Whether the Court asks if Latham's prior Eolas work is linked to the present matter in "some rational manner" (California), or is "akin to the present action in a way a reasonable person would understand as important to the issues involved" (Fifth Circuit), the result is the same: the representations are substantially related and Latham is categorically disqualified.

### VII.  Eolas's Motion is Timely Under Fifth Circuit and California Law

When it discovered that Latham represented Amazon in this matter on Friday January 6, 2017, Eolas promptly raised and objected to the conflict. (Mot., p. 23-26). Prior to this date, <u>nobody at Eolas</u> knew that Latham was representing Amazon. (Reply, p.9-10). After exchanging documents and positions, the parties' efforts to resolve this matter ended in impasse on February 10.[5] (Mot., Ex. D, ¶7). Eolas filed its motion to disqualify only 12 business days later on February 28. There is no evidence that Eolas deliberately delayed; nor is there any advantage to Eolas in waiting to seek disqualification. Whether Fifth Circuit or California law is applied, these facts cannot support a finding of waiver.

Compared to the Fifth Circuit, California applies a more exacting test that finds waiver only in instances of both extreme prejudice and extreme, knowing delay. *Supra,* §III. Under each jurisdiction's law, the diligence question is directed to when the movant learned of the conflict. *River West, Inc. v. Nickel*, 188 Cal.App.3d 1297 (Cal. App. 1987); *In re Butler*, 987 S.W.2d 221, 224-25 (Tex. App.—Houston [14th Dist.] 1999, no pet.; (Reply at p.9-10). Here there is no delay to explain because Eolas immediately and diligently pursued the conflict upon learning it. Nor can

---

[5]  Amazon agreed that the period of time between January 9, 2017 and the parties' meet and confer on February 10, 2017 – the time during which the parties were investigating, disclosing and considering their respective positions and documents -- would not serve as the basis for its waiver argument. Mot. at p.24 n.11, Ex. D, ¶8, Ex. D-4.

Amazon establish the extreme prejudice California law requires. This case is far from trial, with a case management conference scheduled for December.  Amazon has plenty of time to find additional counsel should it decide that is necessary.  On balance, any prejudice to Amazon resulting from Latham's disqualification would pale in comparison to that Eolas would face in litigating a matter that substantially relates to the '906 against its former law firm. Latham must be disqualified.

## CONCLUSION

For these reasons and those stated in is moving papers, Eolas respectfully asks the Court to GRANT its Motion to Disqualify Latham & Watkins as Counsel for Amazon.com Inc.

DATED:  August 11, 2017                  Respectfully submitted,


By /s/ Geoffrey Culbertson
KELLY TIDWELL (pro hac vice)
kbt@texarkanalaw.com
GEOFFREY CULBERTSON (pro hac vice)
gpc@texarkanalaw.com
PATTON TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard
Texarkana, TX  75503
Telephone:  (903) 792-7080
Facsimile:   (903) 792-8233

Counsel for Plaintiff
EOLAS TECHNOLOGIES INCORPORATED

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on August 11, 2017.


/s/ Geoffrey. Culbertson
Geoffrey Culbertson