DOUGLAS E. LUMISH, Bar No. 183863
doug.lumish@lw.com
RICHARD G. FRENKEL, Bar No. 204133
rick.frenkel@lw.com
JEFFREY G. HOMRIG, Bar No. 215890
jeff.homrig@lw.com
NICHOLAS YU, Bar No. 298768
nicholas.yu@latham.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile:  (650) 463-2600

[additional counsel listed on signature page]

Counsel for Defendant
AMAZON.COM, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EOLAS TECHNOLOGIES INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No: 3:17-cv-03022-JST<br><br>**DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING PLAINTIFF'S MOTION TO DISQUALIFY LATHAM & WATKINS LLP**<br><br>Hearing Not Yet Scheduled |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 3:17-cv-03022-JST

DEFENDANT'S SUPPLEMENTAL BRIEF
REGARDING DISQUALIFICATION

Defendant Amazon.com, Inc. ("Amazon") respectfully submits this supplemental brief to address the law applicable to the motion filed by Plaintiff Eolas Technologies Incorporated ("Eolas") to disqualify Latham & Watkins LLP ("Latham") from representing Amazon in this case. (*See* ECF No. 253 ("Mot.").) In Amazon's view, this motion should be decided under the Texas law that was indisputably applicable when the motion was filed and fully briefed in the Eastern District of Texas, where Eolas is domiciled and where it chose to file suit, and where the case was pending when Latham agreed to represent Amazon. In any event, California law governing motions to disqualify is not materially different from Texas law. For all the reasons set forth in the original briefing, the relevant principles require rejection of Eolas's dilatory effort to disqualify Amazon's lead counsel.

## I. UNDER THE UNIQUE SCENARIO THIS CASE PRESENTS, THE DISQUALIFICATION MOTION SHOULD BE GOVERNED BY TEXAS LAW AS PREVIOUSLY BRIEFED.

If Eolas had filed this case in the Northern District of California, any motion to disqualify would be decided under California law principles. *See, e.g.*, *Skyy Spirits, LLC v. Rubyy, LLC*, No. C 09-00646WHA, 2009 WL 3762418, at *1 (N.D. Cal. Nov. 9, 2009); *see also In re Cty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); Civ. L.R. 11-4(a). But Eolas did not file this case in the Northern District of California. It filed it in its home jurisdiction of the Eastern District of Texas. That is where the case was pending when Latham began its representation of Amazon, that is where Latham first appeared in this case in January 2016, and that is where the case remained when—more than a year later—Eolas belatedly filed its motion to disqualify. The parties therefore briefed the motion under the law that indisputably governs disqualification in the Eastern District of Texas. When this case was eventually transferred, the motion had been fully briefed under Texas law and was ripe for decision.[1] Certainly, the Texas court would have

---

[1] By "Texas law," Amazon is referring to the law that would have governed in the Eastern District of Texas. That law draws on the Texas Disciplinary Rules of Professional Conduct and Texas state court decisions, as well as the ABA Model Rules of Professional Conduct and the Restatement of the Law Governing Lawyers. *See, e.g.*, *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299–301 & n.4 (5th Cir. 2009).

ruled based on Texas law. Amazon is aware of no case addressing what law should apply in this unusual situation involving transfer—let alone transfer well over a year into the case and while a fully briefed motion to disqualify was pending. But on this issue of first impression, Amazon believes there are several reasons why Texas law should continue to govern.

This case was transferred under 28 U.S.C. § 1404(a). It is well-settled that a transfer under § 1404(a) does not alter the applicable law in a case arising under diversity jurisdiction. Rather, the law of the transferor court continues to apply, such that the change of venue is "but a change of courtrooms." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). And the Ninth Circuit has held that the same principle applies in a case arising under federal question jurisdiction when the relevant federal law is intentionally non-uniform—*e.g.*, when federal law incorporates state law. *See Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1045–46 (9th Cir. 2012). There too, the transferee court must apply the law "that the transferor district court would have applied had the case not been transferred." *Id.* at 1046.

The same logic applies here. "The ethical standards imposed upon attorneys in federal court are a matter of federal law." *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1316 (3d Cir. 1993). Although federal courts may impose on attorneys "the duty to conform to [a] state code of professional responsibility," they do so "as an exercise of their inherent power" and thus, at bottom, "the standards imposed are a matter of federal law." *In re Snyder*, 472 U.S. 634, 645 n.6 (1985); *see also FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995) ("Motions to disqualify are substantive motions. Therefore, they are decided under federal law."). But because federal courts are free to, and do, incorporate the law of different states into the law of disqualification, it is intentionally non-uniform federal law. *See Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435, 439 & n.4 (9th Cir. 1983) (noting differences in ethical rules adopted by different federal courts). Therefore, when an alleged conflict of interest arises in one federal court and the case is later transferred to another under § 1404(a), the law that governed in the transferor court should remain applicable. In that respect, the transfer is "but a change of courtrooms." *See Hooper*, 688 F.3d at 1046 (quoting *Van Dusen*, 376 U.S. at 639).

This conclusion not only flows logically from *Hooper*, it also makes good sense. When a

lawyer agrees to represent a client in litigation, it is perfectly reasonable to demand that she familiarize herself with the rules governing practice in that forum and ensure that nothing would disqualify her from the representation.  But a lawyer cannot be expected to investigate the rules of every jurisdiction to which the case could possibly be transferred, nor to presume that a future transfer motion will be granted in her favor.  As the Ninth Circuit has recognized, "it is desirable that an attorney or client be aware of what actions will not be countenanced.  Advance notice is essential to the rule of law."  *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F.2d 1355, 1360 (9th Cir. 1981) (addressing disqualification).[2]

It is particularly appropriate to stick with Texas law given the facts of this case.  Eolas is a Texas corporation.  It chose to file this action in the Eastern District of Texas.  Latham agreed to represent Amazon and undertook that representation—the conduct that Eolas claims requires disqualification—while the case was pending in the Eastern District of Texas.  Eolas filed its disqualification motion while the case was in the Eastern District of Texas.  And the motion was fully briefed and ripe for decision while the case was pending in the Eastern District of Texas.  Neither party could have expected anything but Texas law to apply to the disqualification dispute, and neither party can claim prejudice if that law continues to apply.

## II. EOLAS'S MOTION SHOULD BE DENIED UNDER CALIFORNIA LAW TOO.

In any event, the principles governing disqualification in California and Texas are not materially different, and the small differences that exist do not support a different result.  For all the reasons already set forth in Amazon's Response (ECF No. 291 ("Resp.")) and Sur-Reply (ECF No. 320 ("Sur-Reply")), Eolas's belated disqualification motion should be denied.

**1. Disqualification Is A Drastic Remedy.**  As in Texas, under California law, the party seeking disqualification bears the burden of showing it is required.  *Emblaze Ltd. v. Microsoft Corp.*, No. 12-CV-05422-JST, 2014 WL 2450776, at *2 (N.D. Cal. May 30, 2014) (Tigar, J.).  California courts have recognized that "disqualification is a drastic course of action that should

---

[2] Of course, if the alleged basis for disqualification arises *after* the case is transferred, it would be perfectly fair and appropriate to apply the law of the transferee court.

not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety." *Roush v. Seagate Tech., LLC*, 58 Cal. Rptr. 3d 275, 281 (Ct. App. 2007). Courts must be mindful of "a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 980 P.2d 371, 377–78 (Cal. 1999). Indeed, California courts have recognized that motions "based on an alleged substantial relationship between representations are commonly used for purely strategic purposes." *H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 280 Cal. Rptr. 614, 618–19 (Ct. App. 1991). "Because of the potential for abuse, motions for disqualification are subject to strict judicial scrutiny." *Emblaze*, 2014 WL 2450776, at *2 (citing *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1049 (9th Cir. 1985)).

**2. Eolas Waived The Right To Seek Disqualification.** As in Texas, under California law, a party waives the right to seek disqualification if it waits an unreasonable time before doing so. "It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *Trust Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983); *see also River W., Inc. v. Nickel*, 234 Cal. Rptr. 33, 41 (Ct. App. 1987) ("The trial court must have discretion to find laches forecloses the former client's claim of conflict."). If the party opposing the disqualification motion "offers prima facie evidence of an unreasonable delay . . . and resulting prejudice," the burden shifts to the moving party to justify the delay. *River W.*, 234 Cal. Rptr. at 41. The moving party "should address: (1) how long it has known of the potential conflict; (2) whether it has been represented by counsel since it has known of the potential conflict; (3) whether anyone prevented the moving party from making the motion earlier, and if so, under what circumstances; and (4) whether an earlier motion to disqualify would have been inappropriate or futile and why." *Id.*

In its prior briefing (Resp. 11–15; Sur-Reply 2–5), Amazon offered prima facie evidence of delay that is "extreme in terms of time and consequence." *River W.*, 234 Cal. Rptr. at 42. Latham has openly represented Amazon in this case since January 2016. In February 2016,

Latham even went so far as to ask Eolas for permission to transfer case files from Weil Gotshal (which represented Amazon in the 2009-2012 case against Eolas) to Latham—and received Eolas's express permission to do so. (Resp. 9, 12; Sur-Reply 5.) Yet Eolas did not allege a conflict and threaten disqualification until January 2017. A year is obviously extreme, and courts applying California law have found waiver for delays of much shorter duration. *See, e.g.*, *Koloff v. Metro. Life Ins. Co.*, No. 1:13-cv-02060-LJO-JLT, 2014 WL 2590209, at *5 (E.D. Cal. June 10, 2014) (less than five months); *Openwave Sys. Inc. v. Myriad France S.A.S.*, No. C 10-02805 WHA, 2011 WL 1225978, at *6 (N.D. Cal. Mar. 31, 2011) (roughly four months); *Skyy Spirits*, 2009 WL 3762418, at *3–4 (eight months); *Finmeccanica S.p.A. v. Gen. Motors Corp.*, No. CV 07-08222 SJO (PJWx), 2008 WL 11340060, at *3 (C.D. Cal. Apr. 29, 2008) (six months).

Disqualification would also produce extreme prejudice here. By the time Eolas raised the alleged conflict, Latham lawyers had already spent more than 3,400 hours on the case, familiarized themselves with the enormous record, and created substantial work product. (Resp. 14–15 & n.5.) The threatened waste of these efforts is precisely the kind of prejudice that supports waiver in California. *See River W.*, 234 Cal. Rptr. at 44 (noting "over 3,000 hours of litigation effort," familiarity with "fruits of discovery," and "substantial 'work product'"). So too is the loss of those members of the Latham team who, *before* joining Latham, had invalidated a related Eolas patent at trial. (*See* Resp. 8, 14.) The loss of "a lawyer of great value to" a client, who has been "*successful* with the case," is a "disastrous development" that constitutes "extreme" prejudice. *Liberty Nat'l Enters., L.P. v. Chicago Title Ins. Co.*, 123 Cal. Rptr. 3d 498, 505 (Ct. App. 2011). That is exactly the situation here—and indeed the prospect of such harm surely "provided the motivation for the motion to disqualify." *Id.*[3]

---

[3] Eolas has argued that the prejudice would be minimal because Amazon is also represented by lawyers from other firms. But Eolas has also repeatedly suggested that it might seek to disqualify those lawyers as well. Eolas cannot have it both ways. In any event, the prejudice would be enormous even if Latham's co-counsel are not disqualified. (*See* Resp. 14–15 & n.5.)

Eolas cannot carry its burden to justify the delay. Eolas has been represented by sophisticated counsel the entire time—counsel who in fact knew that Latham had represented Eolas in the past (Resp. 9, 13). *See River W.*, 234 Cal. Rptr. at 41. Nothing prevented Eolas from seeking disqualification in a timely manner. *Id.* And an earlier motion would not have been inappropriate or futile (except insofar as it would have failed on the merits). *Id.* The only excuse Eolas has ever offered is that it did not know Latham was representing Amazon until January 2017. But Amazon disproved that contention. The clear evidence that Eolas's officers actually knew of Latham's representation of Amazon does not depend on what law applies. (*See* Resp. 12–13; Sur-Reply 5.) And in California, as in Texas, Eolas is also charged with such knowledge because its lawyers at McKool Smith knew. (*See* Resp. 11–12 & n.3; Sur-Reply 3–4.) California law recognizes that the knowledge of a corporate agent is attributed to the corporation, and that an attorney is an agent whose knowledge is attributed to her client-principal. *See, e.g.*, *Herman v. Los Angeles Cty. Metro. Transp. Auth.*, 84 Cal. Rptr. 2d 144, 150 (Ct. App. 1999); *Sanfran Co. v. Rees Blow Pipe Mfg. Co.*, 335 P.2d 995, 1004 (Cal. Ct. App. 1959); *see also* Cal. Civ. Code § 2332. Eolas thus knew of Latham's role in this case from the outset and yet waited a year, for no reason other than tactical advantage, to bring its motion to disqualify. Its motion should be denied on that basis alone.

**3.  Latham's Past Work For Eolas Is Not Substantially Related To The Current Litigation.** Like Texas, California forbids a lawyer from acting adversely to a former client in a matter that is "substantially related" to one in which the lawyer represented the former client. *SpeeDee Oil*, 980 P.2d at 379. As in Texas, it is "the former client's burden to show . . . the existence of a substantial relationship between the former and current representations." *In re Charlisse C.*, 194 P.3d 330, 343 n.11 (Cal. 2008). And, as in Texas, if the former client carries that burden, "the courts will conclusively presume the attorney possesses confidential information adverse to the former client." *H.F. Ahmanson & Co.*, 280 Cal. Rptr. at 617.

Critically, in California (again as in Texas) the substantial relationship test is not satisfied simply because the former and current representations involve similar subject matters or have common factual elements. The focus, instead, is on the particular legal issues:

"[D]isqualification will depend upon the strength of the similarities between the legal problem involved in the former representation and the legal problem involved in the current representation." *Jessen v. Hartford Cas. Ins. Co.*, 3 Cal. Rptr. 3d 877, 884–85 (Ct. App. 2003); *see also Fremont Indem. Co. v. Fremont Gen. Corp.*, 49 Cal. Rptr. 3d 82, 93 (Ct. App. 2006) (substantial relationship exists "only if the *issues* are sufficiently similar" (emphasis added)).

The focus on the particular "legal problems" involved in the representations—and not on their subject matter in some general sense—is at the heart of why Eolas's motion fails on the merits. As Amazon explained, the essence of Eolas's argument is "that Latham's prior work 'related' to the '906 patent, Amazon's claims and defenses in this case 'relate' to the '906 patent and, thus, there is a 'substantial relationship.'" (Sur-Reply 1.) That simplistic syllogism is wrong. The proper question, both in Texas and in California, is whether there was "any substantial similarity between *the issues* involved in this litigation and *the issues* involved in Latham's prior work." (*Id.* at 2.) As Amazon's Response and Sur-Reply explain in detail (Resp. 15–22; Sur-Reply 6–9), the answer is no. Although some of the work Latham did for Eolas between 2001 and 2006 touched on the '906 patent, the legal problems addressed had nothing to do with the patent's scope, validity, prosecution, or anything else that makes it remotely relevant to *this* case. Indeed, the former Latham lawyers at the center of Eolas's motion, David Crumbaugh and Kevin Murphy, were not patent litigators and did not have the expertise to tackle any legal problem that could conceivably be relevant here. Eolas has failed to carry its burden to demonstrate a substantial relationship.

**4. Latham Does Not Have Confidential Information It Could Use Against Eolas.**
Eolas's fallback argument—that, even if there is no substantial relationship, Latham must still be disqualified because Latham received confidential information that it can use against Eolas here—is also available under California law. *See H.F. Ahmanson & Co.*, 280 Cal. Rptr. at 622. But in California, as in Texas, it is Eolas's burden to prove that Latham in fact possesses confidential information that it could use against Eolas. *See id.* That burden "is a formidable one." *Hoffmann-La Roche Inc. v. Promega Corp.*, No. C-93-1748-VRW, 1994 WL 761241, at *21 (N.D. Cal. June 13, 1994). "[C]onclusory statements" that the former client shared such

confidential information "are insufficient." *Elliott v. McFarland Unified Sch. Dist.*, 211 Cal. Rptr. 802, 808 (Ct. App. 1985). Moreover, "[m]erely knowing of a former client's general business practices or litigation philosophy is an insufficient basis for disqualification based upon prior representation." *Banning Ranch Conservancy v. Super. Ct.*, 123 Cal. Rptr. 3d 348, 358 (Ct. App. 2011). "[T]he information acquired during the first representation . . . must be found to be directly at issue in, or have some critical importance to, the second representation." *Fremont Indem.*, 49 Cal. Rptr. 3d at 95.

Eolas has failed to carry its burden under this standard. Eolas's claims that Latham has potentially harmful confidential information are utterly conclusory. (*See* Mot. 22; Resp. 23–24.) That is unsurprising, given that Latham stopped performing work for Eolas and returned its client files more than a decade ago, and neither Crumbaugh nor Murphy performed any work related to the issues in this case—or even had the expertise to do so. (Resp. 18–21.) Murphy also left Latham almost a decade ago, and Crumbaugh recently retired from the firm. Unable to come up with anything remotely specific, Eolas hides beyond the objection that it should not have "to reveal the very confidences [it] seeks to protect." (ECF No. 314 at 8 ("Reply") (alteration in original).) But (as in Texas) California courts have recognized a perfectly sound method of "avoid[ing] the disclosure of the former client's confidences and secrets" in a disqualification dispute: "file the documents with the court under seal for in camera review." *Faughn v. Perez*, 51 Cal. Rptr. 3d 692, 699 (Ct. App. 2006). If Eolas had documentary evidence that Latham acquired confidential information that could be used against Eolas here, Eolas undoubtedly would have submitted it to the Texas court in camera. (*See* Sur-Reply 10 n.6.) "Sometimes, omitted facts become conspicuous by their omission, particularly where the motion involved, like a motion to disqualify counsel, has the potential for tactical abuse." *Faughn*, 51 Cal. Rptr. 3d at 699 (citation omitted).

**5. The 1998 Beauty Contest Cannot Justify Disqualification.** Eolas's disqualification motion rests in part on the fact that Latham participated in a beauty contest in 1998 where it unsuccessfully sought to be hired by Eolas to engage in patent litigation. But there is an additional and independent reason why Latham cannot be disqualified on that basis: Eolas,

1  represented by sophisticated counsel (Baker & McKenzie), agreed to an express, written
2  conflicts waiver that forbade Eolas from seeking to disqualify Latham from any adverse
3  representation on the basis of the unsuccessful pitch. (*See* Resp. 3–4, 22; Sur-Reply 6.)  "An
4  advance waiver of potential future conflicts . . . is permitted under California law, even if the
5  waiver does not specifically state the exact nature of the future conflict." *Visa U.S.A., Inc. v.*
6  *First Data Corp.*, 241 F. Supp. 2d 1100, 1105 (N.D. Cal. 2003); *see also Zador Corp. v. Kwan*,
7  37 Cal. Rptr. 2d 754, 763 (Ct. App. 1995) (denying disqualification based on advance waiver).
8  Amazon explained this point clearly in its Response (at 22), and Eolas's Reply ignored it
9  completely.  Eolas is bound by its express waiver.  That waiver—which covered "any matter,
10 including this matter"—would have allowed Latham to be adverse to Eolas in the 1999
11 Microsoft litigation. *A fortiori*, it allows Latham to be adverse to Eolas now.

12 **6. Latham Cannot Be Vicariously Disqualified Based On Murphy's Work.**  Eolas
13 relies entirely on the principle of imputed (or vicarious) disqualification: the general rule that if
14 one lawyer in a firm is disqualified on the basis of a former-client conflict, the entire firm must
15 be disqualified. *See Charlisse C.*, 194 P.3d at 339–40.  That rule, however, does not require the
16 disqualification of Latham based on the work performed by Murphy, even if he were personally
17 conflicted.  In California, as in Texas, a different analysis applies when the allegedly conflicted
18 lawyer left the firm before the current representation began. (*See* Resp. 21–22.)  In that case, the
19 party seeking disqualification cannot rely on "'the fiction of imputed knowledge'"; the court
20 should instead make "a 'dispassionate assessment' of whether confidential information was
21 actually exchanged." *Goldberg v. Warner/Chappell Music, Inc.*, 23 Cal. Rptr. 3d 116, 125 (Ct.
22 App. 2005) (citation omitted); *see also, e.g.*, *State Comp. Ins. Fund v. Drobot*, No. SACV 13-956
23 AG (CWX), 2014 WL 12579808, at *10 (C.D. Cal. July 11, 2014) (focusing "on whether
24 confidential information was actually conveyed" by departed attorney).  There is no evidence of
25 any actual exchange here.  Murphy was a partner in Latham's Chicago office who left the firm
26 years before this case began—indeed, years before the California partners in charge of Amazon's
27 defense even joined Latham. (*See* Murphy Decl. ¶ 24, ECF No. 291-28; Frenkel Decl. ¶¶ 2, 9,
28 ECF No. 291-2.)  There is no indication that he passed along anything to anyone still at Latham,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 3:17-cv-03022-JST

9

DEFENDANT'S SUPPLEMENTAL BRIEF
REGARDING DISQUALIFICATION

and he denies ever acquiring any relevant information in the first place. (Murphy Decl. ¶¶ 16–22; *see also* Resp. 21–22.)

\* \* \*

Amazon has gained no unfair advantage as a result of Latham's discrete and decade-old work for Eolas, none of which was performed by lawyers with patent expertise, and virtually all of which was performed by lawyers who left Latham many years ago. Disqualification would prejudice Amazon terribly, both by imposing tremendous costs and by depriving it of the counsel it chose precisely for their experience invalidating an Eolas patent in prior litigation. And Eolas's tactical decision to delay filing its motion for a year in order to maximize that prejudice cannot be excused. For the reasons set forth here and in Amazon's Response and Sur-Reply, Eolas's untimely disqualification motion should be denied regardless of the choice of law.

| | |
|---|---|
| DATED:  August 11, 2017 | Respectfully submitted, |
| | By /s/ Richard G. Frenkel |
| | DOUGLAS E. LUMISH, Bar No. 183863
doug.lumish@lw.com
RICHARD G. FRENKEL, Bar No. 204133
rick.frenkel@lw.com
JEFFREY G. HOMRIG, Bar No. 215890
jeff.homrig@lw.com
NICHOLAS YU, Bar No. 298768
nicholas.yu@latham.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile:  (650) 463-2600 |
| | JOSEPH H. LEE, Bar No. 248046
joseph.lee@lw.com
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone: (714) 540-1235
Facsimile:  (714) 755-8290 |
| | AMIT MAKKER, Bar No. 280747
amit.makker@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 395-8034
Facsimile:  (415) 395-8095 |
| | MELISSA ARBUS SHERRY (pro hac vice)
melissa.sherry@lw.com
ELANA NIGHTINGALE DAWSON (pro hac vice)
elana.nightingaledawson@lw.com
GRAHAM E. PHILLIPS (pro hac vice)
graham.phillips@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile:  (202) 637-2201 |
| | *Counsel for Defendant*
*AMAZON.COM, INC.* |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 3:17-cv-03022-JST

11

DEFENDANT'S SUPPLEMENTAL BRIEF
REGARDING DISQUALIFICATION