1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KELLY TIDWELL (pro hac vice)
kbt@texarkanalaw.com
GEOFFREY CULBERTSON (pro hac vice)
gpc@texarkanalaw.com
PATTON TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard
Texarkana, TX  75503
Telephone:  (903) 792 7080
Facsimile:   (903) 792 8233

Counsel for Plaintiff
EOLAS TECHNOLOGIES
INCORPORATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EOLAS TECHNOLOGIES INCORPORATED,<br><br>　　　　Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>　　　　Defendant. | Case No. 3:17-cv-03022-JST<br><br>**EOLAS' SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION TO DISQUALIFY LATHAM & WATKINS**<br><br>Submitted Per Order of 8/8/17, DE #378<br><br>Hearing Not Yet Scheduled; |

Eolas Technologies Incorporated ("Eolas") submits this supplemental response regarding the application of California law to its pending Motion to Disqualify Latham & Watkins ("Latham") as Counsel for Amazon.com, Inc. ("Amazon").  DE# 253.

### 1.   California Law Controls the Attorneys' Ethical Obligations in this Court.

Following transfer at Amazon's request, the parties' attorneys are now practicing in the Northern District of California. Their conduct is governed by this Court's local rules and, by incorporation, California's rules and law of professional responsibility. There is no reason to depart from the Ninth Circuit's clear mandate that California law governs motions to disqualify in California federal courts. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). Latham's disqualification is now at issue in this Court, not the Eastern District of Texas. This Court already is applying the Northern District's rules to the case, not those of the Texas Court. It should also apply its local rules governing attorney conduct.

### 2.   Latham Remains Infected by Both Mr. Crumbaugh and Mr. Murphy's Conflicts.

Amazon does not dispute that Mr. Crumbaugh's disqualification extends to the entire firm and acknowledges the general rule of imputed conflicts and vicarious disqualification. (DE #381 at 9:13-15); (Reply Ex. F, ¶62).   Amazon instead advances *Goldberg* and insists that Kevin Murphy's conflict does not operate to vicariously disqualify Latham since he departed years ago and alleges his representation had nothing to do with the '906.  However, the quote that Amazon attributes to *Goldberg* is from that court's discussion of *Aerojet*, a factually inapposite case where the departed attorney <u>never</u> worked on the client's file while at his prior firm, and the court declined to use his presumptive disqualification to vicariously disqualify his current firm. *Goldberg v. Warner/Chappell Music, Inc.*, 23 Cal. Rptr. 3d 116, 123 & 125 (Ct. App. 2005) (discussing *Adams v. Aerojet General Corp.*, 104 Cal. Rptr. 2d 116 (Ct. App. 2001)). *Goldberg* must be read with an appreciation for its unique facts and limited holding:

> We agree … that an attorney's presumed possession of confidential information concerning a former client should not automatically cause the attorney's former firm to be vicariously disqualified **where the evidence establishes that no one other than the departed attorney had any dealings with the client or obtained confidential information**....

*Goldberg*, 23 Cal. Rptr. 3d at 118 (emphasis added).  There the prior representation was informal and limited to a 1.5 hour meeting and conversation about an employment agreement for which the departed lawyer (Salomon) did not bill Goldberg.  *Id*. at 119.  Salomon was the only lawyer or firm employee to have any dealings with Goldberg on the subject; he never opened a client file and no one else at his prior firm was even aware of the "*de facto* representation."  *Davis v. EMI Group, Ltd.*, 2013 WL 75781 *3 (N.D. Cal. Jan. 4, 2013) (distinguishing *Goldberg*). Salomon's scant representation of Goldberg was nothing like either Murphy's or Latham's role to Eolas.  "*Goldberg* bears little resemblance to this case." *Id*.

First, there is no dispute that Latham maintained a long-term, formal attorney-client relationship with Eolas.  Murphy's role in that relationship was significant. (Reply Ex. F, ¶¶52-60). He billed more than 136 hours of work on the Baker McKenzie arbitration, defended document subpoenas directed to all aspects of the '906, participated in strategic discussions with Dr. Doyle and Eolas' litigation counsel at Robins Kaplan, and coordinated his arbitration strategy with Eolas' '906 enforcement action against Microsoft. (Mot. Ex. A-6-16, A-6-19, A-6-21, A-6-24);[1] (Resp. Ex. A-13 at p.21 (hours)); (Mot. Ex. A, ¶14); (Reply at p.3-4 n.5 & n.11); (Reply Ex. A, ¶22 & Ex. A-2).

Second, at least 27 Latham employees worked on Eolas matters.  At least 5 different attorneys worked specifically on the substantially related '906 license negotiation, Baker McKenzie arbitration proceeding and/or the '906 Microsoft litigation with Robins Kaplan.  (Resp. Ex. A-13 & A-14); (Mot. A-6).  Eolas was sufficiently significant to Latham to devote a 2.4 hour department meeting to the client in 2001.  (Resp. Ex. A-13 at p.17); (Reply at p.4-5, Ex. A, ¶20). Despite the passage of significant time, Latham retained certain Eolas records and files, producing them only when this dispute arose. (Resp. Ex. A, ¶¶29-30); (Reply Ex. E, ¶67). When Salomon left his firm, not a single attorney remained that had any relevant dealings with Goldberg; the conflicting representation was unknown to the rest of the firm.  In contrast, when Murphy left

---

[1]   These documents identify specific billing for '906 matters in the arbitration and conferences with Robbins Kaplan lawyers Conlin and Martinez regarding subpoenas and document reviews.

Latham, Eolas' relationship partner, Mr. Crumbaugh, remained at the firm until June of 2017. And here both the highest levels of Latham's management and at least one of the primary attorneys representing Amazon were aware of the conflict in 2014, as evidenced by the firm's attempt to divest the stock it paid $200,000 to acquire. (Resp. Ex. A, ¶¶3-6). The "rare" and "limited" exception to irrebuttable disqualification found in *Goldberg* does not fit these facts. *Goldberg*, 23 Cal. Rptr. 3d at 121.  Latham's assurances that its attorneys neither gave nor received confidential Eolas information "are not sufficient to overcome the presumption that attorneys in the same firm share a 'close, fluid, and continuing relationship, with its attendant exchanges of information, advise, and opinions' that create ample opportunity for imparting confidential information and impressions from one to another."  *Davis*, 2013 WL 75781 at *4. Nor do the Model Rules shield Latham from Murphy's conflict. (Reply Ex. E, ¶¶62-71); ABA Model R. Prof.l Conduct 1.10(b) (prohibiting former firm's representation in substantially related matter if another attorney with protected information (here, at least Crumbaugh) remained at the firm); *see also* (Reply Ex. F, ¶¶62-63). California's ethics rules presume that client confidences were disclosed to other attorneys within a firm because no former client could reasonably prove what confidences were disclosed within a law firm.  Latham's position is that the California rules do not require disqualification if the law firm simply makes an assertion that none of its former client's confidences were disclosed to attorneys working for the new client.  That is not the law.

**3. There is no Evidence of Informed, Written Consent to the Conflict from the Beauty Pageant.  Even if There Were, the Current Representation Required Further Disclosure and Consent.**

California Professional Conduct Rule 3-310(E) requires a former client's "informed written consent" before a lawyer may accept an adverse representation in a substantially related matter. The rule requires the "former client's written agreement to the representation following written disclosure." *Id*. at ¶(A)(2).[2]  The 1998 waiver that Amazon relies on here is not Eolas'

---

[2] Model Rule 1.18 provides similar prohibitions against representations that are adverse to prospective clients in substantially related matters if, like Latham did in 1998, the lawyer received "information from the prospective client that could be significantly harmful to that person in the matter." ABA Model Rules of Prof'l Conduct R. 1.18 (2016). Absent certain exceptions not

"written agreement." There is no evidence that Eolas executed the NDA or otherwise provided a written agreement that would operate to waive conflicts then. (Mot. Ex. A, ¶8); (Mot. Ex. B, ¶8); (Reply Ex. B, ¶5).  And though Eolas was represented by counsel, the purported waiver fails for additional, independent reasons: 1) its terms are unlimited, intended to cover any conceivable matter or eventuality; 2) its temporal scope is unlimited; 3) it lacks specificity as to the conflicts that it covers, *i.e.* "any matter" effectively awards Latham a "blank check;" and 4) there's no evidence of the quality of any discussions or negotiations related to the purported waiver. *Concat v. Unilever*, 350 F.Supp.2d 796, 820-21 (N.D. Cal. 2004).

Even if the NDA were signed or the unexecuted version were otherwise effective (which it is not), once Eolas became Latham's client and made further and more robust confidential disclosures to its lawyers, Latham was required to again seek Eolas' consent to accept adverse work. (*Id.*). In fact, that's just what Latham did in 2003 when it wanted (and needed) Eolas' consent to accept adverse representations. (Mot. Ex. A-12).  But Eolas declined. (Mot. Ex. A, ¶16).[3]  In 2014, when Latham's California attorney again flagged the conflict, rather than comply with California Professional Conduct Rule 3-310(B),[4] Latham tried to dump its Eolas stock. (Resp. Ex. A, ¶¶3-6). And even though Latham's CFO had a conversation with Eolas' Jim Stetson, he failed to explain the reason Latham wished to divest the stock was to accept adverse work. (Reply Ex. C, ¶¶7-10).  That's not loyalty; it's pure self-interest. (Reply Ex. E, ¶¶52-61).

### 4. Eolas Proved Both Substantiality and Actual Disclosure of Confidences.

Amazon continues to exaggerate what's required to demonstrate that Eolas either: 1) disclosed material confidences to Latham; or 2) "normally" would have disclosed material confidences; *i.e.*, that the prior representation substantially relates to the current one.  (Reply Ex.

---

applicable here, if one lawyer is disqualified under this rule, so is the rest of that lawyer's firm. *Id*. at (c).

[3]  Even if the 1998 waiver were effective, Eolas' refusal to prospectively consent to Latham's adverse representation in 2003 would operate to revoke that consent.

[4]  *See* Discussion accompanying California Professional Conduct Rule 3-310 explaining that if Paragraph (E) applies (which it does here), Paragraph (B) requires **both the disclosure of the adverse engagement and the client's consent**. Here neither occurred.

F, ¶¶24-26).  Under any reasonable consideration of these prior and current matters, in view of Latham's duties to Eolas, the record easily satisfies either test.  But Latham's characterization of its Eolas work is anything but reasonable and has no regard for the firm's duties to its former client. (Reply Ex. F, ¶¶32 35, 42-43, 47-50, 55, 58-60).

Both Professors Cooper and Eads confirm that the matters substantially relate and that Latham must be disqualified.  (Reply Ex. F, ¶¶29-66); (Reply Ex. E, ¶9).  This is true whether the Court applies California law (linked in a rational manner) or Fifth Circuit law (akin in a way that a reasonable person would understand to be important).  In either jurisdiction, the test is broad and not limited to the strict facts, claims or issues involved.  *Knight v. Ferguson,* 149 Cal.App.4th 1207, 1213 (Cal. Ct. App. 2007);  *In re Am. Airlines, Inc.*, 972 F.2d 605, 618-19 (5th Cir. 1992) (substantially related does not equate to relevance in an evidentiary sense).

Beyond the beauty pageant disclosures, Dr. Doyle described his communications with both Crumbaugh and Murphy related to the '906 license negotiation, the Baker McKenzie arbitration dispute and the coordination of these sensitive matters with the '906 action against Microsoft. (Reply Ex. A, ¶¶7-22); (Reply Ex. F, ¶¶37-50); (Mot. Ex. A, ¶¶5-7 & 13-14).  Latham's own emails and billing records confirm that its lawyers' work for Eolas focused on the '906, including defending document requests directed to the '906, storing, reviewing and producing Eolas' patent documents and coordinating their work with Robins Kaplan's Ornstein, Conlin Sugisaka and Martinez in the Microsoft litigation. (Mot. Ex. A-6-1 – A-6-3, A-6-8,[5] A-6-11, A-6-12, A-6-16, A-6-19, A-6-21, A-6-24); (Reply Ex. A, ¶¶7-22, A-1 & A-2); (Reply Ex. F, ¶¶52-60).  The record is replete with evidence that Eolas actually disclosed material confidences to Latham <u>and</u> that Eolas would "normally" have disclosed material confidences given the nature of the prior representation. Now that Latham has made the '906 the centerpiece of its defense in this action, the firm must be disqualified.

---

[5]    Ex. A-6-8 indicates that Latham reviewed documents and produced them to Charles Krueger, Eolas' patent prosecution counsel for both the '906 and '507.

### 5. The Motion to Disqualify is Timely. Amazon Cannot Establish Implied Waiver.

To by-pass the requirement of Eolas' consent to this clearly conflicted representation, Amazon is forced to rely on waiver. (Reply Ex. E., ¶¶10-12). Amazon concedes that implied waiver in this context requires an extreme, knowing delay accompanied by extreme prejudice. (DE# 381 at 4:14-21) (citing *Trust Corp of Mont. V. Piper Aircraft Corp.* and *River W., Inc. v. Nickel*). The record is clear that <u>Eolas</u> discovered Latham represented Amazon on January 6, 2017 and moved in less than 60 days. (Reply p.9); (Reply Ex, E, ¶¶29-30, 34-38, 56); (Reply Ex. A, ¶25); (Reply Ex. B, ¶6); (Reply Ex. C, ¶5); (Mot. Ex A, ¶17); (Mot. Ex. B, ¶16); (Mot. Ex. C, ¶5). Unable to overcome this proof, Amazon advances two fictions.  First, Amazon relies on general agency principles for the absurdity that Eolas' implied consent to the conflict may be inferred from knowledge Latham attributes to Eolas' lawyers. This fails for at least the two independent reasons explained below. Second, Amazon relies on a "should have known" standard that does not exist in the law of professional responsibility and has no application here. (Reply p. 9-10 & n.13); (Reply Ex. E, ¶¶20-24).

Professional responsibility law does not impute a lawyer's knowledge as a substitute for the client's when the question is whether the client consented to a conflicted representation. (Reply Ex. E, ¶¶25-28) (discussing §§6 & 122 of the Restatement of Law Governing Lawyers and comments to ABA Model Rule 1.0). Nevertheless, Amazon alleges waiver that is premised on the knowledge it attributes to Eolas' attorneys at McKool Smith.  (Reply 9-11).  But Amazon relies on general agency principles that don't fit the context of the ethical question presented here. So it's not surprising that Amazon's cases have nothing to do with attorney disqualification. (DE #381 6:9-15). Even the *Herman* case on which Latham relies refused to apply the general agency rule of imputed knowledge where the relevant rule required notice to the "party," not the "party's attorney." *Herman v. Los Angeles Cty. Metro. Transp. Auth.*, 84 Cal. Rptr. 2d 144, 150-51 (Ct. App. 1999). The rules and law of professional responsibility are in accord; the client's consent is required for a conflicted representation. (Reply p. 9-11); (Reply Ex. D, ¶¶10-11). Likewise, the client's knowledge, not the lawyer's, is the starting point for a waiver analysis. (Reply Ex. E,

¶¶25-28). This is demonstrated by the efforts that courts make to identify the time by which the <u>client</u> became aware of the conflict that prompted the motion to disqualify. (*Id*. at ¶27). If Amazon's "implied knowledge" standard were the law, its waiver argument nevertheless fails. The record shows that while the McKool lawyers were aware that Latham represented Amazon in January of 2016, they were unaware of the conflict arising from substantially related representations or otherwise. (Reply p.9-10); (Reply Ex. E, ¶¶28-38 & 56). Given the importance of this ethical question, one stray comment in a deposition occurring years prior simply cannot operate to both charge McKool with an appreciation of Latham's conflict and impute that knowledge to Eolas. (*Id*.). In other words, even under Amazon's proposed standard, McKool did not have the requisite knowledge of the conflict to impute to Eolas. (*Id*.).

Waiver in disqualification cases is not solely based on time. (Reply p.10); (Reply Ex. E, ¶¶14-24). And Amazon's prejudice is only relevant if there is an extreme, knowing and inexcusable delay in Eolas' motion. Here there is not. But even if the Court started the clock in January of 2016 and considered that delay extreme, Amazon cannot demonstrate that Latham's disqualification will cause the extreme prejudice California law requires; especially following transfer. At its core, the prejudice Amazon complains of is financial: the cost of replacing Latham. But either Amazon made an informed business decision to risk Latham's disqualification because Latham informed Amazon of its prior work for Eolas, or Latham failed to disclose those facts to Amazon. In the first instance, Amazon has only itself to blame for any resulting prejudice. In the second, its remedy is to seek a refund from Latham. Amazon's financial interests are outweighed here by: 1) the prejudice to Eolas in litigating against Latham; 2) potential harm to the public's confidence in the court system; and 3) harm to the judiciary's interest in the integrity of the judicial system. (Reply Ex. E, ¶¶42-51). Though disqualification will cost Amazon its first choice of counsel, that interest "must yield to ethical considerations that affect fundamental principles of our judicial process." *People ex. Rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 980 F.2d 371, 378 (Cal. 1999).

DATED:  August 18, 2017             Respectfully submitted,


                                    By  /s/ Geoffrey Culbertson

                                    KELLY TIDWELL (pro hac vice)
                                    kbt@texarkanalaw.com
                                    GEOFFREY CULBERTSON (pro hac vice)
                                    gpc@texarkanalaw.com
                                    PATTON TIDWELL & CULBERTSON, LLP
                                    2800 Texas Boulevard
                                    Texarkana, TX  75503
                                    Telephone:  (903) 792-7080
                                    Facsimile:   (903) 792-8233

                                    Counsel for Plaintiff
                                    EOLAS TECHNOLOGIES INCORPORATED


## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on August 18, 2017.


                                    /s/ Geoffrey. Culbertson
                                    Geoffrey Culbertson