1  DOUGLAS E. LUMISH, Bar No. 183863
   doug.lumish@lw.com
2  RICHARD G. FRENKEL, Bar No. 204133
   rick.frenkel@lw.com
3  JEFFREY G. HOMRIG, Bar No. 215890
   Jeff.homrig@lw.com
4  NICHOLAS YU, Bar No. 298769
   nicholas.yu@lw.com
5  LATHAM & WATKINS LLP
   140 Scott Drive
6  Menlo Park, CA 94025
   Tel: 650.328.4600
7  Fax: 650.463.2600
   Counsel for Defendant
8  AMAZON.COM, INC.
   [additional counsel listed on signature page]
9
10

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13               **SAN FRANCISCO DIVISION**

14

15 | EOLAS TECHNOLOGIES INCORPO- | Case No: 3:17-cv-03022-JST |
   | RATED, | |
16 | | **AMAZON'S STATEMENT PURSUANT** |
   | Plaintiff, | **TO DKT. NO. 409** |
17 | | |
   | v. | |
18 | | |
   | AMAZON.COM, INC., | |
19 | | |
   | Defendant. | |
20

21

22

23

24

25

26

27

28

Case No. 3:17-cv-03022-JST                                    AMAZON'S STATEMENT

# TABLE OF CONTENTS

**Page**

1.    Procedural Background.................................................................................1

2.    Identification of Documents ........................................................................3

3.    All of the documents produced *in camera* should be produced unredacted to Amazon. .................................................................................................11

      3.1.    Under the fairness doctrine, Eolas implicitly waived the attorney-client privilege as to all withheld documents, and therefore, they should all be produced in unredacted form. ..............................................11

      3.2.    Eolas affirmatively put McKool Smith's communications at issue.....................12

      3.3.    McKool Smith's communications are directly relevant to each of the three issues Eolas injected into this case.........................................................13

      3.4.    The withheld communications are vital to Amazon's response. ..........................15

      3.5.    Eolas must either produce the withheld materials in unredacted form, or be barred from making the arguments that place this evidence at issue....................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
306 F.R.D. 234 (N.D. Cal. 2015) ........................................................................12, 15

*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) ...................................................................................11

*Home Indem. Co. v. Lane Powell Moss & Miller*,
43 F.3d 1322 (9th Cir. 1995) .....................................................................................11

*In re Lidoderm Antitrust Litig.*,
Case No. 14-MD-02521, 2016 WL 4191612 (N.D. Cal. Aug. 9, 2016)..............14, 16

*Oracle Am., Inc. v. Innovative Tech. Distributors, LLC*,
Case No. 11-cv-01043-LHK, 2011 WL 2559825 (N.D. Cal. June 28, 2011) ..........16

*Rambus Inc. v. Samsung Elecs. Co. Ltd.*,
Case No. C-05002298-RMW, 2007 WL 3444376 (N.D. Cal. Nov. 13, 2007) .........15

*Tennenbaum v. Deloitte & Touche*,
77 F.3d 337 (9th Cir. 1996) .......................................................................................11

*U.S. v. Amlani*,
169 F.3d 1189 (9th Cir. 1999) .............................................................................12, 15

## INTRODUCTION

The current dispute before the Court concerns whether any or all of the documents produced by Eolas for *in camera* review should be produced to Amazon in unredacted form. Context is important in resolving that dispute, and therefore, below is a brief procedural background intended to provide the Court with the context for where the current dispute fits within the larger framework of the dispute over McKool Smith's violation of the prosecution bar. Amazon then provides, to the best of its ability given the apparent incomplete status of Eolas's disclosures and the inconsistencies between Eolas's newest privilege log ("New Priv. Log") and its earlier privilege logs, (1) a short description of the emails specifically identified in Amazon's Motion collated with Eolas's New Priv. Log, and (2) other documents identified in Eolas's New Priv. Log that may not have been identified in Amazon's Motion but which appear, based on their descriptions, to suggest violations of the prosecution bar. Finally, for the sake of clarifying the issue before the Court, Amazon also provides a short statement of the legal basis for its position that Eolas should either produce all of the documents it has withheld in unredacted form, or be precluded from relying on their content during the upcoming ordered discovery and further briefing regarding McKool Smith's violations and the appropriate remedy.

### 1. Procedural Background

While this case was pending in Texas, Amazon filed a Motion for Order to Show Cause Regarding Violation of a Patent Prosecution Bar. (Dkt. 262.) Amazon's Motion argued that McKool Smith, who represented Eolas in a previous—unsuccessful—litigation against Amazon, was precluded by a prosecution bar from participating directly or indirectly in the prosecution of related patents. But discovery in this case suggested that, in violation of the bar, McKool Smith had participated in prosecution of the patent at issue—the '507 patent—by, at least, funneling its legal advice to Eolas's prosecution counsel through an Eolas in-house lawyer who acted as a conduit for that advice. Because the materials underlying Amazon's Motion—that is, McKool Smith's communications with its client—were claimed as privileged and had not been produced in unredacted form, Amazon's Motion sought additional discovery regarding McKool Smith's

1  violation of the prosecution bar, along with a hearing and additional briefing following discovery

2  regarding what remedies, up to and including dismissal of the case, should be ordered. (*Id.* at 2.)[1]

3        After transfer to this Court, the parties agreed that, as a first step in resolving Amazon's

4  Motion, Judge Tigar should resolve the parties' sub-dispute about when the prosecution bar ex-

5  pired—Amazon's position was that it expired in October 2014 and Eolas's position was that it

6  expired in July 2014. This dispute over when the bar expired was critical because Eolas's privi-

7  lege logs reflected numerous communications between McKool Smith and Eolas between July

8  2014 and October 2014 concerning amendments or potential amendments to pending claims. As

9  a result, McKool Smith may have directly participated in crafting the language of the as-issued

10  claims that Eolas would later assert against Amazon in this case. Ultimately, Judge Tigar agreed

11  with Amazon and found that the prosecution bar expired in October 2014. (Dkt. 387.)

12        Because of the significance of Judge Tigar's finding that the prosecution bar expired in

13  October 2014 and the real possibility of dismissal as a potential remedy, the parties agreed that

14  the *entire case* should be stayed pending resolution of Amazon's Motion. (Dkt. 402, 405.) Judge

15  Tigar agreed, and entered a new scheduling order, staying all case deadlines except with respect

16  to resolution of Amazon's Motion. (Dkt. 405.) To move resolution of the Motion forward, on

17  September 27, Judge Tigar ordered additional discovery—including written discovery and depo-

18  sitions of McKool Smith—to enable the parties to pursue the information necessary to determine

19  the nature and scope of the violation of the bar, as well as the proper remedy for that violation.

20  (Dkt. 403.)

21        Judge Tigar ordered McKool Smith also to produce to Amazon communications between

22  McKool Smith and Eolas. While Eolas had previously logged (and in some cases produced re-

23  dacted copies of) some communications between McKool Smith and Eolas that were funneled

24  through Eolas to Eolas's outside prosecution counsel, Judge Tigar's order required a broader

25  production. Judge Tigar ordered production of *all* documents involving *any* Eolas representatives

---

[1] Walmart joined Amazon's request for relief (Case 6:15-cv-01038-RWS (E.D. Tex.) Dkt. 276) and Google filed a Joinder (Case 3:17-cv-01138-JST (N.D. Cal.) Dkt. 99).

or agents bound by the prosecution bar related directly or indirectly to the prosecution of the application leading to the '507 patent. (Dkt. 403 at ¶ 1.) Judge Tigar further ordered that if Eolas elected to produce redacted versions of these documents, then Eolas should also lodge unredacted copies with the Court for *in camera* inspection. (*Id.* at ¶¶ 2–3.) Eolas elected to produce redacted versions of its documents to Amazon, and, as ordered, lodged unredacted versions for *in camera* inspection by the Court. These are the documents currently before the Court.

Judge Tigar recognized that Eolas's likely election to produce redacted documents could result in a dispute about the scope of the privilege and whether any or all of the documents should be produced unredacted to Amazon. (*See* Dkt. 403 at ¶ 4.) Thus, Judge Tigar's order stayed the parties' discovery efforts with respect to Amazon's Motion until resolution of the dispute over which documents, if any, should be produced to Amazon in unredacted form. As Judge Tigar's order put it in paragraph 4, "[i]f Eolas produces any material for *in camera* review … the Court will determine how best to proceed. The Court may refer the matter to a Magistrate Judge … to resolve whether the submitted materials must be produced to Amazon." (*Id.* at ¶ 4.) All other discovery on Amazon's Motion was stayed pending resolution of this dispute. (*Id.* at ¶¶ 5–11 ["By [date], or [weeks] following resolution of the dispute identified in Paragraph 4 set forth above"].) Finally, pursuant to paragraph 4 of the September 27 order, Judge Tigar referred to this Court the question of whether the submitted materials must be produced unredacted to Amazon. (Dkt. No. 407.)

Thus, Amazon believes that the scope of the current dispute before this Court is whether the lodged unredacted documents must be produced to Amazon in unredacted form. As shown in Section 3, below, Eolas has implicitly waived the attorney-client privilege, and thus, all withheld materials should be produced in unredacted form to Amazon.

## 2.  Identification of Documents

Amazon has not seen *any* of the withheld documents and has not taken the follow-up discovery Judge Tigar ordered because of the pending dispute regarding production of unredacted documents, and therefore, Amazon is seriously handicapped in determining the nature and scope of the prosecution bar violation. As a result, Amazon does not know whether McKool Smith's

1   violation of the prosecution bar is limited to the documents identified in Amazon's Motion or

2   extends to other documents and other acts—like oral communications—that also violated the bar

3   but are not reflected in the privilege logs or the Motion. Indeed, as noted in Amazon's Motion, it

4   is likely that there are many additional documents, not specifically identified in the Motion, that

5   are relevant to understanding the scope and nature of the violation of the prosecution bar, but un-

6   til Amazon receives unredacted copies of the documents and takes the ordered discovery, Ama-

7   zon is not in a position to identify the full scope of the violation. For instance, as described below

8   based on Eolas's New Priv. Log McKool Smith was providing legal advice regarding claim

9   amendments as early as March 2014. (*See* EOLPRIVREV0000273–290.) At the time Amazon

10  filed its Motion, Amazon could not have known about these March communications because

11  these documents did not appear in Eolas's earlier privilege logs of communications with prose-

12  cution counsel, and Eolas's own privilege logs did not describe the communications as related to

13  claim amendments to the application. These March communications appear to be a stark viola-

14  tion of the prosecution bar, but until Amazon has access to the underlying documents and fair

15  opportunity to take follow-on discovery, Amazon has no way to be certain. Also, Defendants

16  have a pending motion to compel production of emails, and any additional future production or

17  privilege logs to be provided after resolution of that motion may also warrant revisiting the scope

18  of documents relevant to the Court's questions. (*See* Case No. 6:15-cv-01038-RWS Dkt. 221,

19  226, and 227.)

20      Still, in order to provide the Court with the information requested to the best of Amazon's

21  ability based on the present, incomplete record, below are listed the emails specifically identified

22  in Amazon's Motion as best collated with Eolas's New Priv. Log, and with a short statement of

23  why Amazon believes they suggest violations of the prosecution bar. Importantly, Eolas's New

24  Priv. Log appears to be missing entries for documents that were identified in Amazon's Motion,

25  and those documents that are not listed on the New Priv. Log, also do not appear to have been

26  produced to Amazon. As a result, Eolas may not have provided some of the documents Amazon

27  identified in its Motion to the Court.

28

Finally, Amazon also identifies below documents listed in Eolas's New Priv. Log that may not have been identified in Amazon's Motion, but which appear, based on their descriptions, to suggest violations of the prosecution bar.

## DOCUMENTS FROM AMAZON'S MOTION

- August 1, 2014 emails; New Priv. Log # EOLPRIVREV0000482. May also include 483 and 484.

Prosecution counsel, Charles Krueger, filed the critical amendments to the application leading to the '507 patent on August 19, 2014. Only days before this critical amendment, an Eolas lawyer, Adam Masia, sent emails to Eolas's prosecution counsel and members of the McKool Smith trial team. Eolas's earlier privilege logs reflected multiple emails involving Mr. Masia this day. (*See* Motion Ex. 19 at 43 [EOLASPRIV-CK00446–452].) Eolas's New Priv. Log appears to reflect only one email and two supposedly privileged attachments. (*See* New Priv. Log at EOLPRIVREV0000482–484.) Thus, it is possible that some of these emails are missing for the Court's review. Of course, without access to the documents themselves, Amazon cannot know for certain. But in any case, Eolas's original log contained the stunning description "legal advice regarding anticipated litigation of pending claims." (*See* Amazon Motion at 8–9, Ex. 19 at 43 [EOLASPRIV-CK00446-448].) Eolas since modified that description in its New Priv. Log to the no less stunning "legal advice regarding actual or potential claim amendments." This new description expressly reflects McKool Smith's direct participation in the most critical aspect of patent prosecution—claim drafting and amendment.

- August 12, 2014 emails; New Priv. Log # EOLPRIVREV0000493–497, 500–502, 505–508, 510–513, 514–519, 522

Approximately, one week before prosecution counsel filed the critical amendments to the application, James Stetson, Eolas's Chief Legal Offer, sent McKool Smith an email with a copy to others at Eolas. McKool Smith responded that same day, and Mr. Stetson forwarded the entire chain to prosecution counsel. Eolas's earlier privilege logs contained various descriptions for

these emails, ranging from "legal advice regarding patent prosecution" to "legal advice regarding anticipated litigation of pending claims." Now, Eolas appears to describe them all the same way: "legal advice regarding actual or potential claim amendments," or "legal advice regarding patent prosecution of patent in suit." These descriptions appear to be an admission that McKool Smith, barred from participation in prosecution of the application leading to the '507 patent was, in fact, providing legal advice about actual or potential claim amendments to that application and was actively involved in giving legal advice about the prosecution of the '507 patent.

- August 15–16, 2014 emails; New Priv. Log # EOLPRIVREV0000524, 527–531, 533–534, 536–538

On August 15, 2014, four days before the critical amendments to the claims, Mr. Stetson sent an email to the McKool Smith trial team to which McKool Smith responded, and then the next day August 16, Mr. Stetson forwarded that email to Eolas's prosecution counsel. That same day, August 16, the McKool Smith trial team sent Mr. Stetson another email, which Mr. Stetson also forward to prosecution counsel. Eolas's original logs identified these emails as "legal advice regarding patent prosecution," but Eolas later changed its descriptions to "legal advice regarding alleged prior art" and "legal advice regarding prior litigation." Eolas's New Priv. Log describes them as "legal advice regarding potential/current litigation; actual or potential claim amendments; patent prosecution of patent in suit."[2] These privilege log entries appear to reflect a clear, serious, and repeating violation of the prosecution bar that expressly precluded McKool Smith from participating directly or indirectly in the prosecution of the '507 patent.

_____

[2] Several of the emails—EOLPRIVREV0000528, 529, and 534—are described as "email or email chain involving counsel providing (from counsel) or requesting (by client) prior art or other public materials."

- July 15, 2014 emails; No document with this date is identified in the New Priv. Log, but a redacted version of the document was previously produced by Eolas; no production in current, ordered production

On July 15, about one month before the critical claim amendments, McKool Smith sent an email to Mr. Stetson, which Mr. Stetson forwarded to prosecution counsel. Eolas's original privilege log described this email as "legal advice regarding patent prosecution." But Eolas later revised its description to "legal advice regarding prior litigation." Clearly, providing legal advice about prior litigation to prosecution counsel, constitutes, at a minimum, indirect participation in the prosecution of the '507 patent, as prosecution counsel could use this advice to help shape the claims he pursued and the prior art he disclosed. Importantly, while Eolas produced a redacted version of this document in its earlier production and the document was marked in a deposition, Eolas does not appear to have been produced the document as part of Judge Tigar's ordered production and it does not appear to be identified on Eolas's New Priv. Log. Thus, it is possible that the Court may not have this document before it in unredacted form.

- July 30 and 31, 2014 emails; New Priv. Log # EOLPRIVREV0000463, 465–467, 469–470, 473, 476–477, 479–481

On July 30, 2014, Mr. Stetson sent a lengthy email—approximately seven pages of redactions—to prosecution counsel. As this was approximately two weeks before the key amendments were filed, it is likely that Mr. Stetson was reviewing and commenting on the claim amendments that prosecution counsel would ultimately file. Even though Eolas produced a redacted copy of this document earlier and it was an exhibit to Amazon's Motion, it does not appear to be either logged in the New Priv. Log or produced to Amazon as part of Judge Tigar's ordered production. As such, it is possible that this communication also has not been provided to the Court.

The day after sending this long email to prosecution counsel, on July 31, Mr. Stetson sent an email to the McKool Smith trial team to which the McKool Smith trial team responded. Mr. Stetson then sent McKool Smith's response to prosecution counsel with his own lengthy comments. Eolas's original privilege log described this exchange as "legal advice about patent prosecution," which it seems to be. Eolas later scrubbed this description, and changed it to "legal ad-

vice regarding alleged prior art." Now, Eolas describes it as an "email or email chain involving counsel providing (from counsel) or requesting (by client) prior art or other public materials." Yet, even though Eolas apparently contends that these communications merely forward prior art as permitted by the safe-harbor provision, Eolas's New Priv. Log does not expressly invoke the safe-harbor provision. This is so even though other entries in the New Priv. Log do expressly invoke the safe-harbor provision. (*See, e.g.*, EOLPRIVREV0000523, 525, 532.) This suggests that these communications reflect more than McKool Smith merely forwarding prior art to the PTO.

Eolas's earlier privilege logs reflected similar communications of the same date but with different recipients. (*See* Amazon's Motion at 8 n.30; Ex. 9 to Amazon's Motion at page 42 [EOLASPRIV-CK00434].) Eolas's New Priv. Log also does not appear to reflect these communications, even though they were specifically identified in Amazon's Motion, and it does not appear that McKool Smith produced these communications to Amazon, or presumably, the Court.

- May 9, 2012 emails; New Priv. Log # EOLPRIVREV000006, 58, 101, 112, 120, 164, 165

This group of emails is from McKool Smith to Mr. Stetson, which Mr. Stetson forwarded to Eolas's prosecution counsel. The communications have been described in various ways on Eolas's multiple privilege logs—"legal advice regarding patent prosecution" and "legal advice regarding prior art." Eolas's most recent description of these emails is that they are "email or email chain involving counsel providing (from counsel) or requesting (by client) prior art or other public materials," but not as safe-harbor materials.

- June 12, 2012 email; New Priv. Log # EOLPRIVREV0000166, 182–183, 199, 215, 218, 221

On June 12, 2012, Mr. Stetson received an email from members of the McKool Smith trial team that Mr. Stetson forwarded to prosecution counsel. Three days later, on June 15, Eolas's prosecution counsel filed a notice with the PTO about the Tyler jury's verdict invalidating the '507 patent's predecessor patents. As with the May emails described above, Eolas's privilege

1   logs described this communication as "legal advice regarding patent prosecution" and "legal ad-

2   vice regarding alleged prior art." The New Priv. Log describes the email as "email or email chain

3   involving counsel providing (from counsel) or requesting (by client) prior art or other public ma-

4   terials," but not as protected by the safe-harbor provision.

5

6   - June 16, 2014 email; New Priv. Log # EOLPRIVREV0000411–417, 420, 423,

7     426

8   In the two years between June 2012 and June 2014, there was no activity in the prosecu-

9   tion of the patent, and during that period of inactivity, Mr. Stetson did not forward McKool

10  Smith email to Eolas's prosecution counsel. But in Spring 2014 when prosecution counsel turned

11  his attention to making the key amendments to the claims, McKool Smith re-inserted itself in the

12  prosecution. On June 16, 2014, Mr. Stetson received an email from the McKool Smith trial team

13  that Mr. Stetson forwarded to prosecution counsel on June 17, 2014. Eolas's earlier privilege

14  logs describe this email as "legal advice regarding patent prosecution," and "legal advice regard-

15  ing alleged prior art." In the New Priv. Log, these communications are described as "Email or

16  email chain involving counsel providing (from counsel) or requesting (by client) prior art or oth-

17  er public materials." The New Priv. Log does not invoke the safe-harbor provision for these

18  emails, notwithstanding the fact that it invokes it for other documents.

19

20  - June 18, 2014 email; New Priv. Log # EOLPRIVREV0000429–436

21  On June 18, 2014, McKool Smith's trial team sent Mr. Stetson another email. The next

22  day, June 19, 2014, Mr. Stetson forwarded that email to prosecution counsel. As with the June 16

23  email, Eolas's privilege logs describe these communications as "legal advice regarding patent

24  prosecution" and "legal advice regarding alleged prior art." In its latest log, Eolas describes these

25  communications as "email or email chain involving counsel providing (from counsel) or request-

26  ing (by client) prior art or other public materials," but not as safe-harbor materials.

27

28

**DOCUMENTS NOT NECESSARILY IDENTIFIED IN AMAZON'S MOTION**

- EOLPRIVREV0000273–279, 281–289, 482–486, 495–522, 526, 539–546

Eolas describes these documents as "legal advice regarding actual or potential claim amendments." These emails appear in two periods: (1) March 2014—long before Eolas contended that the prosecution bar expired (EOLPRIVREV0000273–279, 281–289); and (2) in August 2014—just as prosecution counsel was making the critical claim amendments (482–486, 495–522, 526, 539–546). In both cases, the emails appear to reflect McKool Smith giving legal advice about potential claim amendments, and perhaps even reviewing and editing proposed amendments. Thus these emails—which in many cases Amazon did not and could not know about at the time Amazon filed its Motion—may be among the most significant evidence of McKool Smith's violation of the prosecution bar.

- EOLPRIVREV0000448–457, 526–527, 530–531, 533, 536, 580–584

Eolas describes each of these documents as relating to "legal advice regarding patent prosecution of patent in suit." McKool Smith had these communications at a time when McKool Smith was barred from direct or indirect participation in the prosecution of the '507 patent. Providing legal advice regarding the prosecution of the patent in suit appears to be as clear-cut a violation of the prosecution bar as there can be.

- EOLPRIVREV0000403–410

These documents purport to reflect legal advice regarding prior litigation. McKool Smith's legal advice regarding Eolas's prior, unsuccessful litigation, could prove marvelously useful to prosecution counsel. For instance, prosecution counsel could use it to help craft claims that would read on Amazon's products while avoiding the pitfalls of the prior art offered at trial. Thus, to the extent this legal advice was intended to be (or was) communicated to prosecution counsel—for example, during a non-logged phone call between Mr. Stetson and prosecution

counsel—this would certainly violate the prosecution bar's injunction prohibiting indirect partic-

ipation in the prosecution of the '507 patent.

**3.  All of the documents produced *in camera* should be produced unredacted to Amazon.**

As shown below, Eolas implicitly waived the attorney-client privilege, and thus, all of the documents Eolas has produced for *in camera* inspection, should be produced to Amazon in unredacted form. In the alternative, if Amazon does not receive the unredacted documents, Eolas should be precluded from relying on the content of withheld documents during the upcoming discovery as well as further briefing regarding Eolas's violations and the appropriate remedy.

**3.1.  Under the fairness doctrine, Eolas implicitly waived the attorney-client privilege as to all withheld documents, and therefore, they should all be produced in unredacted form.**

Eolas has put its communications with McKool Smith at issue, and under the fairness doctrine, the Court should find an implicit waiver of the privilege. In the Ninth Circuit, the fairness doctrine holds that a party who puts at issue its attorney-client communications implicitly waives the privilege. "Where a party raises a claim which in fairness requires disclosures of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). As the Ninth Circuit said in *Tennenbaum v. Deloitte & Touche*, the principal purpose of the doctrine is to "protect against unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." 77 F.3d 337, 340–41 (9th Cir. 1996).

The Ninth Circuit applies a three pronged test to determine whether the fairness doctrine requires implicit waiver. Courts find waiver where "(1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). All three prongs are satisfied here.

### 3.2. Eolas affirmatively put McKool Smith's communications at issue.

The affirmative act that can trigger implicit waiver under the fairness doctrine is not limited to filing suit, but rather can be a party's affirmative adoption of a position that can be tested only by disclosure of the withheld materials. So, where the withholding party injects an issue into the case and the withheld material is the only meaningful source of information to challenge or respond to that issue, the withholding party has taken the affirmative act necessary to find implicit waiver. For instance, in the seminal case of *U.S. v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999), a criminal defendant's ineffective assistance of counsel defense was based on his claim that the prosecutor disparaged his original lawyer in the defendant's presence, which caused him to fire his lawyer. The Ninth Circuit affirmed a finding of implicit waiver because the defendant affirmatively injected an issue into the case and fairness required access to privileged information to enable the government to respond. As the court explained, other evidence would be "of little, if any value in evaluating whether the prosecutor's statements caused Amlani to retain other counsel. If the government has no access to the subpoenaed documents and other communications because of privilege, it would be forced to rely almost exclusively on Almani's and Katz's characterization of events." *Id.* at 1196. The court concluded that the defendant put the privileged communications at issue through his affirmative act: "In fairness, to defend against these charges, the government must have access to Amlani's communications with counsel to determine whether in fact the disparaging comments caused the substitution of counsel." *Id.*; *see also Apple Inc. v. Samsung Elecs. Co., Ltd.*, 306 F.R.D. 234, 241–45 (N.D. Cal. 2015) (finding an affirmative act where defendant claimed that counsel's dissemination of expert-witness report in violation of protective order was unintentional and innocuous).

Eolas has affirmatively injected its communications with McKool Smith into the case in, at least, three different ways.

First, Eolas has injected McKool Smith's communications by claiming that the communications fall within the prosecution bar's safe-harbor provision. The prosecution bar permitted counsel merely to forward prior art to the PTO, and in its opposition Eolas argued that some of its communications were doing just that. (*See, e.g.*, Dkt. 274 at 1–2.) But Eolas's own privilege

1   logs raise serious doubts about this safe-harbor defense. For instance, Eolas's privilege logs—all

2   three versions—have dozens of entries reflecting legal advice concerning prior art, but only three

3   entries, and even then they are limited to Eolas's *third* version of its privilege log (*see*

4   EOLPRIVREV0000523, 525, 532)—characterize those communications as the mere transmittal

5   of prior art without associated or further substantive legal advice. Obviously, without access to

6   the unredacted versions of these communication, Amazon is stymied from challenging Eolas's

7   characterization.

8        Second, Eolas has injected McKool Smith's communications by making McKool Smith's

9   subjective beliefs relevant. As Eolas puts it, "Eolas submits that the reasonableness of its under-

10  standing of the prosecution bar expiration provision precludes any finding of bad faith conduct

11  that would be necessary to support any claim for relief by Amazon…." (Dkt. 399 at 1.) Eolas

12  identifies no authority supporting the proposition that Amazon must prove Eolas's bad faith to

13  prove a violation of the prosecution bar, but for purposes of the current dispute, if Eolas is cor-

14  rect and Amazon must prove McKool Smith's subjective beliefs and bad faith, Eolas's position

15  is a classic example of how injecting subjective state-of-mind works a waiver of privilege under

16  the fairness doctrine.

17       Third, Eolas has injected McKool Smith's communications by claiming that Amazon

18  must prove prejudice. As Eolas puts it, "neither Amazon nor Google has been prejudiced: wheth-

19  er the prosecution bar expired in July 2014 or October 2014 had no discernable impact on the

20  prosecution of the patent-in-suit." (Dkt. 399 at 3.) According to Eolas, McKool Smith's commu-

21  nications did not affect the prosecution of the patent, and so Amazon is not entitled to relief. (*Id.*)

22  Again, the only meaningful way to respond to and test the veracity of Eolas's characterization is

23  through waiver of the privilege.

24  **3.3.    McKool Smith's communications are directly relevant to each of the three issues Eo-
25          las injected into this case.**

26       To satisfy the second requirement for implicit waiver, the withheld communications must

27  be relevant to the issues injected by the withholding party into the case. But the communications

28  do not have to be the *only* evidence relevant to the injected issue. Instead, so long as the commu-

nications are directly relevant and necessary to the injected issues, this requirement is satisfied— even if the attorney-client communications are not the only relevant evidence. *In re Lidoderm Antitrust Litig.*, Case No. 14-MD-02521, 2016 WL 4191612, at *5 (N.D. Cal. Aug. 9, 2016) ("[I]f defendants inject their subjective beliefs on specific topics as part of their defense of the Watson settlement—like a subjective belief that patent litigation is inherently uncertain—where evidence establishes that the subjective belief was also informed by attorney advice, it would be unfair to not allow plaintiffs access to defendants' contemporaneous attorney-client information to test the veracity of the defendants' justifications in this litigation even though that belief is based in part on business judgment and executive experience.").

McKool Smith's communications are directly relevant and necessary to each of the three issues Eolas has injected into this case. On the first issue—whether any of McKool Smith's communications fall within the safe-harbor provision—McKool Smith's communications are the *only* source of relevant evidence. The safe-harbor provision permits the mere transmittal of prior art to the PTO, but does not permit a barred party to provide legal advice about that prior art. Thus, the actual content of these communications is central to establishing the facts.

McKool Smith's communications are also directly relevant and necessary to respond to the second injected issue—McKool Smith's supposed good faith. McKool Smith's communications may demonstrate that McKool Smith has been in violation of the prosecution bar all along. Indeed, Eolas's New Priv. Log reflects McKool Smith giving legal advice about claim amendments—and perhaps even reviewing and editing them—at least as early as March 2014, long before even Eolas claims that the prosecution bar expired. (*See* EOLPRIVREV0000273–279, 281–289.) Understanding the nature of these communications is, thus, highly relevant evidence on McKool Smith's lack of good faith. But, again, the underlying communications are necessary to respond.

McKool Smith's communications are similarly relevant to the third injected issue— whether McKool Smith's communications affected the prosecution of the '507 patent. For instance, if McKool Smith suggested changes to claim language—which the privilege logs strongly suggest—and that language later appeared in the claims, this would be powerful evidence

1    against McKool Smith's claim that its advice did not affect the prosecution of the patent. As

2    such, the communications are directly relevant to this third issue too.

3    **3.4.    The withheld communications are vital to Amazon's response.**

4             The communications themselves are vital to respond to each of the three injected issues.

5    For instance, to respond to Eolas's contention that the documents fall within the safe-harbor pro-

6    vision, Amazon needs to see the documents. Similarly, the communications themselves are nec-

7    essary to dispute McKool Smith's self-serving claim that it acted in good faith.[3] For Eolas's con-

8    tention that McKool Smith's communications did not affect the prosecution, only the underlying

9    communications themselves can prove or disprove that fact. In short, the most relevant and vital

10   evidence to respond to Eolas's characterization of the communications is the communications

11   themselves, and without those documents, the Court will hear a one-sided presentation of the ev-

12   idence. Indeed, the Court can expect Eolas to characterize its lawyers' communications in the

13   most innocuous way, and without access to documents themselves, Amazon is left—unfairly—

14   to accept that characterization. The New Priv. Log paints an alarming picture that McKool Smith

15   may have been extensively involved in the prosecution of the patent—almost from the moment

16   the application was filed right up through the critical amendments—but only the underlying doc-

17   uments can prove or disprove that fact. The communications are, thus, vital to Amazon's re-

18   sponse to Eolas's injected issues, satisfying the third prong of the implicit-waiver test.

19

20

21

22   _____

23   [3] When a lawyer's subjective beliefs are at issue, courts routinely find that withheld attorney-
     client communications are vital to the response. *See, e.g.*, *Apple*, 306 F.R.D. at 242 (finding

24   waiver where "Samsung referenced privileged communications to argue there is 'no evidence
     that anyone deliberately, with a purpose of sharing information that should not be shared at any

25   time disclosed that information. We are talking about inadvertent disclosures."); *Amlani*, 169
     F.3d at 1196 (finding waiver where not giving the government access to privileged materials,

26   would force the government "to rely almost exclusively on Amlani's and Katz's characterization
     of events"); *Rambus Inc. v. Samsung Elecs. Co. Ltd.*, Case No. C-05002298-RMW, 2007 WL

27   3444376, at *3–4 (N.D. Cal. Nov. 13, 2007) (waiver where issue was subjective belief regarding
     equitable tolling of statute of limitations).

28

### 3.5. Eolas must either produce the withheld materials in unredacted form, or be barred from making the arguments that place this evidence at issue.

Eolas's defenses to Amazon's Motion put its communications with McKool Smith at issue and those communications are vital to Amazon's ability to respond. As such, the Court should find an implicit waiver under the fairness doctrine. In the Ninth Circuit when a court finds implicit waiver—as the Court should here—the court should give the withholding party the choice of either being precluded from making the arguments that implicate the privileged communications or produce the communications to the challenging party. As the Ninth Circuit put it in *Bittaker v. Woodford*, "the court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claim [or defense] implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim [or defense], then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it." 331 F.3d 715, 720 (9th Cir. 2003) (emphasis in original); *see also Oracle Am., Inc. v. Innovative Tech. Distributors, LLC*, Case No. 11-cv-01043-LHK, 2011 WL 2559825, at *1–2 (N.D. Cal. June 28, 2011) (denying motion to file privileged documents *in camera* and ordering either waiver or preclusion); *In re Lidoderm*, 2016 WL 4191612, at *28 (granting motion seeking preclusion or waiver).

Thus, the Court should give Eolas the same choice: Either Eolas should waive privilege and produce the withheld documents in unredacted form or Eolas should be precluded, for all purposes, from relying on the communications for any arguments regarding violation of the prosecution bar or the appropriate remedy, including but not limited to the three arguments described above—(1) that the documents fall into the safe-harbor provision; (2) that McKool Smith acted with good faith; or (3) that the communications did not affect the prosecution of the '507 patent.

1   DATED:  November 22, 2017          Respectfully submitted,

2

3                                      By _/s/ Richard G. Frenkel_____

4                                      DOUGLAS E. LUMISH, Bar No. 183863
                                       doug.lumish@lw.com
5                                      RICHARD G. FRENKEL, Bar No. 204133
                                       rick.frenkel@lw.com
6                                      JEFFREY G. HOMRIG, Bar No. 215890
                                       jeff.homrig@lw.com
7                                      NICHOLAS YU, Bar No. 298768
                                       nicholas.yu@latham.com
8                                      LATHAM & WATKINS LLP
                                       140 Scott Drive
9                                      Menlo Park, CA 94025
                                       Telephone: (650) 328-4600
10                                     Facsimile:  (650) 463-2600

11                                     JOSEPH H. LEE, Bar No. 248046
                                       joseph.lee@lw.com
12                                     LATHAM & WATKINS LLP
                                       650 Town Center Drive, 20th Floor
13                                     Costa Mesa, CA 92626-1925
                                       Telephone: (714) 540-1235
14                                     Facsimile:  (714) 755-8290

15                                     AMIT MAKKER, Bar No. 280747
                                       amit.makker@lw.com
16                                     LATHAM & WATKINS LLP
                                       505 Montgomery Street, Suite 2000
17                                     San Francisco, CA 94111-6538
                                       Telephone: (415) 395-8034
18                                     Facsimile:  (415) 395-8095

19                                     MELISSA ARBUS SHERRY (pro hac vice)
                                       melissa.sherry@lw.com
20                                     ELANA NIGHTINGALE DAWSON (pro hac vice)
                                       elana.nightingaledawson@lw.com
21                                     LATHAM & WATKINS LLP
                                       555 Eleventh Street, Suite 1000
22                                     Washington, DC 20004-1304
                                       Telephone: (202) 637-2200
23                                     Facsimile:  (202) 637-2201

24                                     JENNIFER H. DOAN (pro hac vice)
                                       jdoan@haltomdoan.com
25                                     JOSHUA R. THANE (pro hac vice)
                                       jthane@haltomdoan.com
26                                     J. RANDY ROESER(pro hac vice)
                                       rroeser@haltomdoan.com
27                                     HALTOM & DOAN
                                       6500 Summerhill Road, Suite 1000
28                                     Texarkana, TX 75503
                                       Telephone: (903) 255-1000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile:  (903) 255-0800

GRANT KINSEL, Bar No. 172407
gkinsel@perkinscoie.com
PERKINS COIE, LLP
1203 3rd Street, 39th Floor
Seattle, WA 98112
Telephone: (206)-395-316
Facsimile: (206) 359-9000

*Counsel for Defendant*
*AMAZON.COM, INC.*