UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EOLAS TECHNOLOGIES INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM INC, et al.,<br><br>Defendants. | Case No.17-cv-03022-JST (JSC)<br><br>**ORDER RE: PRIVILEGE WAIVER DISPUTE**<br><br>Dkt. Nos. 466, 467, 470, 477, 484 |

In this consolidated action, Eolas alleges that Amazon, Google, and Walmart are infringing on United States Patent No. 9,195,507 ("the '507 Patent"). Defendants Amazon and Google (Defendants) contend that Eolas' attorneys violated a patent prosecution bar imposed in an earlier action. Eolas admits that it violated the bar as of July 22, 2014—the date it thought it expired—but denies that it violated before that date. At a hearing in March 2018, Eolas consented to disclosure of its attorney-client privileged communications prior to July 22, 2014 and those communications have been produced. Defendants now contend that Eolas must produce its privileged communications after July 22, 2014 because it expressly waived the privilege as to those communications by consenting to disclosure of the pre-July 22, 2014 material and because it impliedly waived the privilege by raising harmlessness and good faith defenses. After carefully considering the parties' written submissions and having had the benefit of oral argument on November 9, 2018, the Court DENIES Defendants' motion to compel. The Court finds that Eolas has not expressly or impliedly waived its attorney-client and attorney work-product privilege in the post-July 22, 2014 material. The Court also DENIES Eolas' motion to compel related discovery.

**BACKGROUND**

Eolas, Amazon, and Google were parties to prior litigation in the District Court for the Eastern District of Texas regarding similar (according to Amazon identical) patents.[1] *See Eolas Tech. v. Adobe Sys, Inc.*, 6:09-cv-00446-LED (E.D. Tex.). In that earlier action, the district court issued an order imposing the following prosecution bar:

> "Any person who reviews or otherwise learns the contents of Technical Protected Material produced by another Party may not participate, directly or indirectly, in the prosecution of any patent claims … claiming the subject matter disclosed in the Patents-in-Suit from the time of receipt of such information through and including one (1) year following the entry of a final non-appealable judgment…."

(Dkt. No. 262-2 at 6.) That case went to trial in 2012 and the jury found the patent claims invalid—based on anticipation and obviousness—and returned a verdict in favor of the defendants. *See Eolas Tech. v. Adobe Sys., Inc.*, 6:09-cv-00446-LED, Dkt. No. 1353 (Jury Verdict, Feb. 9 2012). Eolas appealed and the Federal Circuit affirmed and entered judgment on July 22, 2013. *See Eolas Techs. Inc. v. Amazon.com, Inc.*, 521 F. App'x 928 (Fed. Cir. 2013). The law firm of McKool Smith represented Eolas in this prior action.

A year and a half later, Eolas—again represented by McKool Smith—filed the underlying actions against Amazon, Google, and Walmart, again in the Eastern District of Texas. Eolas alleges infringement of the '507 Patent" entitled, "Distributed Hypermedia Method and System for Automatically Invoking External Application Providing Interaction and Display of Embedded Objects Within A Hypermedia Document," which was issued by the United States Patent and Trademark Office on November 24, 2015. (Dkt. No. 1 at ¶ 14.) Eolas owns the patent and the

---

[1] The patents in this prior action were U.S. Patent Nos. 5,838,906 ("the '906 Patent") and 7,599,985 ("the '985 Patent"). The '906 Patent was entitled "Distributed Hypermedia Method for Automatically Invoking External Application Providing Interaction and Display of Embedded Objects Within a Hypermedia Document." The '985 Patent was entitled "Distributed Hypermedia Method and System for Automatically Invoking External Application Providing Interaction and Display of Embedded Objects Within a Hypermedia Document." The '906 and '985 Patents were generally directed to a software system that is operable without user activation to access an object, present it in a browser display window, and then allow a user to manipulate the object. Eolas is the exclusive licensee of these patents.

named inventors of the '507 patent are Michael Doyle, David Martin, and Cheong Ang—these are the same inventors of the patents in the prior suit.

Shortly after Eolas brought the action it filed a motion for summary judgment seeking a declaration that the Patent and Trademark Office's 1042-day patent term adjustment was not invalid. (Dkt. No. 88.) This was a preemptive motion because Defendants contended that the patent term adjustment was invalid because Eolas engaged in gamesmanship and, in particular, unreasonably and intentionally delayed its prosecution of the '507 patent. Without the patent term adjustment, the '507 patent arguably expired in October 2014—20 years from the filing of the parent application. The Texas court denied Eolas' motion for summary judgment without prejudice on the grounds that there were disputes of fact as to whether the prosecution history reflects an effort to delay or expedite the prosecution. (Dkt. No. 202 at 5.)

Each of the defendants thereafter sought to have the actions dismissed for improper venue or transferred to the Northern District of California. The district court denied each of these motions. (*See, e.g.*, Dkt. No. 196.) However, the Federal Circuit subsequently granted Google's petition for a writ of mandamus and ordered the action transferred to this District. (Dkt. No. 249.) The Google action was transferred here on February 24, 2017. (Dkt. No. 251.) Two months later, the Texas court separately transferred the Amazon and Walmart actions. (Dkt. Nos. 326, 327.) The consolidated actions were assigned to District Judge Tigar.

Prior to transfer, Amazon filed a motion for an order to show cause regarding Eolas' alleged violation of the prosecution bar imposed in the prior action between Amazon and Eolas. (Dkt. No. 262.) Amazon's motion contended that Eolas violated the prosecution bar because McKool Smith delivered prosecution advice to Eolas' Chief Legal Officer, Jim Stetson, who forwarded the information to Eolas' outside patent lawyer, Charles Krueger. Amazon contends that "this scheme" began as early as six months after the '507 patent application was filed in November 2011. (Dkt. No. 262 at 8.)

The fully briefed motion for an order to show cause was transferred to this District prior to a decision. On September 1, 2017, Judge Tigar issued an order regarding the motion addressing the threshold issue of when the prosecution bar expired. (Dkt. No. 387.) Eolas insisted that the

3

bar expired on July 22, 2014, one year after the Federal Circuit entered its order affirming the jury verdict; whereas Amazon maintained that the bar expired on October 20, 2014—90 days after final judgment which is the period within which a party could seek review with the Supreme Court. This argument contradicted the position that Amazon and Google had previously taken. (Dkt. No. 118 at 7 (Amazon stated the bar ended in July 2014 "one year after the Federal Circuit's Rule 36 affirmance"); Dkt. No. 119 at 4 (Google stated, "the August 2014 amendment occurred just one month after the Prosecution Bar in the prior case expired (using the Federal Circuit's July 22, 2013 affirmance as the nonappealable final judgment)".) Judge Tigar held that the bar expired on October 20, 2014. finding that there was no reason to distinguish this case from one in which a petition for writ of certiorari was filed. In so holding, Judge Tigar noted that Eolas had failed show that judicial estoppel applied to justify the earlier date. (Dkt. No. 387 at 3.) Judge Tigar then ordered the parties meet and confer regarding next steps "including production of documents or in camera review of additional documents by the Court." (*Id.*)

Pursuant to Judge Tigar's order, the parties thereafter filed competing proposals. (Dkt. Nos. 399 & 400.) Eolas argued that no further discovery regarding the prosecution bar was necessary because their interpretation of the expiration date as July 22, 2014 was reasonable. Eolas also insisted that Amazon had not been prejudiced by any violation of the prosecution bar between July and October 2014 because the Patent Office did not take any action until March 2015, and while Eolas amended the claim in August—before the prosecution bar expired—it could have amended just a few months later in November 2014 and the course of the patent prosecution would not have changed. Eolas further objected to any attempt by Amazon to obtain documents or other discovery regarding privileged attorney-client communications. (Dkt. No. 399.)

Amazon, for its part, insisted that it should be allowed to review McKool Smith's communications so that it could "brief the Court on their import." (Dkt. No. 400 at 2:16-21.) Amazon suggested two alternatives: (1) Eolas could produce these documents subject to a limited subject-matter waiver and with the express agreement that any materials so produced will be used exclusively to resolve the Motion and for no other purpose; or (2) if Eolas produced the materials

4

for *in camera* review, then the parties would engage in limited written and deposition discovery intended to provide as much information as possible without invading any bona fide privilege.

Judge Tigar essentially adopted Amazon's proposal and ordered Eolas to produce documents "involving any Eolas representatives or agents bound by the prosecution bar related directly or indirectly to the prosecution of the application leading to the '507 patent." (Dkt. No. 403 at ¶ 1.) In particular, Judge Tigar ordered Eolas to: (1) lodge with the Court a BATES-labeled, unredacted copy of the withheld document(s) for *in camera* review; (2) produce to Defendants and lodge with the Court, a BATES-labeled, redacted copy of the withheld document(s), with redactions narrowly limited to only the content Eolas contends is protected by privilege; (3) produce to Defendants and file with the Court a privilege log identifying each withheld document or document with redacted contents; and (4) produce to Defendants and file with the Court a list of counsel with identifying information. (*Id*. at ¶ 2.) The order also stated that upon receipt of the *in camera* production the court "may refer the matter to a Magistrate Judge; invite briefing on the basis of the privilege logs; conduct its own in camera review; or take other action to resolve whether the submitted materials must be produced to Amazon." (*Id*. at ¶ 4.) The order explained that once the court resolved any privilege dispute, Defendants could notice depositions of (a) a representative of McKool Smith to testify about the produced documents and any potential violation of the prosecution bar, and (b) any other individuals for testimony limited to the produced documents and any potential violation of the prosecution bar (including, if requested, Dr. Doyle (Named Inventor/Eolas), and Messrs. Stetson (Eolas), Swords (Eolas), and Krueger (Prosecution Attorney) for further deposition)" and serve written discovery. (*Id*. at ¶¶ 5-6.) Eolas would then have the opportunity to serve objections and, if after meeting and conferring the parties were not able to resolve any dispute, they could advise the Court and request a hearing. (*Id*. at ¶¶ 7-9.) Then, after Defendants conducted their discovery, the parties are to "file a proposed briefing and hearing schedule (or if necessary, competing schedules) for briefing remedies, including dismissal and/or judgment." (*Id*. at ¶ 10.)

Judge Tigar thereafter referred discovery matters, including the prosecution bar discovery dispute, to this Court, and stayed the action pending resolution of Amazon's prosecution bar

5

motion. (Dkt. Nos. 405, 407.) On November 16, 2017, this Court ordered Eolas to provide a paper copy of the *in camera* submission and directed Amazon to file a short statement identifying those entries on the privilege log which it contends suggest that McKool Smith violated the patent prosecution bar because the entries on the privilege log did not match those referenced in Amazon's original order to show cause. (Dkt. No. 409.) Eolas thereafter provided seven banker's boxes full of binders of documents for *in camera* review. In addition, Amazon filed a further statement which clarified that the privilege log Eolas provided after Judge Tigar's order was different from the log which it relied upon when preparing the order to show cause and pointed to entries which it contends suggested violation of the prosecution bar. (Dkt. No. 410.) Eolas' responsive statement clarified that the difference in logs was a result of Judge Tigar's order and that the newer log omitted communications from Eolas' prosecution counsel, Charles Krueger. (Dkt. No. 413.)

After reviewing the documents *in camera*, the Court issued an order setting a hearing and (1) noting that the vast majority of the documents on Eolas' privilege log were not confidential because they included publicly available court filings from the prior action as exhibits; (2) ordering Eolas to supplement its *in camera* production with the omitted Krueger documents; and (3) ordering the parties be prepared to discuss various matters at the upcoming hearing. (Dkt. No. 414.)

The parties appeared for a hearing on March 29, 2018. At the hearing, Eolas admitted that it had violated the patent prosecution bar as of July 22, 2014. (Dkt. No. 430 at 17, 24.) After the Court indicated that its *in camera* review of the withheld documents supported a prima facie inference that the prosecution bar had been violated before July 22, 2014 (*id.* at 16-17), Eolas agreed to produce all of its withheld pre-July 22, 2014 communications on the condition that the documents would be produced attorneys' eyes only and could only be used for purposes of the prosecution bar motion and patent adjustment invalidity theory (given that the theory is intertwined with the prosecution bar issue). (Dkt. No. 430 at 24-29.) While Defendants claimed cutting off the production at July 22, 2014 would deprive them of the relevant context for the earlier documents, the Court noted that Defendants' review of the pre-July 22, 2014 documents

6

might provide them with grounds to argue to the Court that Eolas should have to produce the post-July 22, 2014 privileged communications, notwithstanding Eolas' concession that it violated the prosecution bar after that date. (*Id.* at 30.)

The following month the Court held a hearing on the discovery status. (Dkt. No. 444.) Eolas agreed to produce all pre-July 22, 2014 internal McKool Smith documents that referenced the '507 patent. (*Id.* at 10.) McKool Smith also reiterated its intent to maintain the attorney-client privilege as to the post-July 22, 2014 documents. (*Id.* at 11.) Thereafter, when the Court had not heard from the parties for a few months, it requested a written status update. (Dkt. No. 448.) In the update, Defendants proposed a timeline for other discovery to occur in September -November and for the parties to file "any motion regarding any outstanding discovery issues" in December 2018 with the hearing sometime in January 2019. (Dkt. No. 450 at 5-6.) Eolas' timeline was substantially the same. (*Id*. at 9-10.) The Court held a further status hearing on September 6, 2018 and set a briefing schedule for Defendants' motion to compel post-July 22, 2014 attorney-client privileged documents. (Dkt. No. 453.) The parties thereafter filed written submissions and the Court held a hearing on November 9, 2018.

## DISCUSSION

Defendants Amazon and Google move to compel Eolas to produce its attorney-client privileged communications created after July 22, 2014; that is, communications made after Eolas admits it violated the patent prosecution bar. They make two primary arguments in support of their motion: (1) Eolas expressly waived the privilege as to those communications, and (2) Eolas impliedly waived the privilege. Neither argument persuades the Court to compel Eolas to produce its post July 22, 2014 attorney-client privileged communications.

**A. Choice of Law**

Federal Circuit law governs the privilege waiver question. These consolidated actions were transferred here from the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 326 at 2); accordingly, Fifth Circuit law would normally apply. *See Ferens v. John Deere Co*., 494 U.S. 516, 522 (1990). However, because the privilege question here relates to a question of substantive patent law, Federal Circuit law applies. *See Advanced Cardiovascular Sys., Inc. v.*

*Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001) ("Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law."); *see also In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1290–91 (Fed. Cir. 2016) (Federal Circuit law applies regarding "whether particular documents are discoverable in a patent case because they relate to issues of validity and infringement"); *see also id.* (Federal Circuit law also applies "when making 'a determination of the applicability of the attorney-client privilege to [a party's] invention record [because it] clearly implicates, at the very least, the substantive patent issue of inequitable conduct.") (internal quotation marks and citation omitted)). Nonetheless, no party contends that the law of the Federal, Fifth or Ninth Circuit differs in a material way as to the privilege waiver issue.

**B. Express Waiver**

Federal Rule of Evidence 502(a) provides that when a party waives the attorney-client privilege or work-product protection in a federal proceeding, "the waiver extends to an undisclosed communication or information . . . only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness be considered together." Defendants urge that Eolas' waiver as to the pre-July 22, 2014 communications was intentional, the sought-after post-July 22, 2014 communications regarding the '507 patent application concern the same subject matter as the pre-July 22, 2014 communications, and in fairness all the communications ought to be considered together.

Assuming, without deciding, that Rule 502(a) applies in the unique circumstances here (Dkt. No. 403 at 23:5-8 (noting that Eolas' waiver is not a subject-matter waiver)), the Court finds that fairness does not require Eolas to disclose the post-July 22, 2014 communications. "[A] subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502(a) Advisory Committee Note (2011); *see also Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP*, 684 F.3d 1364, 1369 (Fed. Cir. 2012) (observing that Rule 502(a), enacted in 2008,

8

"limited the effect of waiver by strongly endorsing fairness balancing."). The Court is persuaded that permitting Eolas to maintain its privilege over the post-July 22 communications does not lead to a selective and misleading presentation of the evidence to Defendants' disadvantage.

Eolas concedes that it violated the patent prosecution bar after July 22, 2014. In response to Defendants' insistence that the privilege log showed that it had violated the privilege before that date, Eolas waived the privilege for communications prior to July 22, 2014. Thus, the parties have equal access to the material relevant to any argument as to whether Eolas violated the privilege before July 22, 2014. Defendants nonetheless argue that because, in their view, the produced documents demonstrate that Eolas violated the prosecution bar before July 22,[2] "documents *created* after that date could certainly speak to the scope and consequences of earlier violations." (Dkt. No. 467 at 8.) That documents created after July 22 *might* be relevant is not the same as saying that in fairness they need to be produced to avoid a misleading presentation as to whether Eolas violated the bar prior to July 22, 2014. The Court does not understand how something Eolas and its counsel did after it admittedly violated the bar is material to whether it violated the bar prior to July 22. When Eolas waived the privilege as to the pre-July 22 communications, the Court noted that Defendants might learn something from that material that would warrant compelling production of the post-July 22 material; to put it another way, they might discover information that for fairness sake would require disclose of privileged material after Eolas concedes the prosecution bar was violated. (Dkt. No. 430 at 30.) Defendants, however, have not identified anything in the production that suggests as a matter of fairness Defendants need to see Eolas' privileged communications about the '507 patent application during the period Eolas admits its counsel was assisting with the prosecution of the application and thus violating the bar.

Defendants also argue that because Eolas contends that the pre-July 22 documents show

---

[2] Defendants represent in their motion that this Court stated, "that upon review of *in camera* documents, there was participation in violation of the prosecution bar before July 22, 2014." (Dkt. No. at 8.) The Court made it clear, however, that its statement was based on its review alone without any argument. It further clarified that it was making a prima facie finding that permitted the issue to go forward. (Dkt. No. 430 at 26.) This Court has not been tasked with and has not found whether Eolas violated the prosecution bar prior to July 22, 2014.

9

that it did not violate the patent prosecution bar prior to July 22, Eolas is unfairly relying on selective documents to tell its side of the story. That argument might sway if Eolas was also contesting that it violated the patent prosecution bar after July 22—but it is not: it admits it violated the bar after July 22, 2014. It disputes that it violated the bar prior to that date and has waived the privilege for its communications up to that date. Again, Defendants fail to explain what, if anything, post-July 22 would shed light on whether Eolas violated the bar prior to that date and the Court is not aware of anything, let alone anything that makes it unfair for Eolas to maintain its privilege as to the post-July 22 materials. Defendants chanting that it is unfair does not make it unfair.

Defendants' reliance on *Theranos v. Fuisz Technologies, Inc.*, 2013 WL 2153276 (N.D. Cal. May 16, 2013), is misplaced. There, the defendant produced selective privileged emails that he contended showed that he had not used the plaintiff's intellectual property to secure a patent. The court held that it would be unfair to permit the defendant to rely on those documents in his defense while withholding other privileged communications that might show that he in fact used the plaintiff's intellectual property. *Id.* at *4. Here, in contrast, Eolas has not selectively waived the privilege as to some privileged communications during the pre-July 2014 period—it has waived the privilege as to all pre-July 20, 2014 documents; that is, the documents that would show what activities its counsel engaged in and thus whether it violated the patent prosecution bar during that period.

The Court accordingly finds that Eolas did not waive its attorney-client privilege as to post-July 22 communications by voluntarily waiving the privilege as to communications during the period it contends it did not violate the patent prosecution bar.

**C. Implied Waiver**

Next, Defendants contend that Eolas has impliedly waived the attorney-client privilege as to the post-July 22 communications by raising the defenses of (1) harmlessness, and (2) good faith.

"[A]n implied waiver of the attorney-client privilege occurs when (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the

10

asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). "An overarching consideration is whether allowing the privilege to protect against disclosure of the information would be 'manifestly unfair' to the opposing party." *Id*.

### 1. Harmlessness

Eolas urges that its admitted violation of the patent prosecution bar after July 22, 2014 was harmless. Its temporal argument goes like this: (1) it is undisputed that the patent prosecution bar expired on October 14, 2014, (2) publicly available documents show that the Patent and Trademark Office did not act on the proposed claim amendment until February 2015, and therefore, (3) Eolas could have submitted its proposed amendment in November 2014 with the assistance of McKool Smith—when no bar was in place—and the result would have been the same as when they submitted the amendment in August 2014 in violation of the bar. (Dkt. Nos. 399 at 3; 472 at 19.) Whatever its merits, this defense does not place Eolas' attorney-client privileged communications at issue as it has nothing to do with the quality or even quantity of McKool Smith's assistance, only its timing. A defense that McKool Smith's assistance was not material to the proposed amendment would likely put McKool Smith's work product and communications with Eolas during that period at issue, but Eolas has not raised such a defense. Defendants appear to argue that because the nature of McKool Smith's involvement in the prosecution of the '507 patent is relevant to any harm suffered by Defendants, Eolas has waived the privilege as to the post-July 22, 2014 communications. But that argument confuses relevance with waiver. The post-July 22, 2014 communications are relevant to Defendants' motion; the question, however, is whether Eolas has taken some affirmative act that puts the privileged information at issue. Its "harmlessness" argument based solely on the timing of the PTO's action is not such an act.

### 2. Bad Faith

Eolas also contends that its understanding that the prosecution bar expired on July 22, 2014 was objectively reasonable based on: (1) the protective order language, (2) a Federal Circuit

11

Information Sheet, (3) both Amazon and Google stating in signed pleadings in this case that the bar expired in July 2014, and (4) an expert opinion. (Dkt. No. 399 1-2; Dkt. No. 413 at 18-21; Dkt. No. 472 at 20-22.) None of these objective, external facts places Eolas' attorney-client privileged communications at issue. To hold otherwise would mean that any time a defendant challenges a charge of willfulness or bad faith by pointing to caselaw or government agency guidance or other objective external evidence, the defendant waives its attorney-client privilege as to its subjective belief. That is not the law of attorney-client privilege.

Defendants urge further that because Eolas has insisted that Defendants do not have any evidence of a bad faith violation of the prosecution bar Eolas has somehow put its privileged communications at issue. However, merely pointing out that the admissible, discoverable evidence does not support a party's position is not an affirmative act that waives the attorney-client privilege and Defendants do not cite any case that suggests otherwise.

### D. Eolas' Counter Motion

As a related matter, Eolas seeks to compel Defendants to respond to interrogatories, requests for admissions and document requests regarding (1) the bases for Defendants' position that the prosecution bar expired on July 22, 2014, and (1) Defendants' understanding of the prosecution bar expiration. (Dkt. No. 484.)

Eolas' motion is DENIED. As Defendants' explain, the Court did not previously rule that such discovery was warranted. Further, such discovery is not relevant to Eolas' objective good faith defense and it seeks attorney-client privileged communications for which there has been no waiver. Given the lack of relevance, no privilege log is required.

## CONCLUSION

In any dispute over the violation of a patent prosecution bar the accused's attorney-client privileged communications will always be relevant. But privileged communications are not discoverable merely because they are relevant. As Eolas admits that it violated the patent prosecution after July 22, 2014, and it did not waive the privilege as to its post-July 22, 2014 privileged communications by waiving the privilege as to its communications during the period it contests violation of the bar, Federal Rule of Evidence 502(a) does not compel disclosure of the

12

post-July 22, 2014 communications. Further, Eolas' temporal harmlessness defense and its insistence that its belief that the bar expired on July 22, 2014 was objectively reasonable did not impliedly waive privilege as to post-July 22, 2014 communications. Thus, Defendants' motion to compel is denied. Eolas' motion to compel is likewise denied.

On or before **January 4, 2019**, the parties shall submit to the Court a schedule for the completion of the patent prosecution bar discovery.

The Administrative Motions to seal portions of the briefs and exhibits that reflect Eolas' attorney-client privileged communications that were produced subject to an attorneys-eyes only agreement are GRANTED. (Dkt. Nos. 466, 470, 477.) The Court notes that a different standard may apply to sealing these documents when they are used in briefing to the district court regarding whether the prosecution bar was violated prior to July 22, 2014.

This Order disposes of Docket Nos. 466, 467, 470, 477, and 484.

**IT IS SO ORDERED.**

Dated: December 14, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge