UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EOLAS TECHNOLOGIES INCORPORATED,<br><br>  Plaintiff,<br><br>  v.<br><br>AMAZON.COM INC,<br><br>  Defendant. | Case No. 17-cv-03022-JST<br><br>**ORDER REGARDING REMEDIES FOR VIOLATION OF THE COURT-ORDERED PROSECUTION BAR**<br><br>Re: ECF No. 513 |

Before the Court is Defendants Amazon and Google's motion for sanctions on the basis of McKool Smith's alleged violations of the patent prosecution bar imposed in an earlier case. ECF No. 513. The Court will deny the motion.

# I. BACKGROUND

## A. Procedural Background

In this case ("*Amazon* case"), Plaintiff Eolas Technologies Inc. ("Eolas") accuses Defendant Amazon of infringing United States Patent No. 9,195,507 ("the '507 patent"). ECF No. 1. Eolas asserts the same patent against Defendant Google in a related case. Case No. 17-cv-01138-JST, ECF No. 1 ("*Google* case"). All three litigants were parties to an earlier case in the District Court for the Eastern District of Texas regarding patents similar to the one at issue here. *See Eolas Tech. v. Adobe Sys, Inc.*, 6:09-cv-00446-LED (E.D. Tex.) ("*Adobe* case"). Before discovery began in the *Adobe* case, the district court issued a protective order imposing the following prosecution bar:

> Any Technical Protected Material is automatically subject to a prosecution bar. Any person who reviews or otherwise learns the contents of Technical Protected Material produced by another Party may not participate, directly or indirectly, in the prosecution of any patent claims . . . claiming the subject matter disclosed in the Patents-

>in-Suit from the time of receipt of such information through and including one (1) year following the entry of a final non-appealable judgment . . .

ECF No. 514-1 ¶ 5(a).

The law firm McKool Smith, which represents Eolas here, also represented Eolas in the *Adobe* case. That case went to trial in 2012, and the jury found the patent claims invalid and returned a verdict in favor of the defendants. *See Adobe* Case, ECF No. 1353 (Jury Verdict, Feb. 9, 2012). Eolas appealed, and the Federal Circuit affirmed and entered judgment on July 22, 2013. *See Eolas Techs. Inc. v. Amazon.com, Inc.*, 521 F. App'x 928 (Fed. Cir. 2013). Eolas had ninety days to petition for certiorari, but it allowed that period to expire without seeking Supreme Court review.

Meanwhile, Eolas had filed a new patent application in 2011, which ultimately issued in November 2015 as the '507 patent. The same day that patent was issued, Eolas sued Defendants in the Northern District of Texas. ECF No. 1; *Google* case, Case No. 17-cv-1138, ECF No. 1. On February 24, 2017, that district transferred the *Google* case to the Northern District of California. ECF No. 251. On April 28, 2017, it transferred the *Amazon* case. ECF No. 327.

On March 2, 2017, while both cases were still pending in Texas, Amazon filed a motion seeking a determination that Eolas had violated the patent prosecution bar. ECF No. 262. Among the issues in dispute in that motion was the question of when the patent bar expired. Defendants argued that the bar expired on October 20, 2014, one year and ninety days after the Federal Circuit entered judgment, i.e., one year after judgment became final. *Id.* at 5, 7. Eolas argued that the bar expired on July 22, 2014, one year after judgment was entered. ECF No. 274 at 15. On September 1, 2017, after the action had been transferred to this Court, the Court ruled in Defendants' favor, finding that the prosecution bar expired on October 20, 2014. ECF No. 387.[1]

At the conclusion of its September 1, 2017 order, the Court ordered the parties to "meet and confer about next steps including production of documents or in camera review of additional documents by the Court" related to Eolas' potential violation of the prosecution bar. ECF No.

---

[1] Eolas moved for leave to file a motion for reconsideration of that order, ECF No. 391, but leave was denied, ECF No. 396.

2

377. On September 27, 2017, the Court entered a discovery order pertaining to the same subject. ECF No. 403. The Court referred any disputes concerning such discovery to Magistrate Judge Jacqueline Corley. ECF No. 407.

The parties then engaged in a protracted period of discovery. At a hearing before Magistrate Judge Corley, Eolas conceded that McKool Smith had violated the patent prosecution bar after July 22, 2014. ECF No. 430 at 17, 24. Eolas also agreed to turn over its attorney-client privileged communications prior to that date on the condition that those documents would be produced for "attorney's eyes only" review and used only for purposes of the motion now before the Court. *Id.* at 24-31.

Thereafter, Defendants moved to compel Eolas to produce its privileged communications created after July 22, 2014. ECF No. 467. Judge Corley denied the motion, finding that "Eolas [had] not expressly or impliedly waived its attorney-client and attorney work-product privilege in the post-July 22, 2014 material." ECF No. 492 at 1. Judge Corley also noted that she had "not been tasked with and ha[d] not found whether Eolas violated the prosecution bar prior to July 22, 2014." *Id.* at 9 n.2.

Amazon and Google now move for sanctions based on Eolas's alleged violations of the prosecution bar, pointing to three specific violations. ECF No. 513.

**B.  Factual Background**

Defendants allege that Eolas violated the prosecution bar in a number of ways.

The first alleged violation took place on March 3, 2014. On that date, a telephone conference call took place among Jim Stetson (Eolas's general counsel), Mark Swords (Eolas's CEO), John Campbell, and Kevin Burgess (both of McKool Smith). ECF No. 512-12. During the call, Eolas told McKool Smith it was turning to active prosecution of the patent application (the "'434 application") that ultimately resulted in the '507 patent. ECF No. 512-13 (Campbell Dep.) at 55:7-12; ECF No. 512-15 (Burgess Dep.) at 21:18-22:11; ECF No. 512-16 (Stetson Dep.) at 107:12-16; ECF No. 512-14 (Swords Dep.) at 62:5-20. Approximately 45 minutes after the call began, Stetson sent Campbell a draft of the soon-to-be-filed patent claims, asking "if you see any litigation issues" and emphasizing that Eolas "do[es] not want prosecution advice." ECF No. 512-

3

17. Campbell and Burgess, along with McKool Smith partner Josh Budwin, each reviewed the claims and, in internal emails, expressed their doubt as to whether the claims as drafted would read on JavaScript implementations like those used by Amazon and Google. ECF No. 512-4 at 14-15 (citing Campbell Dep. 86:20-23; Burgess Dep. 25:2-13; ECF Nos. 512-20, 512-21, 512-22, 512-24).

According to Defendants, after these conversations "the firm explicitly or implicitly instructed Eolas not to file its proposed claims with the PTO." ECF No. 512-4 at 30. Eolas denies that McKool Smith ever gave such advice and points to deposition testimony this instruction "never occurred." ECF No. 522-4 at 7, 19 (citing Burgess Dep. 59:3-8; Campbell Dep. 24:22-25:6 ("didn't happen"); Stetson Dep. 187:23-188:2; Swords Dep. 38:7-25, 50:23-51:2; ECF No. 512-11 ("Doyle Dep.") 152:21-25).

The second alleged violation occurred on March 5, 2014, on an "all-hands call" including the four individuals from the preview call, as well as Dr. Michael Doyle (Eolas's founder) and Mike McKool and Douglas Cawley of McKool Smith. ECF No. 512-13 at 149:5-11. According to McKool, the firm's lawyers clearly stated on this call that McKool Smith could not advise Eolas on patent prosecution. ECF No. 512-7 (McKool Dep.) at 25:5-26:3; 64:13-15. During the call, McKool sent an email to all the call participants instructing the McKool Smith recipients to "delete your emails regarding new claims without reading the attachments." ECF No. 512-28. However, Stetson testified that even after the call, he believed he could still ask McKool Smith for "litigation advice" in regard to the '434 application. ECF No. 512-16 at 172:18-173:4. Indeed, just a few days later, Stetson called Campbell to ask if the claims should be amended now or later. ECF No. 512-29 (voicemail transcript).

There is no evidence that McKool Smith ever responded to this voicemail. The record does show that McKool Smith conducted an internal review of Eolas' new draft claims. *See, e.g.,* ECF No. 522-64 (Campbell Decl.) at 3. In that review, McKool Smith identified two problems with the draft claims. First, Eolas had combined the claim language for claims covering Flash technology and claims covering JavaScript technology. ECF No. 512-13 at 14. Second, some of the claim language did not read on the JavaScript technologies that Eolas would need to allege

4

were infringing. ECF No. 512-22. But Eolas contends that the prosecution bar "did not preclude McKool Smith from engaging in any internal law firm review," ECF No. 522-4 at 22, and McKool Smith never shared its internal review with Eolas. *Id.*

The third alleged violation took place on May 27, 2014, when, according to Amazon and Google, McKool Smith sent Stetson "a detailed road map to key prior-art references that provided prosecution counsel with a blueprint for the arguments to make concerning the validity of the '434 application." ECF No. 512-4 at 19 (citing ECF No. 512-30). Eolas responds that this document was "nothing more than a two-page summary of more detailed public litigation materials that Judge Davis had approved—back in 2012—for transmission from McKool Smith to Eolas." ECF No. 522-4 at 7. Eolas points out that the protective order does not cover such public materials. *Id.* (citing ECF No. 514-1 ¶ 6(d)). Moreover, the protective order states that "nothing in this Order shall be construed to prevent any individual from engaging in the mere activity of providing prior art references to an attorney prosecuting any Patent-in-Suit." ECF No. 514-1 ¶ 6(a). However, Defendants insist that this document contained McKool Smith's work-product analysis "*about* the prior art, advising Eolas and its lawyers helping with patent prosecution about what *the firm* saw as important about the art." ECF No. 512-4 at 28.

In August 2014, Eolas filed the first substantive amendment to the claims of the '434 application, canceling all pending claims and adding all new ones. The amended claims no longer included language present in the original draft claims that would have been problematic for alleging infringement by Javascript technologies. Also, the application now had two different types of claims – Flash claims and JavaScript claims – that were separate from each other. Defendants contend that the claims could not have been amended in these ways without Eolas receiving the benefit of the McKool Smith claim analysis. ECF No. 512-4 at 21.

In mid-2012, while Eolas' application was pending, the PTO had announced that it would not review the application until mid-2014. ECF No. 522-11 at 2. In mid-2014, the PTO announced that it would not act in the prosecution until February 2015. Dkt. 399-2. In fact, it did not act until March 2015. In November 2015, the application issued as the '507 patent. Because of the Patent and Trademark Office's delay in acting on the application, the PTO ordered that the

1  patent would be subject to a total patent-term adjustment of 1,042 days. Dkt. 126-4.  With the

2  adjustment, Eolas asserts that the '507 patent expired on August 24, 2017.  *Id.*

## II. LEGAL STANDARD[2]

The doctrine of unclean hands arises from the maxim that "[h]e who comes into equity must come with clean hands."  *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241 (1933).  The doctrine is "far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945).  The unclean hands defense may be invoked in response to "[a]ny willful act concerning the cause of action" that "transgress[es] equitable standards of conduct."  *Id.*  The bad actor's conduct must be material, i.e., it must have "an immediate and necessary relation to the equity that he seeks in respect of the matter in litigation."  *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)).  That is, it must "affect the equitable relations between the parties in respect of something brought before the court."  *Id.*  The Supreme Court's unclean hands cases have dealt with "particularly egregious misconduct, including perjury, the manufacture of false evidence, and the suppression of evidence."  Unclean hands must be proven by clear and convincing evidence.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011); *Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239, 1245 n.1 (Fed. Cir. 2013) ("*Therasense* also addressed our older unclean hands doctrine, which required '[t]he accused infringer [to] prove both elements—intent and materiality —by clear and convincing evidence.'" (quoting *Therasense*, 649 F.3d at 1287)).

---

[2] Eolas contends, and Magistrate Judge Corley found, that Federal Circuit law applies to this motion, and that to the extent that Federal Circuit law would look to the law of another circuit on any particular issue, the law of the Fifth Circuit should govern.  *See* ECF Nos. 492 at 7-8; 522-4 at 29.  The Court agrees with this approach, but notes that the parties describe no differences between the various circuits' law.  The parties also variously cite cases from the appellate and trial courts of the Federal, Fifth, and Ninth Circuits.

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). The contempt sanction is rooted in the Court's inherent authority, "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962). Imposing sanctions under the Court's inherent authority requires a showing of bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991).

"Dismissal is a 'harsh sanction,' to be imposed only in particularly egregious situations where 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings.'" *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1328-29 (Fed. Cir. 2011) (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006)). To impose this sanction, there must be clear and convincing evidence of "both bad faith . . . and prejudice to the opposing party." *Id.* Clear and convincing evidence is that "weight of proof" which produces "a firm belief or conviction . . . so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of precise facts of the case." *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792-95 (5th Cir. 2013). Clear and convincing evidence is also required to support a finding of civil contempt. *Id.* at 792.

## III.     DISCUSSION

The Defendants do not cite, and the Court has not been able to locate, any case dismissing a patent plaintiff's complaint because of a violation of the patent prosecution bar. Perhaps for this reason, Defendants urge dismissal on four other bases: unclean hands, civil contempt, the Court's inherent authority, and Rule 37 of the Federal Rules of Civil Procedure. ECF No. 512-4 at 8.

Defendants' contend McKool Smith is guilty of unclean hands because its actions, beginning with the receipt and analysis of Eolas's new claims in March 2014 and culminating with participation in the drafting of claim amendments in July and August of that year, constitute a "willful act concerning the cause of action" that "transgress[es] equitable standards of conduct."

7

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945).

The first issue the Court must resolve is whether McKool Smith's conduct can be imputed to Eolas for purposes of finding unclean hands. Defendants insist it must be; Eolas argues it cannot be. Although the issue is fundamental, it receives only limited treatment in the briefs.

Eolas cites four cases, none of which is squarely on point: *Gilead*, *supra*, 888 F.3d at 1246; *Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1331, 1337 (Fed. Cir. 2012); *SEC v. e-Smart Techs., Inc.*, No. 11-895, 2016 WL 11004761, at *1 (D.D.C. Mar. 30, 2016); and *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945). ECF No. 522-4 at 32. *Gilead* does not help Eolas because it not only makes no holding about whether clients are legally responsible for the conduct of their lawyers, it includes language suggesting that they are responsible. 888 F.3d at 1246 ("The district court properly charged Merck with the consequences of the testimony, at the deposition and at the trial, that the court found to be intentionally false. As already noted, not only did Merck's counsel appear as counsel for Dr. Durette at his deposition, and prepare him for it, but Dr. Durette was Merck's official corporate representative on matters (the origin of the '499 patent) to which the testimony at issue was relevant." (citation omitted)).

*Hor* provides weak support at best for Eolas's position. In that case, defendant Meng claimed unclean hands because plaintiff Chu's attorney "allegedly failed to inform Meng that her former co-worker . . . placed Meng's inventorship of the '866 patent at issue during an interference proceeding before the PTO." While the Federal Circuit did observe that "Meng provides no authority that Cox's actions can be imputed to Chu," it also noted that Meng cited no "evidence that she relied on Cox's alleged actions in not asserting her inventorship rights sooner." 699 F.3d at 1337. That court also noted the district court's additional findings that Meng provided no authority "that Cox had a duty to inform Meng of Wu's allegations" and that "Cox's alleged actions were not egregious." *Id.* On all these bases, the court held that the district court was within its "sound discretion" to reject Meng's unclean hands defense. In short, the most that can be said about *Hor* is that no litigant at either the trial or appellate level provided authority that a lawyer's actions should be imputed to his client.

8

*Precision Instrument* does not even address whether a lawyer's conduct should be imputed to his client. Perhaps that is because, to the extent the attorneys' conduct is even described in *Precision Instrument*, they are described as behaving ethically. See 324 U.S. at 817-18. And while *Sec. & Exch. Comm'n v. e-Smart Techs., Inc.* does state that the unclean hands doctrine "applies to parties, not their lawyers," 2016 WL 11004761, at *1, it cites *Precision Instrument* for the proposition – a proposition for which it doesn't stand.[3] *Id.*

For their part, the only authority Defendants muster in their favor is a district court case holding that evidence of a party's lawyer's behavior "may be probative" of an opponent's unclean hands defense, and denying a motion to exclude certain evidence, the nature of which is not described. *GSI Tech., Inc. v. United Memories, Inc.*, No. 5:13-CV-01081-PSG, 2015 WL 12942201, at *1 (N.D. Cal. Oct. 14, 2015). *GSI Tech.* does not hold that lawyer conduct can establish unclean hands.

The Court has found authority going both ways. Many cases impute the conduct of attorneys to their clients. *E.g., Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1246 (9th Cir. 2016) ("Any attempt by Goodyear to argue that the district court abused its discretion in preventing Goodyear from passing the blame on to its attorneys is unavailing. Goodyear 'is deemed bound by the acts of [its lawyers] and is considered to have notice of all facts, notice of which can be charged upon the attorney.'" (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 634 (1962))), *rev'd on other grounds*, 137 S. Ct. 1178 (2017); *In re George*, 177 F.3d 885, 890 (9th Cir. 1999) (affirming without discussion district court finding that parties had unclean hands due to unspecified misrepresentation their attorney made to creditor); *Flores v. Safeway, Inc.*, No. C19-0825-JCC, 2019 WL 4849488, at *4 (W.D. Wash. Oct. 1, 2019) ("To begin with, a client 'is deemed bound by the acts of [the client's lawyers]' because an attorney acts as the client's agent." (quoting *Haeger*, 813 F.3d at 1246)). On the other hand, cases in the Fifth Circuit refuse to find

---

[3] *e-Smart* emphasizes a particular word from *Precision Instrument* in a parenthetical. *Id.* ("*See, e.g., Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 815 (1945) (doctrine 'gives wide range to the equity court's use of discretion in refusing to aid the unclean *litigant*') (emphasis added)"). But the Supreme Court did not use the word "litigant" in that passage to distinguish litigants from their lawyers.

1   unclean hands based solely on a lawyer's misconduct, requiring that the client also have

2   participated. *E.g., Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 316 (5th Cir.

3   2013) ("Several factors . . . must be present before a district court may dismiss a case with

4   prejudice as a sanction for violating a discovery order: (1) the refusal to comply results from

5   willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct;

6   (2) the violation of the discovery order must be attributable to the client instead of the attorney, (3)

7   the violating party's misconduct must substantially prejudice the opposing party; and (4) a less

8   drastic sanction would not substantially achieve the desired deterrent effect." (internal quotations

9   and citation omitted)).

10   If Defendants need to prove Eolas' involvement in the alleged misconduct, then their

11  unclean hands argument must fail.  Amazon and Google's sole evidence is an email from Eolas

12  soliciting advice from McKool Smith as to "any litigation issues" while emphasizing that Eolas

13  "d[id] not want prosecution advice." *See* ECF No. 512-17 at 2.  That evidence is insufficient to

14  support a finding of unclean hands by clear and convincing evidence.

15   The Court need not reach this question, however, because it concludes that Defendants

16  have not proven unclean hands by clear and convincing evidence even if McKool Smith's conduct

17  is considered on its own merits.  There are several reasons for this conclusion.  For one, while

18  Eolas admits that McKool Smith violated the prosecution bar after July 22, 2014, any violation

19  after that date was objectively reasonable based on McKool Smith's confusion about the date the

20  prosecution bar expired.  The grounds for this confusion begin with the language of the Texas

21  protective order itself, which included a patent prosecution bar that expired "one (1) year

22  following the entry of a final non-appealable judgment or order."  ECF No. 274 at 3.  The Federal

23  Circuit entered final judgment on July 22, 2013, ECF No. 387 at 2; one year following entry of

24  judgment was July 22, 2014.  While this Court concluded that the bar did not lapse until October

25  20, 2014, the fact is that the law on the point was not clear until the Court issued its order.

26   Second, Eolas is not the only litigant to have asserted that the bar ended in July 2014.

27  Defendants themselves have made the same assertion.  Amazon has stated that the prosecution

28  "bar ended one year after the Federal Circuit's Rule 36 affirmance in July 2014."  ECF No. 118 at

7; *see also id.* at 11 ("That bar expired approximately one year after the Federal Circuit's Rule 36 affirmance, in about July 2014."). Google has said the same thing. ECF No. 119 at 4 ("But we do know that the August 2014 amendment occurred just one month after the Prosecution Bar in the prior case expired (using the Federal Circuit's July 22, 2013 affirmance as the non-appealable final judgment) that otherwise prevented Eolas' litigation counsel from participating in the prosecution."). Given that Defendants themselves have taken the position that the prosecution bar expired in July 2014, it cannot have been unreasonable for McKool Smith to have taken the same position. Defendants now argue that these statements are "unhelpful" because "McKool Smith did not and could not have considered these statements at the time it decided to violate the prosecution bar." ECF No. 537-4 at 16. Defendants are missing the point: their own statements are not relevant to show why *McKool Smith* thought its interpretation of the prosecution bar was reasonable, but to show that *Defendants* thought it was reasonable. For all these reasons, the Court finds that McKool Smith's conduct prior to July 22, 2014 was objectively reasonable, and therefore not in bad faith.

As for McKool Smith's earlier conduct, there is no clear and convincing evidence that McKool Smith provided improper advice during its March 3, 2014 phone call with Eolas. And while McKool Smith did perform an internal analysis of Eolas' proposed new claims, there is no evidence that it ever shared this analysis with Eolas. That leaves the "road map" sent on May 27, 2014. As to that document, Defendants have a stronger argument. The memo did more than "engag[e] in the mere activity of providing prior art references to an attorney prosecuting any Patent-in-Suit" permitted by the protective order. ECF No. 514-1 ¶ 6(a). In addition to the four prior art references themselves, it contains attorney analysis about the relationship between those references and Patent Nos. 5,838,906 (the "'906 patent") and 7,599,985, the patents at issue in the *Adobe* litigation.

Even assuming that McKool Smith's act of providing the road map memo violated the protective order, however, the Court still finds no unclean hands. Defendants have provided no analysis showing how the road map affected the prosecution of the '507 patent, and Eolas submits uncontroverted evidence that it had no impact. ECF No. 522-40 at 501:14-502:10, 507:22-508:25,

510:1-4. For the Court to find unclean hands, the impact of the allegedly "unconscionable act" must be "immediate and necessary." *Keystone Driller*, 290 U.S. at 245; *see also Preload Technology, Inc. v. A.B. & J. Constr. Co.*, 696 F.2d 1080, 1090-91 (5th Cir. 1983) (unclean hands "should not be applied" at the request of one who "has not been seriously harmed") (citation omitted). Furthermore, even accepting for the sake of argument that McKool Smith began assisting with prosecution of the '507 patent in March 2014 – the earliest date for Defendants contend – that six-month head start did not prejudice Defendants. The PTO announced in May 2014 that it did not anticipate reviewing Eolas's continuation application until February 2015, and the PTO did not in fact act on the patent-in-suit until March 2015. *Id.* Defendants were not prejudiced by McKool Smith's early start, assuming there even was one.

For all these reasons, the Court concludes that Defendants have not shown unclean hands. Because Defendants have not made out a clear and convincing showing of either bad faith or prejudice, either before or after July 22, 2014, the Court will also deny Defendants' alternative requests for a finding of civil contempt,[4] dismissal pursuant to Rule 37 of the Federal Rules of Civil Procedure, or a sanction rooted in the Court's inherent authority.[5]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[4] In light of this conclusion, the Court need not address Eolas's argument that the Court has no jurisdiction to sanction a party for violation of another court's order. ECF No. 522-4 at 40.

[5] Defendants argue in passing that "[a]s an alternative to outright dismissal, the Court could order that Eolas is entitled to no damages even if it can establish liability and/or award Amazon and Google their attorney fees and expert costs as a compensatory sanction." ECF No. 512-4 at 37. Defendants offer no authority in support of these requests, and the Court denies them.

12

# CONCLUSION

For the reasons above, Defendants' motion for sanctions on the basis of McKool Smith's asserted violations of the patent prosecution bar is denied.[6]

**IT IS SO ORDERED.**

Dated: December 9, 2019



JON S. TIGAR
United States District Judge

---

[6] Defendants also propose two alternative remedies. First, they argue that because McKool Smith should not have been involved in patent prosecution until October 2014, Eolas received "an approximately seven month illicit head start by soliciting and receiving advice from McKool Smith in violation of the prosecution bar beginning in March." *Id.* at 39. Thus, Defendants ask the Court to reduce the period of time for which Eolas may seek damages by seven months. *Id.* Second, they argue the Court should instruct the jury that Eolas violated the prosecution bar and accordingly, is not entitled to patent-term adjustment for the period from March 3 to August 19, 2014. *Id.* at 39-41. The Court denies these alternative requests.

13