1    [Counsel identified on signature page]

2

3

4

5

6                  UNITED STATES DISTRICT COURT

7                  NORTHERN DISTRICT OF CALIFORNIA

8                          OAKLAND DIVISION

9

| EOLAS TECHNOLOGIES INCORPORATED, | Case No. 4:17-cv-03022-JST |
|---|---|
| Plaintiff, | Related to Case Nos. 4:17-cv-01138-JST, 4:17-cv-03023-JST, and 4:15-cv-05446-JST |
| v. | **DEFENDANTS' NOTICE AND MOTION FOR SUMMARY JUDGMENT ON OBVIOUSNESS-TYPE DOUBLE PATENTING & PRECLUSION DOCTRINES** |
| AMAZON.COM, INC., | |
| Defendant. | **Judge: Hon. Jon. S. Tigar** **Hearing Date: July 2, 2020** **Hearing Time: 2:00 P.M.** |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 2, 2020, at 2:00 P.M. or as soon thereafter as the matter may be heard by the Honorable Jon. S. Tigar in Courtroom 6, 2nd Floor, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, Defendants Amazon.com, Inc. ("Amazon"), Google LLC ("Google"), and Walmart Inc. ("Walmart") shall and hereby do move the Court for an order granting summary judgment in favor of Defendants.

This Motion is made pursuant to Federal Rule of Civil Procedure 56. Defendants bring this motion for judgment on multiple, independent grounds:

- Claims 19, 24, 26, 32, 37, 39, and 45 (collectively, the "asserted claims") of U.S. Patent No. 9,195,507 ("the '507 patent") are invalid under the doctrine of obviousness-type double patenting in view of previously issued Eolas patents from the same family.

- Eolas's claims against all Defendants are barred by issue preclusion (or collateral estoppel) in view of the final judgment in *Eolas Technologies Inc. v. Adobe Systems Inc.*, No. 6:09-cv-00446-LED (E.D. Tex.) ("*Eolas I*").

- Eolas's claims against Amazon and Google are barred by the doctrine of *Kessler v. Eldred*, 206 U.S. 285 (1907), in view of the final judgment in *Eolas I* and also, with respect to Google, the final judgment in *Google Inc. v. Eolas Technologies Inc.*, No. 3:13-cv-05997-JST (N.D. Cal.) ("*Eolas II*").

This Motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities in support thereof, the Declaration of Don Turnbull, Ph.D. and exhibits thereto, the Declaration of Richard G. Frenkel and exhibits thereto, all pleadings and papers on file in this action, such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

i

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

STATEMENT OF FACTS ............................................................................................... 1

    A.    The '906 Great-Grandparent Patent And The *Microsoft* Case .............. 1

    B.    A Jury And The Federal Circuit Find Eolas's Patents Invalid (*Eolas I*) ............................................................................................. 2

    C.    Eolas Files Two Additional Continuation Applications ....................... 4

    D.    Eolas's Second Suit Against Google (*Eolas II*) .................................... 5

    E.    Left With No Other Options, Eolas Pursues The '507 Application ...... 5

    F.    The Present Litigation ............................................................................ 7

LEGAL STANDARD ..................................................................................................... 7

I.    OBVIOUSNESS-TYPE DOUBLE PATENTING BARS EOLAS'S CLAIMS ............................................................................................... 9

    A.    Eolas Has Described The Same Invention Across Each Litigation ..... 10

    B.    The '507 Patent Does Not Claim A New Invention ............................ 11

    C.    The '507 Claims' Alleged Distinctions Are Not Patentable ............... 14

        1.    The "World Wide Web" Is Not Patentably Distinct From A "Distributed Hypermedia Environment" ................................. 14

        2.    The Use Of "Two Or More Distributed Application Computers" Is Not Patentably Distinct From A "Distributed Application" That Is "Located On Two or More" Computers ....................................................................... 16

        3.    A Browser "Configured To Select" An Application Is Not Patentably Distinct From One "Identifying and Locating" An Application ...................................................................... 17

        4.    The Use of "Coordinating" Computers Is Not Patentably Distinct From A Distributed Application Working Across Multiple Computers ............................................................... 18

II.    EOLAS'S CLAIMS ARE BARRED BY ISSUE PRECLUSION ................................. 20

    A.    *Eolas I* Necessarily Decided That The '985 Patent Claims Were Invalid In Light Of The Prior Art ....................................................... 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

ii

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

B.   This Case Presents Substantially The Same Invalidity Issue As
        *Eolas I* .................................................................................................... 23

III.   THE *KESSLER* DOCTRINE BARS EOLAS'S CLAIMS AGAINST
        AMAZON AND GOOGLE ..................................................................................... 26

CONCLUSION .............................................................................................................. 30

Case No. 4:17-cv-03022-JST

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AbbVie Inc. v. Mathilda & Terrence Kennedy Inst. of Rheumatology Tr.*,
  764 F.3d 1366 (Fed. Cir. 2014) ................................................................. 8, 9, 10, 16

*Ackerman v. W. Elec. Co.*,
  860 F.2d 1514 (9th Cir. 1988) .......................................................................... 8

*Acumed LLC v. Stryker Corp.*,
  525 F.3d 1319 (Fed. Cir. 2008) ....................................................................... 29

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*,
  475 F.3d 1080 (9th Cir. 2007) ........................................................................ 20

*Amgen Inc. v. F. Hoffman-La Roche Ltd.*,
  580 F.3d 1340 (Fed. Cir. 2009) ....................................................................... 10

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................ 7

*Antares Pharma, Inc. v. Medac Pharma Inc.*,
  771 F.3d 1354 (Fed. Cir. 2014) ................................................................... 9, 28

*Applied Materials v. Advanced Semi. Materials*,
  98 F.3d 1563 (Fed. Cir. 1996) ........................................................................ 28

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
  352 F. Supp. 2d 1119 (C.D. Cal. 2005) .......................................................... 22

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*,
  713 F.3d 1377 (Fed. Cir. 2013) ....................................................................... 21

*In re Basell Poliolefine Italia S.P.A.*,
  547 F.3d 1371 (Fed. Cir. 2008) ......................................................................... 9

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Foundation*,
  402 U.S. 313 (1971) ................................................................................... 25, 26

*Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*,
  592 F.3d 1340 (Fed. Cir. 2010) ......................................................................... 9

*Bourns, Inc. v. United States*,
  537 F.2d 486 (Ct. Cl. 1976) ............................................................................ 25

*Brain Life, LLC v. Elekta, Inc.*,
  746 F.3d 1045 (Fed. Cir. 2014) ....................................................... 26, 27, 28, 29

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

iv

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

*Clements v. Airport Auth. of Washoe Cty.*,
   69 F.3d 321 (9th Cir. 1995) ........................................................................20, 21, 26

*Eolas Technologies Inc. v. Wal-Mart Stores Inc.*,
   No. 6:12-cv-00620-LED (E.D. Tex.) .................................................................5

*Eolas Techs. Inc. v. Amazon.com, Inc.*,
   521 F. App'x 928 (Fed. Cir. 2013) (No. 2012-1632), 2012 WL 6100517 ...........................2, 4

*Eolas Techs. Inc. v. Microsoft Corp.*,
   399 F.3d 1325 (Fed. Cir. 2005) ......................................................................2

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
   No. 12-cv-540, 2015 WL 1905871 (D. Del. Apr. 23, 2015) ......................................22

*Geneva Pharm., Inc. v. GlaxoSmithKline PLC*,
   349 F.3d 1373 (Fed. Cir. 2003) .....................................................................13

*Georgia-Pacific Corp. v. U.S. Gypsum Co.*,
   195 F.3d 1322 (Fed. Cir. 1999) ...............................................................9, 15, 17

*Indivior Inc. v. Dr. Reddy's Labs., S.A.*,
   930 F.3d 1325 (Fed. Cir. 2019) .....................................................................29

*John Hopkins Univ. v. CellPro, Inc.*,
   152 F.3d 1342 (Fed. Cir. 1998) .....................................................................22

*Kamilche Co. v. United States*,
   53 F.3d 1059 (9th Cir. 1995) ....................................................................23, 24

*Kessler v. Eldred*,
   206 U.S. 285 (1907) ................................................................................26

*Kimberly-Clark Worldwide Inc. v. First Quality Baby Prods. LLC*,
   135 F. Supp. 3d 850 (E.D. Wis. 2015) ..............................................................24

*Logic Devices, Inc. v. Apple Inc.*,
   No. 13-cv-02943-WHA, 2014 WL 5305979 (N.D. Cal. Oct. 16, 2014) .............................14

*Medinol Ltd. v. Cordis Corp.*,
   15 F. Supp. 3d 389 (S.D.N.Y. 2014) ................................................................28

*MGA, Inc. v. Gen. Motors Corp.*,
   827 F.2d 729 (Fed. Cir. 1987) ......................................................................26

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016) ......................................................................8

*Nestle USA, Inc. v. Steuben Foods, Inc.*,
   884 F.3d 1350 (Fed. Cir. 2018) .....................................................................24

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

v

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

*Novartis Pharm. Corp. v. Breckenridge Pharm. Inc.*,
909 F.3d 1355 (Fed. Cir. 2018)..................................................................13

*Ohio Willow Wood Co. v. Alps S., LLC*,
735 F.3d 1333 (Fed. Cir. 2013)..........................................................8, 21, 24

*In re PersonalWeb Techs. Patent Litig.*,
No. 18-md-02834-BLF, 2019 WL 1455332 (N.D. Cal. Apr. 2, 2019)..................28

*Phil-Insul Corp. v. Airlite Plastics Co.*,
854 F.3d 1344 (Fed. Cir. 2017)..................................................................23

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) .....................................................................21

*Roche Palo Alto LLC v. Apotex, Inc.*,
526 F. Supp. 2d 985 (N.D. Cal. 2007) ..........................................................22

*Senju Pharma. Co., Ltd. v. Apotex, Inc.*,
746 F.3d 1344 (Fed. Cir. 2014)..................................................................29

*SimpleAir Inc. v. Google LLC*,
No. 2016-2738 ..........................................................................................6

*SimpleAir v. Google LLC*,
884 F.3d 1160 (Fed. Cir. 2018)........................................................... *passim*

*Slade Gorton & Co., Inc. v. Millis*,
62 F.3d 1433, 1995 WL 471106 (Fed. Cir. 1995) ................................................14

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
778 F.3d 1311 (Fed. Cir. 2015)................................................................24, 25

*SpeedTrack, Inc. v. Office Depot, Inc.*,
791 F.3d 1317 (Fed. Cir. 2015)..................................................................26

*Trs. of Bos. Univ. v. Kingbright Elec. Co.*,
___ F. Supp. 3d ___, 2019 WL 6877182 (D. Mass. Dec. 17, 2019) ...................26

*United Access Techs., LLC v. Centurytel Broadband Servs. LLC*,
778 F.3d 1327 (Fed. Cir. 2015)................................................................22, 23

*United States v. Paszek*,
432 F.2d 780 (9th Cir. 1970) .....................................................................22

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*,
522 F.3d 1348 (Fed. Cir. 2008)..................................................................14

*Zoomar, Inc. v. Paillard Prods., Inc.*,
258 F.2d 527 (2d Cir. 1958).......................................................................26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATUTES**

35 U.S.C.
  § 120 ............................................................................................................6
  § 154(a)(2) ....................................................................................................6

**RULES**

Fed. R. Civ. P. 56(a) ............................................................................................7

Fed. R. Civ. P. 56(g) ............................................................................................8

**OTHER AUTHORITIES**

Manual of Patent Examining Procedure (MPEP) § 1490 (9th ed. Jan. 2018) ..................3

MPEP § 201.07 ............................................................................................9, 28

MPEP § 2701 ........................................................................................................6

Mark A. Lemley & Kimberly A. Moore, *Ending Abuse of Patent Continuations*,
  84 B.U. L. Rev. 63, 79-80 (2004) ..........................................................................9

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

vii

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1

**NOTES ON CITATIONS**

2    1.   Citations to *Microsoft* refer to *Eolas Technologies Inc. v. Microsoft Corp.*, No. 1:99-CV-

3         00626 (N.D. Ill.).

4    2.   Citations to *Eolas I* refer to *Eolas Technologies Inc. v. Adobe Systems Inc.,* No. 6:09-cv-

5         00446-LED (E.D. Tex.).

6    3.   Citations to *Eolas II* refer to *Google Inc. v. Eolas Technologies Inc.*, No. 3:13-cv-05997-

7         JST (N.D. Cal.).

8    4.   Citations to *Google* refer to *Eolas Technologies Inc. v. Google LLC*, No.  4:17-cv-01138-

9         JST (N.D. Cal.).

10   5.   Citations to *Amazon* refer to *Eolas Technologies Inc. v. Amazon.com, Inc.,* No.  4:17-cv-

11        03022-JST (N.D. Cal.).

12   6.   Citations to *Walmart* refer to *Eolas Technologies Inc. v. Walmart, Inc.*, No.  4:17-cv-

13        03023-JST (N.D. Cal.).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

viii

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    This case involves essentially the same patents, the same products, the same infringement

3    contentions, the same prior art, and the same parties as a 2009 case that Eolas lost.  In that case,

4    Eolas argued that two of its patents, one a continuation of the other, showed that it invented the

5    interactive World Wide Web.  But a jury found Eolas's patents invalid in light of prior art, and the

6    Federal Circuit affirmed.  In a later case before this Court, Eolas raised duplicative claims of

7    infringement against Google—based on continuation patents descended from the earlier,

8    invalidated patents.  This Court dismissed those claims with prejudice.  Eolas's present

9    continuation patent claims were crafted after those back-to-back defeats, but they add nothing new.

10   All of this history squarely implicates bedrock principles of patentability and preclusion.

11   In our patent system, the benefit of the patent bargain is that patents are granted for a limited term,

12   after which time the public owns the invention.  In our judicial system, litigants are afforded a full

13   and fair opportunity to advance their case, after which time they are bound by the court's judgment.

14   And in our marketplaces, once a product has been adjudged to be non-infringing, it may be freely

15   bought and sold without further interference.

16   At least three doctrines exist to prevent patent owners from evading these bedrock

17   principles.  The doctrine of obviousness-type double patenting ensures that a patentee cannot

18   extend the term of a patent by re-patenting claims that are not sufficiently different from those that

19   came before.  Issue preclusion (or collateral estoppel) protects parties and courts from wasting

20   resources on the relitigation of issues that have already been fully and finally decided.  And the

21   *Kessler* doctrine prevents patentees from repeatedly accusing essentially the same products of

22   infringing essentially the same patents.  Eolas's latest attempt to claim ownership of the entire

23   interactive World Wide Web violates all three of these doctrines.  This Court should grant

24   summary judgment and finally bring this decades-long ordeal to an end.

25   **STATEMENT OF FACTS**

26   **A.    The '906 Great-Grandparent Patent And The *Microsoft* Case**

27   In October 1994, Michael Doyle and two others filed an application for what would become

28   U.S. Patent No. 5,838,906 ("the '906 patent"), the great-grandparent of the patent-in-suit here.  *See*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

1

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

Ex. 1 ('906 patent).  The patent claimed a method by which a web browser could recognize an object—such as a video, spreadsheet, or interactive 3-D image—embedded in a webpage, identify the software application needed to present that particular type of object, and launch the application so that the user could interact with the object from within the browser window.  Eolas would later assert that the claimed invention "made possible the interactive web as we know it today."  Br. of Plaintiffs-Appellants at 2, *Eolas Techs. Inc. v. Amazon.com, Inc.*, 521 F. App'x 928 (Fed. Cir. 2013) (No. 2012-1632), 2012 WL 6100517, at *2.

The '906 patent issued on November 17, 1998.[1]  Eolas immediately sued Microsoft, alleging infringement by the Internet Explorer web browser.  *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1328 (Fed. Cir. 2005).  Microsoft argued, among other things, that the '906 patent was invalid in light of prior art.  *Id.* at 1329-30.  A major piece of that prior art was the Viola web browser created by Pei-Yuan Wei.  *Id.*  Microsoft presented evidence that Viola had been capable of recognizing and displaying embedded interactive objects since May 1993, rendering the '906 patent anticipated or at least obvious.  *Id.*  But the district court prevented the jury from considering that defense, and the jury found that Internet Explorer infringed.  *Id.* at 1332.  On appeal, the Federal Circuit vacated and remanded for a new trial, holding the district court had erred in excluding Microsoft's evidence of invalidity.  *Id.* at 1332-35.  On remand, the parties settled and the case was dismissed before a new trial.  Ex. 2 (*Microsoft*, Dkt. 831 (N.D. Ill. Sept. 13, 2007)).

**B.**     **A Jury And The Federal Circuit Find Eolas's Patents Invalid (*Eolas I*)**

In August 2002, in the midst of the *Microsoft* litigation, Eolas filed a continuation application that claimed priority to the '906 patent.  The Patent and Trademark Office (PTO) found that several claims in that application were sufficiently different (and thus not patentably distinct) from claims in the '906 patent and therefore rejected them under the doctrine of obviousness-type double patenting.  Ex. 3 (non-final rejection).  In response, as it would do with all but the final patent in the '906 family (i.e., the patent-in-suit), Eolas filed a terminal disclaimer.  Ex. 4 (terminal disclaimer).  A terminal disclaimer—which "disclaims or dedicates to the public the entire term or

---

[1] The '906 patent was assigned to the Regents of the University of California, which granted an exclusive license to Eolas.  *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1328 n.1 (Fed. Cir. 2005).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

2

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1   any terminal part of the term of a patent or patent to be granted," Manual of Patent Examining

2   Procedure (MPEP) § 1490 (9th ed. Jan. 2018)—ties the continuation patent's expiration date to

3   that of the underlying parent patent.  And, under PTO rules, a patentee that files a terminal

4   disclaimer in response to a double-patenting rejection automatically overcomes that rejection.  *See,*

5   *e.g.*, *id.* § 804.02.  Thus, by filing a terminal disclaimer during the prosecution of the continuation

6   patent, Eolas avoided having to show the PTO that its continuation patent was new and unique

7   over the parent application.  The PTO subsequently issued a new continuation patent on October

8   6, 2009, as U.S. Patent No. 7,599,985 ("the '985 patent").  Ex. 5 ('985 patent).

9          On the same day the '985 patent issued, Eolas launched a new bid to claim ownership of

10  all interactivity on the World Wide Web, suing 23 defendants as disparate as Frito-Lay, J.C.

11  Penney, Citigroup, Office Depot, and Adobe.  Two of the defendants were Google and Amazon.

12  Eolas alleged that the defendants, by providing "web pages and content to be interactively

13  presented in browsers," infringed both the '906 and the '985 patents (collectively, "the *Eolas I*

14  patents").  Ex. 6 (*Eolas I*, Dkt. 1) at ¶¶ 33, 42.  More specifically, Eolas accused Google of

15  infringement through its provision of interactive webpage features in its AdSense, Docs, Gmail,

16  Instant, Maps, Search Suggest, and through the interactive video and search suggest features

17  offered by YouTube.  Ex. 7 (*Eolas I*, Dkt. 1244) at 16-17, 21.  And Eolas accused Amazon of

18  infringing through its provision of interactive webpage features in its Book Reader, Cloud Player,

19  Music Clips, Product Viewer, Search Suggestions, Shoveler, and Video products.  *Id.* at 14-15.  A

20  number of these features were implemented using JavaScript to achieve the accused interactivity.

21  *See, e.g.*, Ex. 8 (Eolas's *Eolas I* Expert Report on Amazon AutoComplete) at ¶¶ 10, 50; Ex. 9

22  (Eolas's *Eolas I* Expert Report on Google Search Suggest) at ¶¶ 9, 47, 49.

23         Many of the defendants in *Eolas I* would settle, but several—including Google and

24  Amazon—challenged Eolas's patents at trial.  In February 2012, Chief Judge Leonard Davis of

25  the U.S. District Court for the Eastern District of Texas presided over an invalidity-only jury trial.

26  Defendants presented evidence that Viola, and a combination of MediaView, Mosaic, and HTML+

27  Embed Tag prior-art references, invalidated the patents.  Ex. 10 (*Eolas I*, Dkt. 1414) at 5-13.  A

28  veritable "who's who" of actual World Wide Web pioneers came to testify about the state of the

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

3

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

art in the early 1990s.  Those pioneers included:  Sir Tim Berners-Lee, the widely-acknowledged inventor of the World Wide Web; Eric Bina, co-founder of Netscape and co-creator of the Mosaic web browser, the browser which forms the core of the Eolas patents; Pei-Yuan Wei, the inventor of Viola; and Dave Raggett, a key contributor to the development of hypertext markup language (HTML), the computer language in which webpages are written.  Br. of Appellees at 1-3, 24-25, *Eolas Techs. Inc. v. Amazon.com, Inc.*, 521 F. App'x 928 (Fed. Cir. 2013) (No. 2012-1632), 2013 WL 1209451, at *1-3, *24-25.  In its closing argument, Eolas emphasized the verdict's finality:  "[I]n a few minutes, Judge Davis will ask you to go back into the jury room and write the last chapter of this story, and he's going to ask you to write it on this invalidity page . . .  And there's something critically important about this trial and about your job that I hope you'll remember when you read this single question that will be the final chapter of the story of the University of California patent."  Ex.11 (*Eolas I*, Feb. 9, 2012 Trial Tr. at 70:23-71:8).

The jury found all of the asserted claims of the *Eolas I* patents invalid by clear and convincing evidence.  Ex. 12 (*Eolas I*, Dkt. 1353 (verdict form)).  The court denied Eolas's motion for judgment as a matter of law and for a new trial, concluding that there was clear and convincing evidence for the jury to find both that Viola had anticipated the asserted claims and that those claims were obvious in light of Viola or a combination of other prior art.  Ex. 10 (*Eolas I*, Dkt. 1414).  On July 22, 2013, the Federal Circuit summarily affirmed.  *Eolas Techs. Inc. v. Amazon.com, Inc.*, 521 F. App'x 928 (Fed. Cir. 2013).

### C.    Eolas Files Two Additional Continuation Applications

Ever since filing the initial application for the '906 patent, Eolas had maintained a steady stream of continuation applications.  While the application that led to the '985 patent was pending, Eolas filed two more continuations, which ultimately issued as U.S. Patent Nos. 8,082,293 ("the '293 patent") and 8,086,662 ("the '662 patent").  Exs. 13 & 14.  Like the '985 patent, both of these applications simply recycled previously issued claims, and thus were rejected for obviousness-type double patenting.  Exs. 15 ('293 non-final rejection]; 16 ('662 non-final rejection).  And like the '985 patent, Eolas avoided having to address the issue of double patenting by filing terminal disclaimers back to the '906 patent.  Exs. 17 ('293 patent terminal disclaimer); 18 ('662 patent

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

4

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1    terminal disclaimer).

2        **D.      Eolas's Second Suit Against Google (*Eolas II*)**

3        Despite the *Eolas I* jury verdict, Google received a letter in December 2013 from Eolas,

4    threatening further litigation.  This time, Eolas asserted the claims contained in the '293 and '662

5    continuation patents.  Eolas accused Google of infringing those continuation patents by providing,

6    among other things, "web pages and content to be interactively presented in browsers"—the same

7    allegedly infringing activities at issue in *Eolas I*.  Ex. 19 (*Eolas II*, Dkt. 1-3 (cease and desist

8    letter)).  Google promptly filed suit against Eolas in this district, seeking a declaratory judgment

9    of non-infringement.

10       In response, Eolas filed counterclaims for infringement of the '293 and '662 patents.  Ex.

11   20 (*Eolas II*, Dkt. 76).  But on July 8, 2014, Eolas moved to voluntarily dismiss them with

12   prejudice, with the stated goal of mooting Google's request for declaratory relief.  Ex. 21 (*Eolas

13   II*, Dkt. 77).  In connection with its motion to dismiss, Eolas also prematurely asked this Court to

14   rule that the dismissal would be *without* prejudice as to any claims Eolas might have against

15   Google under other patents or patent applications.  Ex. 22 (*Eolas II*, Dkt. 78).  Eolas explained that

16   it wanted preemptively to limit the preclusive effect of the Court's dismissal of the '293 and '662

17   claims.  Ex. 23 (*Eolas II*, Dkt. 89) at 4-5.  This Court denied Eolas's request to rule on the future

18   preclusive effect of the *Eolas II* case.  Ex. 24 (*Eolas II*, Dkt. 97) at 2-3.  Instead, it dismissed with

19   prejudice all potential infringement claims against Google and its customers and affiliates under

20   the '293 and '662 patents.  *Id.*  By this point, then, Eolas's original '906 patent (the great-

21   grandparent patent) and all three of the asserted continuation patents—the '985, '293, and '662

22   patents—had been either invalidated or dismissed with prejudice.[2]

23       **E.      Left With No Other Options, Eolas Pursues The '507 Application**

24       Eolas had one last card to play.  Back in November 2011, shortly after learning that the

25   '293 patent would issue, Eolas filed yet another continuation application, which became the patent-

26   in-suit, U.S. Patent No. 9,195,507 ("the '507 patent").  *See* Ex. 25 (Oct. 2011 notice of allowance

27   ─────────────────────

28   [2] Eolas also filed a separate suit against Walmart in September 2012, asserting infringement of
     the '906, '985, '293, and '662 patents, but voluntarily dismissed that action in March 2014.  *See
     Eolas Technologies Inc. v. Wal-Mart Stores Inc.*, No. 6:12-cv-00620-LED (E.D. Tex.).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

5

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

of the '293 patent).  But the original application was a mere placeholder; the nine claims were copied almost verbatim from Eolas's parent patents.  Claim 1 of the application, for instance, was nearly identical to Claim 9 of the '293 patent.  *Compare* Ex. 26 (Nov. 9, 2011 Claims), *with* Ex. 13 ('293 patent) at 18:20-47.  Eolas had not discovered a new invention or uncovered additional claims; the filing merely preserved Eolas's chance to get yet another patent claiming priority to the '906 application.[3]

Eolas made an insignificant preliminary amendment to the '507 application in May 2012, but the application otherwise lay dormant.  Only after the Federal Circuit affirmed *Eolas I*, and after Eolas moved to dismiss with prejudice its *Eolas II* counterclaims, did Eolas turn its attention back to the placeholder application.  In August 2014, Eolas cancelled all 13 pending placeholder claims and replaced them with 27 other claims.  *See* Ex. 27 (Aug. 19, 2014 Amendment).  And while Eolas chose to use some different words in the new claims, nothing of substance changed. It was once again claiming the same invention described in the '985 patent (asserted and invalidated in *Eolas I*) and the '293 patent (asserted and dismissed with prejudice in *Eolas II*).

As with all of the other Eolas patents, the '507 application claimed priority to the October 17, 1994 application that became the original '906 patent (invalidated in *Eolas I*).  Absent an extension of the patent term, any patent issuing from the application would have expired 20 years after the priority date—that is, on October 17, 2014.  35 U.S.C. § 154(a)(2); MPEP § 2701 (9th ed. Jan. 2018).  Eolas nonetheless continued to prosecute the application, and when the '507 patent issued on November 24, 2015, the PTO's automated system for determining patent term adjustments—which did not take into account Eolas's two-year delay in pursuing the actual claims of the '507 patent—improperly calculated an adjustment of 1042 days.  *See* Ex. 28 ('507 patent). The patent accordingly issued more than a year after it should have expired.  And because Eolas

---

[3] A party must file a continuation application before a patent issues on a pending application in order to pursue additional claims with the earlier priority date.  35 U.S.C. § 120.  By repeatedly filing a new continuation application just before issuance of the last respective continuation application, a patentee can keep its patents "open" for new patent claims well beyond the date that the original patent was issued.  In a recent Federal Circuit argument, Judge Chen (formerly of the PTO) remarked that this strategy resembles "the night of the living dead."  *SimpleAir Inc. v. Google LLC*, No. 2016-2738, Oral Argument at 1:30-1:43, *available* at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-2738.mp3.

LATHAM&WATKINS[LLP]
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

6

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

never filed a terminal disclaimer, Eolas asserted a right to exclusive use of its purported invention until August 24, 2017—nearly a quarter-century after the original '906 application was filed, and more than five years after claims of identical scope were invalidated by the *Eolas I* jury.

### F.    The Present Litigation

On the same day the '507 patent issued, Eolas filed this lawsuit against Google, Amazon, and Walmart.  As in earlier cases, Eolas accuses Defendants of infringement by providing "web pages and content to be interactively presented in browsers." Ex. 29 (*Google*, Dkt. 1) at ¶ 15; *Amazon*, Dkt. 1 at ¶ 15; Ex. 30 (*Walmart*, Dkt. 1) at ¶ 16.  Eolas describes the purported invention of the '507 patent in the same way it described the '906 and '985 patents invalidated in *Eolas I*: "Dr. Doyle and his co-inventors had an idea that would change the Web forever.  Their idea: embed interactive content directly into the previously static web pages." *Compare Amazon*, Dkt. 168 at 4 (Eolas's Opening Claim Construction Brief), *with* Ex. 31 (*Eolas I*, Dkt. 537, Eolas's Opening Claim Construction Brief) at 5.  Eolas accuses many of the same webpage features accused in *Eolas I*, including Google's AdSense, Docs, Gmail, Instant, Maps, Search Suggest, and YouTube products, and Amazon's Product Viewer, Search Suggestions, and Video products, as well as other products that rely on the same fundamental technology to achieve interactivity. *See* Ex. 38 (Feb. 28, 2017 Martin Report App'x A) at ¶ 2 (listing accused Amazon products); Ex. 42 (Eolas's Mar. 31, 2016 infringement contentions naming Google accused products).  And Defendants assert that the '507 patent is invalid in light of the same prior-art references—including Viola, Mosaic, the HTML+ Embed Tag, and MediaView—that were found to invalidate the '507 patent's predecessors in *Eolas I*.  In short, this case involves the same purported invention, the same theory of alleged infringement, and the same prior art.

### LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "genuine" only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  The facts must be viewed in the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

7

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1    light most favorable to the non-moving party, but that party "is entitled to the benefit of only

2    *reasonable* inferences that may be drawn from the evidence." *Ackerman v. W. Elec. Co.*, 860 F.2d

3    1514, 1520 (9th Cir. 1988) (citation omitted).  "The mere existence in the record of dueling expert

4    testimony does not necessarily raise a genuine issue of material fact." *Mortg. Grader, Inc. v. First*

5    *Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016).  And even "[i]f the court does not

6    grant all the relief requested by the motion," it may grant partial summary judgment or "enter an

7    order stating any material fact—including an item of damages or other relief—that is not genuinely

8    in dispute and treating that fact as established in the case."  Fed. R. Civ. P. 56(g).

9                                          **ARGUMENT**

10       Three doctrines foreclose this suit.  *First*, Eolas's '507 continuation patent claims are

11   invalid under the doctrine of obviousness-type double patenting ("OTDP").  To determine OTDP,

12   a court analyzes the differences between the respective claims of the two patents and then

13   determines whether those differences render the second set of claims patentably distinct.  *AbbVie*

14   *Inc. v. Mathilda & Terrence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1373 (Fed. Cir.

15   2014).  A claim that is obvious in view of, or anticipated by, another claim is not patentably

16   distinct.  *Id.*  Because the '507 claims are directed to the same invention as the claims that Eolas

17   presented in its predecessor patents, and because any differences in the '507 claims are, at most,

18   obvious modifications of the claims in Eolas's predecessor patents, the '507 claims are invalid.

19       *Second*, Eolas's infringement claims are barred by issue preclusion.  The question whether

20   Eolas's patent claims are invalid in light of prior art—a question that will be litigated in this case

21   if it goes to trial—has already been answered.  Eolas lost.  Eolas may not relitigate the validity of

22   claims that are substantially identical to claims it previously litigated.  Nor may Eolas escape issue

23   preclusion merely by "us[ing] slightly different language to describe substantially the same

24   invention," as Eolas has done here.  *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342

25   (Fed. Cir. 2013).

26       *Third*, the *Kessler* doctrine bars Eolas's infringement claims against Amazon and Google

27   because, under *Kessler*, once a product has been cleared of patent infringement, it forever retains

28   that protected status.  Here, the '507 patent claims are "essentially the same" as the claims

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

8

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1    invalidated in *Eolas I* and dismissed with prejudice in *Eolas II*, and the Amazon and Google

2    products that Eolas accuses are "essentially the same," too. *SimpleAir v. Google LLC*, 884 F.3d

3    1160, 1170 (Fed. Cir. 2018). As such, the *Kessler* doctrine bars Eolas's claims against Amazon

4    (based on *Eolas I*) and against Google (based on *Eolas I* and *Eolas II*). *Id.*

5        Because there is no genuine issue of material fact concerning any of these defenses,

6    Defendants are entitled to judgment as a matter of law.

7    **I.    OBVIOUSNESS-TYPE DOUBLE PATENTING BARS EOLAS'S CLAIMS**

8        Obviousness-type double patenting "prevent[s] a patentee from obtaining a time-wise

9    extension of a patent for the same invention or an obvious modification thereof." *In re Basell*

10   *Poliolefine Italia S.P.A.*, 547 F.3d 1371, 1375 (Fed. Cir. 2008) (internal quotations omitted). The

11   doctrine of OTDP "is an important check on improper extension of patent rights through the use

12   of . . . continuation applications." *Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*, 592 F.3d

13   1340, 1346 (Fed. Cir. 2010). A continuation patent claims the same priority date, relies on the

14   same specification, and is directed to the same subject matter. *See* MPEP § 201.07. Indeed, by

15   definition "[a] continuation application is 'a second application *for the same invention* claimed in

16   a prior nonprovisional application and filed before the original prior application becomes

17   abandoned or patented.'" *Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1358 (Fed.

18   Cir. 2014) (emphasis added) (quoting MPEP § 201.07 (9th ed. Mar. 2014)). A continuation patent

19   therefore presents a heightened risk of disclosing only an obvious modification of the parent

20   patent's invention. Given the potential for abuse, including "submarine patenting"—intentionally

21   delaying the issuance of a patent to surprise a maturing industry—it is important to scrutinize

22   continuations to make sure a patentee is not trying to improperly extend its patent rights. *See*

23   *AbbVie*, 764 F.3d at 1373; Mark A. Lemley & Kimberly A. Moore, *Ending Abuse of Patent*

24   *Continuations*, 84 B.U. L. Rev. 63, 79-80 (2004).

25       Whether a patent claim is invalid for OTDP is a question of law. *Georgia-Pacific Corp. v.*

26   *U.S. Gypsum Co.*, 195 F.3d 1322, 1326 (Fed. Cir. 1999). Answering that question entails two

27   steps. *See AbbVie*, 764 F.3d at 1374. First, the court analyzes the respective claims of the two

28   patents and determines the differences. Second, the court determines whether those differences

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST
9

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

render the later set of claims sufficiently different to be patentably distinct. *Id.* A later claim that is anticipated, or rendered obvious, by an earlier claim is not patentably distinct. *Id.*; *see also Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1361 (Fed. Cir. 2009).

### A.   Eolas Has Described The Same Invention Across Each Litigation

Eolas has consistently described "the invention" in this case as covering the same broad scope as "the invention" in previous cases. For example, Eolas's complaints in both *Eolas I* and this case allege that Defendants infringe the asserted patents by providing "web pages and content to be interactively presented in browsers." *Compare* Ex. 6 (*Eolas I*, Dkt. 1) at ¶¶ 33, 42, *with Amazon*, Dkt. 1 at ¶ 15, *and* Ex. 29 (*Google*, Dkt. 1) at ¶ 15, *and* Ex. 30 (*Walmart*, Dkt. 1) at ¶ 16. Likewise, Eolas described the alleged inventions in both cases using nearly identical words, including characterizing those supposed inventions as "embed[ding] interactive content directly into the previously static web pages." *Compare* Ex. 31 (*Eolas I*, Dkt. 537) at 5-6, *with Amazon*, Dkt. 168 at 4-5.

Eolas argued in its claim construction brief that the '507 claims broadly "enable the user [to] interact with applications in Web pages" (*Amazon*, Dkt. 168 at 5), with no attempt to restrict either the scope of the "application" or the "interaction." Eolas asserted that "an interactive-content application is simply an application used to interact with content" (*id.* at 6); that a "distributed interactive-content application" "simply refers to a distributed application with interactive content" (*id.* at 14); and that, therefore, "[t]he ['507] patent is not limited to specific sorts of applications, but discusses three dimensional image applications, word processor applications, spreadsheet applications, database applications, and more" (*id.* at 10). Eolas similarly argued that *any* interaction, no matter how small, falls within the scope of the claims. *Amazon*, Dkt. 179 at 2.

This is the same broad scope Eolas attributed to the '906 claims in *Microsoft*, arguing that "the '906 patent provides a method, also embodied in computer software, that allows a computer connected to the Internet to retrieve interactive Web pages," and that "[a]n endless variety of other such program objects may be embedded within Web pages and distributed over the Web." Ex. 32 (Eolas's *Microsoft* Claim Construction Brief) at 1, 6. And it is the same broad scope Eolas

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

10

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1   attributed to both the '906 and '985 patents in *Eolas I*, where it argued (with respect to the claim

2   language in those patents corresponding the "application" recited in the '507 patent) that an

3   "executable application" was merely "any computer program code, that is not the operating system

4   or a utility, that is launched to enable an end-user to directly interact with data," and that a

5   "distributed application" was "an application that may be broken up and performed among two or

6   more computers." Ex. 31 (*Eolas I*, Dkt. 537) at 8, 24. Having consistently urged that the '507

7   claims cover the same expansive scope as its previously litigated patents, Eolas cannot now

8   credibly claim that the '507 claims are patentably distinct.

9      **B.     The '507 Patent Does Not Claim A New Invention**

10      Consistent with Eolas's own prior characterizations, the invention claimed in the '507

11   patent is the same as that found in each of the previously asserted Eolas patents. All of Eolas's

12   patents relate to a client-server relationship that takes place in a distributed network environment,

13   such as the World Wide Web. In each patent's claims, a server transfers information to a client-

14   side browser that allows the browser to detect and interact with an object displayed on a

15   hypermedia document. Upon receipt of this information, the browser "automatically invokes" an

16   application allowing the user to "interact" with the object. The invoked application is "distributed"

17   across multiple computers that are "remote" from the client computer:



FIG. 6.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

11

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1   Figure 6 of the patents' common specification, shown above, depicts these elements.  A

2 client computer communicates with a server computer via a network.  Ex. 28 ('507 patent) at 8:45-

3 50.  The preferred embodiment of the network is the Internet.  *Id.* at 8:50-52.  The server sends the

4 client computer information that enables a browser to display a portion of a distributed hypermedia

5 document (*i.e.*, a webpage).  *Id.* at 9:4-12.  The browser then automatically invokes another

6 application allowing the user to interact with an object displayed in the browser.  *Id.* at 9:19-33.

7 This other application can take the form of a distributed application that is broken up among

8 multiple remote computers on the network that work together to complete the application's task.

9 *Id.* at 11:5-18.

10   Put simply, the claims of the various Eolas patents do nothing more than describe the same

11 "invention" using different words.  As Dr. Don Turnbull's declaration explains in detail, a

12 comparison of each element of the asserted '507 claims to the Parent Claims—including the

13 dependent claims, which add nothing novel—reveals that there are no patentable distinctions

14 between the '507 claims and the Parent Claims.  *See* Turnbull Decl. at ¶¶ 85-144.  The Turnbull

15 Declaration further provides three tables, setting forth:  (1) a comparison of the elements of Claim

16 32 of the '507 patent, with the elements of Claim 42 of the '985 patent and of Claim 11 of the '293

17 patent, with summaries of similar elements (Table 1); (2) a highlighted, color-coded version of the

18 first chart, but with all asserted claims, and with different colors representing different parts of the

19 claimed system, showing how the claims overlap (Table 2); and (3) an analysis of the alleged

20 differences between the Parent Claims and the '507 claims (Table 3).  Turnbull Decl. Ex. B.

21   For ease of analysis, Defendants compare Claim 32 of the '507 patent to Claim 42 of the

22 '985 patent (asserted in *Eolas I*) and Claim 11 of the '293 patent (asserted in *Eolas II*) (collectively,

23 the "Parent Claims").  Not surprisingly, Claim 32 is not a verbatim replica of the predecessor patent

24 claims.  But the only differences are insubstantial and are not patentably distinct.  *See* Ex. 44

25 (comparison of '985 patent at 21:60-22:32 to '293 patent at 18:20-47).

26   For example, in the Parent Claims, Eolas claimed a "method of serving digital information

27 in a [computer] network environment" while, in the '507 patent, Eolas referred to the claimed

28 method as a "method, performed by a server computer connected to the World Wide Web

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

12

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

distributed hypermedia network on the Internet, for disseminating interactive content via the World Wide Web distributed hypermedia network on the Internet." *Compare* Ex. 5 ('985 patent) at Claim 40 *with* Ex. 28 ('507 patent) at Claim 32. But these are fundamentally the same thing. "Serving digital information in a computer network environment" is patentably indistinct from, and would render obvious, a "server . . . disseminating interactive content via the World Wide Web distributed hypermedia network." Turnbull Decl. ¶¶ 88-89. Also, all claims require a browser that "automatically invokes" an application to display interactive content. *Compare, e.g.*, Ex. 5 ('985 patent) at Claim 40 ("with the browser application . . . automatically invoking the executable application") *with* Ex. 28 ('507 patent) at Claim 32 ("the World Wide Web browser has been configured to . . . automatically invoke the selected interactive-content application"). And the invoked application is part of a distributed application, a portion of which is remote from the client computer. *Compare, e.g.*, Ex. 5 ('985 patent) at Claim 40 ("wherein the executable application is part of a distributed application") *with* Ex. 28 ('507 patent) at Claim 32 ("the automatically invoked interactive-content application has been configured to act as part of a distributed application"). That invoked application enables a user to interact with an object being displayed in a webpage. *Compare, e.g.*, Ex. 5 ('985 patent) at Claim 40 ("automatically invoking the executable application . . in order to enable an end-user to directly interact with the object") *with* Ex. 28 ('507 patent) at Claim 32 ("automatically invoke the selected interactive-content application . . . to interact within the World Wide Web page). *See also* Turnbull Decl., Table 1.

While the '507 patent refers to an "interactive content application" instead of an "executable application" or a "program" (as in the Parent Claims), that is not a patentable distinction, as these words are slight variants directed towards the same invention whereby an application is used for interactivity. It is well settled under Federal Circuit law that a patentee cannot avoid obviousness-type double patenting and extend a patent's term merely by using different words to describe the same invention or an obvious variant thereof. *See, e.g.*, *Geneva Pharm., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1378 (Fed. Cir. 2003) (affirming grant of summary judgment because "this doctrine prevents an applicant from extending patent protection for an invention beyond the statutory term by claiming a slight variant"); *Novartis Pharm. Corp.*

1     *v. Breckenridge Pharm. Inc.*, 909 F.3d 1355, 1367 (Fed. Cir. 2018) ("[T]he core principle

2     underlying the double patenting doctrine [is] giving one invention and nonobvious variants of that

3     invention the same patent term.").

4           **C.**     **The '507 Claims' Alleged Distinctions Are Not Patentable**

5         Defendants contended in discovery that all of the asserted claims are invalid for OTDP.

6     Eolas's validity expert, Dr. David M. Martin, provided a Rule 26 expert report in response.[4]  In

7     that report, Dr. Martin identified four sets of claim language that Eolas contends create patentable

8     distinctions from the Parent Claims. Ex. 33 (Martin Rebuttal Report) at ¶¶ 719-745.  Because the

9     Court need consider only those portions of the claims where a dispute exists, the claim comparison

10     below focuses on those four purported distinctions.  *See Slade Gorton & Co., Inc. v. Millis*, 62

11     F.3d 1433, 1995 WL 471106, at *2 (Fed. Cir. 1995) (reviewing evidence of obviousness-type

12     double patenting as to the two claim elements in dispute only); *Logic Devices, Inc. v. Apple Inc.*,

13     No. 13-cv-02943-WHA, 2014 WL 5305979, at *3 (N.D. Cal. Oct. 16, 2014) (granting summary

14     judgment of obviousness-type double patenting invalidity after analyzing the sole disputed claim

15     element); *cf. Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1358-59 (Fed. Cir.

16     2008) (affirming grant of summary judgment of invalidity after focusing analysis on two claim

17     elements specifically).

18           **1.**     **The "World Wide Web" Is Not Patentably Distinct From A**

19                  **"Distributed Hypermedia Environment"**



26         Governing case law, and Eolas's own statements, show why the addition of various "World

---

[4] Because Eolas's case against Google was transferred to this District before the service of expert reports, Google and Eolas have not yet exchanged reports on invalidity.  But validity is an issue common to all Defendants.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

14

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1  Wide Web" modifiers do not make for a patentably distinct invention.  The Federal Circuit has

2  repeatedly held claims invalid for OTDP in view of earlier, broader genus claims.  *See, e.g.*,

3  *Georgia-Pacific*, 195 F.3d at 1328 (finding OTDP invalidity where child patent claims were

4  "merely a subset" of the parent patent claims).  This makes sense because OTDP is concerned

5  about the improper extension of a patent's term, which occurs precisely because a species claim

6  would have infringed the earlier (but since expired) genus claims.  Here, it is undisputed that the

7  "World Wide Web" is a species of the broader genus "distributed hypermedia network

8  environments," and thus would have satisfied the genus limitation recited in the Parent Claims.

9  The common specification itself makes this clear.  *See* Ex. 5 ('985 patent) at 5:27-29 ("An example

10  of an open distributed hypermedia system is the so-called 'world-wide web' implemented on the

11  Internet.").

12         In *Eolas I*, Eolas had no qualms arguing that, for purposes of claim construction and

13  infringement, the prior asserted claims (including Claim 42 of the '985 patent) encompassed the

14  World Wide Web.  Ex. 31 (*Eolas I* Dkt. 537) at 5 (describing claims as enabling "World Wide

15  Web" users to "embed interactive content" on "previously-static web pages"); Ex. [#] (*(Eolas I,*

16  *Dkt. 1244)*).  This understanding stretches back to the *Microsoft* case, where Eolas admitted that

17  the phrase "distributed hypermedia environment" includes the World Wide Web.  Ex. 32 (Eolas's

18  *Microsoft* Claim Construction Brief) at 7 ("A system having these characteristics of the WWW is

19  referred to in the '906 patent as a 'distributed hypermedia environment.'").

20         Moreover, the Parent Claims require HTML, the language in which webpages are written

21  and interpreted by World Wide Web browsers.  *See* Turnbull Decl. ¶¶ 151-152; Ex. 34 (*Eolas I*,

22  Feb. 7, 2012 AM Trial Tr.) at 47:9-15 (Berners-Lee describing HTML as one of the languages of

23  the web); Ex. 32 (Eolas's *Microsoft* Claim Construction Brief) at 7 ("The Web is also characterized

24  by a set of standard data formats, including HyperText Markup Language ('HTML') . . . .").  Even

25  Eolas's expert, Dr. Martin, previously recognized that ███████████████████████████

26  ████████████████████████████████████████████████████████████████████████████

27  ███████████████████  Ex. 35 (Dec. 20, 2011 Martin Depo.) at 33:2-7.  For example, in Claim 42 of

28  the '985 patent, "the text formats are HTML tags," and the "text formats" are part of the "file

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

15

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1    containing information" that enables the browser to display a document and respond to text

2    formats. The limitation of "HTML tags" thus narrows the network, browser, and document of the

3    independent claim to the specific World Wide Web versions. Because "it is clear that a reader of

4    the ['985 and '293 patents] could have easily envisioned" the World Wide Web species of the

5    broader genus, this limitation cannot supply a patentable distinction. *AbbVie*, 764 F.3d at 1379-

6    80 (rejecting claim directed to a known species of a broader genus); Turnbull Decl. ¶¶ 150-152.

7                **2.**      **The Use Of "Two Or More Distributed Application Computers" Is**

8                            **Not Patentably Distinct From A "Distributed Application" That Is**

9                            **"Located On Two or More" Computers**

10   ███████████████████████████████████████████████████████████████████████████████

11   ███████████████████████████████████████████. Ex. 33 (Martin Rebuttal

12   Report) at ¶¶ 730-732, 740. Eolas alleges that neither the background prior art nor the predecessor

13   patents required the use of "two or more" computers and instead were limited to single server

14   implementations. *Id*. That argument lacks merit.

15           For example, Claim 11 of the '293 parent patent explicitly recites that "*a portion of the*

16   *distributed application [is] located on two or more remote computers* coupled to the distributed

17   hypermedia network environment." Therefore, "two or more" distributed application computers

18   were expressly recited in the Parent Claims. Claim 42 of the '985 patent likewise recites a

19   "distributed application," which the *Eolas I* court construed as "an application that is capable of

20   being broken up and performed *among two or more computers*." Ex. 7 (*Eolas I*, Dkt. 1244) at 34

21   (emphasis added). If a "distributed application" is one that is capable of being broken up and

22   performed among two or more computers, then—as a matter of logical necessity—there must be

23   "two or more computers" that are performing the "distributed application,"—*i.e.*, "two or more

24   distributed application computers."

25           Indeed, it was commonplace at the time of the alleged invention for more complex backend

26   functions to be distributed across many different computers, and two of the named inventors of the

27   Eolas patents themselves admitted ████████████████████████████████████████████

28   ████████████████████████████████████. Ex. 36 (Jan. 26, 2017 Doyle Depo.)

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

16

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1   at 60:24-61:8; Ex. 37 (Jan. 12, 2017 Martin Depo.) at 145:18-146:2).  One of the named inventors

2   even admitted

3

4

5   .”  *Id.* at 233:17-234:19.  In the *Eolas I* trial, Sir Tim Berners-Lee, widely credited as

6   the inventor of the World Wide Web, likewise testified that “distributive systems” in which “a

7   computer calls up a procedure on another computer remotely” were well-known since the 1980s.

8   Ex.34 (*Eolas I*, Feb. 7, 2012 AM Trial Tr.) at 57:4-58:14.  There were also numerous prior-art

9   references, a number of which Defendants have identified, that predate the Eolas patents and reflect

10  the use of “two or more distributed application computers.”  Turnbull Decl. ¶¶ 108, 112, 122, 140.

11  The use of “two or more distributed application computers” is not a distinction from the Parent

12  Claims, let alone a patentable distinction.  *See id.* ¶¶ 153-154.

13          **3.      A Browser “Configured To Select” An Application Is Not Patentably**

14                  **Distinct From One “Identifying and Locating” An Application**

15          The asserted claims recite a browser that “has been configured with a plurality of different

16  interactive-content applications” and is “configured to select” among them.

17                                                                                                    .  Ex.

18  33 (Martin Rebuttal Report) at ¶¶ 727-728.  Eolas is wrong.

19          Parent Claim 42 of the ’985 patent refers to a browser “identifying and locating an

20  executable application . . . and automatically invoking the executable application,” and Parent

21  Claim 11 of the ’293 patent references a browser “configured to . . . automatically invoke program

22  code.”  Even if, as Eolas contends, the Parent Claims could potentially have been implemented

23  with only one possible application, the Parent Claims encompass and do not rule out instances

24  involving two or more applications.  Thus, the narrower two-or-more-application claims in the

25  ’507 patent are merely a species of the earlier claimed genus, which covered one-or-more

26  applications, and are not patentably distinct.  *Georgia-Pacific*, 195 F.3d at 1326-28.

27          Further, the earlier recitation in the Parent Claims of a browser “identifying,” “locating,”

28  and “automatically invoking” an “associated” application is no different from the ’507 patent’s

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

17

DEFENDANTS’ MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

recitation of a browser configured to select from a "plurality of different interactive-content applications." Indeed, according to Eolas, the Parent Claims recite multiple ways of "configuring" a browser to "identify and locate" and then "automatically invoke" an application, including by using HTML tags to identify the interactive objects (*e.g.*, Claim 42 of the '985 patent) or by using "text formats" sent to the browser to instruct how to display an interactive object (*e.g.*, Claim 11 of the '293 patent). *Cf.* Ex. 38, (Feb. 28, 2017 Martin Report at ¶ 125b (

███████████████████████████████████████████████████████

)); *id.* at ¶ 125c (

███████████████████████████████████████████████████████

)); *see also id.* at ¶ 127

(███████████████████████████████████). The reason Claim 42 of the '985 patent recites "identifying and locating . . . and automatically invoking" is that different objects require different applications; thus, the browser described in the Parent Claims was configured to select among multiple applications in order to identify and invoke a particular application associated with a particular type of object. *See* Turnbull Decl. ¶¶ 155-159. Dr. Martin himself recognized this in the *Eolas I* trial. *See* Ex. 39 (*Eolas I*, Feb. 8, 2012 PM Trial Tr.) at 33:2-35:12 (testifying that "there are many different types of objects in the world," and that the '985 patent's "identify and locate" steps determine "which of [the browser's] many possible executable applications it's going to use that's specially adapted to play or present that type of object"). Accordingly, these elements do not supply a patentable distinction from the Parent Claims.

> **4.      The Use of "Coordinating" Computers Is Not Patentably Distinct From A Distributed Application Working Across Multiple Computers**

Eolas's final alleged distinction is that independent Claim 45 and dependent Claims 24, 26, 37, 39 of the '507 patent require the use of "coordination" computers to coordinate at least a part of the distributed application. The Texas court construed "coordinating by the one or more computers" to mean "managing multiple computers so as to work together." *Amazon*, Dkt. 212 at 35. As noted above, both Parent Claims require the distributed application to work across multiple computers: Claim 42 of the '985 patent requires that "the executable application is part of a

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

18

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

distributed application, and wherein at least a portion of the distributed application is for execution on the network server," and Claim 11 of the '293 patent requires that "at least a portion of the distributed application [is] located on two or more remote computers." In order for the "distributed application" to perform a task across multiple computers, at least one computer must "manag[e] multiple computers so as to work together," which would meet this limitation as construed by the Texas court.  Turnbull Decl. ¶¶ 160-162.  The Eolas patents' shared specification confirms that "coordination" is performed in distributed processing, as its sole disclosure of coordination explains that there must be a computer that handles coordination. Ex. 1 ('906 patent) at 11:32-37. Tellingly, the specification does not describe how to add coordination to the existing distributed system or suggest coordination requires something more to be added to the system—rather, it notes that coordination may be performed by any computer in the system. *Id.*  Accordingly, a distributed application working across multiple computers involves a computer handling coordination, since the multiple computers need to work together.

In any event, "coordination" is not a novel or non-obvious addition, as



Furthermore, the mere addition of "coordination" computers cannot supply a patentable distinction because it would merely incorporate background prior-art Internet technologies that had existed for decades. Here too, both ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and renowned prior artist Sir Tim Berners-Lee agreed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮.

▮▮▮▮▮▮▮▮▮▮▮▮ *see also, e.g.*, Ex. 34 (*Eolas I*, Feb. 7, 2012 AM Trial Tr.) at 57:24-58:14 (Sir

1    Tim Berners-Lee testifying that "distributive systems" in which "a computer calls up a procedure

2    on another computer remotely" were well-known since the 1980s). "[C]oordinating" does not

3    require anything more than the techniques already known in the prior art and thus the

4    "coordinating" limitations cannot supply a patentable distinction.[5]

5                                          *        *        *

6          In sum, Defendants have demonstrated that the Parent Claims disclose and render obvious

7    the asserted claims of the '507 patent, and have shown that none of the alleged differences

8    identified by Eolas renders the latter claims patentably distinct. To the extent there is anything in

9    the claims of the '507 patent that is not disclosed in the Parent Claims, it is no more than an obvious

10   modification of the same purported invention Eolas has been patenting and re-patenting for a

11   quarter-century. *See* Turnbull Decl. ¶¶ 143-144, 163. The asserted claims of the '507 patent are

12   therefore invalid.

13   **II.   EOLAS'S CLAIMS ARE BARRED BY ISSUE PRECLUSION**

14         Eolas recycled earlier patent claims to extend the life of its patents; but it cannot evade a

15   conclusive determination that those patents were invalid in light of prior art. Issue preclusion—

16   also known as collateral estoppel—"prevents relitigation of issues actually litigated and

17   necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." *Af-Cap,*

18   *Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1086 (9th Cir. 2007). It protects "both

19   public and private interests." *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 330 (9th Cir.

20   1995). "The private values protected include shielding litigants from the burden of re-litigating

21

22   ---
     [5] It is unclear whether Eolas contends that performance of "viewing transformations" in asserted

23   Claim 45 provides a patentable distinction. Ex. 33 (Martin Rebuttal Report) at ¶¶ 733-34
     (███████████████████████████████████████████████████████████). The
     Texas court construed "viewing transformation" as "operations performed on data for visual

24   display to a user." *Amazon*, Dkt. 212 at 37. So construed, this limitation is part of the Parent
     Claims, because Claim 42 of the '985 patent already disclosed that the application would "enable

25   an end-user to directly interact with the object while the object is being displayed." At most, the
     '507 patent's use of "viewing transformations" again simply repackages in different words ideas

26   that were already covered by the Parent Claims. And to the extent that this limitation could
     somehow fail to be disclosed by the Parent Claims, the prior art is replete with references to the

27   transformation of data for visual display to a user across a network, which one of the named
     inventors himself admitted. Turnbull Decl. ¶¶ 119-120, 162; ████████████████████████

28   ████████████████████████████████████████████████████████████████████████████

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

20

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1   identical issues with the same party, and vindicating private parties' interest in repose." *Id.*  The

2   public interests include preserving judicial economy and, even more importantly, protecting the

3   judicial process "against the corrosive disrespect that would follow if the same matter were twice

4   litigated to inconsistent results." *Id.* (citation omitted).

5          Ninth Circuit law supplies the general test for issue preclusion, but "for any aspects that

6   may have special or unique application to patent cases, Federal Circuit precedent is applicable."

7   *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013).  In the Ninth

8   Circuit, issue preclusion applies "if three requirements are met:  (1) the issue necessarily decided

9   at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first

10  proceeding ended with a final judgment on the merits; and (3) the party against whom collateral

11  estoppel is asserted was a party or in privity with a party at the first proceeding."  *Reyn's Pasta*

12  *Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006).  Issue preclusion in the patent

13  context is "not limit[ed] . . . to patent claims that are identical," and the "mere existence of different

14  language" in different patent claims does not of itself create a new issue for purposes of issue

15  preclusion.  *Ohio Willow Wood*, 735 F.3d at 1342.

16         Eolas is precluded from relitigating the issue of prior-art invalidity in this case.  There is

17  no question Eolas had a full and fair opportunity to litigate the validity of the '906 and '985 patents

18  in *Eolas I*.  There is no question that *Eolas I* ended with a final judgment on the merits.  And there

19  is no question that Eolas was a party to that proceeding.  The only question, then, is whether Eolas

20  is now trying to relitigate the same issue that was necessarily decided in *Eolas I*.  The answer is

21  yes.  *Eolas I* necessarily decided that the '985 claims were invalid in light of the prior art, and this

22  case presents substantially the same issue of invalidity.

23     A.    ***Eolas I* Necessarily Decided That The '985 Patent Claims Were Invalid In**

24           **Light Of The Prior Art**

25         The final judgment in *Eolas I* necessarily decided that the asserted claims of the '985 patent

26  were clearly and convincingly invalid in light of the prior art.  The trial was focused exclusively

27  on validity.  The jury expressly found the claims invalid.  And the Federal Circuit affirmed that

28  judgment.  That invalidity determination has preclusive effect.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

21

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1    It does not matter that neither the jury's general verdict nor the Federal Circuit's summary

2    affirmance disclosed the precise reason for finding the patents invalid:   the sole theory the

3    defendants put forth in *Eolas I* was prior-art invalidity—*i.e.*, that the asserted patent claims were

4    either anticipated by Viola or at the very least obvious in light of the prior art (including Viola).

5    *See* Ex. 41 (excerpt of *Eolas I* jury instructions).   For preclusion purposes, anticipation and

6    obviousness are not independent issues.   That is because a patent claim invalid as anticipated is

7    necessarily invalid as obvious.   *John Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1357 n.21

8    (Fed. Cir. 1998) ("[A] disclosure that anticipates under § 102 also renders the claim invalid under

9    § 103, for anticipation is the epitome of obviousness." (citation omitted)).   Accordingly, the *Eolas*

10   *I* jury verdict necessarily reflects a determination that the asserted '985 claims were at the very

11   least obvious—either because Viola already taught every element of those claims (anticipation),

12   or because Viola and/or other prior art references at least rendered them obvious, or both.   *Cf., e.g.*,

13   *United States v. Paszek*, 432 F.2d 780, 780 (9th Cir. 1970) ("[T]he jury's determination that Gibbs

14   was guilty of armed bank robbery necessarily included a determination that he was guilty of bank

15   robbery as well.").   And by the same logic, the Federal Circuit's summary decision necessarily

16   affirmed the determination that the asserted claims were at least obvious.   The *Eolas I* judgment

17   therefore has preclusive force on that issue.   Indeed, several courts have held that invalidity (not

18   just prior-art invalidity) is a single issue for purposes of issue preclusion.   *See Roche Palo Alto*

19   *LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 994 (N.D. Cal. 2007) ("[T]he relevant 'issue' . . . is the

20   ultimate determination on patent validity itself."); *see also, e.g.*, *Fairchild Semiconductor Corp. v.*

21   *Power Integrations, Inc.*, No. 12-cv-540, 2015 WL 1905871, at *2 (D. Del. Apr. 23, 2015); *Applied*

22   *Med. Res. Corp. v. U.S. Surgical Corp.*, 352 F. Supp. 2d 1119, 1126 (C.D. Cal. 2005).

23   This logical connection between anticipation and obviousness distinguishes this case from

24   *United Access Techs., LLC v. Centurytel Broadband Servs. LLC*, 778 F.3d 1327 (Fed. Cir. 2015),

25   where the Federal Circuit found that an earlier judgment of noninfringement lacked preclusive

26   effect.   In *United Access*, the patentee sued Earthlink in the first action, alleging infringement of a

27   patent for landline telephone connection systems.   *Id.* at 1328.   Earthlink raised two non-

28   infringement arguments in defense:   (1) that Earthlink's specific system lacked a "telephone

LATHAM&WATKINS⧫
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

22

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

device" as required by all asserted claims and (2) that industry-wide digital broadband systems fell outside the scope of the asserted patents. *Id.* Thus, the jury in the prior case could have based its general verdict against the patentee on "one of two separate grounds—either [i] that EarthLink did not use a telephone in its system or [ii] that the standard ADSL technology itself did not infringe." *Id.* at 1332. The first ground had no bearing on the later suit; only the second ground would have resolved the case. Because the general jury verdict could have rested on "an issue other than the one the defendants now seek to foreclose from consideration" (*i.e.*, the fact that EarthLink did not use a telephone), preclusion was inappropriate. *Id.* at 1334. Here, in contrast, both of the two grounds of invalidity (obviousness and anticipation) will resolve the case, and are neither separate nor independent. And the jury verdict necessarily rested on the issue that Defendants seek to foreclose from consideration: prior-art invalidity. *See Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1357 (Fed. Cir. 2017) (noting that a Rule 36 affirmance has issue-preclusive effect where there is "no uncertainty" as to the issue decided).

## B. This Case Presents Substantially The Same Invalidity Issue As *Eolas I*

This case presents the same issue of prior-art invalidity that was already decided in *Eolas I*. In determining whether a case presents the same issue already litigated and decided in an earlier case, the Ninth Circuit uses a four-factor test derived from the Restatement (Second) of Judgments:

> (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding? (3) could the pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? (4) how closely related are the claims involved in the two proceedings?

*Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995). All four factors weigh in favor of preclusion here. This case will largely turn on the same prior-art arguments and evidence presented in *Eolas I*. *See, e.g.*, Turnbull Decl. ¶¶ 87-108 (explaining that Claim 32 of the '507 patent was "well known in the prior art," and citing the *Eolas I* trial testimony of Sir Tim Berners-Lee). To the extent Eolas or Defendants present new evidence regarding validity, that evidence will be judged under the same validity standards that were at issue in *Eolas I*. The pretrial

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

23

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1   preparation and discovery in *Eolas I* would reasonably be expected to have embraced the validity

2   issue presented here:  although eight years have passed since *Eolas I*, the evidence that is relevant

3   to validity in this case—whether the state of the art in the early 1990s anticipated or rendered

4   obvious Eolas's claims to ownership of the interactive Web—has not changed in the interim.

5           Most importantly, the claims involved in *Eolas I* are "closely related" to the claims at issue

6   here.  *Kamilche*, 53 F.3d at 1062.  The fact that Eolas's claims arise from a new patent does not

7   change anything.  As the Federal Circuit has explained, issue preclusion is "not limit[ed] . . . to

8   patent claims that are identical."  *Ohio Willow Wood*, 735 F.3d at 1342; *see also Nestle USA, Inc.*

9   *v. Steuben Foods, Inc.*, 884 F.3d 1350, 1352 (Fed. Cir. 2018).  That is so because "it is the identity

10  of the *issues* that were litigated that determines whether collateral estoppel should apply," and "the

11  mere existence of different language" in different patent claims does not itself indicate a difference

12  of substance relevant to validity.  *Ohio Willow Wood*, 735 F.3d at 1342; *see also Soverain Software*

13  *LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015)

14  ("Complete identity of [patent] claims is not required to satisfy the identity-of-issues requirement

15  . . . .").  A decision that one set of patent claims is invalid therefore precludes a patentee from

16  contesting the invalidity of substantially identical claims, including claims in a continuation or

17  parent patent.  *See, e.g.*, *Ohio Willow Wood*, 735 F.3d at 1341-43 (invalidation of claims in

18  continuation patent preclusive on claims in parent patent); *Kimberly-Clark Worldwide Inc. v. First*

19  *Quality Baby Prods. LLC*, 135 F. Supp. 3d 850, 854-58 (E.D. Wis. 2015) (invalidation of claims

20  in parent patent preclusive on claims in continuation patent).  The question is whether "the

21  differences between the unadjudicated patent claims and adjudicated patent claims . . . materially

22  alter the question of invalidity" or, instead, merely "use slightly different language to describe

23  substantially the same invention."  *Ohio Willow Wood*, 735 F.3d at 1342.  If the latter, "collateral

24  estoppel applies."  *Id.*

25          The differences between the claims of the '507 patent asserted in this case and the claims

26  found invalid in *Eolas I* do not materially alter the question of invalidity.  For all the reasons

27  discussed above, *see supra* at 9-20, the asserted '507 claims "describe substantially the same

28  invention" claimed in invalidated Claim 42 of the '985 patent.  As explained in Section I, the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

24

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1    alleged "differences" are nothing more than Eolas using different words to say the same thing or

2    the expression of limitations already claimed in the '985 patent. Just as the "routine incorporation

3    of Internet technology" did not change the validity question for the unadjudicated claim in

4    *Soverain Software*, 778 F.3d at 1319-20, the incorporation of well-known distributed computing

5    technology does not change the validity question for the '507 claims. ████████████████████

6    ███████████████████████████████████████████████, *cf. id.* at 1319 (patentee "did

7    not invent the Internet, or hypertext, or the URL"), ████████████████████████████

8    ██████████████. *See* Ex. 37 (1/12/2017 Martin Depo.) at 145:18-146:2, 233:17-234:19 (█

9    ███████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   █████████████████████████████████████████); Ex. 36 (1/26/2017 Doyle

12   Depo.) at 60:24-61:8 (████████████████████████████████████████████████

13   ██████████████████████████████████████████); *see also Amazon*,

14   Dkt. 179-3 at ¶¶ 38-39 (Eolas's expert: "A person of ordinary skill would furthermore be aware of

15   multiple other techniques for one computer communicating with multiple remote computers . . .

16   ."). Just as in *Bourns*, "the differences between the adjudicated and unadjudicated claims relate

17   only to things known in the art and, hence, the differences between the prior art and the claims at

18   issue [here] are the same." *Bourns, Inc. v. United States*, 537 F.2d 486, 493 (Ct. Cl. 1976) (internal

19   quotation marks and citation omitted). The claims at issue here are invalid and Eolas is precluded

20   from arguing otherwise.

21   In the end, issue preclusion is not a formulaic doctrine. It "is not to be applied with the

22   hypertechnical and archaic approach of a 19th century pleading book." *Id.* at 497 (internal

23   quotation marks omitted). "[R]ealism and rationality" govern, *id.*, and a court must be guided by

24   its "sense of justice and equity," *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Foundation*, 402 U.S.

25   313, 334 (1971). It might be "technically correct that the claims are each directed to different

26   combinations, but when analyzed realistically, the substance of the adjudicated and unadjudicated

27   claims must be viewed as the same and the issues relevant to their validity are the same." *Bourns*,

28   537 F.2d at 497. Defendants have already proven—by clear and convincing evidence and at great

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

25

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1    expense—that Eolas did not invent the interactive Web.  The Federal Circuit agreed.  To let Eolas

2    relitigate that issue would create "the aura of the gaming table," *Blonder-Tongue*, 402 U.S. at 329,

3    and breed precisely the "corrosive disrespect" for the judicial system that preclusion is meant to

4    prevent, *Clements*, 69 F.3d at 330.

5    **III.    THE *KESSLER* DOCTRINE BARS EOLAS'S CLAIMS AGAINST AMAZON**
6    **AND GOOGLE**

7         Because Eolas has already litigated its claims for infringement against Amazon (*Eolas I*)

8    and against Google (in both *Eolas I* and *Eolas II*), Eolas's claims against Amazon and Google are

9    barred by the doctrine set forth in *Kessler v. Eldred*, 206 U.S. 285 (1907).  The Supreme Court

10   established the *Kessler* doctrine to shield alleged infringers from successive, harassing litigation

11   by a patentee.  *Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014) ("The *Kessler*

12   Doctrine . . . allow[s] an adjudged non-infringer to avoid repeated harassment for continuing its

13   business as usual post-final judgment in a patent action where circumstances justify that result.").

14   Under that doctrine, a successful defendant is granted "a limited trade right to continue producing,

15   using, and selling the [products] that were the subject of the first suit and to do so without fear of

16   allegations of infringement."  *Id.*  The *Kessler* doctrine applies regardless whether "invalidity or

17   noninfringement of the patent" was decided in the prior suit.  *SpeedTrack, Inc. v. Office Depot,*

18   *Inc.*, 791 F.3d 1317, 1323 (Fed. Cir. 2015); *see MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729

19   (Fed. Cir. 1987); *Zoomar, Inc. v. Paillard Prods., Inc.*, 258 F.2d 527, 530 (2d Cir. 1958); *Trs. of*

20   *Bos. Univ. v. Kingbright Elec. Co.*, ___ F. Supp. 3d ___, 2019 WL 6877182, at *3 (D. Mass. Dec.

21   17, 2019) (citing cases).

22        While traditional claim preclusion bars assertion of "essentially the same" claims in a

23   continuation patent against allegedly infringing activity up until the final judgment in the earlier

24   case, the *Kessler* doctrine bars assertion of "essentially the same" claims against "essentially the

25   same" allegedly infringing activity "post-judgment."  *SimpleAir*, 884 F.3d at 1170.  As the Federal

26   Circuit recently explained in *SimpleAir*, the *Kessler* doctrine fills a "temporal gap" with respect to

27   claims that "claim preclusion could not reach because of their *timing*."  *Id.*   Thus, where

28   infringement claims arising from continuation patents are "claim-precluded with respect to pre-

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

26

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

judgment [accused] services, then the *Kessler* doctrine would also bar [plaintiff's] assertions of those same patents against" the same defendant's "provision of essentially the same [accused] services post-judgment." *Id.* Because Eolas waited to prosecute the claims of the '507 patent until after the Federal Circuit affirmed invalidity in *Eolas I*, and after Eolas dismissed its infringement counterclaims in *Eolas II*, Eolas can allege only "post-judgment" infringement in this case. *See* Ex. 27 (Aug. 19, 2014 amendment during prosecution).

The *Kessler* doctrine squarely applies here. The accused activity in this case is "essentially the same" as in both earlier cases. *Brain Life*, 746 F.3d at 1058 (holding that *Kessler* bars assertions of infringement against "subsequent versions" of products that "are essentially the same"). In *Eolas I*, Google and Amazon defeated Eolas's contention that Google's and Amazon's websites and software allowing user interaction with embedded objects infringed the '906 and '985 patents. In that case, Eolas accused features in various Google and Amazon products, including Google's AdSense, Docs, Gmail, Instant, Maps, Search Suggest, and YouTube's interactive video and search suggest, as well as Amazon's Product Viewer, Search Suggestions, Shoveler, and Video products—all of which Eolas has accused here. *See* Ex. 7 (*Eolas I*, Dkt. 1244) at 14-17, 21; *see, e.g.*, Ex. 38 (Feb. 27, 2017 Martin Report App'x A) at ¶ 2 (listing accused Amazon products); Ex. 42 (Eolas's Mar. 31, 2016 infringement contentions naming Google accused products). In *Eolas II*, two more continuation patents from the same family (the '293 and '662 patents) were asserted against Google's "web pages and content to be interactively presented in browsers," as well. Ex. 19 (*Eolas II*, Dkt. 1-3 (cease and desist letter)); Ex. 20 (*Eolas II*, Dkt. 76 at 13 (infringement counterclaims)). Thus, Eolas's dismissed-with-prejudice infringement claims for the '293 and '662 patents also alleged infringement by the same products Eolas accuses here. And the accused features in this case are implemented using fundamentally the same JavaScript technology accused in *Eolas I*.[6] That is enough for the *Kessler* doctrine, which does

---

[6] For example, the AutoComplete (or Search Suggestion) feature on Amazon's websites, one of the features at issue in *Eolas I*, employed JavaScript to achieve its interactivity. Ex. 8 (Eolas's *Eolas I* Expert Report on Amazon AutoComplete) at ¶¶ 10, 50. Here, Eolas accuses the same JavaScript technology. *See, e.g.*, Ex. 45 (Eolas's *Amazon* Expert Report on Amazon Search) at ¶¶ 12, 49a. And although Eolas has not served an expert report on infringement on Google, there

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

27

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1   not demand that the presently and formerly accused products be perfectly identical, only that they

2   be "essentially the same." *Brain Life*, 746 F.3d at 1057.  Eolas's serial allegations against the same

3   products, employing the same technology, present exactly the sort of "repeated harassment" that

4   the *Kessler* doctrine proscribes.  *Id.* at 1056.

5        It does not matter that Eolas is now asserting claims from a patent with a number different

6   from the patents at issue in *Eolas I* and *Eolas II*.  Indeed, the Federal Circuit recently rejected the

7   argument that the *Kessler* doctrine cannot bar the assertion of "continuation patents when only

8   parent patents have previously been held noninfringing."  *SimpleAir*, 884 F.3d at 1170.  Instead,

9   the court explained, continuation patent claims that are "patentably indistinct from those

10  previously adjudicated" are barred by the *Kessler* doctrine from being asserted against essentially

11  the same products post-judgment.  *Id.*; *see also In re PersonalWeb Techs. Patent Litig.*, No. 18-

12  md-02834-BLF, 2019 WL 1455332, at *10, *14-15 (N.D. Cal. Apr. 2, 2019) (applying *Kessler*

13  doctrine to bar post-judgment infringement claims arising from a continuation patent that was

14  "essentially the same as" the patents at issue in earlier litigation).

15       Applying that analysis here, the '507 patent is a continuation in the same family as the four

16  patents Eolas unsuccessfully asserted before, and shares the same priority date and specification.

17  *See Antares Pharma, Inc.*, 771 F.3d at 1358 ("A continuation application is 'a second application

18  for the same invention claimed in a prior non-provisional application . . . .'" (quoting MPEP §

19  201.07 (9th ed. Mar. 2014))); *Applied Materials v. Advanced Semi. Materials*, 98 F.3d 1563, 1579-

20  80 (Fed. Cir. 1996) ("By definition, a continuation adds no new matter and is akin to an amendment

21  of a pending application.").  The *Kessler* doctrine bars the assertion of patent claims that "could

22  have been brought in the first suit," *Brain Life*, 746 F.3d at 1059, and nothing prevented Eolas

23  from including the exact words of the asserted '507 patent claims in its previously asserted patents,

24  since continuation claims necessarily "could have been made in the [parent] application," *Medinol*

25  *Ltd. v. Cordis Corp.*, 15 F. Supp. 3d 389, 404 (S.D.N.Y. 2014).  Indeed, Eolas's prosecution

26

27  can be no dispute that the accused Google features are likewise implemented using fundamentally
    the same JavaScript technology at issue in *Eolas I.  See, e.g.*, Dkt. 162 at 3-4 (Eolas stating that its
28  infringement contentions identify JavaScript and AJAX, a JavaScript technology); Ex. 42 (Eolas's
    Mar. 31, 2016 infringement contentions to Google).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

28

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

counsel agreed under oath that all of the '507 claims could have been included in Eolas's prior patents.  Ex. 43 (Krueger Depo.) at 334:14-335:21.  For these reasons, and the reasons explained above with respect to OTDP, the '507 claims asserted here are essentially the same as the claims asserted in *Eolas I* and *Eolas II*.  The *Kessler* doctrine bars Eolas's claims.

A claim preclusion analysis would lead to exactly the same result, save for the fact that the issuance of Eolas's new patent, and thus its new claims of alleged infringement, occurred after the judgments in *Eolas I* and *Eolas II*.  Because the *Kessler* doctrine fills a "temporal gap" with respect to claims that "claim preclusion could not reach because of their *timing*," *SimpleAir*, 884 F.3d at 1170, the application of claim preclusion doctrine may inform the application of *Kessler*.  Where a given set of infringement claims against certain products have already been litigated, and are "claim-precluded with respect to pre-judgment" allegations of infringement, then the *Kessler* doctrine steps in to prohibit assertion of the same claims against allegedly infringing activities that occur "post-judgment."  *Id.*  Federal Circuit law—which controls this issue in the patent context, *Senju Pharma. Co., Ltd. v. Apotex, Inc.*, 746 F.3d 1344, 1348 (Fed. Cir. 2014)—makes clear that claim preclusion applies wherever "the scope of the asserted patent claims in the two suits is essentially the same," *SimpleAir*, 884 F.3d at 1167.  Thus, "[e]ven where different patents are asserted between two suits, claim preclusion bars a patentee from bringing successive suits accusing the defendant's same product of infringing essentially the same patent claims." *Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 930 F.3d 1325, 1336 (Fed. Cir. 2019).  And Eolas has directed those essentially identical patent claims against essentially the same features in the Google and Amazon products that were at issue in *Eolas I*.  *See SimpleAir*, 884 F.3d at 1167 (noting that claim preclusion applies where the accused activity in both cases is "essentially the same") (citing *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008)).  In substance, Eolas has sued Amazon and Google "on the same patent twice" (or, in Google's case, three times).  *Senju*, 746 F.3d at 1353.  And "that is exactly what claim preclusion was designed to prevent."  *Id.*  The fact that claim preclusion cannot reach Eolas's claims because they target post-judgment activity means only that the *Kessler* doctrine must apply, *see SimpleAir*, 884 F.3d at 1170, so that Eolas's "repeated harassment" of Google and Amazon may end, *Brain Life*, 746 F.3d at 1056.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

29

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1                                    *       *       *

2          Application of preclusion principles is especially appropriate here.  Eolas had a full and

3    fair opportunity in *Eolas I* to convince a jury that it invented the type of web interactivity in the

4    products it accuses here.  In fact, that opportunity was uniquely full and fair—defendants bore the

5    burden of proving invalidity by clear and convincing evidence.  Eolas failed.  In *Eolas II*, Eolas

6    once again claimed to own the interactive Web; but it agreed to the dismissal—with prejudice—

7    of all of its infringement claims against Google.  After those defeats, Eolas submitted the patent

8    claims at issue here in yet another continuation application.  But that application did not claim a

9    new invention.  Eolas simply wants another "do over."  And that is exactly what issue preclusion

10   and the *Kessler* doctrine are designed to prevent.  The Court should not allow Eolas to retry to

11   another jury essentially the same lawsuits it already lost.  No case is a clearer example of

12   rearranging deck chairs on a sinking ship.  Worse, the ship already sank, and did so spectacularly

13   in 2012.  No rule of law allows that ship to be exhumed and the World Wide Web to be put on trial

14   once again.

15                                    **CONCLUSION**

16          The Court should grant summary judgment in favor of Defendants because all of the

17   asserted patent claims are invalid for obviousness-type double patenting, and as a matter of issue

18   preclusion, and because Eolas's infringement claims against Amazon and Google are barred under

19   the *Kessler* doctrine.  At the very least, the Court should grant partial summary judgment with

20   respect to any invalid and/or precluded claims.

21

22

23

24

25

26

27

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

30

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1

2    DATED:  March 24, 2020                Respectfully submitted,

3
                                           By_/s/ Richard G. Frenkel
4
                                           DOUGLAS E. LUMISH, Bar No. 183863
5                                          doug.lumish@lw.com
                                           RICHARD G. FRENKEL, Bar No. 204133
6                                          rick.frenkel@lw.com
                                           JEFFREY G. HOMRIG, Bar No. 215890
7                                          jeff.homrig@lw.com
                                           NICHOLAS YU, Bar No. 298768
8                                          nicholas.yu@latham.com
                                           LATHAM & WATKINS LLP
9                                          140 Scott Drive
                                           Menlo Park, CA 94025
10                                         Telephone: (650) 328-4600
                                           Facsimile:  (650) 463-2600
11
                                           JOSEPH H. LEE, Bar No. 248046
12                                         joseph.lee@lw.com
                                           LATHAM & WATKINS LLP
13                                         650 Town Center Drive, 20th Floor
                                           Costa Mesa, CA 92626-1925
14                                         Telephone: (714) 540-1235
                                           Facsimile:  (714) 755-8290
15
                                           AMIT MAKKER, Bar No. 280747
16                                         amit.makker@lw.com
                                           BLAKE R. DAVIS, Bar No. 294360
17                                         blake.davis@lw.com
                                           LATHAM & WATKINS LLP
18                                         505 Montgomery Street, Suite 2000
                                           San Francisco, CA 94111-6538
19                                         Telephone: (415) 395-8034
                                           Facsimile:  (415) 395-8095
20
                                           MELISSA ARBUS SHERRY (admitted pro hac vice)
21                                         melissa.sherry@lw.com
                                           CHARLES S. DAMERON (admitted pro hac vice)
22                                         charles.dameron@lw.com
                                           LATHAM & WATKINS LLP
23                                         555 Eleventh Street, Suite 1000
                                           Washington, DC 20004-1304
24                                         Telephone: (202) 637-2200
                                           Facsimile:  (202) 637-2201
25
                                           *Counsel for Defendant*
26                                         *AMAZON.COM, INC.*

27
                                           By_/s/ Carl G. Anderson
28

1

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (CA Bar No. 170151)

2

David A. Perlson (CA Bar No. 209502)
Carl G. Anderson (CA Bar No. 239927)

3

Michael D. Powell (CA Bar No. 202850)
Lindsay M. Cooper (CA Bar No. 287125)

4

Felipe Corredor (CA Bar No. 295692)
qe-eolas@quinnemanuel.com

5

50 California Street, 22nd Floor
San Francisco, CA 94111

6

Telephone: 415-875-6600
Facsimile: 415-875-6700

7

8

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Miles Freeman (CA Bar No. 299302)
qe-eolas@quinnemanuel.com

9

865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

10

Telephone: 213-443-3000
Fax: 213-443-3100

11

12

*Counsel for Defendant*
*GOOGLE LLC*

13

14

By /s/ Eric E. Lancaster

15

Bijal V. Vakil (SBN 192878)
Shamita D. Etienne-Cummings (SBN 202090)
Eric E. Lancaster (SBN 244449)

16

Henry Huang (SBN 252832)
Ryuk Park (SBN 298744)

17

WHITE & CASE LLP
3000 El Camino Real Two Palo Alto Square, 9th Floor

18

Palo Alto, CA 94306
Telephone: (650) 213-0300

19

Facsimile: (650) 213-8158
Email: bvakil@whitecase.com

20

Email: setienne@whitecase.com
Email: eric.lancaster@whitecase.com

21

Email: henry.huang@whitecase.com
Email: ryuk.park@whitecase.com

22

John R. Keville (admitted pro hac vice)

23

Robert L. Green, III (admitted pro hac vice)
WINSTON & STRAWN LLP

24

1111 Louisiana Street, 25th Floor
Houston, TX 77002-5242

25

Telephone: (713) 651-2600
Facsimile: (713) 651-2700

26

Email: jkeville@winston.com
Email: rlgreen@winston.com

27

*Counsel for Defendant*
*WALMART INC.*

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

32

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>ATTESTATION</u>**

I, Richard Frenkel, am the ECF user whose user ID and password authorized the filing of this document.   Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred in this filing.

DATED:  March 24, 2020

/s/ Richard G. Frenkel
Richard G. Frenkel

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 4:17-cv-03022-JST

33

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON OBVIOUSNESS-TYPE
DOUBLE PATENTING & PRECLUSION