UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EOLAS TECHNOLOGIES INCORPORATED,<br><br>    Plaintiff,<br><br>    v.<br><br>AMAZON.COM INC,<br><br>    Defendant. | Case No. 17-cv-03022-JST<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION OF CLAIM CONSTRUCTION**<br><br>Re: ECF Nos. 599, 619 |

Before the Court is Defendants' motion for limited reconsideration of the construction of "interactive-content application." ECF No. 619. The Court will deny the motion.

## I.   BACKGROUND

Plaintiff Eolas Technologies Incorporated ("Eolas") is an organization which conducts "research and development to create innovative technologies in the areas of interactive embedded and distributed applications, systems, data analysis, visualization, collaboration, and networking." ECF No. 1 ¶ 6.[1] On November 24, 2015, Eolas filed three actions[2] in the Eastern District of Texas alleging infringement of U.S. Patent No. 9,195,507 ("the '507 patent") by Defendants Amazon.com, Inc., Google Inc., Wal-Mart Stores, Inc., and Wal-Mart Stores Texas, LLC. *See Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 6:15-cv-1038 (E.D.T.X.), ECF No. 1; *Eolas Techs. Inc. v. Google Inc.*, No. 6:15-cv-1039 (E.D.T.X.), ECF No. 1; *Eolas Techs. Inc. v. Wal-Mart Stores, Inc.*, No. 6:15-cv-1038 (E.D.T.X.), ECF No. 1. The '507 patent recites a method and system which purports to enable a computer to interact with content inside a worldwide web page

---

[1] Unless otherwise specified, the docket citations in this order refer to the electronic case filing numbers in the present case, *Eolas v. Amazon.com, Inc.*, 4:17-cv-03022 (N.D. Cal.).

[2] These actions were later consolidated for pretrial purposes. ECF No. 22.

1   using an "interactive-content application." ECF No. 599-3 at 2; ECF No. 619 at 7; ECF No. 611
2   at 16. On December 8, 2016, the District Court for the Eastern District of Texas ("Texas Court")
3   issued a claim construction order which construed the term "interactive-content application" as
4   "application that enables a user to interact with content." ECF No. 212 at 13. In 2017, these cases
5   were transferred to the Northern District of California. ECF Nos. 251, 326, 329.
6   On August 2, 2017, at the initial case management conference following the transfer of
7   these actions, this Court granted Defendants' request to file a motion for reconsideration of the
8   previously issued claim construction order. ECF No. 372 at 3; ECF No. 377 at 2. On May 20,
9   2020, Defendants filed a motion for limited reconsideration of construction of "interactive-content
10  application." ECF Nos. 599, 619. Eolas opposes the motion, ECF No. 611, and Defendants have
11  filed a reply, ECF No. 620.

## II.     JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III.    LEGAL STANDARD

"Under Civil Local Rule 7-9(a), a party must seek permission from the court prior to filing a motion for reconsideration." *Chien Van Bui v. City and Cty. of San Francisco*, No. C 11- 04189 LB, 2014 WL 12701124, at *2 (N.D. Cal. July 25, 2014) (Citing Civ. L.R. 7-9(a)). A party may seek leave "on three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the moving party did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments." *Cutlip v. Deutsche Bank Nat'l Trust Co. for the Harborview Mortg. Loan Trust Pass-Through Certificates 2007-7*, No. 15-cv-01345-BLF, 2015 WL 5964034, at *1 (N.D. Cal. Oct. 13, 2015) (citing Civil L.R. 7-9(b)(1)-(3)).

Even if the court grants a party leave to file a motion for reconsideration, these motions "are disfavored and rarely granted." *Brown v. United States*, Nos. CV 09–8168 ABC, CR 03–847 ABC, 2011 WL 333380, *2 (C.D. Cal. Jan. 31, 2011). "[A] motion for reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial

resources.'" *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-CV-04000-EMC, 2015 WL 8477293, at *2 (N.D. Cal. Dec. 10, 2015) (quoting *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)); *see Single Chip Sys. Corp. v. Intermec IP Corp.*, No. 04CV1517 JAH(BLM), 2006 WL 6143241, at *3 (S.D. Cal. Aug. 7, 2006) ("The 'law of the case' doctrine, as well as public policy, dictates that the efficient operation of the judicial system requires the avoidance of re-arguing questions that have already been decided." (citations omitted)).

Under Federal Rule of Civil Procedure 54(b), "district courts have the inherent authority to reconsider interlocutory rulings, such as a claim construction order, at their discretion until a final judgment is entered." *Single Chip*, 2006 WL 6143241, at *2 (citations omitted); *see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983). While the federal rules "do not set forth any standard for reconsideration of interlocutory orders," most courts "adhere to a fairly narrow standard" when reviewing such orders. *See Single Chip*, 2006 WL 6143241, at *2-3. Under this standard, reconsideration is appropriate if the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Smith v. Clark Cty. School Dist.*, 727 F.3d 950, 955 (9th Cir. 2013); *Twitter, Inc. v. Sessions*, No. 14-cv-04480-YGR, 2017 WL 5751299, at *1 (N.D. Cal. Nov. 28, 2017); *see Single Chip*, 2006 WL 6143241, at *3 (applying analogous standard to motion for reconsideration of an interlocutory claim construction order); Civ. L.R. 7-9(b) (providing that a party moving for reconsideration must show "a material difference in fact or law" combined with "the exercise of reasonable diligence"; "[t]he emergence of new material facts or a change of law"; or a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court").[3] The party seeking reconsideration bears the burden of establishing appropriate grounds for that relief. *See U.S. v. Witt*, No. 1:15-cv-00418-LJO-SAB, 2015 WL 5117046, at *1 (E.D. Cal. July 31, 2015).

---

[3] Defendants urge the Court to review the issues presented in its motion "*de novo*, as the Court has discretion to address any prior order at any time prior to judgment." ECF No. 619 at 8 n.1 (citing Fed. R. Civ. P. 54(b)). The request is unsupported by authority, and the Court disregards it.

3

## IV. DISCUSSION

Defendants argue that reconsideration of the Texas Court's construction of "interactive-content application" is warranted because the court committed clear error in construing the term to mean "an application that enables a user to interact with content." ECF No. 619 at 7. In particular, Defendants contend that the Texas Court erred because it "disagreed" with their arguments that "interactive-content application" is indefinite as a matter of law and "left it up to the jury to decide the legal question of what amount of 'interactivity' would be sufficiently 'interactive' to meet that element." *Id.* at 7-8. Eolas responds that this "mere disagreement . . . is insufficient for reconsideration" and that Defendants "fail to establish 'clear error' and entirely abrogate their burden to meet this standard." ECF No. 611 at 9. The Court finds that Defendants' reiteration of arguments considered by the Texas Court provides no basis for reconsideration.

### A. Indefiniteness under *Nautilus*

Under *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014), "[a] claim is invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015) (quoting *Nautilus*, 572 U.S. at 901). "[W]hether a patent claim meets the definiteness requirement is a question of law to be decided by the court in performance of its duty as a construer of patent claims." *Acacia Media Techs. Corp. v. New Destiny Internet Grp.*, 405 F. Supp. 2d 1127, 1132 (N.D. Cal. 2005) (citing *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.,* 359 F.3d 1367, 1371 (Fed. Cir. 2004)). A defendant seeking to invalidate an issued patent must overcome the statutory presumption that the patent is valid. *See* 35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 97 (2011). As such, the defendant bears "the burden of establishing by clear and convincing evidence that the . . . patent is invalid." *U.S. Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996); *see Microsoft*, 564 U.S. at 97, 102. A patent claim is indefinite only if someone working in the relevant technical field would not understand the bounds of the claim. *See Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010); *Acacia*, 405 F. Supp. 2d at 1132. If the court "is able to determine a reasonable, unambiguous

4

1 meaning of the terms of a claim, as those terms would be understood by a person of skill in the art

2 in light of the specification, even though the task is formidable and the conclusion is one over

3 which reasonable people disagree, the claim is not indefinite." *Acacia*, 405 F. Supp. 2d at 1132.

4     Defendants argue that the Texas Court erred in finding that "interactive-content

5 application" was not indefinite under *Nautilus*. ECF No. 620 at 7. In particular, they assert that:

6 (1) "'interactive-content application' is a coined phrase . . . best understood by reference to the

7 specification," (2) the intrinsic evidence "leaves the scope of 'interactive-content application'

8 entirely uncertain," and (3) the "interactive-content application" term turns on the degree of

9 interactivity and the '507 Patent does not define how much interactivity is enough to satisfy the

10 claim limitation. ECF No. 619 at 11-14. Each argument, however, "impermissibly reiterat[es]

11 what was previously argued and rejected in [the Texas Court's] claim construction order." *Single*

12 *Chip*, 2006 WL 6143241, at *4; Civ L.R. 7-9(c) (providing that a motion for reconsideration may

13 not "repeat any oral or written argument made by the applying party in support of or in opposition

14 to the interlocutory order which the party now seeks to have reconsidered").

15     In their *Markman* briefs, Defendants argued that (1) "interactive-content application "must

16 be defined by reference to the specification" because it "is not used in the specification and . . . is a

17 coined term," (2) the term's "scope is indefinite because the specification and claims make[] it

18 clear that 'applications' are not the same thing as 'interactive-content applications,' but . . . the

19 '507 Patent provides no way of distinguishing the terms," and (3) the "term turns on the degree of

20 interactivity and [] the '507 Patent does not clearly specify how much interactivity is enough to

21 satisfy the claim limitation." ECF No. 212 at 8 (internal quotation mark omitted). In its claim

22 construction order, the Texas Court considered these arguments and found them unpersuasive.

23 *See* ECF No. 212 at 9-11 (rejecting Defendants' arguments and finding that the intrinsic record

24 enables a person of ordinary skill in the art to determine the scope of the claims); *compare* ECF

25 No. 212 at 10 (rejecting Defendants argument "that during prosecution of the application leading

26 to the '507 Patent, Plaintiff distinguished the invention from prior art by showing that the prior art

27 was not interactive enough") *with* ECF No. 629 at 13 (reasserting the argument that "the

28 prosecution history attempts to draw a distinction based on the *degree* of interactivity") (emphasis

5

1   in original). Because Defendants have essentially rehashed the arguments they made to the Texas
2   court, they fail to provide a proper basis for reconsideration to this Court. *See Single Chip*, 2006
3   WL 6143241, at *4.
4         Moreover, even if the Court were to consider Defendants' arguments, it would find that
5   they fall far short of demonstrating any "clear error" in the Texas Court's construction of
6   "interactive-content application." *S.E.C. v. Pattison*, No. C-08-4238 EMC, 2011 WL 2293195, at
7   *2 (N.D. Cal. June 9, 2011) ("[C]lear error should conform to a very exacting standard—e.g., a
8   court should have a clear conviction of error." (internal quotation marks and citation omitted)).
9   For instance, there is nothing clearly erroneous about the Texas Court's statement that "whether an
10  application is 'interactive' depends upon the details of a particular implementation and is a factual
11  question regarding infringement rather than a legal question for claim construction." ECF No. 212
12  at 10; *see* ECF No. 620 at 11 (arguing that "this aspect of the Texas court's decision alone
13  demonstrates clear error"). Contrary to Defendants' assertions, this statement does not
14  "acknowledge [the] problem" that "the claims do not have a reasonably certain scope" and,
15  thereby, "improperly leave[] a dispute regarding the scope of the claims for resolution by the
16  jury." ECF No. 619 at 13-14. As the Texas Court found, "[t]he resolution of some line-drawing
17  problems," such as whether an application is interactive, "is properly left to the trier of fact." ECF
18  No. 212 at 10 (quoting *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007)); *see*
19  *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016).
20  Defendants' remaining arguments further express their "disagreement with the [c]ourt's decision"
21  and "recapitulat[e] . . . cases and arguments considered by the [Texas Court] before rendering it
22  original decision." *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal.
23  2001); *see* ECF No. 619 at 10-13. Such "doubts or disagreement about the wisdom" of the claim
24  construction order are insufficient to demonstrate clear error. *Campion v. Old Republic Home*
25  *Protection Co.*, No. 09-CV-748-JMA(NLS), 2011 WL 1935967, at *1 (S.D. Cal. May 20, 2011)
26  ("To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it
27  must be dead wrong." (internal quotation marks and citation omitted)).
28

**B.     Indefiniteness under 35 U.S.C. § 112, ¶ 6**

The Patent Act authorizes functional claiming, "allowing patentees to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015) (en banc); 35 U.S.C. § 112, ¶ 6. If one employs such means-plus-function language in a claim, the Patent Act "plac[es] specific constraints on how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Id.*

To determine whether a purportedly means-plus-function term is indefinite, courts employ a two-step process. First, courts determine whether the term in question actually is a means-plus-function term. "[T]he use of the word 'means' in a claim element creates a rebuttable presumption that § 112, para. 6 applies." *Id.* at 1348. Conversely, "the failure to use the word 'means' . . . creates a rebuttable presumption . . . that § 112, para. 6 does not apply." *Id.* at 1348-49. "In determining whether this presumption has been rebutted, the challenger must establish by a preponderance of the evidence that the claims are to be governed by § 112, ¶ 6." *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1347 (Fed. Cir. 2016). "The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson*, 792 F.3d at 1349. Section 112, ¶ 6 "will apply if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* (internal quotation marks, alteration, and citation omitted).

Once a court determines that a claim term is a means-plus-function term, the court "next determine[s] whether the specification discloses sufficient structure that corresponds to the claimed function." *Id.* at 1351. This, in turn, is a two-step process. "The first step in construing a means-plus-function claim limitation is to determine the function of the limitation." *Sony Corp. v. Iancu*, 924 F.3d 1235, 1239 (Fed. Cir. 2019). If the court determines that the function itself is indefinite – for example, because it contains a "term of degree" – there is "no need to evaluate structure." *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1381 (Fed. Cir.

2018). Assuming the function is not indefinite, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). "Where there are multiple claimed functions, . . . the patentee must disclose adequate corresponding structure to perform all of the claimed functions." *Williamson*, 792 F.3d at 1351-52.

> For a court to hold that a claim containing a means-plus-function limitation lacks a disclosure of structure in the patent specification that performs the claimed function, necessarily means that the court finds the claim in question indefinite, and thus invalid. Because the claims of a patent are afforded a statutory presumption of validity, overcoming the presumption of validity requires that any facts supporting a holding of invalidity must be proved by clear and convincing evidence. Thus, a challenge to a claim containing a means-plus-function limitation as lacking structural support requires a finding, by clear and convincing evidence, that the specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the recited function.

*Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376-77 (Fed. Cir. 2001) (citations omitted).

Defendants argue that the Texas Court erred in finding that "interactive-content application" was not indefinite under 35 U.S.C. § 112, ¶ 6. ECF No. 620 at 13. In particular, they assert that the term "is indefinite . . . because 'interactive-content application' is recited in the claims only by reference to what it *does*, and not by what it *is*." ECF No. 619 at 17 (emphasis in original). Like Defendants' other purported grounds for reconsideration, this argument merely rehashes arguments and cites authority considered by the Texas Court. *See* ECF No. 212 at 8 ("Defendants argue that the term is a means-plus-function term because it is recited in the claims only by reference to what it does."); *compare* ECF No. 619 at 19-20 (analogizing the "interactive-content application" term of the '507 patent to the "symbol generator" term at issue in *Advanced Ground Information Systems*, 830 F.3d 1341) *with* ECF No. 174 at 13-14 (same).

In construing the term "interactive-content application," the Texas Court found that "Defendants failed to overcome the rebuttable presumption against [the term] being a means-plus-function term." ECF No. 212 at 13. Defendants urge this Court to reconsider the prior claim construction by reiterating their argument that "interactive-content application" is a "nonce" term and expressing disagreement with the Texas Court's reliance on "several cases in support of its

8

finding that the claim language 'informs' the structure of 'interactive-content application." ECF No. 619 at 24. To warrant reconsideration, however, a party "must show more than a disagreement with the [c]ourt's decision,' and cannot satisfy its burden by 'recapitulate[ing] the cases and arguments considered by the court before rendering its original decision.'" *Witt*, 2015 WL 5117046, at *1 (citing *Westlands*, 134 F.Supp.2d at 1131). Moreover, the Court finds nothing "clearly erroneous" about the Texas Court's reliance on cases which construed terms such as "executable application," "detent mechanism," and "computer code" to inform its conclusion that "interactive-content application" is not a means-plus-function term. ECF No. 212 at 11-13; *see Pattison*, 2011 WL 2293195, at *2 ("[C]lear error should conform to a very exacting standard— e.g., a court should have a clear conviction of error." (internal quotation marks and citation omitted)); *Teamsters Local 617 Pension and Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 231 (D. Ariz. 2012) ("To be clearly erroneous, a decision must strike [a court] as more than just maybe or probably wrong; it must be dead wrong." (citation omitted)). As such, the Court finds that Defendants have filed to meet their burden of establishing appropriate grounds for reconsideration of the construction of "interactive-content application."

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion for limited reconsideration of construction of "interactive-content application."

**IT IS SO ORDERED.**

Dated: July 20, 2020

JON S. TIGAR
United States District Judge