**VIA ECF**

June 30, 2021

Hon. Jacqueline Scott Corley, United States Magistrate Judge
United States District Court, Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Eolas Technologies Incorporated v. Amazon.com, Inc.,* No. 4:17-cv-03022-JST (N.D. Cal.)

Dear Judge Corley:

      In accordance with Your Honor's Civil Standing Order and with Your Honor's June 8, 2021 Order Directing Parties to Meet and Confer and File New Briefs (ECF No. 144), defendants Amazon.com, Inc. ("Amazon"), Google Inc. ("Google"), Walmart Stores, Inc. and Walmart Stores Texas LLC (together, "Walmart") (collectively, "Defendants"), and plaintiff Eolas Technologies Incorporated ("Eolas" or "Plaintiff") submit this letter regarding a discovery dispute concerning Defendants' motion for leave to supplement their June 2, 2016 invalidity contentions.

      After meeting and conferring in good faith, the parties have narrowed their disputes, but have been unable to reach a compromise on all issues.  For instance, Defendants have chosen to not refile their motions to compel certain documents from Plaintiff, the "third motion" referenced in the Court's June 8 Order (Dkt Nos. 221, 226, and 227). And, after further consideration, Plaintiff has withdrawn its opposition to Defendants' original motion as to the LBNL-related claim chart.  That LBNL-related chart is not addressed in this joint letter brief, but the Court should grant the portion of Defendants' now-unopposed motion as to the LBNL-related chart (Dkt. 203).

      Plaintiff maintains its opposition to Defendants' supplementation with the NSPNET-related chart. Accordingly, the parties respectfully file the foregoing joint letter brief to present the live issue relating to NPSNET to the Court for resolution.

Respectfully submitted,

By  */s/ David A. Perlson*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (CA Bar No. 170151)
  David A. Perlson (CA Bar No. 209502)
  Carl G. Anderson (CA Bar No. 239927)
  Michael D. Powell (CA Bar No. 202850)
  Lindsay M. Cooper (CA Bar No. 287125)
  Felipe Corredor (CA Bar No. 295692)
  qe-eolas@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: 415-875-6600
Facsimile: 415-875-6700

*Attorneys for Defendant*
*GOOGLE LLC*

By  */s/ Richard G. Frenkel*

DOUGLAS E. LUMISH, Bar No. 183863
doug.lumish@lw.com
RICHARD G. FRENKEL, Bar No. 204133
rick.frenkel@lw.com
JEFFREY G. HOMRIG, Bar No. 215890
jeff.homrig@lw.com
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile:  (650) 463-2600

JOSEPH H. LEE, Bar No. 248046
joseph.lee@lw.com
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone: (714) 540-1235
Facsimile:  (714) 755-8290

AMIT MAKKER, Bar No. 280747
amit.makker@lw.com
BLAKE R. DAVIS, Bar No. 294360
blake.davis@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 395-8034
Facsimile:  (415) 395-8095

ii

MELISSA ARBUS SHERRY (admitted pro hac vice)
melissa.sherry@lw.com
CHARLES S. DAMERON (admitted pro hac vice)
charles.dameron@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile:  (202) 637-2201

JENNIFER H. DOAN (*pro hac vice*)
jdoan@haltomdoan.com
JOSHUA R. THANE (*pro hac vice*)
jthane@haltomdoan.com
J. RANDY ROESER (*pro hac vice*)
rroeser@haltomdoan.com
HALTOM & DOAN
6500 Summerhill Road, Suite 1000
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile:  (903) 255-0800

GRANT KINSEL, Bar No. 172407
gkinsel@perkinscoie.com
PERKINS COIE, LLP
1203 3rd Street, 39th Floor
Seattle, WA 98112
Telephone: (206)-395-316
Facsimile: (206) 359-9000

*Counsel for Defendant*
*AMAZON.COM, INC*


By *_/s/ Eric E. Lancaster_*

Bijal V. Vakil (SBN 192878)
Shamita D. Etienne-Cummings (SBN 202090)
Eric E. Lancaster (SBN 244449)
Henry Huang (SBN 252832)
Ryuk Park (SBN 298744)
WHITE & CASE LLP
3000 El Camino Real Two Palo Alto Square, 9th Floor
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
Email: bvakil@whitecase.com
Email: setienne@whitecase.com
Email: eric.lancaster@whitecase.com
Email: henry.huang@whitecase.com
Email: ryuk.park@whitecase.com

John R. Keville (admitted pro hac vice)
Robert L. Green, III (admitted pro hac vice)

iii

WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002-5242
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: jkeville@winston.com
Email: rlgreen@winston.com

*Counsel for Defendant*
*WALMART INC.*

By  */s/ James E. Quigley*   _____

John B. Campbell (admitted pro hac vice)
Josh W. Budwin (admitted pro hac vice)
James E. Quigley (admitted pro hac vice)
**McKool Smith, P.C.**
303 Colorado Street, Suite 2100
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744
jcampbell@McKoolSmith.com
jbudwin@McKoolSmith.com
jquigley@McKoolSmith.com

Eliza Beeney (admitted pro hac vice)
**McKool Smith, P.C.**
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
ebeeney@McKoolSmith.com

Alan P. Block (State Bar No. 143783)
**McKool Smith Hennigan, P.C.**
300 S. Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone (213) 694-1200
Facsimile (213) 694-1234
ablock@McKoolSmith.com

*Attorneys for Plaintiff*
*Eolas Technologies Incorporated*

iv

## <u>ATTESTATION</u>

I, David A. Perlson, am the ECF user whose user ID and password authorized the filing of this document.  Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred in this filing.

DATED:  June 30, 2021              <u>/s/      *David A. Perlson*      </u>
                                               David A. Perlson

# I.     DEFENDANTS' POSITION

Defendants respectfully renew their motion for leave to supplement their June 2, 2016 Invalidity Contentions with two supplemental claim charts relating to two prior art systems: (1) Lawrence Berkeley National Laboratory ("LBNL"), and/or (2) NPSNET. Those prior art systems were previously identified in Defendant' Invalidity Contentions. Defendants' supplemental charts, provided to Eolas on September 21, 2016, merely include additional discovery from third parties evidencing the functionality of two previously identified prior art systems. Eolas has now dropped its opposition to the motion to supplement Defendants' invalidity contentions with respect to LBNL, and thus there is no dispute that portion should be granted.

As explained below, good cause exists for Defendants' supplement as to NPSNET. The good cause inquiry is two-fold, asking (1) whether the moving party was diligent in discovering the basis for amending its contentions and seeking amendment once the basis is discovered; and (2) whether the non-moving party would suffer prejudice if the motion to amend were granted. *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, 2016 WL 2855260, at *3 (N.D. Cal. May 13, 2016).  Here, Defendants were diligent and there is no prejudice to Eolas as to NPSNET.

**Defendants Were Diligent.** The rules expressly contemplate supplemental invalidity contentions based on the "[r]ecent discovery of material, prior art despite earlier diligent search." Patent L.R. 3-6. There is little doubt that Defendants' initial search was diligent; Defendants' 240-page Invalidity Contentions charted 46 anticipatory references and 62 combination references and identified numerous other background art references, including art that is specifically related to NPSNET. As this Court has held, "it strains credulity to imagine that [Defendants were] not diligent in uncovering and evaluating this many references." *Karl Storz*, 2016 WL 2855260 at *4.

With respect to NPSNET, Defendants worked to locate and contact the authors of the Brutzman, Macedonia, and Zeswitz prior art references, which were all previously produced and charted in Defendants' contentions in June 2016. On September 2, 2016, Google's counsel learned that additional NPSNET-related materials had been collected by different outside counsel in a prior action against Google brought by ART+COM. Google's counsel promptly reviewed the materials for compliance with any applicable protective orders and produced them to Eolas with a supplemental claim chart outlining how the NPSNET system invalidates the asserted claims less than three weeks later, on September 21, 2016. After meeting and conferring for over a month, Eolas objected to the additional materials. Defendants filed their motion for leave to amend their invalidity contentions less than a month later. Courts have granted leave to allow a party to amend its invalidity contentions to include newly discovered prior art references under similar circumstances. *Illumina Inc. v. BGI Genomics Co.*, 2021 WL 1022865, at *4 (N.D. Cal. Mar. 17, 2021).

Eolas's new contention that earlier contact between Michael Zyda and Google's counsel in this case shows a lack of diligence misses the mark. Eolas does not dispute that Defendants worked to contact the authors of the Brutzman, Macedonia, and Zeswitz references—none of which included Mr. Zyda, who merely supervised the work of others on those references. Nor does Eolas dispute the prompt timing of the supplemental invalidity contentions once the additional

1

NPSNET references were located by Google in September 2016.  Though it is difficult at this point to know exactly what happened in January 2016, Google is not aware of any information or documents obtained from Mr. Zyda at that time that overlaps with the documents first located in September 2016. Moreover, neither Google's counsel's prior contact with Michael Zyda nor the possession of the other NPSNET references by separate outside counsel for Google in unrelated litigation defeats diligence under the proper standard—especially given the lack of prejudice to Eolas, as discussed below.[1]  In any event, perfect diligence is not required. *Karl Storz*, 2016 WL 2855260, at *5.

**There Is No Prejudice to Eolas.** While Defendants' efforts were diligent, the complete absence of prejudice to Eolas is an independent basis for a finding of good cause. *See Karl Storz*, 2016 WL 2855260, at *3. Defendants' amendments, which they served on Eolas in 2016, "will not disrupt the case schedule or other court orders, and are therefore not prejudicial to [Eolas], as far as the timing of the case goes."  *Synchronoss Techs., Inc. v. Dropbox Inc., et al.,* No. 4:16-cv-00119-HSG, Dkt. 210 at 10. Indeed, Eolas has been in possession of the supplemental materials now for more than four years. And when Defendants served their supplemental charts, fact discovery was still open for more than two months, and expert discovery had not begun. Eolas had time to investigate the supplemental materials during fact discovery. Despite having ample time to do so, at no point during discovery did Eolas ever serve or seek ***any*** prior art discovery.[2] Likewise, Eolas has had (and will have, as to Google) a full opportunity to address all asserted prior art systems in its rebuttal expert reports. Walmart served its opening invalidity expert reports setting forth invalidity theories based on NPSNET, and Eolas's expert fully responded to those theories and evidence in his rebuttal expert report on March 30, 2017, and Eolas asked Walmart's expert about NPSNET at his deposition.

Eolas nevertheless complains of alleged prejudice it suffered by not seeing the supplemental materials during the claim construction process. However, Eolas received the supplemental materials a month before the parties submitted the joint claim construction chart on October 18, 2016 and almost a month and a half before the *Markman* hearing on November 2, 2016. At no time between when it received these materials and the *Markman* hearing did Eolas ever explain how Defendants' supplement would affect its claim construction positions. Eolas's

---

[1]  Contrary to Eolas's conclusory argument, in a footnote, that "[t]he standard is [] similar under Fifth Circuit law," the standards are different. *Compare Karl Storz*, 2016 WL 2855260 at *3-4, *with Innovative Display Techs. LLC v. Acer Inc.*, 2014 WL 2796555, at *1 (E.D. Tex. June 19, 2014).  Further, Ninth Circuit law applies in this Court, so Eolas's reliance on the Court's application of Fifth Circuit law in the context of a motion related to Eolas's violation of a Protective Order entered by a court in the Fifth Circuit is misplaced. *See* Dkt. 566 at 6 n.2 ("Federal Circuit law applies ***to this motion***, and that to the extent that Federal Circuit law would look to the law of another circuit on any particular issue, the law of the Fifth Circuit should govern." (emphasis added)). Even if this Court had broadly held that Federal and/or Fifth Circuit law applied to pre-transfer issues as Eolas contends (which it did not), the instant  motion to supplement invalidity contentions is presently being re-raised before this Court at this Court's request (ECF No. 144), making Ninth Circuit law the applicable law in any event.

[2]   Eolas served no third-party subpoenas directed to any of the prior art witnesses identified on Defendants' Rule 26 disclosures and did not serve any subpoenas on entities or individuals likely to have relevant materials related to the prior art systems disclosed in Defendants contentions.

allegations of prejudice thus ring hollow. *Illumina*, 2021 WL 1022865, at *5 (granting leave to supplement invalidity contentions after claim construction was complete); *THX, Ltd. v. Apple, Inc.*, 2016 U.S. Dist. LEXIS 57518, at *10 (N.D. Cal. Apr. 29, 2016). This is unsurprising, as Eolas's position as to all but one of the nineteen disputed terms for construction was no construction was necessary. On the other hand, Defendants would be severely prejudiced if this Court denies this Motion, as NPSNET is important and may be completely dispositive.

Eolas does not dispute any of this, instead arguing about irrelevant facts.  But when communications between counsel and prior artists were produced has no bearing on prejudice *from the proposed amendments*. *Karl Storz*, 2016 WL 2855260, at *7. Given the substantively unrebutted lack of prejudice, granting the motion is appropriate even were the Court to find a lack of diligence. *Id.* (explaining that motion to amend may be granted even where there is a lack of diligence, for example "due to lack of prejudice").

**The NPSNET System Is Important to Defendants' Defenses.** The NPSNET system invalidates the asserted claims. And the additional NPSNET references' outlining of additional applications for the NPSNET system are crucial to corroborate the distributed nature of the NPSNET system. Given Eolas' focus on the interactivity allegedly enabled by embedding content on web pages and on the '507 patent's alleged invention of distributed applications, this supplement is extremely important to Defendants' invalidity defense. But even if NPSNET was not important, Defendants' diligence and the lack of prejudice to Eolas require granting the motion. *Id.* at *3.

## II.   EOLAS'S POSITION

Eolas has withdrawn its LBNL supplementation objections (as detailed in Defendants' motion for leave, Dkt. 203). However, Eolas cannot agree to drop its NPSNET objections. Google had possession of the NPSNET references *months before* the June 2016 invalidity contention deadline. And Google's counsel—who has worked with Amazon and Walmart's counsel as part of a joint defense group since this case's inception—was also in direct contact with at least one NPSNET inventor as of January 2016—also *months before* the June 2016 invalidity contention deadline. Yet, Defendants inexplicably failed to include the NPSNET materials in their invalidity contentions or otherwise timely move to supplement their contentions. On these facts, Defendants cannot show that they were "diligent in discovering the basis for amending [their] contentions and seeking amendment once the basis is discovered," as even their own case law demands. *See Karl Storz*, 2016 WL 2855260 at *3.[3]

Additionally, given Defendants' conduct (laying behind the log and failing to timely disclose the NPSNET references and their longstanding interaction with an inventor thereof), Eolas

---

[3] The standard is the similar, though not identical, under Fifth Circuit law. *See Innovative Display Techs. LLC v. Acer Inc.*, No. 2:13-cv-522-JRG, 2014 WL 2796555, at *1 (E.D. Tex. June 19, 2014). But as Judge Tigar and this Court have held, Federal and/or Fifth Circuit law applies to pre-transfer issues like this one. Dkt. 492 at 7-8; Dkt. 566 at 6 n.2. The contentions here were served in EDTX, under EDTX's rules, and post-discovery transfer does not change the law to be applied. Judge Tigar has already criticized Google's attempt to use this District's rules for Eolas's EDTX infringement contentions (-1138 Case Dkt. 102), which led to Google dropping its complaints about Eolas's contentions. Here, EDTX law is dispositive.

has, and will continue to suffer undue prejudice if belated supplementation is permitted. Eolas will be forced to incur further delay of this case while discovery is reopened, and it will be forced to bear the costs associated with pursuing discovery related to NPSNET—discovery that could have, and should have, occurred during the fact discovery period but for Defendants' concealment of NPSNET references and their interactions with an NPSNET inventor.

**Defendants Were Not Diligent.** Defendants' assertion of diligence is belied by the evidence, which conclusively demonstrates a lack of diligence. First, Google possessed the NPSNET documents in ***November 2015*** when Eolas filed this case. Dkt. 214 at 2-3 (Google admitting that "it was Google's outside counsel in a different case that had the materials (as opposed to Google itself)").[4] And, even if not in Google's possession, it is undeniable that the NPSNET references—which were admittedly possessed by Google's lawyers—were available to Google before the original invalidity contention deadline with even a bare modicum of effort.

Second, and even more incredibly, Google's lawyers were in direct contact with a key NPSNET inventor, Michael Zyda,[5] in ***January 2016***—months before Defendants served their invalidity contentions in June 2016. Defendants' assertion that they first reached out to NPSNET witnesses in September 2016 is demonstrably false. The email shows Google's lawyers talking with NPSNET inventor "Mike Zyda"—with a subject of "Re: Eolas v. Google"—in January 2016, months before the June 2016 contention deadline. Defendants suggest Eolas newly raises this Zyda issue, but it was Defendants who concealed these conversations in their first motion for leave and in discovery for over a year, before first revealing them in February 2017.

Defendants' attempt to excuse their conduct falls flat. Defendants focus on their conduct after service of their original contentions. But the question is not—as Defendants frame it—diligence from the time they served their original contentions. The question is diligence from the time Eolas filed its complaint (November 2015). *Innovative Display*, 2014 WL 2796555, at *1 ("While Defendants have acted promptly in bringing these new arts to the attention of Plaintiff and the Court, they have failed to explain why, with reasonable diligence, they could not have discovered such arts prior to the deadline for filing Invalidity Contentions."). Indeed, Defendants completely ignore their pre-contention conduct (*e.g.*, what they knew and when, what they discussed with Mr. Zyda, which other NPSNET inventors they were in contact with, and why they hid their contacts). A demonstrated lack of diligence, as is the case here, can be—and should be— dispositive. *GeoTag, Inc. v. Frontier Commc'ns. Corp.*, No. 2:10-cv-265-JRG, 2013 WL 2637141, at *1-2 (E.D. Tex. June 11, 2013). Further, unlike *Illumina,* the NPSNET references here were not

---

[4] *Am. Soc'y For Prevention of Cruelty To Animals v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006) ("Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control." (citing *Poppino v. Jones Store Co.*, 1 F.R.D. 215, 219 (W.D. Mo. 1940))).

[5] Defendants belittle Mr. Zyda's role in this statement. Yet in EDTX, before they disclosed their January 2016 contacts with Mr. Zyda, Defendants called out his NPSNET role. Dkt. 203 at 3-4. Mr. Zyda is listed as an author on many NPSNET references and Defendants' contact with him—before the contention deadline—demonstrably shows their awareness of NPSNET.

4

"newly discovered" by Defendants. Here, and again, it is not subject to dispute that Defendants both possessed the NPSNET references and were in contact with one of the inventors thereof **months before** they served their original invalidity contentions. Defendants have no excuse for their conduct, and they were not diligent in seeking to add NPSNET.

**Defendants' NPSNET-Related Delay Unduly Prejudiced Eolas.** Defendants suggest that their lack of diligence—and their hiding of key facts—as to NPSNET, does not prejudice Eolas. Not so. For one thing, Defendants prejudiced Eolas by simultaneously delaying their disclosure of the NPSNET references while also refusing to answer discovery about their contacts with the NPSNET inventors. Defendants initially disclosed dozens of allegedly relevant prior artists. To understand which might actually be relevant, Eolas served written and deposition discovery related to Defendants' contacts with third parties about this case and prior art. Despite the fact that names, dates, and other information is unquestionably not privileged, Defendants spent months refusing to respond to that discovery—concealing their interactions with the NPSNET inventors (among others) for more than a year. Dkts. 219 at 5, 243 at 4, 250 at 2-5. It was not until the final week of fact discovery—February 2017—that Defendants first produced communications and agreements with a number of prior artists (including NPSNET's Mr. Zyda).

This belated disclosure of Defendants' longstanding contact with an NPSNET inventor—concealed for over a year—undeniably prejudiced Eolas. Defendants were in direct contact as of January 2016, but hid that fact—in the face of discovery requiring them to reveal it—for over a year, only disclosing it during the final week of the fact discovery period in February 2017. Dkt. 250 at 4-5. At that point, Defendants' obstruction and intentional concealment had effectively timed Eolas out—there was no time to propound, and receive responses to, third-party discovery requests. There is no reason to reward Defendants' intentional concealment of their longstanding interaction with, and knowledge of, NPSNET by further delaying the resolution of these cases—through injecting additional prior art and adding the cost and burden associated with taking additional discovery.

Finally, Defendants' failure to seek to amend their invalidity contentions until after the claim construction process began is enough—standing alone and irrespective of their other conduct—to find prejudice and reject Defendants' amendment. *Innovative Display*, 2014 WL 2796555, at *2. Defendants did not disclose the NPSNET references until just before the parties filed their Joint Claim Construction Statement and Defendants did not file their original motion for leave to supplement their invalidity contentions with respect to NPSNET until after the Claim Construction Order was issued. Eolas was therefore effectively prevented from considering the NPSNET materials as part of formulating and advocating its claim construction positions.

**Defendants Have Not Shown That NPSNET Is Important.** Defendants' arguments about the importance of NPSNET are meager, conclusory, and unsupported by any analysis. Indeed, at the time Defendants sought to amend their invalidity contentions with NPSNET, they had already served hundreds of references and more than 100 claim charts (Dkt. 206 at 3) and been ordered to narrow their prior art assertions (Dkt. 99 at 5). Defendants have not explained why these NPSNET references are different or better than any of those other hundreds of other references (and more than "zealous argument" is required, *Innovative Display*, 2014 WL 2796555, at *2). Nor should they be given a chance—they were not diligent, fact discovery is over, and their conduct warrants no second chances.

5