[Counsel identified on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EOLAS TECHNOLOGIES INCORPORATED,<br><br>              Plaintiff,<br><br>v.<br><br>WALMART INC.,<br><br>              Defendant. | Case No. 4:17-cv-03022-JST<br><br>Related to Case Nos. 4:17-cv-01138-JST, 4:17-cv-03023-JST, and 4:15-cv-05446-JST<br><br>**DEFENDANT WALMART'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE REPORT AND EXPERT TESTIMONY OF DR. RYAN SULLIVAN**<br><br>**REDACTED VERSION**<br><br>Hearing Date: January 20, 2022<br>Time: 2:00 p.m.<br>Place: Courtroom 6, 2nd Floor<br>Judge: Hon. Jon S. Tigar |

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 20, 2022, at 2:00 P.M, or as soon thereafter as the matter may be heard by the Honorable Jon. S. Tigar in Courtroom 6, 2nd Floor, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, Defendant Walmart Inc. ("Walmart") shall and hereby does move the Court for an order granting this Motion to Exclude Certain Testimony of Dr. Ryan Sullivan proffered by Plaintiff Eolas Technologies Incorporated ("Eolas") pursuant to Rule 702 of the Federal Rules of Evidence.

For at least the reasons explained below, Walmart respectfully asks the Court to exclude Dr. Sullivan's opinions regarding the Eolas agreements.

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   STATEMENT OF ISSUES .................................................................................................. 1

III.  BACKGROUND FACTS ..................................................................................................... 1

IV.   LEGAL STANDARDS ........................................................................................................ 2

V.    ARGUMENT ........................................................................................................................ 3

    A.    Dr. Sullivan's Opinions Comparing Eolas's Prior Agreements And The Hypothetical License Between Walmart And Eolas Are Unreliable ......................... 3

        1.    Dr. Sullivan's Inclusion of Certain Eolas Agreements Is Unreliable Under His Own Methodology ................................................................ 4

            a.    *Dr. Sullivan Failed to Apply His Own Methodology to Agreements He Deems Comparable* ........................................................................... 4

            b.    *Dr. Sullivan Applies His Methodology Inconsistently to Exclude Smaller Agreements* ............................................................................. 6

            c.    *Applied Here, Dr. Sullivan's Analysis in the Related Google Case Would Bar Reliance on the ▓▓▓▓▓▓▓▓ Agreements* .......... 8

        2.    Dr. Sullivan Fails to Account for the Difference Between a Portfolio License and the Hypothetical Single-Patent License ..................................... 8

        3.    Dr. Sullivan's HN Factor Is Unreliable and Unsupported ........................... 10

    B.    Dr. Sullivan's Analytical Approach Is Flawed And Unreliable ............................. 12

CONCLUSION ................................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Avila v. Willits Env't Remediation Tr.*,
    633 F.3d 828 (9th Cir. 2011) .................................................................................................3

*DataQuill Ltd. v. High Tech Computer Corp.*,
    887 F. Supp. 2d 999 (S.D. Cal. 2011) ...................................................................................10

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ........................................................................................................1, 3

*Eolas Techs. Inc. v. Microsoft Corp.*,
    399 F.3d 1325 (Fed. Cir. 2005) ...........................................................................................6

*Finjan, Inc. v. Sophos, Inc.*,
    No. 14-cv-01197, 2016 WL 4268659 (N.D. Cal .Aug. 15, 2016) .............................................13

*Golden Bridge Tech. v. Apple Inc.*,
    No. 5:12-cv-04882-PGG, 2014 WL 4057187 (N.D. Cal. 2014) .......................................................9

*In re Koninklijke Philips Pat. Litig.*,
    No. 18-CV-01885-HSG, 2020 WL 7398647 (N.D. Cal. Apr. 13, 2020) .....................................9

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ..............................................................................................11

*Limelight Networks, Inc. v. XO Commc'ns, LLC*,
    Civ. Acion No. 3:15-cv-720-JAG, 2018 WL 678245 (E.D. Va. 2018) ............................4, 8, 10

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ...........................................................................................9

*Lust By & Through Lust v. Merrell Dow Pharms., Inc.*,
    89 F.3d 594 (9th Cir. 1996) ................................................................................................3

*Oracle Am., Inc. v. Google Inc.*,
    No. C 10-03561 WHA, 2012 WL 850705 (N.D. Cal. 2012) .............................................4, 9, 12

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ..............................................................................................3

*Saint Lawrence Comm'ns LLC v. ZTE Corp.*,
    No. 2:15-cv-349, 2017 WL 3476978 (E.D. Tex. May 8, 2017) ...................................................11

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ......................................................................................3, 11

*Wordtech Sys, Inc. v. Integrated Networks Solutions, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) ......................................................................................... 6, 7, 9

**Rules**

Fed. R. Evid. 702 ................................................................................................................... 1, 2

## I. INTRODUCTION

Walmart respectfully moves the Court to exclude the testimony and opinions of Eolas's damages expert, Dr. Ryan Sullivan.

Dr. Sullivan did not take a principled approach to selecting comparable licenses and failed to account for differences between them and a hypothetical Walmart license. Instead, he took an outcome-driven approach. Dr. Sullivan provides opinions estimating the royalty Walmart and Eolas would have agreed to in a hypothetical negotiation, selectively relying on only a portion of Eolas's prior licensing agreements for the patent-in-suit, U.S. Patent No. 9,195,507 (the "'507 patent"). As an example, Dr. Sullivan wanted to treat ▬▬▬▬▬ licenses to the '507 patent as comparable to Walmart's hypothetical license. So he concluded, defying his own standards, that (i) they have business models that are similar to Walmart's, and (ii) their licenses to a whole portfolio of patents are comparable to Walmart's hypothetical license of a single patent. In short, Dr. Sullivan relied on significant outliers and selectively applied his own stated filtering criteria. Such an *ad hoc* approach is inapposite to the reliable methodology required by F.R.E. 702 and *Daubert*. Finally, Dr. Sullivan also takes a generic, one-size-fits-all approach in opining on a royalty based on Walmart's revenues attributable to the accused features, failing to account for overlap between the various accused features. Dr. Sullivan's opinions based on Eolas's prior agreements, which depend on flawed and inconsistent methodology, should thus be excluded from trial.

## II. STATEMENT OF ISSUES

1. Should the Court exclude Dr. Sullivan's opinions that fail to apply a reliable and principled approach to selecting and comparing Eolas's prior agreements with the hypothetical license between Eolas and Walmart?

2. Should the Court exclude Dr. Sullivan's opinions that fail to properly account for Walmart's contributions to the revenue and profits for the accused features?

## III. BACKGROUND FACTS

On February 28, 2017, Eolas served the Report of Ryan Sullivan, Ph.D. (Ex. 1, "Sullivan Report") regarding Eolas's alleged damages. The Sullivan Report includes two alternative arguments for a reasonable royalty. The first relies on Eolas's prior licensing agreements with third

parties for a broad suite of "patent relatives of the '507 patent." Ex. 1 ¶¶ 108-10. Dr. Sullivan identified ▮ such agreements, before distinguishing ▮ of them for purported differences "from Wal-Mart in terms of their business model, scale, and scope" and/or "in ways that cannot be accounted for." *Id.* ¶¶ 111-14. Dr. Sullivan then estimated the royalty base for each of the ▮ other agreements, as well as for Walmart to calculate a ratio against each. Ex. 1 at Attachment H-13. He then used that ratio to come up with his royalty payment number for Walmart. Ex. 1 at Attachments H-15, H-16, H-17.

Dr. Sullivan also calculated what he calls a hypothetical negotiation or "HN factor," which he based on a prior Eolas agreement ▮ and a jury verdict for U.S. Patent No. 5,838,906 (the "'906 patent") that multiplied his royalty estimate by 3.48x. Ex. 1 ¶¶ 120-21, 127.

Dr. Sullivan's second alternative, which he calls the analytical approach, purports to determine the percentage of Walmart's revenues that are attributable to certain accused features. *Id.* ¶¶ 163-73. Under this approach, Dr. Sullivan calculated an incremental margin using Walmart's "U.S. revenues and profits from its online retail sales," which he applied to his feature-based revenue allocations to calculate a profit number for each accused feature. *Id.* ¶¶ 174-179. Dr. Sullivan then applied a Return on Invested Capital ("ROIC") value from a third-party source, as well as a weighted average cost of capital ("WACC") adjustment, to come up with a number he asserts is the contribution of the patented technology for each accused feature. *Id.* ¶¶ 180-189. He then added the calculated values for each accused feature to derive his royalty estimate. *Id.* at Attachment K-1.

## IV.   LEGAL STANDARDS

Federal Rule of Evidence 702 allows an expert to offer opinions at trial only if "(1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. An expert must be "qualified as an expert by knowledge, skill, experience, training, or education." *Id.* The Court acts as gatekeeper, and "must assure that the expert testimony 'both rests on a reliable

foundation and is relevant to the task at hand.'" *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). To assure reliability, the expert testimony must have "a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation omitted). Expert "opinions [are] properly excluded for lack of qualification" where the "opinion[s] . . . are outside the areas of [the expert's] expertise." *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011).

"The patentee bears the burden of proving damages." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011); *see also Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("It is the proponent of the expert who has the burden of proving admissibility."). "To properly carry this burden, the patentee must sufficiently tie the expert testimony on damages to the facts of the case." *Uniloc USA*, 632 F.3d at 1315 (internal quotations and citations omitted). "If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded." *Id.*

## V. ARGUMENT

### A. Dr. Sullivan's Opinions Comparing Eolas's Prior Agreements And The Hypothetical License Between Walmart And Eolas Are Unreliable

Dr. Sullivan's royalty estimate depends on unreliable and inconsistent principles and methodology and should be excluded from trial.

- To reach his royalty determination, Dr. Sullivan first assessed whether the companies Eolas had prior agreements with had a "business model, scale, and scope" that differed from Walmart's. Ex. 1 ¶¶ 113-14. Where he purportedly found such a difference, he excluded the agreement. *Id.* Among the ▮ agreements Dr. Sullivan excluded are the seven with the lowest payments. *Id.* at Attachment C-1.
- Dr. Sullivan did not actually perform that same analysis for the companies whose agreements he found comparable. If he had, it would have been evident that a number of them similarly differ from Walmart in their "business model, scale, and scope," and, under Dr. Sullivan's own methodology, should not have been included in his analysis.

- Dr. Sullivan then used an inapplicable jury verdict involving a different (later invalidated) patent and different products (under outdated case law) to multiply his royalty estimate by 3.48x.

Dr. Sullivan's inconsistent recognition of the differences in agreements and incoherent application of his own methodology render his opinions under the licensing approach unreliable. *See Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 WL 850705, at *3 (N.D. Cal. 2012) (striking an expert's opinion for "internal inconsisten[cies]"); *Limelight Networks, Inc. v. XO Commc'ns, LLC*, Civ. Acion No. 3:15-cv-720-JAG, 2018 WL 678245, at *8 (E.D. Va. 2018) (granting a motion to exclude due to "internally inconsistent methodology that acts counter to the facts at [expert's] disposal"). Allowing Dr. Sullivan to provide internally inconsistent testimony regarding non-comparable licenses (whether he affirmatively identified them as such or simply failed to perform the necessary analysis) would only confuse, not help, the jury.

### 1. Dr. Sullivan's Inclusion of Certain Eolas Agreements Is Unreliable Under His Own Methodology

#### a. *Dr. Sullivan Failed to Apply His Own Methodology to Agreements He Deems Comparable*

Dr. Sullivan's inconsistent application of his "business model, scale, and scope" standard is particularly glaring when it comes to Eolas's prior agreements with ▓▓▓▓▓▓▓▓▓▓. Those agreements drive the ultimate number Dr. Sullivan provides as a reasonable royalty, together accounting for almost 85% of the total annualized payments under Dr. Sullivan's allegedly comparable agreements. Ex. 1 at Attachment H-15.

Crucially, ▓▓▓▓▓▓ shares the same business model, scale and scope as Walmart. The Sullivan Report acknowledges that "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." *Id.* ¶ 23. In direct contrast, ▓▓▓▓▓▓ ▓▓▓▓▓▓ primarily manufacture and sell computer hardware, devices and software, and unlike Walmart, both provide internet browsers to consumers globally. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1
2
3
4
5
6
7    Dr. Sullivan acknowledged these differences at his deposition.  He conceded that, at the time
8 of their respective agreements, ▮▮▮▮ were in a much different business than
9 Walmart—▮▮▮▮
10 ▮▮ Ex. 2, Sullivan April 26, 2017 Depo. Tr. at 111:20-112:1; 161:12-17; 168:15-18.
11    The Eolas agreements with ▮▮▮▮ reflect this difference. ▮▮
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27    The Sullivan Report also fails to address the difference in scope between the products
28 covered by the ▮▮▮▮ and a hypothetical Walmart license. ▮▮

1  ▇▇▇
2  ▇▇▇. Dr. Sullivan does not account for this difference. ▇▇▇
3  ▇▇▇
4  ▇▇▇
5  ▇▇▇
6  ▇▇▇
7  ▇▇▇
8  ▇▇▇
9  ▇▇▇

Dr. Sullivan's failure to adjust for this disparity in scope between the products covered by the Eolas agreements and the hypothetical Walmart license runs afoul of Federal Circuit precedent. In *Wordtech*, the Federal Circuit explicitly rejected reliance on certain patent licenses—even though the licenses were for the same patents at issue in the case—because, *inter alia*, no attempt was made to account for "the licensees' intended products." *Wordtech Sys, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010). The same problem exists here.

Moreover, as set forth below, Dr. Sullivan excludes other, smaller agreements using reasoning that, if applied to the ▇▇▇, would also necessitate their exclusion. Dr. Sullivan's failure to address the differences in "business model, scope, and scale" between the ▇▇▇ and a hypothetical Walmart license, and his inconsistent application of that standard, require that his opinions on the licensing approach be excluded from trial and from being presented to any jury. At minimum, Dr. Sullivan's inconsistent application of his own standard should bar any ability to rely on the ▇▇▇.

      b.    *Dr. Sullivan Applies His Methodology Inconsistently to Exclude Smaller Agreements*

Despite ignoring significant differences in "business model, scale, and scope" to include the ▇▇▇ as comparable, Dr. Sullivan excludes ▇ prior Eolas agreements—which include the ▇ lowest payments of the group identified by Dr. Sullivan—on the basis of smaller, less meaningful distinctions. Ex. 1 at Attachment C-1.

For example, Dr. Sullivan excluded Eolas's agreements ███████████ ███████████████████████████████████████████████ ██████████████████████████████████████ Ex. 1 ¶ 114. Yet in that same report, he acknowledged that █████████████████████████ ████████████████████████████████████████████████████ Id. ¶ 23.[1] There is thus more similarity between those entities than there is with companies providing ████ ████, which Walmart has never done.

       Dr. Sullivan's other exclusion decisions are similarly inconsistent and based on unclear and arbitrary delineations. One reason he gave for excluding Eolas's prior agreements with ████ ██████████████████████████████████████████████████████████ █████████████████████████████ Ex. 1 ¶ 114. That reasoning is illogical. Those agreements are licenses to all of Eolas's patents: the fact that they are low-dollar licenses following litigation only affirms that the patent lacks value. Worse, Dr. Sullivan's dismissal of these agreements ignores that every single one of them *does* account for litigation results. Here too, Dr. Sullivan's approach is self-serving, inconsistent and fatally unreliable. *Limelight*, 2018 WL 678245, at *8 (excluding expert testimony valuing certain patents while ignoring others because it was "an internally inconsistent methodology that acts counter to the facts").

       Dr. Sullivan also selectively relies on the prior Eolas agreements only when convenient for his arguments. In one such example, despite excluding the prior Eolas agreement with ████ ██████████ from his analysis after purportedly finding that it differed from Walmart in business model, scale and scope, he relies on it to argue that "the patented technology contributes to sales revenues" and that "the greater the base of products utilizing the patented technology, the greater the potential benefit to the licensee." Ex. 1 ¶¶ 113, 123.

       Dr. Sullivan cannot have it both ways, and he cannot selectively and inconsistently exclude

---

[1] Walmart does not necessarily take the position that each of the licenses that Dr. Sullivan deemed not comparable are in fact comparable. Dr. Sullivan's exclusion of these licenses is discussed to demonstrate the absence of a reliable methodology for excluding or including comparable licenses.

some prior Eolas agreements while including others, such as the ▮▮▮▮▮▮▮▮▮▮ that, under his own methodology, should also be excluded.

### c.  Applied Here, Dr. Sullivan's Analysis in the Related Google Case Would Bar Reliance on the ▮▮▮▮▮▮ Agreements

Dr. Sullivan's failure to compare the business model, scale and scope between Walmart and ▮▮▮▮▮▮▮▮▮ is particularly glaring when contrasted with his opinions in the related Google case, in which he claimed to apply the same criteria as here to identify comparable agreements. (Ex. 8, "Google Report," ¶¶ 123-33).

In the Google case, Dr. Sullivan singled out ▮▮▮▮▮▮ and Google as *unique* because they were the *only* companies that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ *Id.* ¶ 132. He even distinguishes Google from e-commerce businesses like Walmart (though conspicuously not mentioning Walmart). *Id.* ¶¶ 127-28 (distinguishing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ That same logic necessarily does not hold for Walmart. If Dr. Sullivan's opinions were internally consistent, he should have excluded the ▮▮▮ ▮▮▮▮▮▮▮▮▮ from his analysis of damages for Walmart. Yet Dr. Sullivan simply ignores those criteria for Walmart (despite using them for Google), and includes the ▮▮▮ ▮▮▮▮▮▮▮▮▮ anyway. Here again, Dr. Sullivan's approach is results-oriented and internally inconsistent, and should be stricken. *See* *Oracle*, 2012 WL 850705, at *3 (striking reasonable royalty opinion because it relied on "internally inconsistent" reasoning to value some patents more than others in a portfolio).

### 2.  Dr. Sullivan Fails to Account for the Difference Between a Portfolio License and the Hypothetical Single-Patent License

Dr. Sullivan's opinions regarding the prior Eolas agreements should also be stricken because he fails to account for a significant difference between those agreements and a hypothetical Walmart license—the prior agreements licensed Eolas's full portfolio of patents while the hypothetical license at issue is for just the '507 patent.

1    Dr. Sullivan admitted that each of the Eolas agreements upon which he relies is a license to the entire '507 patent family, which at the time of the licenses included U.S. Patent No. 7,599,985 (the "'985 Patent") and the '906 patent. Ex. 2 at 112:18-114:1; Ex. 1 ¶¶ 108-10.

It is blackletter law that portfolio licenses, such as those on which Dr. Sullivan relies, are not comparable to single-patent licenses, such as the hypothetical one here.  Dr. Sullivan must establish the value of the '507 patent alone carved out from the larger portfolio.  *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327-28 (Fed. Cir. 2009) (excluding the use of a license agreement for multiple patents as a basis for a one-patent hypothetical licensing scenario); *cf. Wordtech Sys.*, 609 F.3d at 1320 (rejecting reliance on licenses that covered the patents-in-suit because there was insufficient evidence of how the parties determined the value of the license).  Indeed, this Court has repeatedly held that failing to adequately account for the economic value of portfolio licenses warrants exclusion.  *See, e.g., In re Koninklijke Philips Pat. Litig.*, No. 18-CV-01885-HSG, 2020 WL 7398647, at *7 (N.D. Cal. Apr. 13, 2020) (excluding a reasonable royalty analysis because it "failed to apportion damages by relying on a hypothetical negotiation that include[d] unasserted patents"); *Golden Bridge Tech. v. Apple Inc.*, No. 5:12-cv-04882-PGG, 2014 WL 4057187, at *1-2 (N.D. Cal. 2014) (excluding a damages expert for committing the "basic error" of assigning "marginal" value to the additional licensed patent standards with no basis); *see also, DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1023–24 (S.D. Cal. 2011) (holding "where a license covers a portfolio of patents or includes other intellectual property or services, Plaintiff must present evidence sufficient to allow the jury to weigh the economic value of the patented feature against the economic value of the features and services covered by the license agreement.").

Dr. Sullivan's analysis violates this Court's precedent and fails to account for the fact that the prior licenses upon which he relies were for multiple patents not being licensed to Walmart in this hypothetical negotiation.  To the extent he provides any opinion at all regarding this difference, it is entirely reliant on Eolas's technical expert, and does not include any economic analysis.  *See* Ex. 1 ¶¶ 41-42, 110.  In particular, the only thing Dr. Sullivan points to is that Dr. Martin is unaware of any alternative to the '507 patent that would be technically viable or acceptable "at the scale at which Walmart operates." *Id.*  This does nothing to assess what value the other patents in Eolas's

portfolio, including the '906 and '985 patents that were in-suit in the prior actions, contributed to the agreements. That is improper. *See, e.g., Limelight Networks*, 2018 WL 678245, at *8 (finding it insufficient that expert considered the patent-in-suit "fundamental" to a license because he failed to factor in whether other patents were similarly "fundamental").

Dr. Sullivan's treatment of the '507 patent as commensurate in value with the entire Eolas portfolio is unreasonable. The '507 patent had not yet been issued when those earlier agreements were entered into, whereas the '985 and '906 patents were being actively asserted against the licensees. There is thus no basis to conclude that the licensees to the earlier patents ascribed any value to the '507 patent, and it is equally incorrect to ignore the substantial value they clearly saw in licensing the earlier '985 and '906 patents. Yet this is exactly what Dr. Sullivan does.

Dr. Sullivan's faulty approach is particularly glaring in light of the fact that there is an Eolas agreement that explicitly carves out the value of the earlier litigated '985 and '906 patents from the '507 patent. Specifically, Eolas and ▓▓▓ entered into an agreement whereby ▓▓▓ would pay $4,250,000 if the '985 and '906 patents were found valid by a jury, and $1 if they were not. *See* Ex. 1 ¶ 114 (excluding ▓▓▓ agreement). Because the '985 and '906 patents were invalidated at trial, that $1 bought ▓▓▓ a license to the '507 patent which was a pending application at the time the deal was struck. Yet Dr. Sullivan dismissed any consideration of the ▓▓▓ license with a conclusory statement that the $1 payment "is not informative of the value of the patented technology." *Id.* This further highlights the capriciousness and results-driven approach he took in his licensing approach as a whole.

Finally, as discussed below, Dr. Sullivan erred by conflating the '985 and '906 patents with the '507 patent in yet another way. To purportedly account for the presumption of validity in the hypothetical negotiation, Dr. Sullivan applied what he terms a "hypothetical negotiation factor" (or "HN factor") to the ▓▓▓ jury verdict for the '906 patent. This verdict, of course, was not for the '507 patent, and so was used just to artificially inflate the impact of the (non-comparable) ▓▓▓ on this action. Ex.1 ¶ 120. This is not a reliable approach, and Dr. Sullivan's related opinions should be excluded.

3.   **Dr. Sullivan's HN Factor Is Unreliable and Unsupported**

The majority of Dr. Sullivan's claimed reasonable royalty under the licensing approach derives not from that approach, but from the HN factor of 3.48x. Ex. 1 at Attachments H-15, H-16, H-17. The HN factor is, in turn, based solely on the jury verdict against ▮▮▮▮ and subsequent ▮▮▮▮.

As set forth above, the ▮▮▮▮ is in no way comparable to a hypothetical license between Eolas and Walmart. The underlying jury verdict was based on the '906 patent, not the '507 patent. And it was entered before the paradigm-shifting case decisions related to apportionment and the entire market value rule. *See, e.g., LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012); *Uniloc USA, Inc.*, 632 F.3d 1292.

Moreover, the ▮▮▮▮ verdict was never entered as a final judgment, as the Federal Circuit remanded it for further proceedings regarding validity. Ex. 1 ¶ 86. Courts have warned against the use of jury verdicts in the reasonable royalty analysis for exactly that reason. *See, e.g., Saint Lawrence Comm'ns LLC v. ZTE Corp.* No. 2:15-cv-349, 2017 WL 3476978, at *2 (E.D. Tex. May 8, 2017).

Nonetheless, Dr. Sullivan chose to rely on it while excluding Eolas's agreement with ▮▮▮▮, which explicitly valued the '906 and '985 patents separate and apart from the '507 patent, as "not informative." Ex. 1 ¶ 114. That kind of blatant cherry-picking and selective application further exemplifies the internal inconsistencies present throughout the Sullivan Report. *See Oracle America, Inc*, 2012 WL 850705, at *3.

Dr. Sullivan has not—and cannot—show how an agreement and jury verdict on a different patent, involving a different company with an entirely different business model from Walmart, is determinative of the outcome of a hypothetical negotiation between Walmart and Eolas for a license to the '507 patent. Dr. Sullivan should thus be excluded from providing any opinions based on any non-comparable agreements, including, at minimum, the ▮▮▮▮ This exclusion should also include any opinions that rely on those agreements, such as Dr. Sullivan's opinions regarding his HN factor.[2]

---

[2] Walmart also joins in Section II.A. of Google's Motion to Exclude the Report and Expert Testimony of Dr. Ryan Sullivan, filed contemporaneously with this Motion, which seeks to

### B.   Dr. Sullivan's Analytical Approach Is Flawed And Unreliable

As an alternative to his licensing approach, Dr. Sullivan also provides an opinion under what he calls an analytical approach. Ex. 1 ¶¶ 128–30. The methodology that Dr. Sullivan uses for his analytical approach for Walmart is largely the same as his approach for Google, and it suffers from many of the same defects as Google has identified in Google's Motion to Exclude the Report and Expert Testimony of Dr. Ryan Sullivan ("Google's Motion to Exclude Sullivan"), which was filed contemporaneously with this Motion. Accordingly, Walmart joins in the portions of Google's Motion to Exclude Sullivan addressing Dr. Sullivan's methodology for his analytical approach (Sections III.B and III.C) for the reasons set forth in that motion.

More specifically, as in the Google Report, Dr. Sullivan failed to provide any support for his assumption that the effects each accused feature has on Walmart's revenue and profits are independent of each other and can therefore be stacked. ██████████████████████████████████████████████████████████████████ ████ Ex. 1 ¶¶ 150-171. Despite this, Dr. Sullivan points to no evidence and performs no analysis to determine whether the combination of features may have a different effect on revenue and profits than when viewed in isolation, as he does in his analysis. Without this analysis, Dr. Sullivan has no basis to assume that he is not "count[in]g the revenue attributable to certain features multiple times in calculating [his] royalty base." *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197, 2016 WL 4268659, at *3 (N.D. Cal .Aug. 15, 2016). Therefore, Dr. Sullivan's opinion should be excluded. *See* Google's Motion to Exclude Sullivan § III.B.

As with the Google Report, Dr. Sullivan also fails to properly account for Walmart's many contributions to the accused functionality separate and apart from the contribution he ascribes to the alleged infringement of the '507 patent. Dr. Sullivan takes the same approach for both companies by adjusting the allocated revenues using company-wide financial data such as cost data, ROIC and WACC that are not specific to the accused features. *Compare, e.g.*, Ex. 1 ¶¶ 180-89, *with* Ex. 8 ¶¶ 193-201. That Dr. Sullivan takes a one-size-fits-all approach is itself indicative

---

exclude Dr. Sullivan's opinion regarding the HN factor for the additional reasons set forth in that motion.

of the generic nature of his analysis. So, for the reasons set forth in Section III.C of Google's Motion to Exclude Sullivan., Dr. Sullivan's opinion should be excluded.

## CONCLUSION

For the foregoing reasons, Walmart respectfully requests that the Court exclude the opinions and testimony of Dr. Sullivan. Because the flaws in his methodologies taint the entirety of Dr. Sullivan's analysis, Dr. Sullivan should be precluded from presenting his opinions at trial.

DATED: November 18, 2021                Respectfully submitted,


By  /s/ Bijal Vakil
    Bijal V. Vakil

ALLEN & OVERY LLP

Bijal V. Vakil (SBN 192878)
Shamita D. Etienne-Cummings (SBN 202090)
Eric E. Lancaster (SBN 244449)
William Keeley Wray (SBN 338653)
ALLEN & OVERY LLP
550 High St.
Palo Alto, CA  94301
Telephone:  (650) 388-1150
Email: bijal.vakil@allenovery.com
Email: setienne@allenovery.com
Email: eric.lancaster@allenovery.com
Email: william.wray@allenovery.com


JOHN R. KEVILLE (admitted Pro Hac Vice)
ROBERT L. GREEN (admitted Pro Hac Vice)
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002-5242
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: jkeville@winston.com
Email: eschlichter@winston.com
Email: rlgreen@winston.com

*Counsel for Defendant
WALMART INC.*