John B. Campbell (admitted *pro hac vice*)
Joshua W. Budwin (admitted *pro hac vice*)
James E. Quigley (admitted *pro hac vice*)
McKool Smith, P.C.
303 Colorado Street, Suite 2100
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744
jcampbell@McKoolSmith.com
jbudwin@McKoolSmith.com
jquigley@McKoolSmith.com

Eliza Beeney (admitted *pro hac vice*)
McKool Smith, P.C.
395 9th Avenue, 50th Floor
New York, New York 10001
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
ebeeney@McKoolSmith.com

Alan P. Block (admitted *pro hac vice*)
McKool Smith Hennigan, P.C.
300 S. Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234
ablock@McKoolSmith.com

Attorneys for Plaintiff
Eolas Technologies Incorporated

McKool Smith, P.C.
Austin, TX

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| **EOLAS TECHNOLOGIES INCORPORATED,**<br><br>　　　　**Plaintiff,**<br><br>　　v.<br><br>**AMAZON.COM, INC.,**<br><br>　　　　**Defendant.** | **CASE NO. 4:17-CV-03022-JST**<br><br>**EOLAS TECHNOLOGIES INCORPORATED'S NOTICE AND MOTION FOR SUMMARY JUDGMENT ON PATENT TERM ADJUSTMENT, OBVIOUSNESS-TYPE DOUBLE PATENTING, & PRECLUSION DOCTRINES**<br><br>**Judge: Hon. Jon S. Tigar**<br>**Date:　June 2, 2022**<br>**Time:　2:00 P.M.** |

## NOTICE OF MOTION FOR SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 2, 2022, at 2:00 P.M. or as soon thereafter as the matter may be heard by the Honorable Jon. S. Tigar in Courtroom 6, 2nd Floor, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, Plaintiff Eolas Technologies Inc. ("Eolas") shall and hereby does move the Court for an order granting summary judgment in favor of Plaintiff and against Defendants Amazon.com, Inc. ("Amazon"), Google LLC ("Google"), and Walmart Inc. ("Walmart") (collectively, "Defendants").

This Motion is made pursuant to Federal Rule of Civil Procedure 56, and is based on each of the following grounds:

- Summary judgment should be granted on Defendants' affirmative defenses, pleaded under 35 U.S.C. § 282(c), alleging that the Director of the PTO materially failed to comply with the patent term adjustment ("PTA") requirements of 35 U.S.C. § 154(b).

- Claims 19, 24, 26, 32, 37, 39, and 45 (collectively, the "Asserted Claims") of U.S. Patent No. 9,195,507 ("the '507 patent") are not invalid under the doctrine of obviousness-type double patenting in view of previously issued Eolas patents.

- Eolas's claims are not barred by issue preclusion (or collateral estoppel) in view of the final judgment in *Eolas Technologies Inc. v. Adobe Systems Inc.*, No. 6:09-cv-00446-LED (E.D. Tex.) ("*Adobe Lawsuit*").

- Eolas's claims against Amazon and Google are not barred by the doctrine of *Kessler v. Eldred*, 206 U.S. 285 (1907), in view of the final judgment in *Eolas/Adobe* or, with respect to Google, the final judgment in *Google Inc. v. Eolas Technologies Inc.*, No. 3:13-cv-05997-JST (N.D. Cal.) ("*2012 Google DJ*").

This Motion is based upon this Notice of Motion, Memorandum of Points and Authorities in support thereof, all pleadings and papers on file in this action, such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................1

II.    STATEMENT OF FACTS ...................................................................................3

     A.    The PTO Delays Examination of the '507 Patent...........................................3

     B.    In 2016, Prior to Completion of Discovery, the Texas Court Denies Summary Judgment Without Prejudice to Refile on the PTA Defense. ......................................4

     C.    In 2021, Following a Stay to Permit Full Briefing, Consideration, and Decision, This Court Denies Summary Judgment on the OTDP and Preclusion Defenses. ...................................................................................................5

III.   SUMMARY JUDGMENT STANDARD.............................................................6

IV.   ARGUMENT .........................................................................................................7

     A.    The Asserted PTA Defense Fails: After More Than Six Years of Litigation, There Remains No Cognizable Allegation That the PTO Materially Failed to Comply With the Requirements of 35 U.S.C. § 154(b)(2)(C) in Exercising Its Gap-Filling Authority to Determine What Constituted "Reasonable Efforts" in the Underlying Prosecution. ...........................................................................7

         1.    Statutory and regulatory background—the PTO has exclusive "gap-filling authority to determine what constitutes 'reasonable efforts'" in this context. ..............................................................................................7

         2.    The PTA defense raises a question of law for the Court. ...............................14

         3.    *Chevron* governs resolution of the question of law raised by the PTA defense. ...............................................................................................16

         4.    Summary judgment on the PTA defense is appropriate. ...............................18

     B.    The Asserted OTDP and Preclusion Defenses Fail: the Court Has Already Confirmed That the '507 Patent Claims Are Dispositively Different. ........................20

         1.    The OTDP and preclusion defenses raise questions of law for the Court. .......................................................................................................22

         2.    The dispositive questions of law have already been resolved by the Court. .......................................................................................................22

V.     CONCLUSION....................................................................................................23

McKool Smith, P.C.
Austin, TX

Case Nos. 4:17-cv-03022-JST                 EOLAS'S MOTION FOR SUMMARY JUDGMENT

-ii-

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abraxis Bioscience, LLC v. Kappos*,
  10 F. Supp. 3d 53 (D.D.C. 2014) ...............................................................................15

*Brain Life, LLC v. Elekta Inc.*,
  746 F.3d 1045 (Fed. Cir. 2014) ..................................................................................22

*Cancer Research Tech. Ltd. v. Barr Labs., Inc.*,
  625 F.3d 724 (Fed. Cir. 2010) ....................................................................................16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .......................................................................................................6

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
  467 U.S. 837 (1984) ................................................................................15, 17, 18, 19

*Gilead Scis., Inc. v. Lee*,
  778 F.3d 1341 (Fed. Cir. 2015) .............................................................................15, 16

*Granite State Ins. Co. v. Smart Modular Techs., Inc.*,
  76 F.3d 1023 (9th Cir. 1996) ................................................................................16, 22

*Immunex Corp. v. Sandoz Inc.*,
  964 F.3d 1049 (Fed. Cir. 2020) ..................................................................................22

*In re Goodman*,
  11 F.3d 1046 (Fed. Cir. 1993) ....................................................................................22

*Intra-Cellular Therapies Inc. v. Iancu*,
  938 F.3d 1371 (Fed. Cir. 2019) ...................................................................7, 8, 16, 17

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*,
  324 F.3d 1308 (Fed. Cir. 2003) ..................................................................................16

*Mayo Found. for Med. Educ. & Research v. Iancu*,
  938 F.3d 1343 (Fed. Cir. 2019) ........................................................................... passim

*Microsoft Corp. v. i4i Ltd. P'ship*,
  564 U.S. 91 (2011) ......................................................................................................13

*Mohsenzadeh v. Lee*,
  5 F. Supp. 3d 791 (E.D. Va. 2014) ...............................................................................9

MCKOOL SMITH, P.C.
AUSTIN, TX

*Ohio Willow Wood Co. v. Alps South, LLC,*
    735 F.3d 1333 (Fed. Cir. 2013)..................................................................................22

*SawStop Holding LLC v. Iancu,*
    496 F. Supp. 3d 944 (E.D. Va. 2020) ...................................................................5, 16

*SimpleAir, Inc. v. Google LLC,*
    884 F.3d 1160 (Fed. Cir. 2018)..................................................................................22

*Supernus Pharms., Inc. v. Iancu,*
    913 F.3d 1351 (Fed. Cir. 2019)........................................................................ passim

*Symbol Techs. Inc. v. Lemelson Med., Educ. & Research Found., L.P.,*
    277 F.3d 1361 (Fed. Cir. 2002)..................................................................................16

*United States v. Maybusher,*
    735 F.2d 366 (9th Cir. 1984) .....................................................................................22

**STATUTES**

35 U.S.C. § 154............................................................................................... passim

35 U.S.C. § 282............................................................................................... passim

**OTHER AUTHORITIES**

37 C.F.R. § 1.704 ...........................................................................................4, 10, 11, 18, 19

85 Fed. Reg., 36341 ...........................................................................................................10

MPEP § 2732 ....................................................................................................4, 10, 11, 19

MPEP § 2733 ................................................................................................................10

MPEP § 9020, Appendix R.................................................................................................11

McKOOL SMITH, P.C.
AUSTIN, TX

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In this motion, Eolas moves for summary judgment on several of Defendants' affirmative defenses. Each defense relates to an issue for the Court—not the jury. Yet Defendants persist in seeking to confuse the jury with these legal issues. The Court should grant summary judgment as to each defense in Eolas's favor.

*First*, Defendants assert an affirmative defense under 35 U.S.C. § 282(c), which requires them to plead and prove that the Director of the Patent and Trademark Office ("PTO") materially failed to comply with the provisions of 35 U.S.C. § 154(b) in determining the patent term adjustment ("PTA") for the patent-in-suit (the "'507 patent"). Defendants' argument under § 282(c) works only if they are free to make up their own definition for the term "reasonable efforts" found in § 154(b). Because the statute delegates substantive authority to define that term exclusively to the PTO, and because Defendants do not allege that the PTO's definition is infirm, Eolas moved for summary judgment on the PTA defense at an earlier stage in this litigation—almost six years ago. Dkt. 88. Defendants opposed, arguing that they had not sufficient opportunity to take discovery, and that the statute delegates to the PTO only procedural authority to "make rules of practice" for determining PTA. Dkt. 136 at 2. The District Court in Texas denied summary judgment without prejudice so Defendants could have more time for discovery. Dkt. 202 at 5-6. In the intervening years, the Federal Circuit has confirmed Eolas's view: the statute delegates to the PTO substantive, gap-filling authority to determine what constitutes "reasonable efforts" for purposes of § 154(b). And long after discovery, Defendants still have no argument that the PTO committed any error in exercising its gap-filling authority under the PTA statute. Further, while this challenge to agency action raises a question of law for the Court, Defendants have expressed their intent to offer testimony to the jury opining that Eolas failed to meet Defendants' own private definition of "reasonable efforts" while prosecuting the '507 patent. Rather than permit Defendants to proceed any further down that error-strewn path, summary judgment on the PTA defense should be granted now.

McKool Smith, P.C.
Austin, TX

*Second*, Defendants assert affirmative defenses under obviousness-type double patenting ("OTDP") and other preclusion-related doctrines such as issue preclusion and the *Kessler* doctrine. As with the PTA defense, these have been the subject of a prior summary judgment motion. But unlike the PTA motion, which was denied at an early stage and without prejudice to refiling following discovery, the OTDP and preclusion motion was decided in 2021—years after fact discovery ended, and following a lengthy stay of other proceedings while the parties fully briefed the issues and the Court carefully considered and definitively resolved them against Defendants. Dkt. 655; Dkt. 614. Notwithstanding that resolution against Defendants, they have similarly expressed their intent to offer testimony to the jury—under the guise of these OTDP and preclusion defenses—opining on the purported significance of prior litigations involving different Eolas patents. Defendants suggest that they remain free to submit such testimony at trial because Eolas did not affirmatively move for summary judgment on these equitable doctrines. Dkt. 752 at 4. Defendants' suggestion misses the mark for two central reasons. First, the OTDP and preclusion defenses raise questions of law for the Court, not questions of fact for the jury. Second, the Court's resolution of the relevant legal questions, which underlie its order on summary judgment, forecloses those defenses as a matter of law. For example, each of the defenses requires a finding, by the Court, that the '507 patent claims are either patentably indistinct from, or substantially the same as, prior claims. But in resolving Defendants' motion, the Court found, to the contrary, that the '507 patent claims are neither patentably indistinct from nor substantially the same as prior claims. Dkt. 655 at 9-16. Nothing more is needed, and it would be inappropriate and wasteful to duplicate the effort that has already been expended in resolving these issues. Once was enough. Even so, to prevent Defendants from going further down another error-strewn path—and in light of their effective invitation, Dkt. 752 at 4—Eolas affirmatively moves for summary judgment on the OTDP and preclusion defenses pursuant to work the Court has already done, and findings it has already made.

McKool Smith, P.C.
Austin, TX

## II.    STATEMENT OF FACTS

### A.    The PTO Delays Examination of the '507 Patent.

The University of California Regents filed the application that would become the '507 patent on November 9, 2011.[1] Dkt. 609-11 at 4 (Ex. 39 at Cover); Dkt. 655 at 3.[2] Soon after, "the PTO announced that it would not review the application until mid-2014." Dkt. 566 at 5. To expedite prosecution, Eolas filed a petition requesting that the PTO allow its application to jump the line, and receive a more speedy examination out of turn, on the ground that the "application, by relation to a prior United States application, [already had] an effective pendency of more than five years." Dkt. 609-11 at 46-48 (Ex. 40). The PTO granted that petition on June 8, 2012. Dkt. 609-11 at 49-51 (Ex. 41). Notwithstanding the PTO's agreement to expedite, no action was forthcoming. On more than ten occasions, Eolas offered to speak with the examiner—Larry Donaghue, who also examined the prior Eolas patents (Dkt. 609-6 at 38 (Ex. 17 at Cover), Dkt. 609-8 at 38 (Ex. 28 at Cover); Dkt. 609-9 at 2 (Ex. 29 at Cover))—to "expedite prosecution of the present application." Dkt. 126-7 through Dkt. 126-16 (Exs. 6-15). But those offers were met with silence. "In mid-2014, the PTO announced that it would not act in the prosecution until February 2015." Dkt. 566 at 5-6; Dkt. 609-11 at 53 (Ex. 42). In "fact, it did not act until March 2015." *Id.*; Dkt. 609-12 at 8-18 (Ex. 45).

The PTO issued its first office action (allowing several claims) in the prosecution of the '507 patent on March 27, 2015, Eolas submitted several amendments on June 25, 2015, and the PTO issued a notice of allowance on July 22, 2015. Dkt. 609-12 at 8-18 (Exs. 45-47). To correct a minor error in that notice, Eolas filed an amendment after allowance on August 20, 2015. Dkt. 609-13 at 1-25 (Ex. 48). The PTO responded with notices on August 27 and September 10, and issued the '507 patent on November 25, 2015. Dkt. 609-13 at 26-31 (Ex. 49); Dkt. 737-16 (Ex. 15) (listing prosecution activities). Concurrently with that issuance, the PTO determined the appropriate PTA for

---

[1] The University of California Regents assigned the '507 patent and its family to Eolas on October 14, 2015. Dkt. 609-13 at 32-55 (Ex. 50). For ease of reference, going forward this brief refers to the patent applicant as Eolas.

[2] As relevant documents are already in the record, and there are no disputes of material fact with respect to the issues raised in this motion, Eolas cites to previous filings in this case, and those filings are cited by docket number with the prior exhibit number in parentheses.

-3-

McKool Smith, P.C.
Austin, TX

the '507 patent under 35 U.S.C. § 154(b) and 37 C.F.R. §§ 1.702-1.704. *See* Dkt. 737-16 (Ex. 15) (providing PTA calculation). Because the PTO missed the statutory deadline to issue its first office action within 14 months by 807 days, and missed the statutory deadline to issue the patent within 3 years by 380 days, it calculated a total of 1,187 days of "A" and "B" delay under 35 U.S.C. §§ 154(b)(1)(A) and (b)(1)(B). *Id.* After subtracting the 137 days that the "A" and "B" delays overlapped, the PTO calculated a total delay attributable to the PTO of 1,050 days. *Id.*; 35 U.S.C. § 154(b)(2)(A). The PTO next reduced the delay attributable to the PTO by the 8 days between Eolas's August 20, 2015 amendment and the PTO's following notice—the PTO determined that this fell within the circumstances established under its delegated authority as constituting delay attributable to the applicant. *See* 35 U.S.C. § 154(b)(2)(C)(iii); 37 C.F.R. § 1.704(c)(10) (2015 version); MPEP § 2732; Dkt. 737-16 (Ex. 15). When the calculations were finished, "[b]ecause of the Patent and Trademark Office's delay in acting on the application, the PTO ordered that the patent would be subject to a total patent-term adjustment of 1,042 days." Dkt. 566 at 5-6.

**B.    In 2016, Prior to Completion of Discovery, the Texas Court Denies Summary Judgment Without Prejudice to Refile on the PTA Defense.**

The same day that the '507 patent issued in 2015, Eolas sued Defendants in the Eastern District of Texas. Dkt. 1. Defendants raised a number of affirmative defenses in response, including one alleging that the '507 patent's PTA was invalid. *E.g.*, Dkt. 46 ¶ 31; Dkt. 51 ¶ 16. Because this PTA defense raised a question of law, and because Defendants had not "provide[d] any argument or evidence that the patent term adjustment prescribed by the Patent Office is incorrect," Eolas filed a one-page motion for summary judgment on the defense in early 2016. Dkt. 88. Defendants opposed, arguing among other things that they needed additional time for discovery into the defense. Dkt. 118 at 8-9; Dkt. 119 at 8-10. Defendants also argued that the PTO might have erred in failing to reduce PTA under a definition not found in the PTO's regulations—one to be supplied instead by Defendants or their expert—of the relevant statutory term "reasonable efforts." Dkt. 136 at 2; Dkt. 137 at 1. Rather than definitively resolve the parties' dispute over the asserted PTA defense, the Texas District Court denied the motion without prejudice to refiling following discovery. Dkt. 202 at 5-6. After transfer, each Defendant filed an Amended Answer with a PTA defense. Dkt. 382 ¶ 32

-4-

(Amazon's Tenth Defense); Case No. -1138 Dkt. 95 ¶ 40 (Google's Tenth Defense); Case No. -3023 Dkt. 93 ¶ 15 (Walmart's Fifteenth Defense).

In the half decade since that denial without prejudice, the case law has substantially developed on a number of issues relevant to the parties' legal arguments. For example, while Defendants argued in 2016 that 35 U.S.C. § 154(b)(2)(C)(iii) merely provides the PTO with authority to "make rules of practice" for determining PTA, Dkt. 136 at 2, in 2019 the Federal Circuit confirmed that § 154(b)(2)(C)(iii) instead provides the PTO with "gap-filling authority to determine what constitutes 'reasonable efforts'" for purposes of the PTA statute, *Supernus Pharms., Inc. v. Iancu*, 913 F.3d 1351, 1357 (Fed. Cir. 2019). And while Defendants argued in 2016 that determining PTA should require a fact-intensive investigation, Dkt. 119 at 6-8, in 2019 the Federal Circuit rejected a reading of the statute that could require some "fact-intensive inquiry" beyond review of the patent prosecution timeline, *Mayo Found. for Med. Educ. & Research v. Iancu*, 938 F.3d 1343, 1350-51 (Fed. Cir. 2019). Finally, while the parties disputed the relevance and role of administrative deference to these issues in 2016, in the intervening years the "Federal Circuit has consistently reviewed the [PTO]'s decisions about patent term adjustments using the *Chevron* framework." *SawStop Holding LLC v. Iancu*, 496 F. Supp. 3d 944, 950 (E.D. Va. 2020).

### C.   In 2021, Following a Stay to Permit Full Briefing, Consideration, and Decision, This Court Denies Summary Judgment on the OTDP and Preclusion Defenses.

In 2020, Defendants filed a motion for summary judgment seeking resolution of their equitable defenses based on the OTDP and preclusion-related doctrines. Dkt. 614. Eolas had asked that Defendants file the motion in 2016, but "Amazon believe[d] this Court may be more receptive to the preclusion and obviousness-type double patenting issues," and so Defendants waited to file the motion until after transfer. Dkt. 371 at 16 n.12. Along with their motion, which the Court permitted Defendants to file without counting against the Court's typical one-summary-judgment-motion limit, Defendants sought, and received, a stay for 14 more months while the parties briefed and the Court considered—and ultimately rejected—their defenses. Dkt. 591-2; Dkt. 569 at 13; Dkt. 655.

In resolving Defendants' motion for summary judgment, the Court needed to determine whether, among other things, the '507 patent claims are "patentably indistinct" from, or

McKool Smith, P.C.
Austin, TX

-5-

"substantially the same" as, patent claims at issue in prior litigations. Dkt. 655 at 6, 13, 16. The Court found that the '507 patent claims were neither "patentably indistinct" from nor "substantially the same" as claims at issue in prior litigations. *Id.* at 16 & n.11. To the contrary, the Court found that the current and prior claims differed "in several respects, including: (1) their adaptation to 'World Wide Web page[s]' and 'browser[s],' (2) their incorporation of 'two or more distributed application computers connected to the World Wide Web,' (3) their configur[ation] of the World Wide Web browser to select and automatically invoke an interactive-content application, and (4) their use of 'coordination computers [to] perform[] coordination of at least part of the distributed application to perform at least one task.'" *Id.* at 15. With respect to OTDP in particular, the Court further found that: the '507 patent claims "contain differences that extend far beyond" those that could justify application of the defense, Dkt. 655 at 11; there was "no indication that a person of ordinary skill in the art would have been 'motivat[ed] to narrow the [previously patented] genus' to the 'World Wide Web' species contained in the '507 patent," *id.* at 12; and "even the exemplary claim comparison contained in Defendants' briefs fails to demonstrate that Claim 32 of the '507 patent is 'merely an obvious variation of an invention disclosed and claimed in the [prior] patent[s],'" *id.* at 9; *see also id.* at 16 n.11 ("Because the '507 patent is not 'patentably indistinct' from those previously adjudicated, Defendants' arguments regarding the similarity between the accused products and the products at issue in [the prior litigations] are inapplicable.").

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

MCKOOL SMITH, P.C.
AUSTIN, TX

## IV.    ARGUMENT

    **A.    The Asserted PTA Defense Fails: After More Than Six Years of Litigation, There Remains No Cognizable Allegation That the PTO Materially Failed to Comply With the Requirements of 35 U.S.C. § 154(b)(2)(C) in Exercising Its Gap-Filling Authority to Determine What Constituted "Reasonable Efforts" in the Underlying Prosecution.**

        **1.    Statutory and regulatory background—the PTO has exclusive "gap-filling authority to determine what constitutes 'reasonable efforts'" in this context.**

*35 U.S.C. § 154(b)—the patent term adjustment ("PTA") statute.*

Historically, U.S. patents were awarded a period of exclusivity—their "patent term"—of 17 years from the date the patent issued. *See Intra-Cellular Therapies Inc. v. Iancu*, 938 F.3d 1371, 1374-75 (Fed. Cir. 2019). That changed in 1994, when Congress amended the law to provide for a patent term running 20 years "measured from the earliest filing date of the application for patent." *Id.* Under the new system, "if a favorable patent examination took, say, seven years to complete, then there would only be 13 years of patent term remaining after issuance, far less than the 17-year term" previously provided. *Id.* "To protect patent owners against loss of patent term due to agency delay in the patent examination process, Congress amended [35 U.S.C.] § 154 in 1999 to restore patent term under certain circumstances." *Id.*

Section 154(b)(1) sets out three timeliness "[g]uarantees," with a corresponding adjustment of patent term for any delays attributable to the PTO and its agency-related proceedings. The statute first provides a "[g]uarantee of prompt patent and trademark office responses" to applications, replies, appeals, and payment of issue fees. 35 U.S.C. § 154(b)(1)(A). The PTO is given a certain amount of time to respond in each scenario, and should it miss its congressionally mandated deadline, "the term of the patent shall be extended 1 day for each day after the end of the period specified … until the [necessary action] is taken." *Id.* This is known as "A Delay." *See Intra-Cellular*, 938 F.3d at 1374-75. The statute next provides a "[g]uarantee of no more than 3-year application pendency," and similarly mandates that when this deadline is missed—and "B Delay" accrues—"the term of the patent shall be extended 1 day for each day after the end of that 3-year period until the patent is issued." 35 U.S.C. § 154(b)(1)(B). Finally, the statute provides a

McKool Smith, P.C.
Austin, TX

-7-

"[g]uarantee of adjustments for delays due to derivation proceedings, secrecy orders, and appeals." *Id.* § 154(b)(1)(C). "C Delay" accrues in these circumstances, and "the term of the patent shall be extended 1 day for each day of the pendency of the proceeding, order, or review, as the case may be." *Id.* To the extent that A, B, and C Delays overlap, "the period of adjustment granted … shall not exceed the actual number of days the issuance of the patent was delayed." *Id.* § 154(b)(2)(A).

The mathematical calculation of PTA does not end with adding the non-overlapping days attributable to PTO delay. The statute provides that the final adjustment is reached by commensurately reducing PTA "for delays caused by the applicant." *Intra-Cellular Therapies*, 938 F. 3d at 1374-75. Using the same one-to-one calculation applied to delays attributable to the PTO, the statute provides that the "period of adjustment of the term of a patent [for A, B, and C Delay] shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application." 35 U.S.C. § 154(b)(2)(C)(i). The statute specifies a single circumstance in which "an applicant shall be deemed to have failed to engage in reasonable efforts" for purposes of PTA: "for the cumulative total of any periods of time in excess of 3 months that are taken to respond to a notice from the Office making any rejection, objection, argument, or other request, measuring such 3-month period from the date the notice was given or mailed to the applicant." *Id.* § 154(b)(2)(C)(ii). Aside from that specified circumstance, the statute expressly leaves a gap regarding the definition of "reasonable efforts" for the PTO to fill: "[t]he Director [of the PTO] shall prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application." *Id.* § 154(b)(2)(C)(iii). As the Federal Circuit more recently confirmed, any question whether particular conduct amounts to "a failure to engage in reasonable efforts" in prosecution falls "within the USPTO's gap-filling authority to determine what constitutes 'reasonable efforts.'" *Supernus Pharms., Inc. v. Iancu*, 913 F.3d 1351, 1357 (Fed. Cir. 2019).

Significantly, every period of delay specified in the statute—for A, B, C, *and* applicant Delay—involves an administrable calculation of days following "the end of the [particular] period specified." 35 U.S.C. § 154(b)(1)(A); *see also id.* §§ 154(b)(1)(B), (1)(C), (2)(C)(ii). In short, the

McKool Smith, P.C.
Austin, TX

-8-

statute contemplates that PTA can be determined by a computer program measuring dates on a patent prosecution timeline. The need for PTA to be calculated without a fact-intensive (and subjective) inquiry is, in fact, critical to the proper functioning of the statutory scheme. Because while PTA is designed to protect owners against patent term loss attributable to agency delay, and only comes into play when the statute's timeliness guarantees have not been met, the statute itself provides no independent period of time for the PTO to make its PTA determination. It simply requires the PTO to determine PTA—which will necessarily involve calculations that run up to the date of issuance—and to "transmit a notice of that determination no later than the date of issuance of the patent." *Id.* § 154(b)(3)(B)(i). Any determination of PTA that might require some kind of "fact-intensive inquiry" at the time of patent issuance—when the issuance is already overdue under the statute—would turn the salutary purpose of § 154(b) on its head. *See Mayo Found. for Med. Educ. & Research v. Iancu*, 938 F.3d 1343, 1350-51 (Fed. Cir. 2019) (rejecting a reading of § 154(b) that "could require an unduly burdensome, fact-intensive inquiry" beyond a straightforward review of the prosecution timeline). In this context, an "administrab[le]" interpretation must be chosen over a "case-by-case approach" that would "precipitate[]" "wasteful litigation"—and threaten to embroil the PTO in disputes that could only cause further unwanted delay. *See id.* (citing *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 59 (2011)).

**37 C.F.R. § 1.704—the PTA "reasonable efforts" regulations.**

In addition to the congressional mandate to fill the substantive "reasonable efforts" gap left in § 154(b)(2)(C), the statute also directs the PTO to "prescribe regulations establishing procedures for the application for and determination of patent term adjustments." 35 U.S.C. § 154(b)(3)(A). The PTO has promulgated these regulations, including those "establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application." *Id.* § 154(b)(2)(C)(iii). "Together, [37 C.F.R.] §§ 1.702, 1.703, and 1.704 implement the PTA Statute by setting forth the precise circumstances warranting PTA credits and PTA reductions, as well as corresponding mathematical rules by which the USPTO computes the actual PTA." *Mohsenzadeh v. Lee*, 5 F. Supp. 3d 791, 796 (E.D. Va. 2014). These precise

circumstances triggering PTA credits and reductions, along with the corresponding mathematical rules, are programmed into the Patent Application Location and Monitoring ("PALM") system. And the PTO uses the PALM system to calculate PTA, essentially in real-time, in order to satisfy its mandate to determine PTA and transmit notice of its determination "no later than the date of issuance of the patent." *See* 35 U.S.C. § 154(b)(3)(B)(i); MPEP § 2733. The PTO makes this process transparent: "[i]nformation as to how the patent term adjustment calculation has been made" is available "through Patent Application Information Retrieval (PAIR) as www.uspto.gov/learning-and-resources/portal-applications." MPEP § 2733. And patent applicants "may routinely use PAIR to check the accuracy of the date entered in the PALM system for their applications (i.e., the type of the paper and date of receipt in the Office) throughout prosecution." *Id.*

The precise and administrable circumstances constituting a failure to "engage in reasonable efforts" before the PTO are found in 37 C.F.R. § 1.704. These regulations first confirm, as required by the statute, that there will be a one-to-one reduction of PTA for every day in which the applicant failed to engage in reasonable efforts to conclude prosecution. *Id.* § 1.704(a). This initial regulatory statement principally tracks the language § 154(b)(1)(C)(i) and, like its corresponding statutory provision, provides no definition of "reasonable efforts" nor any circumstance that constitutes a "failure of reasonable efforts." *Compare* 35 U.S.C. § 154(b)(1)(C)(i) *with* 37 C.F.R. § 1.704(a). The first such circumstance is described in 37 C.F.R. § 1.704(b), which principally tracks the 3-month language of 35 U.S.C. § 154(b)(1)(C)(ii). The PTO then steps into its gap-filling role to establish the remaining circumstances that constitute a failure of reasonable efforts with 37 C.F.R. § 1.704(c). This section lays out 14 specific circumstances that will trigger PTA reduction, along with the mathematical rules for calculating the resulting reduction for each circumstance. *Id.*

These 14 circumstances[3] include a number situations in which filing papers such as amendments or IDSs will prompt reduction of PTA. Circumstance 6, for example, requires a calculable reduction of PTA when the patent applicant submits "a preliminary amendment or other

---

[3] The PTO amended 37 C.F.R. § 1.704 in 2020, 85 Fed. Reg., 36341 (noting that "Section 1.704 is amended by revising paragraph (c) to read as follows ..."), but the PTO applied a prior version when it issued the '507 patent in 2015, MPEP § 2732 (showing R-10.2019 version of MPEP).

Case Nos. 4:17-cv-03022-JST                    EOLAS'S MOTION FOR SUMMARY JUDGMENT

McKool Smith, P.C.
Austin, TX

preliminary paper less than one month before the mailing of an Office action … that requires the mailing of a supplemental Office action." *Id.* § 1.704(c)(6) (requiring a reduction, not to exceed four months, of the "number of days, if any, beginning on the day after the mailing date of the original Office action … and ending on the date of mailing of the supplemental Office action"). Circumstance 8 requires a similar reduction of PTA when the applicant submits "a supplemental reply or other paper [such as an IDS] … after a reply has been filed." *Id.* § 1.704(c)(8). Circumstance 10, which the PTO applied here, requires another similar reduction of PTA when the applicant submits "an amendment … after a notice of allowance has been given or mailed." *Id.* § 1.704(c)(10).

The PTO elsewhere explains that a consistent theme runs through its gap-filling "reasonable efforts" regulations: they are designed to encourage applicants to "refrain from engaging in actions or inactions that prevent or interfere with the Office's ability to process or examine an application." MPEP § 2732. The PTO also explains that the 14 established circumstances are not necessarily exhaustive, and that it retains legislative gap-filling power to reduce PTA "on the basis of conduct that interferes with the Office's ability to process or examine an application" even if that conduct would constitute a new circumstance not described in the current §§ 1.704(c)(1)-(14). MPEP § 2732. And this has been the PTO's consistent approach. The originally promulgated regulations included only circumstances 1 through 10—circumstances 11 through 14 were added later. MPEP § 9020, Appendix R. The PTO is clear, however, that the power to recognize new circumstances, and to define what constitutes "reasonable efforts to conclude prosecution" for purposes of the statute, is derived solely from "the authority provided in 35 U.S.C. § 154(b)(2)(C)(iii)." MPEP § 2732. Nowhere does the PTO suggest that gap-filling authority is vested in any other party. Nor could the PTO tolerate the addition of new "reasonable efforts" circumstances that might require any kind of fact-intensive inquiry—that would undermine its statutory mandate to calculate PTA prior to issuance without any additional time or resources provided by Congress to complete the task. In fact, the PTO has argued that a reading of 35 U.S.C. § 154(b) that could require it to investigate the significance of even a single phone call between examiner and applicant in order to determine PTA would be improper. *See Mayo*, 938 F.3d at 1350-51. And the Federal Circuit agreed. *Id.* Under both

the plain language of the statute and the PTO's carefully considered implementation of its delegated requirements, PTA is and must continue to be easily calculable by PALM.

Significantly, Defendants do not appear to challenge the propriety of any of these legislative gap-filling regulations. Nor do they appear to raise any complaint regarding the precise circumstances warranting PTA credits or PTA reductions established by the PTO, nor regarding any of the corresponding mathematical rules or calculations that were used by the PTO in the PALM system to determine PTA for the '507 patent.

*25 U.S.C. § 282(c)—the PTA defense.*

Challenges to PTA can be made under 35 U.S.C. § 154(b)(4)(A), which permits an "applicant dissatisfied with the Director's decision" to appeal the PTA determination to a federal district court. This provision, however, applies only to the patent applicant: "[t]he determination of a patent term adjustment under this subsection shall not be subject to appeal or challenge by a third party prior to the grant of the patent." *Id.* § 154(b)(4)(B). This limitation makes sense, as third parties would lack Article III standing for such an appeal at that time. Congress thus amended 35 U.S.C. § 282(c) to provide an opportunity for third parties, with Article III standing, to make that PTA challenge. Defendants charged with infringement may now raise a challenge to the Director's PTA determination as an affirmative defense: "[i]nvalidity of the extension of a patent term or any portion thereof under section 154(b) or 156 because of the material failure … by the Director … to comply with the requirements of such section shall be a defense in any action involving the infringement of a patent during the period of the extension of its term and shall be pleaded."[4] *Id.*

The statute plainly envisions that this affirmative defense involves a direct challenge to and review of the Director's determination of PTA, as it excludes one particular agency determination from the review otherwise taking place—"[a] due diligence determination under section 156(d)(2) is not subject to review in such an action." *Id.* That is, in contrast to the other agency determinations under §§ 154(b) and 156, third parties have an administrative opportunity to challenge due diligence

---

[4] The statute also permits a charge that "the applicant for the extension" failed to comply with statutory requirements. 35 U.S.C. § 282(c). But Eolas did not apply for any extension for the '507 patent, and nothing in § 154(b) required Eolas's action or compliance. The only challenge at issue under §§ 154(b) and 282(c) is to the Director's determination of PTA for the '507 patent.

-12-

McKOOL SMITH, P.C.
AUSTIN, TX

determinations under § 156(d)(2). *Id.* § 156(d)(2)(B)(ii). Exempting those determinations from review thus confirms that the § 282(c) PTA defense is designed to give third parties the chance to challenge the agency action that they otherwise did not have prior to patent issuance.

It is also noteworthy that Congress added the PTA defense to § 282(c), rather than § 282(b). Section 282(a) provides that a "patent shall be presumed valid," and that the "burden of establishing invalidity of any patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282(a). Section 282(b) then lays out the "defenses in any action involving the validity or infringement of a patent," which include "[i]nvalidity of the patent or any claim in suit on any ground specified in part II as a condition of patentability." *Id.* § 282(b)(2). Significantly, these defenses do not involve any challenge to the Director or PTO—they begin with a presumption of patent validity and then require a comparison between that presumptively valid patent and any "ground specified" in the patent statute "as a condition for patentability." *Id.* There is thus no need to show that the Director committed any error to prove invalidity, and defendants asserting invalidity often go to great lengths to avoid alleging any error on the part of the Director or PTO—by, for example, emphasizing prior art not considered during prosecution. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 109-12 (2011) (noting the historical prevalence of such arguments). The PTA defense, on the other hand, requires an explicit and unambiguous challenge to the Director's compliance with the requirements of § 154(b). And rather than attacking the patent itself, it attacks "the extension of a patent term … during the period of the extension." 35 U.S.C. § 282(c). The PTA defense would thus have been out of place in § 282(b), and was added instead to § 282(c).

The distinction between *patent* invalidity attacks under § 282(b) and *PTA* invalidity attacks under § 282(c) grows even greater where, as here, the PTA attack is based on an allegation that the Director failed to comply with the "reasonable efforts" requirements of § 154(b). Congress delegated no gap-filling authority to the PTO to substantively define the conditions of patentability. The PTO has no authority, for example, to promulgate regulations establishing the circumstances in which a patent is directed to an abstract idea. A defendant will thus never need to challenge any PTO regulation in order to successfully plead and prove patent invalidity under 35 U.S.C. §§ 101 and

McKOOL SMITH, P.C.
AUSTIN, TX

282(b). Congress did, on the other hand, delegate gap-filling authority to the PTO "to determine what constitutes 'reasonable efforts.'" *Supernus*, 913 F.3d at 1357. To make out a PTA defense based on a "reasonable efforts" argument under 35 U.S.C. §§ 154(b) and 282(c), therefore, a defendant must plead and prove that the Director materially failed to comply with substantive requirements that have been *established by the Director* pursuant to a delegation of legislative authority. In other words, a defendant can *only* make out a PTA defense based on a "reasonable efforts" argument by pleading and proving either that: (1) the PTO materially failed to comply with its own gap-filling "reasonable efforts" regulations, or (2) the PTO's regulations overstep its "gap-filling authority to determine what constitutes 'reasonable efforts.'" *Supernus*, 913 F.3d at 1357.

### 2.    The PTA defense raises a question of law for the Court.

These considerations should leave no doubt that Defendants' PTA defense in this case—which turns entirely on the Director's determination whether Eolas's conduct before the PTO in prosecuting the '507 patent "constitute[d] 'reasonable efforts'" as both defined and determined by the PTO in assessing PTA, *see id.*—raises a question of law, and only a question of law, for resolution by the Court.

Defendants have argued that whether the Director's determination that Eolas's conduct in prosecuting the '507 patent constituted "reasonable efforts" for purposes of § 154(b) raises a question of fact for resolution by a jury. Dkt. 796 at 6. That is plainly incorrect. The PTA statute leaves no room for Defendants, their expert, or a jury to play any role in defining and determining the circumstances that constitute "reasonable efforts" in prosecution before the PTO—it delegates that gap-filling authority exclusively to the PTO. *See* 35 U.S.C. § 154(b)(2)(C)(iii); *Supernus*, 913 F.3d at 1357.[5]

---

[5] Defendants have gone so far as to argue that their PTA defense raises only "a garden-variety fact issue that is routinely submitted to the jury for determination." Dkt. 796 at 6. That argument turns a blind eye to the entire statutory and regulatory scheme governing PTA and "reasonable efforts" determinations. Whether an agency has failed to comply with statutory requirements that have been legislatively delegated to the agency's gap-filling authority has never been a jury question.

MCKOOL SMITH, P.C.
AUSTIN, TX

To the extent that Defendants wish to argue that the Director erred in its "reasonable efforts" determination for the '507 patent, that is necessarily a challenge to an agency's determination of an issue delegated to its gap-filling authority. *See* 35 U.S.C. § 282(c); *Supernus*, 913 F.3d at 1357. And any challenge to an agency's determination of an issue delegated to its gap-filling authority has always, only, and ever been understood to raise a question of law for resolution by a court. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-844 (1984). When "an agency action is challenged" as inconsistent with statutory requirements—including in particular a challenge to the Director's compliance with the PTA requirements of 35 U.S.C. § 154(b)—the "entire" challenge raises "a question of law, and only a question of law." *Abraxis Bioscience, LLC v. Kappos*, 10 F. Supp. 3d 53, 66 (D.D.C. 2014) (addressing a challenge to the Director's determination of PTA and citing *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)); *see also Gilead Scis., Inc. v. Lee*, 778 F.3d 1341, 1349 (Fed. Cir. 2015) (treating a PTA determination challenge as raising a question of law for the court); *Mayo*, 938 F.3d at 1349 (same).

This is entirely consistent with § 282(c), which makes clear that the PTA defense involves nothing more nor less than a challenge to the Director's compliance with the PTA requirements of § 154(b). *See* 35 U.S.C. § 282(c) (requiring pleading and proof that "the Director" materially failed "to comply with the requirements" of § 154(b)). Again, that issue—whether an agency materially complied with its enabling statute—can only raise a question of law for resolution by a court. *See Gilead*, 778 F.3d at 1349; *Supernus*, 913 F.3d at 1356-57; *Abraxis*, 10 F. Supp. 3d at 66. The further point that, in this case, the issue turns on the definition of a statutory term that only the PTO has authority to define makes this conclusion inexorable. *See* 35 U.S.C. § 154(b)(2)(C)(iii); *Supernus*, 913 F.3d at 1357 (noting that "reasonable efforts" questions fall "within the USPTO's gap-filling authority to determine what constitutes 'reasonable efforts'"). The question whether the PTO has complied with a statutory term that the PTO is responsible to define necessarily reduces to issues—inescapably legal—of statutory interpretation and administrative deference.

Defendants do not appear to contest that a direct challenge to the Director's compliance with the PTA requirements of § 154(b) raises a question of law. Dkt. 118 at 11. But they have suggested

McKool Smith, P.C.
Austin, TX

-15-

that including such a challenge as a defense under § 282 somehow changed the nature and character of the challenge from a legal question for the Court to a factual question for the jury. Dkt. 118 at 12; Dkt. 796 at 6. Again, that is plainly incorrect. Inclusion in § 282 has no impact, and works no change whatsoever, on the legal or factual character of the defense being included, or whether that defense should be resolved by judge or jury. "Noninfringement," for example, is included as a defense. 35 U.S.C. § 282(b)(1). That defense historically raised questions of fact for the jury, and it continues to do so under § 282. *See Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). "[U]nenforceability," on the other hand, is also included as a defense. 35 U.S.C. § 282(b)(1). Unlike infringement, unenforceability and its related equitable defenses historically raised questions of law for the court, and they continue to do so under § 282. *See Symbol Techs. Inc. v. Lemelson Med., Educ. & Research Found., L.P.*, 277 F.3d 1361, 1366 (Fed. Cir. 2002); *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 728 (Fed. Cir. 2010).[6] In short, if a particular challenge raises a question of law for the Court outside of § 282, then including that challenge as a § 282 defense will work no change to its essential character as raising a question of law to be resolved by the Court. That is the case with respect to the PTA challenge at issue.

**3.** ***Chevron* governs resolution of the question of law raised by the PTA defense.**

Because the question of law raised by Defendants' asserted PTA defense turns on an assessment of whether an agency has complied with one of its enabling statutes, the standard laid out in *Chevron* governs resolution of the defense. Indeed, in the years following Eolas's initial motion for summary judgment on this issue, the "Federal Circuit has consistently reviewed the USPTO's decisions about patent term adjustments using the *Chevron* framework." *SawStop Holding LLC v. Iancu*, 496 F. Supp. 3d 944, 950 (E.D. Va. 2020); *see also Intra-Cellular Therapies*, 938 F.3d at 1379; *Supernus*, 913 F.3d at 1356; *Gilead*, 778 F.3d at 1346.

---

[6] If Defendants' PTA defense were analogized to any of the defenses listed in 35 U.S.C. § 282(b), it would likely be closest to the unenforceability-related equitable defenses: Defendants' argument has nothing whatsoever to do with patentability or infringement, but rather the idea that the delay caused by the PTO should be equitably balanced against any delay caused by the applicant. These kinds of equitable arguments are traditionally made to a court, not a jury. *Cf. Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.").

McKOOL SMITH, P.C.
AUSTIN, TX

Under this framework, the Court first asks at step one "whether the statute's plain terms directly addres[s] the precise question at issue." *Intra-Cellular Therapies*, 938 F.3d at 1379 (internal quotes omitted). If the answer is "no," the Court proceeds to step two, which "requires determination of whether the Patent Office's answer to the precise question at issue is based on a 'permissible construction of the statute.'" *Id.* at 1380 (quoting *Chevron*, 467 U.S. at 843). The Federal Circuit has found that questions relating to "what may be regarded as 'reasonable efforts' on the part of an applicant" for purposes of "the PTA statute" require analysis under step two. *Id.*

The *Chevron* step two analysis recognizes that "considerable weight should be accorded to an [agency's] construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." *Id.* (quoting *Chevron*, 467 U.S. at 844). Step two further requires consideration of the nature of the statutory gap that Congress has left for the agency to fill. As the Supreme Court explained in *Chevron*, the "power of an administrative agency to administer a congressionally created … program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Chevron*, 467 U.S. at 843-44 (citing *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)). "If Congress has explicitly left a gap for the agency to fill"—as the Federal Circuit has confirmed is the case with the determination of "reasonable efforts" under § 154(b)—then "there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *See Chevron*, 467 U.S. at 843-44; *Supernus*, 913 F.3d at 1357. Such "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44.

Defendants agree that "[q]uestions of *Chevron* deference are relevant in cases where the PTO's regulations are challenged as inconsistent with its delegated authority." Dkt. 796 at 6. And that is precisely what Defendants must plead and prove in order to make out their PTA defense. *See* 35 U.S.C. §§ 282(c), 154(b)(2)(C)(iii). Defendants assert that, with respect to the '507 patent, the Director erred in its "reasonable efforts" PTA determination. Questions regarding "reasonable efforts" fall within the Director's gap-filling authority to determine what constitutes "reasonable efforts" for purposes of the PTA statute, and the Director has exercised that gap-filling authority in

McKOOL SMITH, P.C.
AUSTIN, TX

promulgating regulations establishing the 14 circumstances laid out in 37 C.F.R. §§ 1.704(c)(1)-(14). The *only* way for Defendants to plead and prove that the Director failed to comply with the "reasonable efforts" provisions of the PTA statute—aside from the possibility of a straightforward miscalculation—is to show that the PTO's "reasonable efforts" regulations are inconsistent with its delegated authority. Defendants concede *that* issue is governed by *Chevron*. Dkt. 796 at 6. And because the "reasonable efforts" regulations fill an explicit gap left by Congress, 35 U.S.C. § 154(b)(2)(C)(iii), under *Chevron* those regulations must control unless Defendants can show them to be "arbitrary, capricious, or manifestly contrary to the statute," 467 U.S. at 843-44.

**4.   Summary judgment on the PTA defense is appropriate.**

Critically, Defendants have never alleged that any of the PTO's gap-filling "reasonable efforts" regulations are "arbitrary, capricious, or manifestly contrary to the statute." *See id.*; *Supernus*, 913 F.3d at 1357. Under *Chevron*, those legislative regulations thus stand as controlling with respect to the "reasonable efforts" argument asserted by Defendants, and summary judgment is appropriate. *See* 467 U.S. at 843-44. Aware that their attacks on the PTO's controlling regulations are almost certainly doomed, Defendants have attempted to frame their asserted PTA defense as completely consistent with the PTO's "reasonable efforts" regulations. But that attempt founders on the relevant statutory and regulatory provisions, as well as the rules of logic. If the Director's "reasonable efforts" regulations are consistent with the delegated gap-filling authority to determine what constitutes "reasonable efforts" for purposes of § 154(b), and if the Director consistently applied those regulations in determining PTA for the '507 patent, then—as a matter of law and logic—the Director cannot possibly have failed to comply with the "reasonable efforts" requirements of § 154(b) in determining PTA for the '507 patent. *See* 35 U.S.C. § 282(c).

As shown above, Defendants can *only* make out a PTA defense based on a "reasonable efforts" argument by pleading and proving either that: (1) the PTO materially failed to comply with its own gap-filling "reasonable efforts" regulations, or (2) the PTO's regulations overstep its "gap-filling authority to determine what constitutes 'reasonable efforts.'" *Supernus*, 913 F.3d at 1357. After six years of litigation, Defendants have taken no step toward making either showing.

McKool Smith, P.C.
Austin, TX

-18-

Defendants have suggested that they should be free, perhaps in conjunction with their expert, to make up their own definition of what constitutes "reasonable efforts" for purposes of § 154(b). That suggestion does not survive *Chevron* step one, as the statute expressly provides that the Director, and only the Director, has authority to define what constitutes "reasonable efforts" for purposes of § 154(b). 35 U.S.C. § 154(b)(2)(C)(iii); MPEP § 2732; *Supernus*, 913 F.3d at 1357. This delegation of authority makes good sense: the relevant policy issue, as the PTO has explained, involves encouraging applicants to "refrain from engaging in actions or inactions that prevent or interfere with the Office's ability to process or examine an application." MPEP § 2732; *see also Chevron*, 467 U.S. at 843-44 (explaining that the "power of an administrative agency to administer a congressionally created … program necessarily requires the formulation of policy"). There can be no question that the PTO itself is best positioned to determine whether an applicant's conduct prevents or interferes with the PTO's own ability to process or examine an application.

Defendants have also suggested that, since the PTO itself considers the 14 "reasonable efforts" circumstances that the PTO has established to be non-exhaustive, Defendants may be free, perhaps in conjunction with their expert, to add some number of additional, case-by-case, fact-intensive circumstances to those enumerated in 37 C.F.R. § 1.704(c). The suggestion that Defendants might establish some new and non-enumerated circumstances, which would need to be added to the "reasonable efforts" regulations, again fails at *Chevron* step one. Congress delegated all of the "reasonable efforts" gap-filling authority to the PTO—it reserved none of that authority for Defendants. 35 U.S.C. § 154(b)(2)(C)(iii); MPEP § 2732. The further suggestion that the statute might be read to require some new kind of case-by-case, fact-intensive inquiry—not reflected in the PTO's "reasonable efforts" regulations—fails at *Chevron* step two. As discussed above, proper functioning of the statutory and regulatory scheme precludes any kind of fact-intensive inquiry for determining PTA. MPEP §§ 2732-2733. And the Federal Circuit has acknowledged that the PTO reasonably reads § 154(b) as requiring nothing more "fact-intensive" than a review of the dates that particular papers were filed in the prosecution timeline. *See Mayo*, 938 F.3d at 1350-51.

MCKOOL SMITH, P.C.
AUSTIN, TX

-19-

After more than six years of litigation, Defendants have done nothing to plead or prove that the PTO materially failed to comply with the requirements of § 154(b) in exercising its own gap-filling authority to determine what constituted "reasonable efforts" in the '507 patent prosecution. There are no disputes of fact on this legal issue, and judgment as a matter of law is appropriate. The Court should grant summary judgment in favor of Eolas on the asserted PTA defense.

**B.    The Asserted OTDP and Preclusion Defenses Fail: the Court Has Already Confirmed That the '507 Patent Claims Are Dispositively Different.**

Over these many years, Defendants' litigation playbook has become clear: send the parties down time- and resource-consuming rabbit trails; attempt to paint Eolas as a bad actor based on the PTO's delays during examination and the results of prior litigation involving different patents; and find a way to present their meritless and prejudicial "bad actor" theories to the jury.

Defendants have no viable legal argument that the PTO's "reasonable efforts" regulations overstep its legislative gap-filling authority to define "reasonable efforts" for purposes of PTA, or that the PTO misapplied its gap-filling regulations when it determined PTA for the '507 patent. To the contrary, the PTA determination for the '507 patent properly reflects "the Patent and Trademark Office's delay in acting on the application." Dkt. 566 at 5-6. Defendants nevertheless want the chance to poison the jury with an expert opinion that Eolas failed to engage in "reasonable efforts" before the PTO. That could only taint the trial. Similarly, Defendants have no viable legal argument that the asserted '507 patent claims are invalid for obviousness-type double patenting ("OTDP"), or that the allegations of infringement are foreclosed by any preclusion-related doctrine. Dkt. 655 at 9-15. Yet Defendants insist that they should also have the chance to poison the jury with expert opinions addressing OTDP and the purported significance of Eolas's prior litigations involving different patents. Dkt. 752 at 4; Dkt. 757 at 22. Again, that could only taint the trial.

Eolas understands that a new summary judgment motion on the asserted PTA defense was necessary and appropriate—an earlier motion was denied in 2016 without prejudice to refiling, and in the intervening years the Federal Circuit has issued a number of opinions that should provide important guidance for the Court's resolution of the legal question raised by that defense. But with respect to Defendants' asserted OTDP and preclusion defenses, Eolas believed those legal theories

McKool Smith, P.C.
Austin, TX

were foreclosed by the Court's resolution of Defendants' motion for summary judgment in April 2021. Dkt. 655 at 1, 17. Defendants appeared to agree with Eolas in June 2021, after the Court ruled against Defendants on their motion for summary judgment—Defendants removed those issues from the joint case management statement. *Compare* Dkt. 569 at 1-2 (February 18, 2020 CMC Statement listing Defendants' legal issues, including: "Whether this action should be dismissed because it is barred by res judicata and/or collateral estoppel ...; Whether the asserted claims of the '507 patent are invalid under the doctrines of double patenting and obviousness-type double patenting ....") *with* Dkt. 663 at 2 (omitting same). Indeed, the OTDP and preclusion defenses involve equitable doctrines that raise questions of law for the Court, and each turns on finding, among other things, that the '507 patent claims are "patentably indistinct" from, or "substantially the same" as, the patent claims at issue in prior litigations. *See* Dkt. 655 at 6, 13, 16. And in denying Defendants' motion for summary judgment, the Court found, among other things, that the '507 patent claims were neither patentably indistinct from, nor substantially the same as, the prior patent claims. *Id.* at 9, 12, 15, 16. As a matter of law, these findings foreclose Defendants' OTDP and preclusion defenses.

Nevertheless, Defendants have indicated their intention to offer expert testimony to the jury—under the guise of these foreclosed defenses—regarding the purported significance of the prior litigations involving these different patents. Defendants argue that, because Eolas did not affirmatively move for summary judgment in its favor on the OTPD and preclusion defenses, the Court never decided "that the asserted claims are directed to 'different claim scope' than the previously invalidated claims." Dkt. 757 at 22; Dkt. 752 at 4. Eolas disagrees, and has no desire to burden the Court with a duplicative round briefing on matters the Court has already resolved. Even so, in order to bring clarity and reduce the number of disputes between the parties as trial approaches, Eolas now affirmatively moves for summary judgment in its favor on the OTPD and preclusion defenses this Court addressed in April of last year. Two simple observations should make the propriety of that judgment clear: (1) the OTDP and preclusion defenses raise questions of law for the Court; and (2) the dispositive questions of law have already been resolved by the Court.

**1.    The OTDP and preclusion defenses raise questions of law for the Court.**

Defendants' suggestion that the OTDP and estoppel-related preclusion doctrines raise questions of fact for the jury is incorrect: the asserted doctrines are equitable in nature and raise questions of law for the Court. *See In re Goodman*, 11 F.3d 1046, 1052 (Fed. Cir. 1993) ("Obviousness-type double patenting is a question of law."); *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1059 (Fed. Cir. 2020) ("the equitable doctrine of obviousness-type double patenting"); *United States v. Maybusher*, 735 F.2d 366, 370 (9th Cir. 1984) ("the equitable doctrine of collateral estoppel"); *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1052 (Fed. Cir. 2014) (treating claim preclusion, issue preclusion, and the *Kessler* doctrine as estoppel-related theories raising questions of law that could be resolved on appeal); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature."); Dkt. 787-4 at 2-3.

**2.    The dispositive questions of law have already been resolved by the Court.**

As noted, each of these legal doctrines requires finding, among other things, that the '507 patent claims are "patentably indistinct" from, or "substantially the same" as, patent claims in prior litigations. *See* Dkt. 655 at 6, 13, 16; *see also UCB, Inc. v. Accord Healthcare, Inc.*, 890 F.3d 1313, 1323 (Fed. Cir. 2018) (noting that OTDP requires a finding that claims are "not patentably distinct"); *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (noting that collateral estoppel requires a finding that claims are "substantially the same"); *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1170 (Fed. Cir. 2018) (noting that the *Kessler* doctrine requires a finding that the claims are "patentably indistinct"). In resolving Defendants' motion for summary judgment on these doctrines, the Court found that '507 patent claims were neither "patentably indistinct" nor "substantially the same." *Id.* at 16 & n.11. To the contrary, the Court found that the current and prior claims differed "in several respects, including: (1) their adaptation to 'World Wide Web page[s]' and 'browser[s],' (2) their incorporation of 'two or more distributed application computers connected to the World Wide Web,' (3) their configur[ation] of the World Wide Web browser to select and automatically invoke an interactive-content application, and (4) their use of

McKool Smith, P.C.
Austin, TX

-22-

'coordination computers [to] perform[] coordination of at least part of the distributed application to perform at least one task.'" *Id.* at 15.

As a matter of law, that finding foreclosed the possibility that Defendants could make out their OTDP or preclusion-related defenses. With respect to OTDP in particular, the Court further found that: the '507 patent claims "contain differences that extend far beyond" those that could justify application of the defense, Dkt. 655 at 11; there was "no indication that a person of ordinary skill in the art would have been 'motivat[ed] to narrow the [previously patented] genus' to the 'World Wide Web' species contained in the '507 patent," *id.* at 12; and "even the exemplary claim comparison contained in Defendants' briefs fails to demonstrate that Claim 32 of the '507 patent is 'merely an obvious variation of an invention disclosed and claimed in the [prior] patent[s],'" *id.* at 9; *see also id.* at 16 n.11 ("Because the '507 patent is not 'patentably indistinct' from those previously adjudicated, Defendants' arguments regarding the similarity between the accused products and the products at issue in [the prior litigations] are inapplicable.").

Nothing further is needed to confirm that summary judgment in Eolas's favor is appropriate. Defendants already presented these equitable defenses to the Court for resolution—"with all other case deadlines and fact and expert discovery stayed" at Defendants' request. Dkt. 591-2; Dkt. 569 at 13. During that lengthy stay, the parties fully briefed the issues and the Court considered and definitively rejected Defendants' arguments. Dkt. 655. Once should have been, and was, enough.

**V.    CONCLUSION**

For all of these reasons, the Court should grant summary judgment in favor of Eolas and against Defendants on Defendants' PTA, OTDP, and preclusion-related defenses.

McKool Smith, P.C.
Austin, TX

-23-

DATED: February 24, 2022

MCKOOL SMITH P.C.

_/s/ John B. Campbell_

John B. Campbell (admitted *pro hac vice*)
Joshua W. Budwin (admitted *pro hac vice*)
James E. Quigley (admitted *pro hac vice*)
McKool Smith, P.C.
303 Colorado Street, Suite 2100
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744
jcampbell@McKoolSmith.com
jbudwin@McKoolSmith.com
jquigley@McKoolSmith.com

Eliza Beeney (admitted *pro hac vice*)
McKool Smith, P.C.
395 9th Avenue, 50th Floor
New York, New York 10001
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
ebeeney@McKoolSmith.com

Alan P. Block (admitted *pro hac vice*)
McKool Smith Hennigan, P.C.
300 S. Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234
ablock@McKoolSmith.com

Attorneys for Plaintiff
Eolas Technologies Incorporated

McKool Smith, P.C.
Austin, TX

Case Nos. 4:17-cv-03022-JST                    EOLAS'S MOTION FOR SUMMARY JUDGMENT